IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:12-cv-00886 -MSK-MEH

F I L E D
UNITED STATES DISTRICT COURT
DENVER, COLORADO

MAY 29 2012

GREGORY C. LANGHAM
CLERK

Malibu Media, LLC,

     Plaintiff,

v.

Jeff Fantalis, Bruce Dunn, and
Stephen Deus,

     Defendants.

ANSWER AND COUNTERCLAIM
AND DEMAND FOR JURY TRIAL

     Defendant, Jeff Fantalis, by way of Answer to the complaint of Malibu Media, LLC (the "Plaintiff"), says:

<u>Introduction</u>

1. Defendant denies that Plaintiff has any cause(s) of action against Defendant under the United States Copyright Act of 1976 or under any other legislation or at common law.

2. Denied in its entirety, including the footnote.

3. Defendant has no personal knowledge of any of the movies referred to by Plaintiff.

4. Denied.

### Jurisdiction and Venue

5. Defendant denies that Plaintiff has any cause of action against him; however, he admits that this court has subject matter jurisdiction over matters involving federal questions and copyrights.

6. Defendant denies the allegations of this paragraph. Even if the IP address in question (184.96.0.193) was associated with the high-speed internet router located in Defendant's home on or about January 14, 2012, that fact does not give rise to jurisdiction over the Defendant's person. An IP address is not a person but a designation assigned to a piece of technology, which can be access by multiple individuals and in addition other devices can be configured with the same IP address.

7. Defendant denies the allegations of this paragraph, except to admit that he is a resident of the City of Louisville, County of Boulder, and State of Colorado. Defendant was not served with a Summons at the time of service of the Complaint, as required by the Federal Rules of Civil Procedure.  For all of these reasons, Plaintiff has failed to plead facts from which a reasonable trier of fact could conclude that this Court has personal jurisdiction over Defendant, or that venue is properly laid in this district. Defendant has no personal knowledge as to relevant information regarding the other defendants in this matter.

### Parties

8. Defendant has no personal knowledge of these facts and can neither confirm nor deny and leaves Plaintiff to its proofs.

9. Defendant admits that he is a resident of the state of Colorado. Defendant has no knowledge as to the IP address provided by Qwest/CenturyLink.

10.  Defendant has no personal knowledge of these facts and can neither confirm nor deny and leaves Plaintiff to its proofs.

11. Defendant has no personal knowledge of these facts and can neither confirm nor deny and leaves Plaintiff to its proofs.

12. Defendant denies the allegations of this paragraph.  Plaintiff's definition is incomplete and misleading.

13. Defendant denies the allegations of this paragraph.

<u>Joinder</u>

14. Defendant denies the allegations of this paragraph. Plaintiff's Exhibit C demonstrates that the individual Defendants could not have, in fact, been involved in "the exact same torrent file" or having "act[ed] in concert with each other" as alleged by the Plaintiff, as Exhibit C alleges infringement by the individual Defendants as having occurred on three distinct and separate dates.

<u>Factual Background</u>

I.      Plaintiff Owns The Copyright to a Motion Picture

15. Defendant has no personal knowledge of these allegations and can neither confirm nor deny, and leaves Plaintiff to its proofs.

16. Defendant has received a copy of the alleged copyright registrations as Exhibit B.

17. Defendant denies this paragraph to the extent that it alleges copyright infringement or any other unlawful or illegal conduct by the Defendant. Among all other reasons stated herein, Defendant was not at home on the date and at the time of the activity alleged by Exhibit C.

II.    **Defendants Used BitTorrent To Infringe Plaintiff's Copyright**

18. Defendant leaves Plaintiff to its proofs with regard to this description of BitTorrent technology. Defendant has received a copy of Exhibit D.

