IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:12-cv-00886-MSK-MEH

MALIBU MEDIA, LLC,

      Plaintiff,

v.

JEFF FANTALIS, BRUCE DUNN, and
STEPHEN DEUS,

      Defendants

_____/

### PLAINTIFF'S MOTION TO DISMISS DEFENDANT/COUNTER-PLAINTIFF JEFF FANTALIS'S COUNTERCLAIM

Plaintiff, Malibu Media, LLC, pursuant to Fed. R. Civ. P. 12(b)(6), moves for the entry of an order dismissing the Counterclaim filed by Defendant/Counter-Plaintiff, Jeff Fantalis, and states:

**I. INTRODUCTION**

Defendant/Counter-Plaintiff's Counterclaim is an attempt to avoid liability for the copyright infringement alleged in Plaintiff's Complaint through the assertion of baseless and sanctionable claims.[1] Instead of owning up to his responsibility for copyright infringement, or asserting valid defenses thereto, Defendant/Counter-Plaintiff has instead chosen to waste judicial resources through the assertion of wholly meritless claims and ridiculous demands for "damages in the amount of $1 million." As set forth below, Defendant/Counter-Plaintiff's Counterclaim fails to state a claim upon which relief can be granted and should be dismissed.

---

[1] Plaintiff has served Defendant/Counter-Plaintiff with a motion for Rule 11 sanctions that will become ripe on July 19, 2012.

1

## II. MEMORANDUM OF LAW

### A. <u>Defendant/Counter-Plaintiff Fails to State a Claim for Abuse of Process</u>

Defendant/Counter-Plaintiff's fails to allege an improper use of process or a "collateral result" that would not be available through the normal operation of copyright claim. Therefore, he does not satisfy the requirements to allege an abuse of process claim.

To state a claim for abuse of process, Defendant/Counter-Plaintiff must show: "(i) that the [Defendant] invoked a judicial process; (ii) that [it] did so with an ulterior purpose; (iii) that [its] use of the process was in a manner that was inconsistent with its proper use; and (iv) that the [Defendant/Counter-Plaintiff] suffered damage as a result." *Tara Woods Ltd. Partnership v. Fannie Mae*, 731 F.Supp.2d 1103, 1122 (D. Colo. 2010), *citing Moore v. Western Forge Corp.*, 192 P.3d 427, 438 (Colo. App. 2007). Abuse of process lies where a party invokes legal proceedings not for their intended purpose, "<u>but in an effort to obtain collateral results that would not be available by the normal operation of such proceedings</u>." *Id.*, *citing James H. Moore & Assocs. Realty, Inc. v. Arrowhead at Vail*, 892 P.2d 367, 373 (Colo. App. 1994), *which in turn cites* Restatement, 2d Torts, § 682, comment b (no claim lies "when the process is used for the purpose for which it is intended, [even though] there is an incidental motive of spite or an ulterior purpose") (emphasis added). For example, "a party engages in abuse of process when he files liens against his adversary, not because the filer claims an interest in the property, but to compel the adversary to concede a child custody proceeding." *Id.* (citations omitted).

Defendant/Counter-Plaintiff fails to allege the any such collateral results here that would not be available by the normal operation of a copyright infringement suit. And, even if there were an incidental motive of spite or an ulterior purpose—and there is none—Plaintiff is using process for the purpose for which it is intended, i.e., to remedy the copyright infringement committed by Defendant/Counter-Plaintiff. Indeed, Defendant/Counter-Plaintiff's "litany of

evils" paraded in his counterclaim is nothing more than a description of a carefully designed litigation strategy to ferret out the identities of infringers (*see* Counterclaim, at ¶ 20), make a demand upon them based on their infringement (*id.*, at ¶ 22), and to bring legal actions against them if a settlement cannot be reached (*id.*, at ¶ 23).

Plaintiff's contacts with Defendant/Counter-Plaintiff to discuss settlement are also an exercise of its Constitutionally-protected right to assert pre-suit settlement demands. *See, e.g., Sosa v. DirecTV, Inc.*, 437 F.3d 923, 931 (9th Cir. 2006) (holding that both pre-litigation settlement discussions and discussion during a suit between private parties are afforded protection under the Petition Clause of the First Amendment).

