IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

MALIBU MEDIA, LLC,

    Plaintiff,

v.

Case No.: 1:12-cv-00886-REB-MEH

JEFF FANTALIS and BRUCE DUNN,

    Defendants
_____/

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT**

Plaintiff, MALIBU MEDIA, LLC ("Plaintiff"), by and through undersigned counsel, and pursuant to Fed.R.Civ.P. 55, hereby files its Memorandum of Points and Authorities in Support of its Motion for Entry of Default Judgment ("Motion") filed contemporaneously herewith against Defendant, BRUCE DUNN ("Defendant"), and in support thereof, states:

**I. SUMMARY**

Plaintiff seeks entry of default judgment against Defendant for failure to plead or otherwise defend against Plaintiff's Complaint for direct and contributory copyright infringement of Plaintiff's 13 motion picture works listed in Exhibit A attached hereto (the "Works") using the internet and the BitTorrent protocol. Defendant, by reason of default, is taken to have conceded the truth of the factual allegations in the Complaint. Plaintiff, therefore, now seeks entry of default judgment by the Court awarding (a) statutory damages under the Copyright Act, (b) the costs and reasonable attorneys'

fees incurred by Plaintiff in this action, and (c) injunctive relief to prevent further infringement by Defendant.

## II. PROCEDURAL BACKGROUND

1. On April 4th, 2012, Plaintiff filed the Complaint in this action. [ECF No. 1]

2. In a previous case entitled Malibu Media, LLC v. John Does 1-30, 1:12-cv-00402-WYD, (D.Colo. Feb. 16th, 2012), Plaintiff filed a Motion for Leave to Take Discovery Prior to a Rule 26(f) Conference requesting the Court's authorization to serve discovery on the Doe Defendants' Internet Service Providers ("ISPs") in order to learn the Defendants' true identities. The Court granted this motion on February 21st, 2012. [ECF No. 10].

3. Pursuant to the issuance of third party subpoenas, Defendant's ISP disclosed Defendant's true identity to Plaintiff. Decl. of Jason Kotzker, Esq, ¶ 4. Plaintiff served Defendant with a Summons and Complaint on May 4th, 2012. *See* Affidavit of Service [ECF No. 16].

4. Defendant failed to plead or otherwise defend against Plaintiff's Complaint.

5. On June 1st, 2012, Plaintiff filed and served a request that the Clerk of the Court enter Defendant's default pursuant to Fed.R.Civ.P. 55(a). [ECF No. 19].

6. Default was entered as to Defendant on June 14th, 2012. [ECF No. 24].

7. Defendant is not a minor, incompetent person or in active military service. *See* Affidavit of Service [ECF No. 16].

## III. DEFAULT JUDGMENT SHOULD BE ENTERED AGAINST DEFENDANT

### A. Entry of Default Judgment is Factually and Legally Appropriate

#### 1. Defendant's default concedes the truth of the facts alleged in the Complaint.

By defaulting, Defendant admitted the truth of the allegations of the Complaint. *See, e.g., Sony Music Entm't Inc. v. Elias*, 2004 WL 141959, at *3 (C.D. Cal. 2004) (action against user of on-line media distribution system; "[s]ince this Court has found that Defendant is in default, the factual allegations in Plaintiffs' complaint are deemed admitted."); *Ortiz-Gonzalez v. Fonovisa*, 277 F.3d 59, 62-63 (1st Cir. 2002) ("A defaulting party is taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which damages will be calculated.") (internal quotation marks and citation omitted); *Dundee Cement Co. v. Howard Pipe & Concrete Prod., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983) ("Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true."); *Song Music Entm't, Inc. v. Global Arts Prod.*, 45 F. Supp. 2d 1345, 1347 (S.D. Fla. 1999) (in copyright infringement case, default establishes liability).

