**FILED**
UNITED STATES DISTRICT COURT
DENVER. COLORADO

SEP 0 5 2012

JEFFREY P. COLWELL
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:12-cv-00886 *MEH*

---

Malibu Media, LLC,

      Plaintiff,

v.

Jeff Fantalis and Bruce Dunn

      Defendants.

---

DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR A PROTECTIVE ORDER

Defendant Jeff Fantalis, by way of response to Plaintiff Malibu Media LLC's Motion for a Protective Order, says:

1. Defendant does not oppose the entry of a properly tailored and streamlined protective order that comports with the scope of Fed. R. Civ. P. 26. However, Defendant does object to Plaintiff's request for an all-encompassing protective order that will allow Plaintiff not to timely and fully produce anything in response to Defendant's reasonable discovery requests.

**FACTUAL AND PROCEDURAL BACKGROUND**

2. Plaintiff filed its Complaint in this matter on or about April 4, 2012. Defendant filed an Answer and Counterclaim on or about May 29, 2012. After Plaintiff filed a Motion to

1

Dismiss, Defendant filed the First Amended Answer and Counterclaim on or about July 16, 2012.

3. During a scheduling conference on or about June 22, 2012, the court instructed the parties to produce their Rule 26(a)(1) disclosures as follows: Plaintiff on July 6, 2012, and Defendant on July 13, 2012. Scheduling Order, July 17, 2012, para. 6(c), p. 3 (Docket 45).

4. Plaintiff submitted its Rule 26(a)(1) disclosure on or about July 6, 2012.  A copy of that disclosure is attached as **Exhibit A**.  That disclosure was entirely inadequate and insufficient under the Rules, and Defendant notified Plaintiff's attorney thereof in a letter dated July 10, 2012, attached as **Exhibit B**.  Plaintiff's response to that letter was a demand, via email, that Defendant consent to a protective order which is identical to the protective order Plaintiff now seeks from the court.  Due to the unreasonable scope of that request, Defendant did not agree to enter that order.

5. On or about July 17, 2012, Defendant and Plaintiff's counsel participated in a conference call with the court during which, among other things, Plaintiff's response to the R. 26(a) disclosure was discussed. The court stated that a protective order requires a balancing of interests and specifically noted that the identity of the parties in this matter is not confidential.

6. On or about August 2, 2012, Defendant served upon Plaintiff, through its counsel, Defendant's first set of interrogatories, first request for production of documents, and first request for admissions. Plaintiff's responses to those discovery documents are due on September 4, 2012.

7. On August 17, 2012, the Friday before another scheduled Monday conference call with the court, Plaintiff's attorney sent Defendant an email insisting once again that Defendant enter into a protective order, after which Plaintiff's attorney "will have" his client "prepare the information." See email attached as **Exhibit C**. The repeated use

2

of the word "will" made it clear that Plaintiff had yet to assemble any of the information despite the fact that the date for producing the documents was rapidly approaching. As the attached protective order was word-for-word the same as the previous one, and as Plaintiff was still clearly utilizing the protective order as an excuse to avoid producing relevant discovery, Defendant declined to sign the order.

8.  On August 20, 2012, the parties participated in another conference call with the Court.  Once again, the subject of Plaintiff's R. 26(a) disclosure was raised, and Defendant pointed out that, despite the court's specific instruction that the identity of Plaintiff's principals was not protected by confidentiality, Plaintiff still had not amended its disclosure.  The court once again specifically admonished Plaintiff's attorney that the identity of his client could not be concealed, stating that Plaintiff was going to have to put witnesses on the stand at trial. The court instructed Plaintiff's attorney to amend the R. 26(a) disclosure to include the name and address of Plaintiff's principal owners and granted Plaintiff's attorney's request to use the company's business address instead of a home address in order to address Plaintiff's security concerns.

9.  In further discussing discovery and a protective order, Plaintiff indicated that it would be filing a motion for a protective order.  The court specifically indicated on that call that any protective order would not be a blanket covering everything, because that would not indicate good faith.  On August 25, 2012, Plaintiff filed the motion which is before the court, which seeks a protective order with the identical language it has been seeking from Defendant throughout these proceedings, and seeking to cover the very types of items which the court has specifically indicated should not and may not be covered.

10. On August 29, 2012, Plaintiff's attorney provided Defendant with Plaintiff's amended R. 26(a)(1) disclosure, a copy of which is attached as **Exhibit D**.  The only difference

between this document and Plaintiff's first R. 26(a)(1) disclosure is the addition on the first page of two names and an address in Los Angeles, California. No other witnesses' names and addresses – most notably anyone from IPP, Ltd., the IP address harvesting company utilized by Plaintiff – were provided.