19. Defendant leaves Plaintiff to its proofs with regard to this description of BitTorrent technology.

A.  **Each Defendant Installed a BitTorrent Client onto his or her Computer**

20. Defendant denies the allegations of this paragraph.

21. Defendant leaves Plaintiff to its proofs with regard to this description of BitTorrent technology.

22. Defendant leaves Plaintiff to its proofs with regard to this description of BitTorrent technology.

B.  **The Initial Seed, Torrent, Hash and Tracker**

23. Defendant leaves Plaintiff to its proofs with regard to this description of BitTorrent technology.

24. Defendant leaves Plaintiff to its proofs with regard to this description of BitTorrent technology.

25. Defendant leaves Plaintiff to its proofs with regard to this description of BitTorrent technology.

26. Defendant leaves Plaintiff to its proofs with regard to this description of BitTorrent technology.

27. Defendant leaves Plaintiff to its proofs with regard to this description of BitTorrent technology.

28. Defendant leaves Plaintiff to its proofs with regard to this description of BitTorrent technology.

29. Defendant leaves Plaintiff to its proofs with regard to this description of BitTorrent technology and its relation to Plaintiff's alleged copyrighted Works.

30. Defendant leaves Plaintiff to its proofs with regard to this description of BitTorrent technology.

C. Torrent Sites

31. Defendant leaves Plaintiff to its proofs with regard to this description of BitTorrent technology.

32. Defendant denies the allegations of this paragraph.

D. Uploading and Downloading Works Through a BitTorrent Swarm

33. Defendant leaves Plaintiff to its proofs with regard to this description of BitTorrent technology.

34. Defendant leaves Plaintiff to its proofs with regard to this description of BitTorrent technology and its relation to Plaintiff's alleged copyrighted Works.

35. Defendant leaves Plaintiff to its proofs with regard to this description of BitTorrent technology and its relation to Plaintiff's alleged copyrighted Works.

36. Defendant leaves Plaintiff to its proofs with regard to this description of BitTorrent technology.

37. Defendant denies the allegations of this paragraph.   In addition, Plaintiff's own Exhibit C demonstrates that the individual Defendants could not have been part of the same "swarm" as described by the Plaintiff.

38. Defendant leaves Plaintiff to its proofs with regard to this description of BitTorrent technology and its relation to Plaintiff's alleged copyrighted Works.

39. Defendant denies the allegations of this paragraph with regard to any alleged activity by the Defendant. As to the general process of participating in a BitTorrent, Defendant leaves Plaintiff to its proofs.

E.  **Plaintiff's Computer Investigators Identified Each of the Defendants' IP Addresses as Participants in a Swarm That Was Distributing Plaintiff's Copyrighted Works**

40. Defendant has no personal knowledge of these facts and can neither confirm nor deny, and leaves Plaintiff to its proofs.

41. Defendant has no personal knowledge of these facts and can neither confirm nor deny, and leaves Plaintiff to its proofs.

42. Defendant has no personal knowledge of these facts and can neither confirm nor deny, and leaves Plaintiff to its proofs.

43. Defendant denies the allegations of this paragraph.

44. Defendant denies the allegations of this paragraph.

45. Defendant has no personal knowledge of these facts and can neither confirm nor deny, and leaves Plaintiff to its proofs.

46. Defendant has no personal knowledge of these facts and can neither confirm nor deny, and leaves Plaintiff to its proofs.

### Miscellaneous

47. Defendant has no personal knowledge of these facts and can neither confirm nor deny, and leaves Plaintiff to its proofs.

48. Defendant has no personal knowledge of these facts and can neither confirm nor deny, and leaves Plaintiff to its proofs.

### COUNT I

### Direct Infringement Against Defendants

49. Defendant's denials and statements in response to paragraphs 1-48 are hereby incorporated as though fully set forth herein.

50. Defendant has no personal knowledge of these facts and can neither confirm nor deny, and leaves Plaintiff to its proofs.

51. Defendant denies the allegations of this paragraph.

52. Defendant has no knowledge as to the Plaintiff's authorization or permission as to any downloads of the Works in question. Defendant denies having participated in any activity by which Plaintiff's alleged copyrights were infringed.

53. Defendant denies the allegations of this paragraph, including subparagraphs (A) through (D).

54. Defendant denies the allegations of this paragraph.

55. Defendant denies the allegations of this paragraph, because Defendant has not engaged in any activity that would harm the Plaintiff or in any way give rise to a cause of action as claimed herein or in any other manner.