Here, all of the purposes conceded by Defendant/Counter-Plaintiff are bona fide reasons for a copyright holder to invoke remedies for infringement. Although the Counterclaim also alleges nebulous ulterior motives of intimidation, harassment or "extortion" (*id.*, at ¶¶ 25-26), the presence of an ulterior motive does not give rise to a cause of action where process is otherwise invoked for its normal purpose. *James H. Moore*, 892 P.2d at 373. Because Plaintiff invoked the mechanism of a copyright infringement action to remedy Defendant/Counter-Plaintiff's infringement, and because this is the intended function of the copyright laws, no cognizable abuse of process claim is stated. *Id*. Defendant/Counter-Plaintiff's claim for abuse of process, therefore, should be dismissed.

### B. Defendant/Counter-Plaintiff Fails to State a Claim for Invasion of Privacy

Defendant/Counter-Plaintiff's claim for invasion of privacy fails because he lacks any cognizable expectation of privacy that would outweigh Plaintiff's rights to protect its intellectual property.

Defendant/Counter-Plaintiff alleges that Plaintiff "intentionally intruded upon [Defendant/Counter-Plaintiff's] solitude, seclusion and private affairs by forcing Qwest/Century

Link to disclose [Defendant/Counter-Plaintiff's] identifying information" through the issuance of a subpoena. Counterclaim, at ¶ 30. Defendant/Counter-Plaintiff then concedes in its allegations that Plaintiff "utilized [Defendant/Counter-Plaintiff's identifying information] to attempt to connect [Defendant/Counter-Plaintiff's] IP address to actions that, if true, would be illegal." *Id.*, at ¶ 31 (emphasis added).

Courts have consistently held that "Internet subscribers do not have a reasonable expectation of privacy in their subscriber information—including name, address, phone number, and email address—as they have already conveyed such information to their ISPs." *First Time Videos, LLC v. Does 1-500*, 276 F.R.D. 241, 247 (N.D. Ill. 2011), *citing Achte/Neunte Boll Kino Beteiligungs Gmbh & Co. v. Does 1–4,577*, 736 F.Supp.2d 212, 216 (D.D.C. 2010). As stated in the recent case of *Raw Films, Ltd. v. John Does 1-15*, 2012 WL 1019067 (E.D. Pa. 2012):

> [C]ourts analyzing the expectation of privacy possessed by internet users engaging in online file-sharing have concluded that such expectation is at most minimal because those individuals have already voluntarily given up certain information by engaging in that behavior. A Doe defendant who has allegedly used the internet to unlawfully download and disseminate copyrighted material does not have a significant expectation of privacy. *Accord In re Verizon Internet Servs., Inc.*, 257 F.Supp.2d 244, 267 (D.D.C. 2003) (engaging in peer-to-peer file-sharing is akin to "essentially opening up the computer to the world").

*Raw Films*, 2012 WL 1019067, at *8. Even if Defendant/Counter-Plaintiff retained a reasonable expectation of privacy in his subscriber information, that interest "is substantially outweighed by the need to disclose it so that [Plaintiff] may proceed with bringing… claims of copyright infringement that cannot be advanced by other means." *Id.*

Plaintiff has a strong, legitimate interest in protecting its copyrights. Defendants here are copyright infringers that have no legitimate expectation of privacy in the subscriber information they provided to the ISPs, much less in distributing the copyrighted works in question without

permission. *See Interscope Records v. Does 1-14*, 558 F.Supp.2d 1176, 1178 (D. Kan. 2008) (a person using the Internet to distribute or download copyrighted music without authorization is not entitled to have their identity protected from disclosure under the First Amendment); *Guest v. Leis*, 255 F.3d 325, 336 (6th Cir. 2001) ("computer users do not have a legitimate expectation of privacy in their subscriber information because they have conveyed it to another person—the system operator"); *and Sony Music Entertainment, Inc. v. Does 1–40*, 326 F.Supp.2d 556, 566 (S.D.N.Y. 2004) ("defendants have little expectation of privacy in downloading and distributing copyrighted songs without permission.").

Therefore, lacking any expectation of privacy in his subscriber information that outweighs Plaintiff's rights, e.g., its right under the Petition Clause of the First Amendment to ascertain the identity of the Defendants in this case, Defendant/Counter-Plaintiff's claim for invasion of privacy fails.

### C. Defendant/Counter-Plaintiff Fails to State a Claim for Defamation

Defendant/Counter-Plaintiff's embarrassment of being associated with allegations of infringing pornographic works do not give rise to liability for defamation, and such allegations are privileged as a matter of law because they have been made during the course of judicial proceedings. *See, e.g., Walters v. Linhof*, 559 F.Supp. 1231, 1237 (D. Colo. 1983) (holding that "statements made during judicial proceedings are absolutely immune" from liability for defamation).