#### 2. Plaintiff's allegations are factually and legally sufficient to support its claims of copyright infringement.

Plaintiff's allegations in the Complaint support its copyright infringement claims. It is well-settled that "to prevail on a claim of copyright infringement, the plaintiff must demonstrate both (1) the ownership of a valid copyright and (2) infringement of the copyright by the defendant." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.2d 101, 108-09 (2d Cir. 2001). To prevail on a claim of copyright infringement, Plaintiff must

3

demonstrate that Defendant, with knowledge of the infringing activity, induced, caused or materially contributed to the infringing conduct of another.  *Costar Group, Inc. v. Loopnet, Inc.*, 164 F. Supp.2d 688, 696 (D. Md. 2001).

  a. <u>Plaintiff Has Demonstrated Ownership of a Valid Copyright</u>

Plaintiff registered 13 of the 107 movies contained in the siterip with the United Sates Copyright Office, <u>see</u> Exhibit A attached hereto.  Registration constitutes *prima facie* evidence of Plaintiff's ownership of a valid copyright.  *See* 17 U.S.C. 410(c); *Arthur Rutenberg Homes, Inc. v. Berger*, 910 F. Supp. 603, 607 (M.D. Fla. 1995) "Copyright registration certificates constitute *prima facie* evidence of the facts stated therein, 17 U.S.C. 410(c), and establish proof of plaintiffs' ownership of valid copyrights . . .") (citation omitted).  Additionally, Plaintiff alleged that it is the owner of the copyright. Complaint, ¶¶ 15.  Defendant admitted this allegation by failing to plead or otherwise defend against Plaintiff's Complaint.

Plaintiff, therefore, has met the first element.

  b. <u>Plaintiff Has Demonstrated Direct Copyright Infringement by Defendant (Count I)</u>

As to the second element, Plaintiff alleged that it has actionable claims for direct and contributory copyright infringement against Defendant based on Defendant's unauthorized use of the "BitTorrent" protocol to illegally download, reproduce, distribute, perform and display Plaintiff's Works.  Specifically, Plaintiff's Complaint alleges that:

- Defendant installed a BitTorrent "Client" software program onto a computer to serve as the "interface during the process of uploading and downloading date using the BitTorrent protocol." Complaint, ¶¶ 20-22.

4

- Defendant visited a "torrent site," a website that indexes torrent files that are currently being made available for copying and distribution by persons using the BitTorrent protocol, to "upload and download Plaintiff's copyrighted Work." *Id.*, at ¶¶ 31-32.

- Using the BitTorrent protocol, Defendant then formed part of a BitTorrent "swarm" and "directly interacted and communicated with other members of that swarm through digital handshakes, the passing along of computer instructions, uploading and downloading, and by other types of transmissions." *Id.*, at ¶ 37.

- Thus forming part of a BitTorrent "swarm," Defendant participated in the process by which "one initial seeder can create a torrent that breaks a movie up into hundreds or thousands of pieces saved in the form of a computer file, like the Works here, upload the torrent onto a torrent site, and deliver a different piece of the copyrighted Work to each of the peers" in the swarm. *Id.*, at ¶ 38. The recipient peers "then automatically begin delivering the piece they just received to the other peers in the same swarm." *Id.*

- Once Defendant had downloaded the full file of the copyrighted Work, "the BitTorrent Client reassemble[d] the pieces and [Defendant was] able to view the movie." *Id.*, at ¶ 39. Also, once Defendant had downloaded the full file, Defendant became "an additional seed" by continuing to distribute the torrent file, here the copyrighted Work. *Id.*

- By using the BitTorrent protocol, a BitTorrent Client and the processes described above, Defendant willfully and without authorization copied the constituent elements of the registered Works that are original, and violated Plaintiff's exclusive rights to reproduce, redistribute, perform and display the copyrighted Work. *Id.*, at Count I, ¶¶ 49-55.

Defendant's infringement acts were committed with knowledge and willfulness.

The very nature of the torrent platform evidences Defendant's intent to infringe

5

copyrights. First, and more obvious, getting a film for free, when a person would otherwise have to pay for it, evidences intent to bypass legitimate means to obtain that film, Accordingly, such conduct shows knowledge of copyright infringement. See Arista Records, Inc. v. Becker Enterprises, Inc., 298 F. Supp. 2d 1310, 1313 (S.D.FL.2003) (stating that the sales price is good evidence that a defendant knew he was infringing copyrights when that sales price is well below the average retail price).

Second, it is clear that downloading the particular torrent software is a willful act, in and of itself, particularly as that software's sole purpose is to share unlicensed content. In the case of the torrent software, a substantial amount of technical configuration is required.