## LEGAL ARGUMENT

I.      *Defendant Does Not Oppose The Appropriate Use of Protective Orders*

11. The law governing the entry of a protective order is clear.  Fed. R. Civ. P. 26(c) provides in relevant part:

> (1) In General. A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending…The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

> (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way;…

12. "Rule 26(c) places the burden of persuasion on the party seeking the protective order. To overcome the presumption, the party seeking the protective order must show good cause by demonstrating a particular need for protection. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test… Moreover, the harm must be significant, not a mere trifle." *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986), *remanded*, 113 F.R.D. 86 (D.N.J. 1986), *mand. den.*, 822 F.2d 335 (3d Cir.), *cert. den.*, 484 U.S. 976 (1987).

13. Defendant has consistently maintained the position that a protective order is an appropriate and sometimes necessary method of protecting legitimately confidential

4

information, such as trade secrets, which fall within the scope of the Rule. *Century Indus. Inc. v. Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir. 1981).

14. Defendant has also been consistent in his concern, prompted by Plaintiff's actions as described above, that a protective order in this case should not be utilized as a means to avoid and frustrate reasonable discovery requests, nor should it be a shield behind which to hide one's identity or actions from public scrutiny. *See e.g. DIRECTV, Inc. v. Puccinelli*, 224 F.R.D. 677, 684-85 (D. Kan. 2004) ("a general concern for protecting confidentiality does not equate to privilege. Thus information and documents are not shielded from discovery merely because they are confidential."). Regardless of the terms of the protective order, "the party seeking the confidentiality designation must provide good cause to shield the [information] from public view." *Fourhorn v. City and Cnty. of Denver*, 261 F.R.D. 564, 568 (D. Colo. 2009). The language of Plaintiff's attorney's email, Exhibit C, was very clear in that Plaintiff had no intention of responding to Defendant's discovery requests unless Defendant agreed to its protective order, regardless of whether those requests legitimately fall within the scope of R. 26(c).

II.   *Overly Broad Protective Orders Are Contrary To Public Policy*

15. A central tenet of our legal system is that legal proceedings should be conducted in public. *Nixon v. Warner Cmmc'ns*, 435 U.S. 589, 598-99 (1978). This principle is premised upon the idea that public monitoring of the courts fosters important values such as respect for the legal system. *In re Providence Journal Co.*, 293 F.3d 1, 9 (1st Cir. 2002); *see also Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992) ("Lawsuits are public events").

16. Public access to a plaintiff's identifying information "is more than a customary procedural formality [as] First Amendment guarantees are implicated when a court

decides to restrict public scrutiny of judicial proceedings." *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981). It would be inappropriate and unfair to allow the individuals behind Malibu Media, who have availed themselves of this court and of other courts around the country to sue thousands of individuals, to hide behind the anonymity of a protective order at this point based solely on an unsupported allegation of harassment[1].

17. It is not enough that a witness sincerely fears retaliation; a witness's fears must be reasonable, based on specific and credible threats. *Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1071 (9th Cir. 2000); *Quair v Bega*, 232 F.R.D. 638, (E.D.Cal 2005). Broad allegations of "harm" are insufficient to justify protection under Rule 26(c). *Beckman Indus. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992).

18. In its moving papers, Plaintiff offered nothing in support of its allegation: no telephone logs documenting the alleged harassing calls; no police reports documenting the alleged death threats or harassment; no screen shots of the alleged rabble-rousing done by the so-called "anti-copyright blogs"[2] that supposedly "encourage" harassment of Plaintiff and its employees.  Plaintiff expects this court to just take it at its word without any proof whatsoever.

19. Moreover, quite a bit of the information which Plaintiff seeks to protect is available in the public domain already.  For example, in order to incorporate Malibu Media LLC, Plaintiff had to file paperwork with the State of California which can be inspected by the public; those documents of necessity contained the names of some individuals and attorneys associated with Plaintiff.

---

[1] It is presumed that Plaintiff does not allege that Defendant will threaten, harass or take any retaliatory actions against Plaintiff. Defendant unequivocally denounces any threats made against Plaintiff, its counsel, or anyone connected with these litigations.

[2] The "anti-copyright" blogs to which Plaintiff refers are by no means against copyright as a matter of law. What they are dedicated to is the education and support of John Does who have been sued or otherwise approached by a company like Plaintiff.  They are anti-mass-for-profit-copyright-infringement-litigation blogs.

20. Further, by undertaking this nationwide litigation scheme, Plaintiff has opened itself to scrutiny by many people who have either been the recipient of one of Plaintiff's subpoenas, settlement letters or phone calls, or individuals who are genuinely concerned about the existence of this type of litigation in our court system and are trying to educate the public about it. These people investigate court records, public records and media stories to discover as many facts about Plaintiff and other pornography companies as they can. They share this information on the internet so as to provide the tens of thousands of Doe defendants with as much information as possible in handling their own litigation. Without obtaining any discovery from Plaintiff directly, Defendant has uncovered enough new factual information to revise his Answer and Counterclaim twice in three short months, with a Motion to Amend pending before this Court at this moment. Plaintiff cannot reasonably seek to protect information, such as the personal identities of individuals, that is already available to the public through other channels.