WHEREFORE, Defendant respectfully requests that the Court:

(A) Find that the Plaintiff's Complaint is entirely without merit; and

(B) Immediately dismiss Plaintiff's Complaint, with prejudice; and

(C) Award Defendant his reasonable fees and costs of suit; and

(D) Grant Defendant such other and further relief as the Court may deem equitable and just.

## COUNT II

### Contributory Infringement Against Defendants

56. Defendant's denials and statements in response to paragraphs 1-55 are hereby incorporated as though fully set forth herein.

57. Defendant has no personal knowledge of these facts and can neither confirm nor deny, and leaves Plaintiff to its proofs.

58. Defendant denies the allegations of this paragraph.

59. Defendant denies the allegations of this paragraph.

60. Defendant has no knowledge as to the Plaintiff's authorization or permission as to any downloads of the Works in question. However, by uploading them to the website as they allege they have done in Paragraph 2, they implicitly opened their Works to public access. Defendant denies having participated in any activity by which Plaintiff's alleged copyrights were infringed.

61. Defendant denies the allegations of this paragraph.

62. Defendant denies the allegations of this paragraph.

63. Defendant denies the allegations of this paragraph.

64. Defendant denies the allegations of this paragraph.

65. Defendant denies the allegations of this paragraph, because Defendant has not engaged in any activity that would harm the Plaintiff or in any way give rise to a cause of action as claimed herein or in any other manner.

WHEREFORE, Defendant respectfully requests that the Court:

(A) Find that the Plaintiff's Complaint is entirely without merit; and

(B) Immediately dismiss Plaintiff's Complaint, with prejudice; and

(C) Award Defendant his reasonable fees and costs of suit; and

(D) Grant Defendant such other and further relief as the Court may deem equitable and just.

## COUNTERCLAIM

Defendant, Jeff Fantalis, by way of counterclaim against the Plaintiff, Malibu Media, LLC, says:

1. Defendant is an individual residing in the State of Colorado.

2. This court has jurisdiction over Plaintiff, Malibu Media, LLC, because Plaintiff has availed itself of this court to pursue an action against the Defendant, and this is also therefore the proper venue.

## FACTS COMMON TO ALL COUNTS

1. Plaintiff, Malibu Media LLC, has engaged in a systematic course of action whereby it is using the Federal Courts in order to extort funds from individuals who use the Internet.

2. This course of action has been well documented in the media (see, for example, **Exhibit A**, www.usnews.com article of February 2, 2012, "Porn Companies File **Mass Piracy Lawsuits**": http://www.usnews.com/news/articles/2012/02/02/porn-companies-file-mass-piracy-lawsuits-are-you-at-risk; hereinafter, "Mass Piracy Lawsuits"), and in a case in the U.S. District Court, Eastern District of New York, it has been called a "nationwide blizzard." In Re BitTorrent Adult Film Copyright Infringement Cases, 2:11-cv-03995, 12-1147, 12-1150, and 12-1154, Order and Report and Recommendation dated May 1, 2012 at p 2.

3. These pornography companies, known as "copyright trolls," utilize technology to obtain information regarding when films have been downloaded via BitTorrent software. The companies obtain information regarding IP addresses which have allegedly been associated with such activity. They then file dozens or hundreds of lawsuits in Federal Court against unknown defendants ("John Does"), utilizing the

court system to obtain the names and addresses (and often telephone numbers and email addresses) of the John Does through the court's subpoena power. The mechanism by which this is done is via subpoenas sent to the Internet Service Provider ("ISP") which issued the IP addresses.

4. Once these companies are in possession of the defendant John Does' contact information, they then contact the John Doe via phone and/or letter and attempt to coerce them into settlement. If these threats are unsuccessful, they refile their cases against the John Does with their true names and continue to press for settlement. (See, "Mass Piracy Lawsuits.")

5. Plaintiff Malibu Media is one such "copyright troll," having filed over one hundred of these same type of lawsuits in eight separate Federal district courts: California, Colorado, District of Columbia, Florida, Maryland, New York, Pennsylvania and Virginia. See attached **Exhibit B**, a listing of these Malibu Media cases as of 5/24/12 as listed on www.dockets.justia.com.