Defendant/Counter-Plaintiff alleges that by filing its Complaint in this matter, "Plaintiff has made false and defamatory statements about [Defendant/Counter-Plaintiff], including…allegations that [Defendant/Counter-Plaintiff] has illegally downloaded movies that are protected by copyright, and that [Defendant/Counter-Plaintiff] has downloaded pornographic movies." Counterclaim, at ¶ 37. Defendant/Counter-Plaintiff's potential embarrassment about

allegations concerning his infringing conduct does not, however, make Plaintiff's allegations defamatory or require any special protections from this Court.

For example, in similar cases involving Doe defendants' attempts to proceed anonymously, courts have held that "[t]he potential embarrassment…of being associated with allegations of infringing hardcore pornography does not constitute an exceptional circumstance that would warrant allowing the defendants to proceed anonymously." *Liberty Media Holdings, LLC v. Swarm Sharing Hash File*, 2011 WL 5161453, at *7 (D. Mass. 2011); *accord Boy Racer, Inc. v. John Does 1-34*, 2012 WL 1535703, at *4 (S.D. Fla. 2012), *citing AF Holdings, LLC v. Does 1-162*, 2012 WL 488217, at *4 (S.D. Fla. 2012).

The defense of absolute privilege also immunizes Plaintiff from any purported liability for conduct that would otherwise be actionable because Plaintiff is acting in furtherance of an "interest of social importance," i.e., judicial proceedings to remedy copyright infringement, which are entitled to protection even at the expense of any alleged harm to Defendant/Counter-Plaintiff's reputation. *Walters*, 559 F.Supp. at 1237. *See also MacLarty v. Whiteford*, 496 P.2d 1071, 1072 (Colo. App. 1972) ("The general rule is that communications made in the course of judicial proceedings, even though they are made maliciously and with knowledge of their falsity, are absolutely privileged if they bear a reasonable relationship to the subject of inquiry."); *Swanson v. Bixler*, 750 F.2d 810, 814 (10th Cir. 1984) ("Even if false, statements that stepson was going to abscond with stepfather's assets were absolutely privileged where made during course of proceedings seeking conservatorship for stepfather and temporary restraining order…[.]"); *accord Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 335 F.3d 1161, 1166 (10th Cir. 2003) ("Oklahoma has long recognized the litigation privilege under which attorneys, parties, jurors, and witnesses are immune from defamation liability for statements

made in the course of judicial or quasi-judicial proceedings, so long as the statements are relevant to the proceeding.").

Accordingly, Defendant/Counter-Plaintiff's claim for defamation is both without merit and barred by the defense of absolute privilege, and should be dismissed by this Court.

### D. **Defendant/Counter-Plaintiff Fails to State a Claim for Intentional Infliction of Emotional Distress**

To establish a claim of extreme and outrageous conduct, or intentional infliction of emotional distress, Defendant/Counter-Plaintiff must allege that: "1) the defendant engaged in extreme and outrageous conduct; 2) recklessly or with the intent of causing the plaintiff severe emotional distress; and 3) which caused the plaintiff to suffer severe emotional distress." *LaBrecque v. L3 Communication Titan Corp.*, 2007 WL 1455850, at *4 (D. Colo. 2007). The level of outrageousness necessary to meet the first element is "extremely high." *Id.*, at *4-5, *citing Archer v. Farmer Bros. Co.*, 70 P.3d 495, 499 (Colo. App. 2002). "Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities are insufficient; only conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community, will suffice." *Id*.

Here, Defendant/Counter-Plaintiff alleges that Plaintiff's allegations of Defendant/Counter-Plaintiff's illegal downloading and copyright infringement are made with the intent to cause emotional distress in order to force settlement. Counterclaim, at ¶¶ 46-47. Plaintiff's filing of legitimate claims to remedy copyright infringement, however, clearly does not constitute "extreme and outrageous conduct." *See Swanson v. Bixler*, 750 F.2d 810, 814-15 (10th Cir. 1984) (upholding dismissal of claim for intentional infliction of emotional distress where plaintiff complained that judicial proceedings for a conservatorship and injunction against

him to prevent him from removing step-father's assets constituted "outrageous conduct"). If Defendant/Counter-Plaintiff's claims were allowed to stand, it would effectively prohibit adult entertainment companies from enforcing their copyrights.

Lacking any merit on its face, Defendant/Counter-Plaintiff's claim for intentional infliction of emotional distress should thus be dismissed out of hand by this Court.