Third, it has been shown that the use of the torrent platform is primarily for the infringement of copyrights. As stated in a January 2010 study by a Princeton Senior Sauhard Sahi (under the supervision of Princeton Professor Ed Felton), about 99% of all files in BitTorrent were infringing copyrights (10 of the 1021 files were found to be likely non-infringing), with 100% of movie and television files found to be infringed content. See attached hereto as Exhibit B a true a correct copy of the article entitled "99% of BitTorrent files pirated" by Goerge Ou, posted on http://www.digitalsociety.org/2010/01/princeton-study-99-of-bittorrent-files-pirated/.

The International Federation for Phonographic Industry (IFPI), issued a thought provoking report last year entitled "Music, how, when and where you want it," attached as Exhibit C. On page 18, the IFPI provides statistics establishing that file sharers' primary motivation for their theft is the "lure of free:"

6

A separate body of research helps explain why illegal file-sharing is having this impact on consumer behavior, confirming the main driver of piracy to be not better choice or quality, but the "lure of free". Researchers GFK found that "because it's free" was the main answer given among over 400 illegal filesharers in research unveiled in Sweden in July 2009. A study by Entertainment Media Research in the UK found that 71 per cent of those who admitted they increased their file-sharing activity in 2008 did so "because it's free". In Norway, research by Norstat in 2009 also found the most cited reason for illegal downloading from P2P services was "because it's free". Further studies came to broadly the same conclusion in Japan and Belgium in 2009.

Plaintiff has further alleged that Defendant formed part of a BitTorrent "swarm" infringing the copyrighted Works through the results of Plaintiff's forensic investigation. Specifically, Plaintiff has alleged that:

- Plaintiff retained IPP, Limited ("IPP"), a forensic investigative services firm, to identify the Internet Protocol ("IP") addresses being used by persons using the BitTorrent protocol to reproduce, distribute, display or perform Plaintiff's copyrighted Work. Complaint, ¶ 40.

- IPP used forensic software and related technology enabling the scanning of peer-to-peer networks for the presence of infringing transactions to isolate transactions and the IP addresses being used on the BitTorrent network to infringe Plaintiff's copyrighted Works. Complaint, ¶¶ 41-46.

- The results of IPP's investigation established that Defendant's IP address was part of a "swarm" of peers that were infringing on Plaintiff's Copyrighted work. Complaint, ¶¶ 42-46.

- IPP's investigative work thus provided Plaintiff with "the IP address, plus the date and time of the detected and documented infringing activity," which was subsequently used to establish Defendant's identity through its ISP. Complaint, ¶¶ 43-44.

7

By defaulting, Defendant has conceded the truth of the foregoing allegations. *Sony Music Entm't Inc.*, 2004 WL 141959, at *3.

Courts have held that using file-sharing software and protocols, such as BitTorrent, to download copyrighted works and reproduce, distribute, display or perform them without permission of the copyright holder constitutes copyright infringement. *See, e.g., Sony BMG Music Entm't v. Tenenbaum*, 660 F.3d 487, 489-96, 497-501 (1st Cir. 2011) (finding copyright infringement where file-sharing software was used to download and distribute media); *Donkeyball Movie, LLC v. Does 1-171*, 2011 WL 1807452, *1-4 (D.D.C. 2011) (upholding expedited discovery of the nature used in this case where defendants used the BitTorrent protocol to illegally distribute plaintiff's motion picture); *Virgin Records America, Inc. v. Bagan*, 2009 WL 2170153, at *3 (D.N.J. 2009) (holding that "using P2P network software to download copyrighted recordings and distribute them over the network without permission of the copyright holder constitutes copyright infringement").

By downloading the Works and reproducing, distributing, displaying or performing it using the BitTorrent protocol, Defendant has infringed Plaintiffs' copyright on these Works. *See* 17 U.S.C. § 106. Based upon these admitted allegations, Plaintiff has established grounds to impose liability on Defendant for direct copyright infringement.

### c. Plaintiff Has Demonstrated Contributory Copyright Infringement by Defendant (Count II)

Plaintiff has demonstrated that Defendant, with knowledge of the infringement of Plaintiff's Works, induced, caused or materially contributed to the infringing conduct of other BitTorrent users. Specifically, Plaintiff has alleged that:

> By participating in the BitTorrent swarm with the other Defendants, Defendant also willfully and without authorization induced, caused or materially contributed to the infringing conduct of each other Defendant, as each Defendant knew or should have known that other BitTorrent users in a swarm with it "were directly infringing Plaintiff's copyrighted Works by copying constituent elements of the registered Works that are original." Complaint, at Count II, ¶¶ 56-65.