21. To allow a protective order to cover the names of all of the individuals – "Plaintiff, its employees and affiliates" (Plaintiff's motion, para. 5) – behind a nationwide for-profit litigation business model, which this Court has called tantamount to extortion, *Malibu Media, LLC v. Felitti*, 2012 U.S. Dist. LEXIS 103393 (D. Colo. 2012), would allow Plaintiff to use R. 26(c) as a shield to protect their identities.  This would set a troubling precedent and invites abuse in other, similar litigations.  Indeed, courts and the Federal Rules are consistent:  the identity of parties seeking redress through the court's judicial powers should remain public, and this is an important aspect of our judicial system because the people have a right to know who is using their courts. *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011); *see also Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869, 872 (7th Cir. 1992) (Rule 10(a) illustrates "the

principle that judicial proceedings, civil as well as criminal, are to be conducted in public").

22. Finally, this issue has already been settled in not one, but two separate conference calls when Plaintiff's attorney was specifically instructed that the identity of his client was not protectable by a protective order. Plaintiff understands that it must name its witnesses and make them available for deposition and trial.  Plaintiff's attempt to litigate this now could be described as frivolous, in bad faith and a waste of judicial times and resources.

III.   *Courts Favor Public Disclosure As A Matter of Public Policy*

23. The Tenth Circuit and this Court have consistently held that a party seeking to file court records under seal must overcome a presumption, long supported by courts, that the public has a common-law right to judicial records. *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 599 (1978)).  Any litigant seeking to obtain a protective order "must articulate a real and substantial interest that justifies depriving the public of access to the records that inform our decision-making process." *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1135-1136 (10th Cir. 2011).  Although discovery documents are not technically a public aspect of a civil trial, Rule 26(c) nevertheless presumes public access to discovery items absent a showing of good cause.[3] Cooperation among litigants in separate but connected litigations should be encouraged as accomplishing the goals of Rule 1 ("the just, speedy and inexpensive determination of every action") and the interests of justice. Where, as here, there is a far-reaching, nationwide public interest and thousands of litigants in a similar

---

[3] "Unless the public has a presumptive right of access to discovery materials, the party seeking to protect the materials would have no need for a judicial order [because] the public would not be allowed to examine the materials in any event." *In Re "Agent Orange" Prod. Liab. Litigation*, 821 F.2d 139, 146 (2d. Cir. 1987), cert. den. 484 U.S. 953 (1987).

situation, the fact that items discovered in this litigation may be shared with other, similarly situated litigants actually promotes Rule 1 interests and therefore is a factor weighing against, not in favor of, a protective order.

24. Discovery sharing can reduce the prohibitive costs of discovery and litigation in individual cases, which can be significant where, as here, one side has far superior financial and legal resources than the other. *See e.g.*, *Cipollone*, p. 1114, fn 8, where the Circuit Court acknowledged the District Court's consideration of the economic disparity between the defendant tobacco companies and the individual plaintiffs, and noted that "a protective order would favor the economically powerful defendants and prevent the public and the relatively impecunious plaintiffs from gaining access to material in which there was an enormous public interest." This is particularly clear in light of Plaintiff's pattern of obstructive behavior already in this litigation. Any other defendant who chooses to oppose Plaintiff is likely to face the same.

25. This Court has specifically held that there is a "presumption that documents essential to the judicial process are to be available to the public, but they may be sealed when the public's right of access is outweighed by interests which favor nondisclosure." See *United States v. McVeigh*, 119 F.3d 806, 811 (10th Cir. 1997); see also *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 356 (D. Colo. 2004) (recognizing the Colorado Court's "presumption favors public access."). In explaining the rationale for this high burden, this Court has stated that "it is critical that the public be able to review the factual basis of this Court's decisions and evaluate the Court's rationale so that it may be confident that the Court is functioning as a neutral arbiter." *Id.* at 814.

26. In this case, both the public at large and other Doe defendants have an interest in the information sought by Defendant in discovery in this matter. The identity of the owners and officers of Plaintiff who have commenced hundreds of litigations across

the country against thousands of Doe defendants is certainly a matter of public interest.  The identities of the attorneys who handled those cases are also a matter of public interest.  The means by which Plaintiff obtained the IP data is likewise a matter of public interest, as are the identities of the individuals at the company they retained to do the information gathering. What Plaintiff and its principals, agents and employees knew before they commenced this litigation about BitTorrent, IP addresses, wireless networks, and the reliability and/or flaws in the IP address collection technology – all of these are of vital importance to thousands of other defendants who should not need to fight, as this Defendant has, for every inch of ground gained moving forward in a litigation Plaintiff started and now seems to have no interest in fairly pursuing. Moreover, the other defendants and the public have a right to know about the business arrangements between Plaintiff, the IP address-collection company IPP Ltd., its attorneys Jason A. Kotzker and M. Keith Lipscomb, and any other persons of interest in what appears to be a Champertous and Barratrous arrangement for the purpose of churning lawsuits based on abusive litigation practices and flawed evidence into a cash business. As Judge Beeler of the U.S. District Court for the Northern District of California pointedly observed:

> Thus, these mass copyright infringement cases have emerged as a strong tool for leveraging settlements – a tool whose efficiency is largely derived from the plaintiffs' success in avoiding the filing fees for multiple suits and gaining early access *en masse* to the identities of alleged infringers… [Plaintiff] and its counsel appear content to force settlements without incurring any of the burdens involved in proving their cases. And, while the courts favor settlements, "filing one mass action in order to identify hundreds of doe defendants through pre-service discovery and facilitate mass settlement, is not what the joinder

rules were established for." *IO Group, Inc.*, 2011 WL 445043 at *6.

*MCGIP, LLC v Does 1-149*, (N.D. Cal. 2011), Order Denying Plaintiff's Motion for Leave to File an Amended Complaint. (Dkt. No. 14), pages 5-6, n5.

27. As there have been approximately a quarter of a million Doe defendants sued in the past two years in this same manner by pornography companies like Plaintiff, with not one single case reaching any level of meaningful discovery (to Defendant's knowledge), the information sought to be shielded by Plaintiff is relevant to the defense of thousands if not tens of thousands of similarly situated persons. As noted above, the sweeping protective order sought by Plaintiff would be contrary to the Rule 1 interests of a "just, speedy, and inexpensive determination" of these cases.

28. Further, the information Defendant seeks through discovery will demonstrate Defendant's allegations regarding the "for-profit" litigation business model arranged by and between Plaintiff, its attorneys and others. This model was described at length in Defendant's Answer and Counterclaim, but it was summarized quite succinctly as well by Judge Beeler:

> "[c]opyright infringement cases such as this ordinarily maintain a common arc: (1) a plaintiff sues anywhere from a few to thousands of Doe defendants for copyright infringement in one action; (2) the plaintiff seeks leave to take early discovery; (3) once the plaintiff obtains the identities of the IP subscribers through early discovery, it serves the subscribers with a settlement demand; (4) the subscribers, often embarrassed about the prospect of being named in a suit involving pornographic movies, settle. *IO Group, Inc. v. Does 1-435*, No. C 10-04382 SI, 2011 WL 445043, at *6 (N.D. Cal. Feb. 3, 2011).

*MCGIP, LLC v Does 1-149*, (N.D. Cal. 2011) Order Denying Plaintiff's Motion for Leave to File an Amended Complaint. (Dkt. No. 14) page 5-6 n5. (supra). This information will be invaluable to other Doe defendants around the country who find themselves in the same position as Defendant – not only those who are sued by

Plaintiff, but those who are sued by other pornography companies utilizing this same model. This impacts not only the tens of thousands of people whose cases wait in the Federal dockets around the country, but also the thousands of new individuals who are being sued every month.  Clearly, the public interest weighs heavily against Plaintiff's blanket protective order.

IV.    *Plaintiff's Request For A Blanket Protective Order Fails As A Matter Of Law*

29. As noted above, Fed.R.Civ.P. 26(c) empowers the courts to enter a protective order upon a demonstration of "good cause" in order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense.  Good cause requires a showing that the disclosure will cause a defined and serious injury. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994); *see also Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986) (the harm must be "significant, not a mere trifle").  Broad allegations of harm will not suffice. *Id.*  Rather, the movant bears the burden of demonstrating this injury through articulated reasoning and substantiated specific examples.

30. In *Quair v. Bega*, 232 F.R.D. 638, 642 (E.D.Cal 2005), the court found that the petitioners failed to show good cause for a protective order that would conceal the identity of trial witnesses from everyone but outside counsel when petitioners offered only rumor or hearsay.  This is similar to the case before this Court, where Plaintiff asks for a protective order based solely upon its unsupported allegations and suppositions in paragraph 5 and its sweeping reference to "trade secrets" in paragraph 6.

31. Of course, any public revelation of items not intended for public exposure has the potential to cause embarrassment, but whereas for individuals embarrassment is a feeling or emotion to be articulated through testimony, "embarrassment may be

especially difficult [to demonstrate] for a business enterprise whose primary measure of well being is... monetizable..." *Cippollone* supra.at 1121. *See also, Brown & Williamson Tobacco Corp. v. Federal Trade Comm'n*, 710 F.2d 1165, 1179 (6th Cir. 1983) (holding that harm to reputation is not enough to overcome presumption of public access). Certainly, Plaintiff has made no showing of monetary harm here, other than a few broad averments regarding its competitors in paragraph 6 of its motion.