6. Upon information and belief, the principal and or principals of Plaintiff Malibu Media are the same individual(s) who are the principal(s) of two other pornography companies who have been engaged in this course of conduct: namely, Raw Films and Patrick Collins, Inc. Malibu Media and Patrick Collins, Inc., are, at least in some cases, represented by Plaintiff's counsel of record, Jason A. Kotzker, Esq.

7. Plaintiff commenced the instant action against the Defendant by filing a suit against thirty "John Does" (Case No. 1:12-cv-00402-WYD) on or about February 15, 2012. The sole purpose of that action was to obtain the issuance of subpoenas to the John Does' internet service providers (ISPs) in order to determine the identity of the John Does.

8.  On or about February 15, 2012, Plaintiff also filed seven other cases as follows:

| | |
|---|---|
| Malibu Media LLC v. John Does 1-29 | Case No. 1:12-cv-00397 |
| Malibu Media LLC v. John Does 1-27 | Case No. 1:12-cv-00406 |
| Malibu Media LLC v. John Does 1-27 | Case No. 1:12-cv-00409 |
| Malibu Media LLC v. John Does 1-18 | Case No. 1:12-cv-00407 |
| Malibu Media LLC v. John Does 1-16 | Case No. 1:12-cv-00399 |
| Malibu Media LLC v. John Does 1-15 | Case No. 1:12-cv-00408 |
| Malibu Media LLC v. John Does 1-10 | Case No. 1:12-cv-00405 |

9.  On or about April 2, 2012, Plaintiff filed two more such cases, as follows:

| | |
|---|---|
| Malibu Media LLC v. John Does 1-28 | Case No. 1:12-cv-00834 |
| Malibu Media LLC v. John Does 1-21 | Case No. 1:12-cv-00835 |

10. On or about April 3, 2012, Plaintiff filed seven further such cases, as follows:

| | |
|---|---|
| Malibu Media LLC v. John Does 1-9 | Case No. 1:12-cv-00846 |
| Malibu Media LLC v. John Does 1-23 | Case No. 1:12-cv-00836 |
| Malibu Media LLC v. John Does 1-17 | Case No. 1:12-cv-00839 |
| Malibu Media LLC v. John Does 1-16 | Case No. 1:12-cv-00840 |
| Malibu Media LLC v. John Does 1-11 | Case No. 1:12-cv-00843 |
| Malibu Media LLC v. John Does 1-10 | Case No. 1:12-cv-00837 |
| Malibu Media LLC v. John Does 1-6 | Case No. 1:12-cv-00845 |

11. On or about April 4, 2012, on the same day that Plaintiff filed the current action against Defendant and the other defendants, Plaintiff filed an additional case against one more John Doe as Case No. 1:12-cv-00885.

12. The attorney representing plaintiff here in Colorado and who has filed these nearly 20 cases is the same attorney who filed the twenty-three separate cases against hundreds of John Does in the Federal District Courts for the Southern and Eastern Districts of New York. This attorney, Jason A. Kotzker, does not maintain a physical office in Colorado, but instead uses a Post Office Box as his only address within the state. See, ABC 7 local television news report, http://www.thedenverchannel.com/news/31030100/detail.html.

13. A subpoena was issued in the case against Defendant and the twenty-nine other John Does that was filed on or about February 15, 2012, which required Qwest/Century Link to turn over to the plaintiff's attorney information regarding the identity of the defendant. Qwest/Century Link provided a copy of this subpoena to defendant. See **Exhibit C**, letter and subpoena.

14. On or about March 22, 2012, a person named Anthony Palmer telephoned Defendant. He represented to Defendant that he was calling on behalf of Malibu Media and told Defendant that he was the "primary" and/or "main" defendant in a lawsuit about to be filed. He urged Defendant to obtain an attorney and to settle the matter.

15. On or about April 4, 2012, the instant case was filed against these defendants.

16. On or about April 6, 2012, and April 9, 2012, Defendant received voice mail messages from Anthony Palmer again stressing that he was the "main" defendant in a lawsuit and advising him to get an attorney and contact him regarding settlement. Defendant did not return these phone calls.