### E. Defendant/Counter-Plaintiff Fails to State a Claim for Fraud on the Copyright Office

Defendant/Counter-Plaintiff's claim for fraud on the copyright office should be dismissed outright as a baseless attempt to impute an improper motive on Plaintiff's protection of its copyrights. In this claim, Defendant/Counter-Plaintiff makes the confounding allegation that Plaintiff's registration of the copyrights at issue, and its initiation of legal proceedings against the infringers thereof, are somehow improper and meant to "pervert the mechanisms of the Federal Government to its own uses." Counterclaim, at ¶¶ 52-53. Specifically, Defendant/Counter-Plaintiff alleges that the "short span of time" between Plaintiff's registration of the copyrights and its initiation of the infringement action purportedly suggest a "fraudulent intent" that should have caused the Copyright Office to deny registration. *Id.*, at ¶¶ 53-54.

Defendant/Counter-Plaintiff's claim demonstrates that he is unaware of the basic requirements and special provisions of applicable copyright laws. First, the Copyright Act not only provides for, but <u>requires</u> registration in order to initiate a claim for copyright infringement. *See, e.g.*, 17 U.S.C. 411(a) ("…no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."). Accordingly, no improper motive should be ascribed to registration.

Second, Defendant/Counter-Plaintiff's claim that the timing of registration before the initiation of litigation suggests a "fraudulent intent" ignores the fact that the Copyright Office provides "special handling" procedures to expedite the processing of an application for copyright registration in cases where, such as here, there is a potential for future litigation. *See* 37 C.F.R. 201.15(a) (Special handling of pending claims requiring expedited processing for purposes of litigation.) ("Special Handling is the expedited processing of an application for registration of a claim to copyright or for the recordation of a document pertaining to copyright. It is granted in cases where a compelling need for the service exists due to pending or prospective litigation…[.]"). Defendant/Counter-Plaintiff's claim of a "fraudulent intent" with respect to the timing of Plaintiff's registrations thus lacks any merit.

Finally, Plaintiff's suit is clearly an exercise of its protected right to enforce its copyrights and deter future infringement. During her time as Register of Copyright, Mary Beth Peters explained the rights of copyright holders in peer-to-peer infringement actions to the Senate Judiciary Committee. "The law is unambiguous. Using peer-to-peer networks to copy or distribute copyrighted works without permission is infringement and copyright owners have every right to invoke the power of the courts to combat such activity. Every court that has addressed the issue has agreed that this activity is infringement."[2] Ms. Peters explained that these types of litigation suits are necessary to deter infringement:

> [F]or some users of peer-to-peer technology, even knowledge that what they are doing is illegal will not be a sufficient disincentive to engage in such conduct. But whether or not these infringers know or care that it is against the law, the knowledge that such conduct may lead to expensive and burdensome litigation and a potentially large judgment should have a healthy deterrent effect. While we would like to think that everyone obeys the law simply because it

---

[2] *Pornography, Technology, and Process: Problems and Solutions on Peer-to-Peer Networks Statement of Marybeth Peters The Register of Copyrights before the Committee on the Judiciary*, 108th Cong. (2003), *available at* http://www.copyright.gov/docs/regstat090903.html

9

> is the law and out of a sense of obligation, we also know that laws without penalties may be widely ignored. For many people, the best form of education about copyright in the internet world is the threat of litigation. In short, if you break the law, you should be prepared to accept the consequences. <u>Copyright owners have every right to enforce their rights in court, whether they are taking action against providers of peer-to-peer services designed to profit from copyright infringement or against the persons engaging in individual acts of infringement using such services</u>.

*Id*. (emphasis added). "Copyright owners have every right to enforce their rights in court…against the person engaging in individual acts of infringement using such (peer-to-peer) services." *Id*.

Defendant/Counter-Plaintiff's allegations concerning a "perversion" of federal laws are thus baseless, and his claim for fraud on the Copyright Office should be dismissed.

### III. CONCLUSION

For the foregoing reasons, Defendant/Counter-Plaintiff's Counterclaim should be dismissed.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter an Order:

(A) Dismissing Defendant/Counter-Plaintiff's Counterclaim against Plaintiff in its entirety;

(B) Awarding sanctions against Defendant/Counter-Plaintiff based on his presentation to this Court of claims and other legal contentions unwarranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law, in violation of Fed. R. Civ. P. 11(b)(2); and

(C) For such other and further relief as this Court deems just and proper.

Dated: June 25, 2012

Respectfully submitted,

By: /s/*Jason Kotzker*
Jason Kotzker
jason@klgip.com
KOTZKER LAW GROUP
9609 S. University Blvd. #632134
Highlands Ranch, CO 80163
Phone: 303-875-5386
*Attorney for Plaintiff*

### **CERTIFICATE OF SERVICE**

I hereby certify that on June 25, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By:  /s/ *Jason Kotzker*