By defaulting, Defendant has further conceded the truth of these allegations. *Sony Music Entm't Inc.*, 2004 WL 141959, at *3. Plaintiff, therefore, has established its claim of contributory copyright infringement against Defendant. *Costar Group, Inc. v. Loopnet, Inc.*, 164 F. Supp.2d 688, 696 (D. Md. 2001).

### B. Statutory Damages Should be Awarded to Plaintiff

Plaintiff hereby elects to recover statutory damages against Defendant as provided by 17 U.S.C. § 504.[1]  Section 504(a) of the Copyright Act provides that "an infringer of copyright is liable for . . . (2) statutory damages, as provided by subsection (c)." 17 U.S.C. § 504(a)(2). For unintentional infringement, 17 U.S.C. § 504(c) provides that "the copyright owner may . . . recover . . . an award of statutory damages for all

---

[1] Plaintiff need not prove actual damages to be entitled to an award of statutory damages, and may make an election of statutory damages "regardless of the adequacy of the evidence offered as to [its] actual damages and the amount of [D]efendant's profits." *Columbia Pictures Television, Inc., v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001), *cert. denied*, 534 U.S. 1127, 112 S.Ct. 1063 (2002).

infringements involved in the action, with respect to any one work . . . a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). This is not unintentional infringement, however, and pursuant to 17 U.S.C. § 504(c)(2), the Court upon a finding of willful infringement may "increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2). Here, Plaintiff pled that Defendant's infringement was committed willfully. Complaint, ¶¶ 54, 64. Therefore, a statutory damages award up to $150,000 would be appropriate.

Significantly, legislative history demonstrates that Congress, recognizing the likelihood of widespread infringement through the internet, specifically amended the Copyright Act through the Digital Theft Deterrence Act of 1999 to increase the penalties for copyright infringement:

> By the turn of the century the Internet is projected to have more than 200 million users, and the development of new technology will create additional incentive for copyright thieves to steal protected works. The advent of digital video discs, for example, will enable individuals to store far more material than on conventional discs and, at the same time, produce perfect secondhand copies . . . <u>Many computer users are either ignorant that copyright laws apply to Internet activity, or they simply believe that they will not be caught or prosecuted for their conduct</u>. Also, many infringers do not consider the current copyright infringement penalties a real threat and continue infringing, even after a copyright owner puts them on notice that their actions constitute infringement and that they should stop the activity or face legal action. In light of this disturbing trend, <u>it is manifest that Congress respond appropriately with updated penalties to dissuade such conduct</u>. H.R. 1761 increases copyright penalties to have a significant deterrent effect on copyright infringement.

H.R. Rep. No. 106-216, at 3 (1999) (Emphasis added).

Here, despite the fact that the Defendant infringed 13 copyrighted Works willfully, Plaintiff only seeks an award of $30,000 in statutory damages. This amount is reasonable when considering that Plaintiff's actual damages far exceed this sum. To explain, Defendant materially aided each of the other participants in the BitTorrent swarm of infringers. This swarm contained thousands of peers and continues to grow. Plaintiff's actual damages are the lost sales of its DVDs to those thousands of infringers. In the aggregate, these lost sales far exceed $30,000.[2]

Courts routinely award statutory damages in an amount equal to $30,000 for intentional online copyright infringement per work on default judgment. *See, e.g., Achte/Neunte Boll King Beteiligungs GMBH & Co KG v. Palmer,* 2011 WL 4632597, at *1-2 (M.D. Fla. 2011) (on default judgment, awarding $30,000 statutory damages for online infringement); *Liberty Media Holdings, Inc. v. Quynn Alan Phillips*, *Everette v. Astrue*, No. 3:11-cv-00029-JAH-JMA, ECF No. 12 (S.D. Cal. June 6, 2011) (same); *Getaped.com, Inc. v Cangemi*, 188 F. Supp. 2d 398, 402-03 (S.D.N.Y. 2002) (same).

Here, the Court should thus award statutory damages of $30,000 to Plaintiff because said amount is reasonable and appropriate based on Defendant's multiple willful infringements, and the legislative intent behind the Digital Theft Deterrence Act of 1999.