32. It is significant that Plaintiff now seeks to use the same arguments on its own behalf that it has vigorously argued *against* when utilized by Doe defendants seeking to maintain their anonymity. In response to a then-anonymous John Doe before this very Court, Plaintiff argued that:

> The potential embarrassment ... of being associated with allegations of infringing hardcore pornography does not constitute an exceptional circumstance that would warrant allowing the defendants to proceed anonymously.

*Malibu Media v. John Does* 1-12, 14-17, 19-21, 23-24, 26-28; Pl. Memo. In Opp. To Def. Mot. for Leave to Proceed Anonymously, Case No. 1:12-cv-00834: Dkt. 38 (Colo. 07/06/12) quoting *Liberty Media Holdings, LLC v. Swarm Sharing Hash File*, 2011 WL 5161453 (D.Mass. 2011).

33. Based upon that logic, it would seem to follow that being associated with producing and selling hardcore pornography and suing people for allegedly downloading it "does not constitute an exceptional circumstance that would warrant allowing" Plaintiff to proceed anonymously. Moreover, as the counter-defendant to Defendant's counterclaims, the potential embarrassment of being associated with allegations of, among other things, abusing the judicial process for financial gain "does not constitute an exceptional circumstance that would warrant allowing"

Plaintiff to proceed anonymously.   If Plaintiff's claims, intentions and actions are supported by the facts and made in good faith, then Plaintiff has nothing to hide from the public and should not need this Court to hide it from legitimate scrutiny.

34. Plaintiff's campaign of "for-profit" litigation uses, as a key element, the threat of public humiliation in order to generate quick and profitable settlements from people who are never even provided the opportunity to prove their innocence. *See* Exhibit E, Declaration of John Doe, to First Amended Answer and Counterclaim; *See also, In re BitTorrent Adult Film Copyright Infringement Cases*, 2012 U.S. Dist. LEXIS 61447 *28 (E.D.N.Y. 2012) ("In this case, John Doe #16 offered the plaintiff [through its counsel Mr. Kotzker] 'unfettered access' to his computer and employment records demonstrating that he was not at home at the time of the downloading, yet still finds himself pressured to settle for thousands of dollars. It would be difficult to characterize such a resolution as 'just' even if speedy and inexpensive for the plaintiff") (internal quotations omitted).   It would be unfair for Plaintiff to now escape the consequences of its actions and hide from some potential embarrassment of its own making.

## CONCLUSION

35. Defendant has no desire to be unreasonable. A protective order may be appropriate to protect Plaintiff's "trade secret or other confidential research, development, or commercial information" as provided by R.26(c), although the vast majority of what Defendant seeks through discovery has nothing to do with those areas which can properly be protected under R.26(c). Plaintiff should not be permitted to delay producing its discovery, or to avoid producing discoverable items, or to shift the burden of showing that something should be produced or should not be protected back onto Defendant by means of this protective order.

36. Plaintiff seeks protection from a problem of its own making. Plaintiff has initiated a campaign of mass litigation, suing thousands of people across the country – many of whom are innocent of any wrong-doing – and using extortionate tactics to compel settlements from them under threat of public exposure.  If people are watching these cases – and this case in particular – with interest, that is not surprising.  If people want to know more about how Plaintiff operates, that is not surprising either.

37. Defendant was not given the courtesy of being able to proceed anonymously. Defendant has already suffered quantifiable financial and reputational harm as a result of Plaintiff's actions.  Plaintiff should not now be permitted to insulate itself from similar public exposure simply because it didn't get the outcome – a quick and quiet settlement – that it expected from Defendant.

38. For all of the foregoing reasons, Defendant asks that the court very carefully and narrowly craft the language of the protective order.  Defendant asks that the court designate classes or categories of persons, documents and/or items which Plaintiff may not designate as protected.  Defendant asks that the court require Plaintiff to timely respond to all discovery requests even if the protective order may cause a slight delay, producing the non-protected materials first and the protected materials shortly thereafter if necessary.

39. Finally, Defendant asks the court to make clear that Plaintiff must not only clearly label and identify each document that it seeks to protect, but that it must identify the specific and precise reason why it claims protection for such document. This will ease the Court's adjudication in the event that Defendant feels that the item does not fall within the protective order and challenges the designation.  Defendant requests that the protective order require each item sought to be protected note upon it or on a cover sheet the precise reason for the assertion of protection under the protective order, which shall include more than just a bald statement such as "trade secret" or

"competitive advantage" but shall specify exactly the type of information it is which is being protected, what aspect of the Plaintiff's business would be impacted by the release of the information and to what extent, who the competitors are who would benefit from the information, and the actual benefit which would result to the competitors.

40. It is Defendant's reasonable fear that Plaintiff does not intend to produce any discovery without a protective order. Plaintiff's response to the R.26(a) disclosure was a clear indicator of Plaintiff's approach to discovery. When Defendant asked for more information, Plaintiff's reply was to insist on a blanket protective order. Plaintiff's attitude is clear. Defendant asks the court's assistance in obtaining Plaintiff's cooperation with the rules and procedures required by the court system which Plaintiff has invoked.