17. On or about May 5, 2012, Defendant was served with the Complaint in the instant matter. Service was made at Defendant's home on a Saturday morning when his family and neighbors were at home. His eleven-year-old son answered the door and told Defendant the police had arrived.

## COUNT I

### ABUSE OF PROCESS

18. Defendant restates and realleges all of the allegations of the previous paragraphs as if more fully stated herein.

19. Plaintiff has wrongfully, improperly and illegally used the Federal Court system in an effort to obtain money from this Defendant, the other two defendants in this matter, and the multitude of other defendants which Plaintiff has sued in eight other Federal District Courts.

20. The filing of the initial case, Malibu Media LLC v. John Does 1-30, Case No. 1:12-cv-00402-WYD, was done solely with the intent of generating the subpoenas which would provide the identifying information of the individual defendants and to no other purpose.

21. The individual acts alleged in that case took place on separate, distinct dates and times and were in no way connected, and therefore, each individual John Doe ought to have been sued separately and each subpoena issued separately. See **Exhibit C**. By filing the case against multiple defendants in this way, Plaintiff evaded thousands of dollars in filing fees which ought to have lawfully been paid to the Court.

22. Once the Plaintiff had utilized the power of the courts to issue the subpoenas and obtain the Defendant's identifying information, this information was first used NOT to bring an affirmative lawsuit but to contact Defendant in an effort to coerce and

compel Defendant to settle the matter out of court. Plaintiff expected that it would cost Defendant thousands of dollars to obtain legal counsel and respond to a lawsuit, and Plaintiff anticipated and intended that the allegations of illegal conduct and the distasteful subject matter of such a lawsuit (namely, the pornographic nature of the films in question) would induce Defendant to settle quickly.

23. When Defendant refused to settle, Plaintiff filed the instant case, again attempting to avoid multiple filing fees by joining three defendants in one case even though, according to Plaintiff's own information, the alleged actions (which Defendant has denied) took place on three distinct dates and times.

24. Thereafter, pressure to settle was still brought to bear in the form of phone calls, not from Plaintiff's attorney of record, but by some individual apparently representing the Plaintiff in some other capacity.

25. Plaintiff's conduct of these two cases against the Defendant have been calculated to (1) avoid paying court filing fees which were due and proper based on the causes of action Plaintiff alleged and (2) to intimidate and harass the Defendant.

26. The Plaintiff's sole goal and motive is not a just and fair trial resulting in the preservation of any legal copyrights, but a swift extortion of money out of the pockets of an intimidated and embarrassed Defendant.

27. The Defendant has been damaged in his personal and professional life by the conduct of the Plaintiff.

WHEREFORE, the Defendant respectfully requests that the Court:

1. Find that these acts of Plaintiff amount to abuse of process;

2. Granting Defendant damages in the amount of $1 million;

3. Granting the Defendant all fees and costs of suit;

4. For such other and further relief as the court may deem equitable and just.

14

## COUNT II

## INVASION OF PRIVACY

28. Defendant restates and realleges all of the allegations of the previous paragraphs as if more fully stated herein.

29. Plaintiff intentionally intruded upon Defendant's solitude, seclusion and private affairs by collecting data about the access individual IP addresses made of the internet without Defendant's knowledge, authorization, or permission.

30. Plaintiff intentionally intruded upon Defendant's solitude, seclusion and private affairs by forcing Qwest/Century Link to disclose the Defendant's identifying information through the issuance of the subpoena in Case No. 1:12-cv-00402-WYD.

31. Plaintiff intentionally intruded upon Defendant's solitude, seclusion and private affairs by utilizing that information to attempt to connect Defendant's IP address to actions that, if true, would be illegal.

32. Plaintiff then publicized said false allegations – namely, the illegal download of pornographic films – by placing them into a public document – namely, the Complaint against Defendant. This information is easily accessible to any interested person through the Google search engine.

33. The publication of these allegations is highly offensive to Defendant, as it falsely alleges illegal and distasteful activity on his part, and as such, would be highly offensive to any reasonable person.

34. The public can have no legitimate concern in hearing false allegations whose only purpose is to intimidate, embarrass and harass.