### C. Injunctive Relief Should be Awarded to Plaintiff

---

[2] Because Plaintiff here seeks only statutory damages within the range requested in the Complaint, no evidentiary hearing is necessary. *See, e.g., Ortiz-Gonzalez v. Fonovisa*, 277 F.3d 59, 63-64 (D.P.R. 2002) (no hearing necessary for determination of award of statutory damages; *D.C. Comics Inc. v. Mini Gift Shop*, 912 F.2d 29, 35, 37 (2d Cir. 1990) (same); *Fustock v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989) ("While it is true . . . that the damages in this case were neither liquidated nor capable of mathematical calculation, it was not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in a default judgment.").

Permanent injunctive relief should be awarded to Plaintiff. Plaintiff seeks an injunction:

> (A) Permanently [enjoining] each Defendant and all other persons who are in active concert or participation with each Defendant from continuing to infringe Plaintiff's copyrighted Work;
>
> (B) Order[ing] that each Defendant delete and permanently remove the torrent file relating to Plaintiff's copyrighted Work from each of the computers under each such Defendant's possession, custody or control; [and]
>
> (C) Order[ing] that each Defendant delete and permanently remove the copy of the Work each Defendant has on the computers under Defendant's possession, custody or control . . .

Complaint, at pp. 9 ¶¶ (A)-(C) and 10, 11 ¶¶ (A)-(C).

Permanent injunctive relief to prevent or restrain copyright infringement is authorized under the Copyright Act. *See* 17 U.S.C. § 502(a) ("Any court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."). The Copyright Act further provides that "the court may order the destruction . . . of all copies . . . found to have been made or used in violation of the copyright owner's exclusive rights . . . [.]" 17 U.S.C. § 503(b).

A plaintiff seeking a permanent injunction "must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the

balance of hardships between plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006). Here, Plaintiff has plainly demonstrated each of these factors.

Addressing the first and second factors, Plaintiff has demonstrated that absent an injunction, Defendant will continue to cause Plaintiff irreparable injury that cannot fully be compensated or measured in money. Specifically, Plaintiff has established that Defendant's conduct has exposed the Works to "viral" infringement using the BitTorrent protocol, in which users in a BitTorrent "swarm" simultaneously upload and download the Works between and among innumerable other users. Complaint, ¶¶ 33-39. By virtue of the workings of the BitTorrent protocol, a "seeder" of the copyrighted Work distributes the whole, or portions of, the Work to other recipient peer users, who in turn deliver the whole or portion of the Work to other users in the "swarm." *Id*. Thus, absent injunctive relief to force the deletion of each torrent file or copy of the Works from Defendant's computers (and from the computers of those persons in utilizing the BitTorrent protocol in active concert or participation with Defendant), infringement of the Works can continue unabated in exponential fashion. *Id*. Monetary damages, therefore, are inadequate to compensate Plaintiff for such irreparable injury, as Defendant continues, and will continue, to harm Plaintiff on a daily basis. *See Microsoft Corp. v. Big Boy Distribution LLC*, 589 F.Supp.2d 1308, 1321 (S.D. Fla. 2008) ("Generally, a showing of copyright infringement liability and threat of future violations is sufficient to warrant entry of a permanent injunction.").

Considering the balance of hardships between Plaintiff and Defendant, "any injury to [Defendant] caused by the . . . injunction would be a result of [Defendant] ceasing the allegedly infringing conduct." *Medias & Co., Inc. v. Ty, Inc.*, 106 F.Supp.2d 1132, 1140 (D. Colo. 2000). Hence, "this merits little equitable consideration." *Id*. Consequently, the balance of hardships weighs in Plaintiff's favor.

Finally, Plaintiff's prevention of copyright infringement is in the public interest because it "preserv[es] the integrity of copyright laws which encourage individual effort and creativity by granting valuable enforceable rights." *DSC Communications Corp. v. DGI Technologies*, 898 F. Supp. 1183, 1196 (N.D. Tex. 1995).

Courts routinely issue injunctive relief as part of a default judgment where, as here, an online media distribution system was used to download and distribute copyrighted works without permission. *See, e.g., Warner Bros. Records, Inc., v. Novak*, 2007 WL 1381748, at *2-3 (D.N.J. 2007) (holding that a permanent injunction enjoining defendant from infringing on plaintiffs' copyrighted sound recordings "is appropriate and reasonable given [d]efendant's continuing infringement on [p]laintiff's sound recordings, and [d]efendant's failure to respond"); *Axact (PVT), Ltd. v. Student Network Resources, Inc.*, 2008 WL 4754907, at *3 (D.N.J. 2008) (granting injunctive relief to defendants on default judgment of copyright infringement claims of academic works and term papers).