**WHEREFORE**: Defendant respectfully requests the following relief:

1. Entry of a protective order with a Court approved provision that the identities of the principals, officers, agents, employees, and affiliates of Plaintiff are not covered by any provision of the Order except on a showing of good cause supported by competent evidence;

2. Entry of a protective order with a Court approved provision that advises the parties that financial and other sanctions will be imposed for frivolous and/or overly broad assertions of confidentiality under Fed. R. Civ. Pro. 11, 28 U.S.C. §1927 and the Court's inherent power;

3. Entry of a protective order with a Court approved provision that requires each party asserting that an item is covered thereunder to detail in a document attached to the item sought to be protected:

    a. in the case of a trade secret, the following: a summary of the trade secret; the aspect of the party's business this effects (such as distribution or sales); a list of competitors that this trade secret would benefit; the percentage of the party's

total business this trade secret impacts (for example, "this trade secret impacts production which accounts for 15% of Plaintiff's business"); and an explanation of how this trade secret would benefit said competitors; and

b.  in the case of confidential research and/or development, the following:  a summary of the confidential research and/or development; the aspect of the party's business this effects (such as distribution or sales); a list of competitors that this confidential research and/or development would benefit; the percentage of the party's total business this confidential research and/or development impacts (for example, "this research information impacts production which accounts for 15% of Plaintiff's business"); and an explanation of how this research would benefit said competitors; and

c.  in the case of other commercial information, the following: a summary of the commercial information; the aspect of the party's business this effects (such as distribution or sales); a list of competitors that this commercial information would benefit; the percentage of the party's total business this commercial information impacts (for example, "this commercial information impacts production which accounts for 15% of Plaintiff's business"); and an explanation of how this commercial information would benefit said competitors.

4. Entry of an order to show cause that Plaintiff provide Defendant and this Court within 15 days all evidence of any threatening, harassing or annoying communication(s) directed to Plaintiff or its counsel including redacted copies of such communications.

Respectfully submitted,

Jeff Fantalis
Defendant *pro se*
818 Trail Ridge Drive
Louisville CO 80027
(303) 482-1211

Dated:        September 4, 2012

## CERTIFICATION OF SERVICE

I, Jeff Fantalis, hereby certify that on September 4, 2012, I caused this Response to Plaintiff's Motion for a Protective Order to be filed with the Clerk of the Court by U.S. Mail, with Delivery Confirmation, at the following address:

Clerk's Office
Alfred A. Arraj United States Courthouse
Room A-105
901 19th Street
Denver, Colorado 80294-3589

On the same date, I served a copy of this Response to Plaintiff's Motion for a Protective Order upon Plaintiff by U.S. Mail with delivery confirmation to Plaintiff's attorney of record, and via courtesy e-mail pursuant to agreement with counsel:

Jason A. Kotzker
Kotzker Law Group
9609 S. University Blvd. #632134
Highlands Ranch CO 80163
Email: jason@klgip.com

Jeff Fantalis
Defendant *pro se*

Dated:          September 4, 2012

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:12-cv-00886-MSK-MEH

MALIBU MEDIA, LLC,

   Plaintiff,

v.

JEFF FANTALIS AND BRUCE
DUNN,

   Defendants.

## PLAINTIFF'S FED. R. CIV. P. 26(a) DISCLOSURE

**26(A)(i)** – the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

### RESPONSE:

1.  IPP, Limited – Possesses information regarding the detection and reporting of the alleged infringement. It may be contacted through Plaintiff.

2.  Plaintiff and its employees – Possess information regarding the lawful distribution of the subject movies, ownership of the copyright and other information relevant to the case.

3.  Applicable ISPs – Possess information that correlates the Defendant to the IP address and Digital Millennium Copyright Act Notices.

4.  Defendant's Neighbors – Possess information regarding their own internet accounts and whether they were authorized, had access to, or did use the Defendant's internet.

1


EXHIBIT A

5.     Any person living/visiting Defendant's household – Possesses Information regarding whether they use BitTorrent to infringe Plaintiff's copyrights.

6.     Other peer infringers that participated in the subject swarm – Possess information that they received as pieces of the subject movies from other peers in the swarm.

**26(A)(ii)** – a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

**<u>RESPONSE:</u>**

1.     Copyright registrations or application;

2.     Distribution agreements;

3.     Sales information;

4.     ISP documents correlating the Defendant to the IP address;

5.     Computer Data stored by IPP demonstrating the TCP/ICP connection and the piece of the subject movies that were sent through BitTorrent by the Doe Defendant;

6.     Contracts between the ISP and the Doe Defendant;

7.     Original copies of the movie and copies as reassembled from the pieces sent by the peer infringers.

**26(A)(iii)** – a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on

which each computation is based, including materials bearing on the nature and extent of injuries suffered; and

**RESPONSE:**

Plaintiff seeks its actual damages and alleges that Defendant is contributorily liable for the infringements committed by each infringer in the subject swarm. Since the infringement is ongoing and new peers are joining the swarm it is premature to provide a final calculation of Plaintiff's actual damages.