35. The Defendant has been damaged in his personal and professional life by the conduct of the Plaintiff.

WHEREFORE, the Defendant respectfully requests that the Court:

1. Find that these acts of Plaintiff amount to invasion of Defendant's privacy;

2. Granting Defendant damages in the amount of $1 million;

3. Granting the Defendant all fees and costs of suit;

4. For such other and further relief as the court may deem equitable and just.

## COUNT III

## DEFAMATION

36. Defendant restates and realleges all of the allegations of the previous paragraphs as if more fully stated herein.

37. By filing the Complaint in the instant matter, Plaintiff has made public false and defamatory statements about the Defendant, including but not limited to the allegations that Defendant has illegally downloaded movies that are protected by copyright, and that Defendant has downloaded pornographic movies.

38. Plaintiff acted with negligence as to the truth or falsity of these statements. The Plaintiff treats this Defendant, as it treats all its defendants, as a cash cow to be milked at will.

39. The allegations made by the Plaintiff in the Complaint subject to Defendant to scorn, distrust, ridicule, contempt and tend to harm his reputation. They tend to lower him in the estimation of his peers, involving as they do, illegal and contemptible and distasteful activities.

40. The allegations made by the Plaintiff in the Complaint have a tendency to injure the Defendant's occupation, business or employment. In fact, the Defendant has already been hampered in looking for work. The instant action is one of the first items that appears on a search of Defendant's name in the Google search engine and it

appears multiple times, facts which clearly have a negative impact on the Defendant's reputation personally and professionally. This case is also one of the first items that appears on a search using the Bing search engine. Anthony Palmer, the individual who has contacted Defendant on behalf of Plaintiff several times, specifically told Defendant that he should "Google" himself to see that the lawsuit had been filed and find out facts about the case. Clearly, Plaintiff intended that Anthony Palmer, as its representative, make Defendant aware of this very public exposure.  As prospective employers rely heavily on internet searches to find and verify information regarding applicants, this fact is incredibly injurious to Defendant.

41. The Defendant has been damaged in his personal and professional life by the conduct of the Plaintiff.

WHEREFORE, the Defendant respectfully requests that the Court:

1. Find that these acts of Plaintiff amount to defamation;

2. Granting Defendant damages in the amount of $1 million;

3. Granting the Defendant all fees and costs of suit;

4. For such other and further relief as the court may deem equitable and just.


COUNT IV

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

42. Defendant restates and realleges all of the allegations of the previous paragraphs as if more fully stated herein.

43. In all Plaintiff's actions connected with the filing of both cases (Malibu Media LLC v. John Does 1-30 and Malibu Media LLC v. Fantalis, Dunn and Deus), Plaintiff has acted with the specific intent to obtain a monetary settlement from every Doe at the lowest cost possible.

44. Plaintiff's conduct in this specific case must be viewed in the light of Plaintiff's conduct in all of the cases filed in all of the Federal Districts: dozens of cases with hundreds of Doe defendants. This misuse of the Federal Courts is outrageous and extreme.

45. In the instant case, Plaintiff's first act after obtaining Defendant's identifying information was to attempt to obtain a monetary settlement from Defendant. Moreover, Plaintiff's counsel of record did not make the contact. Defendant has never once been contacted by Plaintiff's legal counsel, only by Anthony Palmer, a person who claims to represent Malibu Media and whose name has been tied to Patrick Collins, Inc., in connection with other, similar mass copyright suits of this type.

46. In the instant case, Plaintiff alleges that Defendant downloaded pornographic films, the names of which would cause any reasonable person to cringe. Plaintiff's intent is clearly to cause Defendant the emotional distress, shame and embarrassment that would naturally result from a list like this being associated with one's name, because by causing such emotional anguish, Plaintiff intends to motivate Defendant to pay a monetary settlement.

47. In the instant case, Plaintiff alleges that Defendant downloaded content from the internet illegally, which is offensive to Defendant's good name and reputation. Plaintiff's intent is clearly to cause Defendant the emotional distress, outrage, humiliation, and damage to one's reputation that would naturally result from such an allegation, because by causing such emotional anguish, Plaintiff intends to motivate Defendant to pay a monetary settlement.