Plaintiff, therefore, has demonstrated that it has suffered irreparable harm, and that remedies at law are inadequate. A permanent injunction is appropriate as it will cause no harm to Defendant, and such relief will be in the public interest. Therefore, Court should thus grant Plaintiff the requested injunctive relief.

14

### D. Costs of Suit and Attorneys' Fees Should be Awarded to Plaintiff

Plaintiff is entitled to recovery of its costs of suit and attorneys' fees incurred in this action. Section 505 of the Copyright Act expressly authorizes recovery of "full costs by or against any party other than the United States or an officer thereof," and further provides for an "award [of] a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505.

Courts routinely award costs and attorneys' fees to prevailing plaintiffs on default judgment, and especially when the infringement is willful. *See, e.g., Axact (PVT), Ltd. v. Student Network Resources*, 2008 WL 4754907, at *3 (D.N.J. 2008) ("Indeed, it has often been held that attorney's fees are awarded to prevailing copyright plaintiffs 'generally' or 'ordinarily.'") (*citing Rural Telephone Service Co., Inc. v. Feist Pubs., Inc.*, 1992 WL 160890, at *3 (D. Kan. 1992); *A&N Music Corp. v. Venezia*, 733 F. Supp. 955, 958-59 (E.D. Pa. 1990) (awarding costs and attorneys' fees where defendant "knowingly infringed" upon plaintiff's copyrights, and "failed to appear before [the] court to offer an explanation for his conduct").

In this case, the declaration of Plaintiff's counsel states that Plaintiff has incurred $739.26 in costs and attorney's fees. *See* Decl. of Jason Kotzker, Esq. ¶ 9, 10. Defendant in this case was not acting innocently when infringing Plaintiff's copyrighted Works using the BitTorrent protocol. As established by Plaintiff, Defendant's infringements were committed "willfully" under the Copyright Act, and Defendant's failure to respond to the Complaint further demonstrates an unwillingness to respect applicable law. Complaint, ¶¶ 54, 64.

15

Accordingly, Plaintiff should be allowed recovery of its costs and attorneys' fees incurred in this action.

## IV. CONCLUSION

Based on the foregoing, Plaintiff respectfully requests entry of a default judgment and in favor of Plaintiff and against Defendant, in the form of the Proposed Default Judgment and Permanent Injunction attached hereto.

**WHEREFORE**, Plaintiff, MALIBU MEDIA, LLC, respectfully requests that this Honorable Court enter a default judgment in favor of Plaintiff and against Defendant:

(A) Awarding Plaintiff statutory damages in the amount of $30,000 pursuant to 17 U.S.C. § 504(c)(1);

(B) Awarding Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505;

(C) Permanently enjoining Defendant from directly, contributorily or indirectly infringing Plaintiff's rights under federal or state law of Plaintiff's copyrighted works " (the "Works"), including, without limitation, by using the internet, BitTorrent or any other online media distribution system to reproduce (e.g., download) or distribute the Works, or to make the Works available for distribution to the public, except pursuant to a lawful license or with the express authority of Plaintiff;

(D) Ordering that Defendant destroy all copies of Plaintiff's Works that Defendant has downloaded onto any computer hard drive or server without Plaintiff's authorization, and shall destroy all copies of the Works transferred onto any physical medium or device in Defendant's possession, custody, or control; and

(E) Granting Plaintiff any other and further relief this Court deems just and proper.

Dated: July 17th, 2012.

Respectfully submitted,

By: /s/*Jason Kotzker*
Jason Kotzker
jason@klgip.com
KOTZKER LAW GROUP
9609 S. University Blvd. #632134
Highlands Ranch, CO 80163
Phone: 303-875-5386
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on July 17th, 2012 I electronically filed the foregoing document with the Clerk of the Court and all parties using CM/ECF, and that service was perfected on Defendant, BRUCE DUNN, at 11441 E. Adriatic Place, Aurora, CO 80014.

By: /s/*Jason Kotzker*
Jason Kotzker

17