Alternatively, Plaintiff seeks statutory in the amount of $150,000.

**26(A)(iv)** – for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

**RESPONSE:**

There are no counter claims in this action that are covered by any insurance policy to which Plaintiff is the beneficiary.

Dated: July 5th, 2012

Respectfully submitted,

By: /s/*Jason Kotzker*
Jason Kotzker
jason@klgip.com
KOTZKER LAW GROUP
9609 S. University Blvd. #632134
Highlands Ranch, CO 80163
Phone: 303-875-5386
*Attorney for Plaintiff*

3

## CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2012, a true and correct copy of foregoing document was served by email on Defendant, Jeff Fantalis. Pro se, 818 Trail Ridge Dr. Louisville. CO 80027. T:(303) 428-1211. E-mail: jfantalis@hotmail.com.

By: _/s/ Jason Kotzker_

4

Jeff Fantalis
818 Trail Ridge Drive
Louisville CO 80027
jfantalis@hotmail.com
303-482-1211

July 10, 2012

Jason Kotzker, Esq.
Kotzker Law Group
9609 S. University Blvd. #632134
Highlands Ranch CO 80163

Re:    Malibu Media v. Fantalis, Dunn and Deus
       1:12-cv-00886-MSK-MEH
       R. 26(a) Disclosure

Dear Mr. Kotzker,

I am in receipt of your Disclosure pursuant to R. 26(a).  By this letter, I am informing you that it fails to comply with that Rule.

Rule 26(a)(1)(A)(i) requires that the Plaintiff disclose: "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment[.]"

Plaintiff's response to this section is inadequate as follows:

(1) IPP, Ltd. -- No individual or individuals are named who may be called upon to testify and no addresses or telephone numbers are provided for such individuals; nor is an address or telephone number provided for this entity so that Defendant can ascertain at a minimum where it is located, or that it even exists. Under no circumstances will Defendant contact IPP through Plaintiff as suggested nor is there any court rule or procedure that would require Defendant to do so.

(2) Plaintiff and its employees – As Plaintiff is a business entity, it is hardly appropriate to list "Plaintiff" as a potential witness, and in any case, no address or telephone number is listed for the business. With regard to employees, again, no names or addresses were provided with which Defendant could contact any of these individuals.

(3) Applicable ISPs – This is a category and, again, it names a type of business entity. Only Plaintiff (and Plaintiff's counsel specifically) is aware of exactly which ISPs were served with subpoenas, when that occurred and who the individuals are who were contacted with regard to the subpoenas.

(4) & (5)  Defendant's neighbors/those living in or visiting his house – Once again, only categories, not individuals, are provided. Names and contact information are required by the rule and not provided.

(6) Other peer infringers – Defendant is not a "peer infringer" so Plaintiff's use of the word "other" is puzzling. In any event, no names or addresses are provided, and so this information, once again a category, is totally inadequate under the rule.


EXHIBIT B

To: Jason Kotzker, Esq.

Rule 26(a)(1)(A)(ii) requires that the Plaintiff disclose: "(ii) a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment[.]"

Plaintiff's response is inadequate because in this section, Plaintiff once again provides only categories of information and fails to comply with either of the Rule's requirements: that it provide a copy of each item or "a description by category and location" of each item. No copies were provided of anything. Moreover, there is no indication of the location or custody of any of the listed types of information. This section provides only the most vague and generic statements which, quite frankly, are the kinds of materials that could have been guessed at by anyone perusing the Complaint and offers nothing of any real value.

Rule 26(a)(1)(iii) requires that Plaintiff disclose: "a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered[.]"

Plaintiff's response is inadequate because no computation of "actual damages" is made, despite the fact that Plaintiff is in sole possession of all of the information required to support its claim for damages. This "disclosure" is no more than a restatement of the Plaintiff's theory of damages put forth in the Complaint, albeit in even more general terms. The idea that the "infringement is ongoing" is preposterous and entirely without legal foundation.

Rule 26(a)(1)(iv) requires that Plaintiff disclose: "for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment."

Plaintiff's response is inadequate because it fails to provide a copy of any corporate insurance whatsoever, not even any general corporate insurance policy. Instead, Plaintiff claims that it is uninsured against this lawsuit. That statement strains credulity and is hardly to be believed. However, if that is the case, that does raise concerns of undercapitalization of this entity and doubts as to the validity of the incorporation itself, and could clearly give rise to a situation where piercing the corporate veil becomes necessary.