48. The Defendant has been damaged in his personal and professional life by the conduct of the Plaintiff.

WHEREFORE, the Defendant respectfully requests that the Court:

1. Find that these acts of Plaintiff amount to intentional infliction of emotional distress;

2. Granting Defendant damages in the amount of $1 million;

3. Granting the Defendant all fees and costs of suit;

4. For such other and further relief as the court may deem equitable and just.


## COUNT V

## FRAUD ON THE COPYRIGHT OFFICE

49. Defendant restates and realleges all of the allegations of the previous paragraphs as if more fully stated herein.

50. Upon information and belief, the Plaintiff is not the author of the films to which the Plaintiff claims a copyright in this matter and therefore the registration of the copyright of said films is not valid.

51. In these cases of mass copyright infringement litigation, shell corporations are created in order to buy and register the copyright for pornographic films solely for the purpose of bringing such litigations as this one. The connection of at least one principal in this matter, Anthony Palmer, with another such mass litigation plaintiff (Patrick Collins, Inc.) suggests that this is the case herein.

52. In the instant case, the copyrights which Plaintiff claims were all allegedly registered within two months of the dates of alleged infringement (See Plaintiff's Exhibit C). All of the copyrights Plaintiff claims were allegedly registered in the month of November, 2011. All of the alleged acts of infringement, for all three defendants, are dated in December of 2011 and two dates in January of 2012.

53. This short span of time between the Plaintiff's apparent registration of the copyrights and the instant litigation makes it clear that the Plaintiff deliberately purchased and

registered these particular films with the sole intent of bringing legal action against the John Does it was gathering information about. Thus, the Plaintiff was not seeking to protect a valid copyright when it made application to the United States Copyright Office, but rather it was seeking to pervert the mechanisms of the Federal Government to its own uses.

54. Had the Copyright Office been made aware of this fraudulent intent, it might not have granted the Plaintiff's application for a copyright.

WHEREFORE, the Defendant respectfully requests that the Court:

1. Issue a declaratory judgment that these acts of Plaintiff amount to fraud on the United States Copyright Office and invalidating Plaintiff's copyright on each and every film named in Plaintiff's Exhibits;

2. Granting the Defendant all fees and costs of suit;

3. For such other and further relief as the court may deem equitable and just.

### DEMAND FOR A JURY TRIAL

Defendant-Counterclaimant hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

Jeff Fantalis
Defendant *pro se*
818 Trail Ridge Drive
Louisville CO 80027
(303) 482-1211

Dated:        May 24, 2012

## CERTIFICATION OF SERVICE

I, Jeff Fantalis, hereby certify that on May 25, 2012, I caused this Answer and Counterclaim to be filed with the Clerk of the Court by U.S. Mail or FedEx, Overnight Delivery with Delivery Confirmation, at the following address:

Clerk's Office
Alfred A. Arraj United States Courthouse
Room A-105
901 19th Street
Denver, Colorado 80294-3589

On the same date, I served a copy of this Answer and Counterclaim with Summons upon Plaintiff by mailing to Plaintiff's attorney of record, by U.S. Mail, Return Receipt Requested, at the following address:

Jason A. Kotzker
Kotzker Law Group
9609 S. University Blvd. #632134
Highlands Ranch CO 80163

On the same date, I served a copy of this Answer and Counterclaim with Summons upon Defendant Bruce Dunn by mailing to Defendant's attorney who consented in writing to receive such service, by U.S. Mail, Return Receipt Requested, at the following address:

Mr. Bruce Dunn
11441 E. Adriatic Place
Aurora, CO 80014

On the same date, I served a copy of this Answer and Counterclaim with Summons upon Defendant Stephen Deus by mailing to Defendant's attorney who consented in writing to receive such service, by U.S. Mail, Return Receipt Requested, at the following address:

Gordon M. Hadfield, Esq., Ph.D.
The Law Office of Erik G. Fischer, P.C.
125 South Howes, Suite 900
Fort Collins, CO 80522

_____
Jeff Fantalis
Defendant *pro se*

Dated:        May 25, 2012