In any event, such a narrow reading of the Rule is not what is intended: the Rule does not state "any insurance against the counterclaims that you think are valid" but instead states, "under which an insurance business may be liable to satisfy all or part of a possible judgment in the action..." Plaintiff cannot unilaterally decide that it is not or will not be liable under the Counterclaim as it stands now; in fact, even in the unlikely event that the Counterclaim is dismissed in its entirety, the matter could still go forward to trial and Plaintiff could lose on its claims because they are groundless and end up owing Defendant his attorneys fees and costs of suit, since Copyright law is a "loser pays" system. Therefore, **any** corporate insurance must be provided.

To: Jason Kotzker, Esq.

July 10, 2012
Page 3 of 3

Plaintiff's blatant and cavalier disregard for the requirements of the Rule suggests one of two things: either Plaintiff has no intention of complying with discovery, or Plaintiff is attempting to take advantage of Defendant's status as a *pro se* party. Either course of action is ill-advised and neither will look good to Judge Hegarty. Defendant hereby demands that Plaintiff immediately amend its Disclosure within ten days to comply fully with Rule 26(a) as detailed above or Defendant will be forced to bring a motion to compel Plaintiff's compliance.  If Defendant must bring such a motion, sanctions will be sought for Plaintiff's flagrant disregard for the court rules.

I anticipate your full cooperation.

Sincerely,


Jeff Fantalis


Sent by email and regular mail

Date: Fri, 17 Aug 2012 13:40:35 -0600
Subject: 12-cv-886; Malibu Media, LLC v. Jeff Fantalis
From: jason@klgip.com
To: jfantalis@hotmail.com

Dear Mr. Fantalis:


I am writing to inform you that Malibu Media will provide further information in its possession,
custody, or control deemed responsive to your discovery requests provided that you stipulate to
the entry of the attached protective order.   We believe a protective order is necessary because
the information you request contains confidential proprietary commercial information.  Please let
me know whether you will stipulate to the above protective order and I will have my client
prepare the information.



Sincerely,



Jason Kotzker


--
Jason A. Kotzker
Kotzker Law Group
303 375 5386
jason@klgip.com
www.klgip.com


EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:12-cv-00886-MSK-MEH

MALIBU MEDIA, LLC,

      Plaintiff,

v.

JEFF FANTALIS and BRUCE DUNN,

      Defendants

_____/

## PLAINTIFF'S AMENDED FED. R. CIV. P. 26(a) DISCLOSURES

**26(A)(i)** – the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

**RESPONSE:**

    1.    IPP, Limited – Possesses information regarding the detection and reporting of the alleged infringement. It may be contacted through Plaintiff.

    2.    Plaintiff and its employees – Malibu Media, LLC; Brigham Field and Colette Leah; 409 W. Olympic Blvd., Los Angeles, CA 90015. Possess information regarding the lawful distribution of the subject movies, ownership of the copyright and other information relevant to the case.

    3.    Applicable ISPs – Possess information that correlates the Defendant to the IP address and Digital Millenium Copyright Act Notices.

1


EXHIBIT D

4.   Defendant's Neighbors – Possess information regarding their own internet accounts and whether they were authorized, had access to, or did use the Defendant's internet.

5.   Any person living/visiting Defendant's household – Possesses Information regarding whether they use BitTorrent to infringe Plaintiff's copyrights.

6.   Other peer infringers that participated in the subject swarm – Possess information that they received as pieces of the subject movies from other peers in the swarm.


**26(A)(ii)** – a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

**RESPONSE:**

1.   Copyright registrations or application;

2.   Distribution agreements;

3.   Sales information;

4.   ISP documents correlating the Defendant to the IP address;

5.   Computer Data stored by IPP demonstrating the TCP/ICP connection and the piece of the subject movies that were sent through BitTorent by the Doe Defendant;

6.   Contracts between the ISP and the Doe Defendant;

7.   Original copies of the movie and copies as reassembled from the pieces sent by the peer infringers.

2

**26(A)(iii)** – a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; and

**RESPONSE:**

Plaintiff seeks its actual damages and alleges that Defendant is contributorily liable for the infringements committed by each infringer in the subject swarm. Since the infringement is ongoing and new peers are joining the swarm it is premature to provide a final calculation of Plaintiff's actual damages.

Alternatively, Plaintiff seeks statutory in the amount of $150,000.

**26(A)(iv)** – for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

**RESPONSE:**

There are no counter claims in this action that are covered by any insurance policy to which Plaintiff is the beneficiary.

Dated: August 29, 2012

3

Respectfully submitted,

By: /s/Jason Kotzker
Jason Kotzker
jason@klgip.com
KOTZKER LAW GROUP
9609 S. University Blvd. #632134
Highlands Ranch, CO 80163
Phone: 303-875-5386
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on August 29, 2012, a true and correct copy of foregoing document was served by U.S. Mail and email to: Jeff Fantalis, 818 Trail Ridge Dr. Louisville, CO 80027; jfantalis@hotmail.com.

By: /s/ *Jason Kotzker*

4