# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:12-cv-00886

MALIBU MEDIA, LLC,

        Plaintiff,

v.

JEFF FANTALIS, BRUCE DUNN, and
STEPHEN DEUS,

        Defendants.

---

# [PROPOSED] *AMICUS CURIAE* BRIEF OF
# THE FIRST AMENDMENT LAWYERS ASSOCIATION

---

     *Amicus* First Amendment Lawyers Association ("FALA" or the "*Amicus*") submits the following *amicus curiae* brief to assist and inform the Court in the above-captioned matter.

## I.    Introduction

     In his Counterclaim, Defendant Jeff Fantalis ("Fantalis," or the "Defendant") asserts that pornography depicts criminal conduct and it is not copyrightable (Doc. # 39 at 50-51). These contentions are false. Fantalis apparently seeks to retaliate against a copyright holder seeking redress for infringement,[1] but in doing so, he threatens to create serious collateral damage through the resurrection of a long-dead doctrine, which threatens important free speech and intellectual property principles. Count VI of the counterclaim seeks to create an impermissible content-based test for copyright protection, and it must be rejected.

---

[1] *Amicus* takes no position on the underlying copyright claim, or any other issues in the case. *Amicus* supports neither party on the merits, and seeks this honorable court's attention solely with respect to the unsupportable nature of Count VI of the Counterclaim.

On Halloween of 2011, Judge Young of The District of Massachusetts issued an order in *Liberty Media Holdings v. Swarm Sharing Hash File,* 821 F. Supp. 2d 444 (D. Mass. 2011). That Order included a footnote that briefly discussed whether pornography is copyrightable. *Id* at 447 n. 2. The note reviewed the law's evolution toward recognizing copyright protection for erotica, including even extending protection to legally obscene materials. *Id.* Correctly, the D. Mass. observed that this *precise* question had not been directly answered by First Circuit. The reason for this is simple: The law was settled, and there had been no cause for it to be raised again by any courts in that circuit.

Fantalis advances a position that would cast an impermissible pall over both copyright law and the First Amendment. His position would impose new restrictions (or revive long-discredited ones) on what constitutes a "useful art" under the Copyright Clause. U.S. Const. Art. I § 8 cl. 8. If accepted, Fantalis' theory would rewrite the established test for copyrightability – a measurement of the original effort put forth by the creator. His position contradicts the Copyright Act, 17 U.S.C. § 102, and seeks a sweeping, content-based restriction on what genre of works are entitled to copyright protection. This restriction would, if accepted, not only create a Constitutional problem, but a practical one – fragmenting copyright law on the basis of local community standards.

If successful, Fantalis will reduce producers of erotic content to second-class citizens under the law and deprive their works of rightful legal protection. His view would welcome government intrusion into the creative sphere, with protection for artists conditioned on the subjective tastes and preferences of Copyright Office employees. Fantalis' ideal outcome portends a serious prior restraint on artists' speech if they desire protections that, under the Copyright Act and the Constitution, are granted without regard for the works' content. The relief

Fantalis seeks runs directly counter to settled law, and must be rejected. This rejection must be strong and unequivocal, as Fantalis is merely one of a parade of misguided parties nationwide who have misinterpreted Judge Young's footnote as an invitation to raise this frivolous but dangerous argument. This argument is being raised in copyright litigation nationwide, and is being actively promoted as a means of working to abolish all copyright protection for erotic expression. This Court should take the opportunity to educate the public by issuing a clear opinion rejecting it.

## II.    Interest of *Amicus* First Amendment Lawyers Association (FALA)

FALA is a national, non-profit organization of approximately 200 members who represent the vanguard of First Amendment lawyers. Its central mission is to protect and defend the First Amendment from attack by both private and public incursion. Founded in the late 1960s, *Amicus*' membership has been involved in many landmark cases defining the legal status of adult entertainment, including *United States v. Stevens, 559 U.S. ___, 130 S.Ct. 1577 (2010)*; *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002); *United States. v. Playboy Entertainment Group*, 529 U.S. 803 (2000); *Toffoloni v. LFP Publishing Group LLC*, 40 Media L. Rep. 1681, __. F.3d ___ (11th Cir. 2012); *United States v. Extreme Associates, Incorporated*, 431 F.3d 150 (3d Cir. 2005); *United States. v. Stagliano et al.*, 693 F. Supp. 2d 25 (D.D.C. 2010); *United States v. Little*, *2008 WL 2959751* (M.D. Fla. 2008); *Alameda Books v. City of Los Angeles*, 222 F.3d 719 (9th Cir. 2000), *rev'd*, 535 U.S. 425 (2002), and *United States v. Investment Enterprises, Incorporated*, 10 F.3d 263 (5th Cir. 1993).

FALA's members often represent adult entertainment companies' interests in copyright matters, which underlies this suit. FALA members have successfully prosecuted significant copyright infringement matters on behalf of numerous adult entertainment companies, including

*Jules Jordan Video, Incorporated v. Kaytel Distribution Incorporated*, Case No. CV-05-06771 (C.D. Cal. 2007), *Liberty Media Holdings, LLC v. Vinigay.com*, 2012 WL 641579 (D. Ariz. 2012) and *IO Group, Inc. v. GLBT Ltd.*, Case No. C-10-1282 (N.D. Cal. 2011). Intrinsic to each of these infringement cases is the copyrightability of adult content.

The instant dispute concerns the legal status of pornography as a form of expression (Doc. # 39 at 50-51), whether this inhibits its copyrightability (*id.*), and whether adult content is copyrightable at all (*id.*). These questions are central to the demonstrated interests and activities of FALA's membership. FALA therefore has both a substantial interest in the subject matter and significant knowledge that Court should find useful.

## III.    Argument

As explained below, pornography is both legal and copyrightable, undermining Fantalis' claim. The Court should reject Fantalis' attempt to supplant equal protection under copyright laws with a subjective, moral-based code, as it is a facial attack on First Amendment principles.

### A.    Like Any Other Original Work, Pornography is Entitled to Copyright Protection[2]

The Supreme Court articulated the modern test for whether a work is entitled to copyright protection in *Bleistein v. Donaldson Lithographing Company*. 188 U.S. 239, 249-250 (1903). In this decision, the Court established an objective test for copyrightability based on the work's

---

[2] Preliminarily, the Court must recognize that "pornography" has no *legal* meaning, and therefore any argument that "pornography" lacks any entitlement to copyright protection has a fundamental flaw. How would Fantalis propose that this Court define the term, when so many before it have failed to do so? Even in *Miller v. California*, the Court declined to give it a legal meaning, and used a footnoted dictionary definition of the word. *Miller*, 413 U.S. 15, 18 n.2 (1973). Since then, many courts have recognized that the term lacks a clear legal definition. *Farrell v. Burke*, 449 F.3d 470, 486 (2d Cir. 2006) ("a number of cases in this Court and others have held or strongly suggested that the term [pornography] is inherently vague."); *United States v. Thompson*, 653 F.3d 688, 695 (8th Cir. 2011); *United States v. Guagliardo*, 278 F.3d 868, 872 (9th Cir. 2002) ("a probationer cannot reasonably understand what is encompassed by a blanket prohibition on 'pornography.' The term itself is entirely subjective"); *United States v. Loy*, 237 F.3d 251, 263-65 (3d Cir. 2001).

originality. *Id*. If the ultimate work has an original element to it, then it is entitled to copyright

protection. *Id*. In contrast, statements of information, such as a name or written phone number,

are not copyrightable by themselves – though directories such as phone books could be

copyrighted based on their formatting, design and compilation. *Id*. at 250-52.

Judge Holmes, writing for the majority, foresaw the problems of allowing lawyers and

judges to determine what was (or was not) entitled to copyright protection, stating "It would be a

dangerous undertaking for persons trained only to the law to constitute themselves final judges of

the worth of [creative works]." *Id*. at 251. In addition to recognizing the constitutional

prohibition on government restrictions based on content, this statement reflected the reality that

taste and aesthetics do not factor into copyrightability. If that were the case, America's creative

markets would be hurled back to the Renaissance era, where the only works created were those

commissioned by wealthy patrons, and made to satisfy their tastes. The end result of Fantalis'

efforts, if successful, would be trickle-down artistic expression. Our Constitutional tradition will

not tolerate such a result.

A work is copyrightable if it possesses originality, without regard for what it depicts, who

likes it, or its subjective social utility. 17 U.S.C. § 102. If a creative work's protections were

based on subjective elements, and allowed the creator to control the copying, distribution and

monetization of his or her works only if those components were to the law's liking, entire

industries would be left to operate with minimal or haphazard protections for their creative assets

(if, in those conditions, they could operate at all). The First Amendment will not tolerate the

creation of such a second-class protection.

\\

\\

1. <u>**The Law has Caught up with History; Counter to Fantalis' Contentions,**</u>
<u>**Pornography is Entitled to Copyright Protection.**</u>

Chaos ensues when Courts look beyond a work's inherent originality to determine whether it is worthy of copyright protection. Fantalis' position is not without historical support: In the 1800s, the question of pornography's copyrightability was uncertain, and this uncertainty eroded copyright protection for controversial works. Today, precedent supports the copyrightability of adult works – and shows the perils of the mid-nineteenth century view.

In 1867, the then-existing Circuit Court of California held that the defendant's profane parody play, "The Dark Crook," lacked entitlement to copyright protection because of its contents. *Martinetti v. Maguire*, 16 F. Cas. 920 (C.C. Cal. 1867). The Court found that "it is the duty of all courts to uphold public virtue, and discourage and repel whatever tends to impair it." Because the Court looked beyond the bare requirement of originality in assessing the play's copyrightability, it deprived the defendant of any protection for a work that today would be described as a dark comedy. This dis-incentivized the creation of such works, and we will never know how much the marketplace of ideas was impoverished by this kind of decision.

The Northern District of California reached a similar conclusion about a musical composition in *Broder v. Zeno Mauvais Music Co.*, 88 F. 74 (N.D. Cal. 1898). In that case, the Court objected to the use of the word "hottest" in the song "Dora Dean," and found that the song lacked copyrightability for as long as the word "hottest" remained within its composition. *Id*. In a decision that would be mind-boggling today, the San Francisco-based court wrote that "the word 'hottest,' as used in the chorus of song 'Dora Dean,' has an indelicate and vulgar meaning, and that for that reason the song cannot be protected by copyright." *Id*.

These Comstock-era decisions represent the state of the law as anti-speech activists such would have it.  Fantalis asks this court to stand with censorship flags in hand, making moral judgments about an artists' works, before granting the artist the protections that the Constitution and Congress have bestowed upon him as an unequivocal right.[3]  However, Fantalis' censorious principles are more than a century out-of-date, and should be rejected.

In all fairness to Fantalis' position, there is one vestigial decision in which this theory returned from the dead.  In 1998, the Southern District of New York refused to issue an injunction in favor of an adult film producer in an infringement case, as the Court believed the films' content to be legally obscene – and that the enforcement of an injunction would thus use the U.S. Marshals to sanction the production and distribution of unlawful content.  *Devils Films, Inc. v. Nectar Video*, 29 F. Supp. 2d 174 (S.D.N.Y. 1998).  However, the denial of a preliminary injunction seeking equitable relief is not an endorsement of the premise that pornography is not copyrightable.  Removing doubt, even the Southern District shed this reasoning in 2004, holding in *Nova Productions, Incorporated v. Kisma Video, Incorporated*, that even if films were found

---

[3] The very DNA of the Constitution is incompatible with drawing distinctions between different types of speech.  The Framers rejected proposed language for the First Amendment that would have limited its protection to "decent" speech.  Some time between July 21-28, 1789, Roger Sherman of Connecticut proposed an amendment to the House Committee of Eleven which included the following language:  "The people have certain natural rights which are retained by them when they enter into society.  Such are rights  . . . of Speaking, writing and publishing their Sentiments with decency and freedom . . ."  This amendment was rejected by the committee in its July 28 report, favoring language that was closer to the First Amendment that was ultimately adopted.  The details are set forth in Neil H. Coogan, THE COMPLETE BILL OF RIGHTS (Oxford 1997).  See also Kenneth R. Bowling, "A Tub to the Whale": The Adoption of the Bill of Rights, in The Bill of Rights and the States: The Colonial and Revolutionary Origins of American Liberties 51 (P.T. Conley & J.P. Kaminski, eds., 1992) ( "[Roger] Sherman's attempt to limit Madison's absolute guarantee of the freedoms of speech and press by requiring that the words be decent failed in the committee").

to be obscene, they were entitled to the Copyright Act's full protection. Case No. 02 Civ. 3850(HB), *2004 WL 2754685* at *3 (S.D.N.Y. Dec. 1, 2004).[4]

In *Nova Productions, Inc. v. Kisma Video*, Judge Baer rejected his predecessor's view:

> [Devils Films], however, as Kisma/610 recognizes, did not reach the question of the viability of an obscenity defense to copyright infringement. Indeed, Judge Martin merely denied an application for preliminary relief, which was grounded on his finding that the videos at issue were, in fact, obscene. As discussed, that is a conclusion I believe must be left to a jury, particularly since other courts in this District have found that other "hard-core" pornographic magazines and videos were "not patently offensive under contemporary community standards" and thus not obscene. In short, even if the videos were ultimately proven to be obscene, following the Fifth and Ninth Circuits' holdings, this would not be a defense to copyright infringement. *Id.* (citations and quotations omitted)

The *Nova* decision redeemed the Southern District of New York for its constitutional sin in *Devils Films*, but apparently it did not make the message clear enough – all works, regardless of content, are entitled to copyright protection.  When given the opportunity to review this issue, every modern appellate court has rejected Fantalis' position.

In *Mitchell Brothers Film Group v. Cinema Adult Theater* the Fifth Circuit reversed the outcome of a trial where a Texas court allowed the defendant movie theater to claim the plaintiff's movies were obscene and therefore not copyrightable.  604 F.2d 852 (5th Cir. 1979). Though the Fifth Circuit wrote "it is immediately apparent that limiting copyright protection on a broad public injury rationale would lead to absurd and unacceptable results," this was *not* apparent to the trial court, whose error had to be corrected by the Court of Appeals. *Id.*  The Fifth Circuit reached the right conclusion, but it did so only after the case went through a jury trial and concluded in a verdict that obscene material was not copyrightable. *Id.*

---

[4] Interestingly enough, the *Nova Productions* case involved the same parties as the *Devils Films* case.  However, Devils Films was the second plaintiff, and Nectar Video was the second listed defendant.

However regrettable the path that led to *Mitchell Brothers*, the Fifth Circuit's opinion is clear on the issue of copyrightability and pornography. The court held that the Copyright Act's lack of restrictions on copyrightability was not an invitation for the judiciary to insert its own where the legislature declined to do so. *Id*. at 856. Observing the limitations on time and place inherent in finding a work obscene, the court cautioned that any obscenity exception to copyright protection would "fragment" the copyright system's uniform national standards. *Id*. at 857-58; *see Flexible Lifeline Sys. v. Precision Lift, Inc.*, 654 F.3d 989, 998-1000 (9th Cir. 2011) (promoting uniform interpretation of copyright law nationwide); *JustMed, Inc. v. Byce*, 600 F.3d 1118, 1124 (9th Cir. 2010) (same); *see also Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 740 (1989). When faced with a arguments identical to Fantalis', the *Mitchell Brothers* court issued a firm rebuff: "Because [...] a copyright infringement action furthers the congressional goal of promoting creativity, the courts should not concern themselves with the moral worth of the plaintiff." *Id*. at 862.

The Ninth Circuit reached an identical conclusion in *Jartech, Inc. v. Clancy*, 666 F.2d 403 (9th Cir. 1982). In *Jartech*, the Ninth Circuit invalidated any notion of an obscenity defense to copyright infringement, noting that the community standards element of any obscenity analysis varies widely from community to community. "[A]cceptance of an obscenity defense would fragment copyright enforcement, protecting registered materials in a certain community, while, in effect, authorizing pirating in another locale." *Id*. at 406, *citing Paris Adult Theatre I v. Slaton*, 413 U.S. 49 (1973); *U.S. v. 2,200 Paper Back Books*, 565 F.2d 566, 569-70 (9th Cir. 1977).

Lest the Court be concerned that the Fifth and the Ninth Circuit decisions may have fallen out of favor, the Seventh reaffirmed them on August 2, 2012, holding that "even illegality

is not a bar to copyrightability." *FlavaWorks, Inc. v. Gunter et al.*, Case No. 11-3190, *2012 WL 3124826* at *2, ___ F.3d ___ (7th Cir. Aug. 2, 2012) (Posner, J.). This holding adopts the *Jartech* decision and is consistent with *Mitchell Brothers*. In it, Judge Posner underscores Congress' intent to create – and the courts' efforts to uphold – the Copyright Act's "express objective of creating national, uniform copyright law" that is consistently and predictably applied. *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 740 (1989). Judge Posner's holding unambiguously should put the question of pornography's copyrightability to rest. This ruling and those preceding it are directly contrary to the erroneous contention that the copyrightability of even obscene materials is "unsettled" in the Circuit Courts, depriving the works at issue in this case from copyright protection (Doc. # 39 at 51).

Analogously, the Northern District of Georgia reviewed a fair use defense raised by a pornography company. In *Pillsbury Company v. Milky Way Products, Incorporated*, 215 U.S.P.Q (BNA) 124 (N.D. Ga. 1981), the defendant created a pornographic parody of the iconic Pillsbury Dough Boy. The Northern District of Georgia accepted the pornographic company's fair use defense, holding:

> The plaintiff seems to believe that a pornographic adaptation of copyrighted works should be accorded less protection under the fair use doctrine than what might otherwise be granted a more continent presentation. The Copyright Act, however, does not expressly exclude pornographic materials from the meters of the fair use defense, and the plaintiff offers no authority for this protection. The character of the unauthorized use is relevant, but, in the court's judgment, the fact that this use is pornographic in nature does not militate against a finding of fair use. *Id*. at 131

Under the Copyright Act, all works are created equal, and any original work is copyrightable by its author. 17 U.S.C. § 102; *see Bleistein*, 188 U.S. at 249-51.

This is not merely a quirk of American law, but it seems to be the prevailing international view. The law of the United States has found parity with that of other developed nations

recognizing copyright protections for pornography.  Under Article 2, § 1 of the Berne Convention, signatory nations including the United States, United Kingdom, and Germany agreed to recognize the copyrightability of cinematic works regardless of their content.  In the United Kingdom, recognize the inherent originality in adult works and have given up the attack on their copyrightability.[5]  Similarly, Germany recognizes that pornographic works are entitled to copyright protection; much like the Berne Convention, its copyright laws are silent about whether the content of a work affects its copyrightability.[6]  Among modern nations, copyright protection is not conditioned on the works' content – and for this Court to hold otherwise would be an aberration.

**2.** **Pornography is Does Not Constitute Pandering or Pimping – But Even if it Were Illegal, or Depicted Illegal Conduct, it would be Copyrightable.**

In his Counterclaim, Fantalis alleges that the pornography at issue was crated by breaking various criminal laws, depicting criminal acts, and thus is not copyrightable.  Fantalis' allegations are not only a theoretical affront to free speech, but they are wrong as a matter of law.  First and foremost, the production of pornography is legal and occurs in many locations throughout the United States.  Secondly, for reasons similar but distinct from those set forth *infra*, even if pornography did depict unlawful conduct, it would still be entitled to copyright protection.  Both elements of Fantalis' argument fail in this case as a matter of law.

It is well known that pornography is legal to make in California, and cannot constitute prostitution.  More than 40 years ago, the California Supreme Court held that it was "too evident to require elaboration" that applying criminal penalties to sexual activity in a live theatrical

---

[5] Emil A. Georgiev, *CopyPorn*, The Reguligence Weblog (May 29, 2011), *available at* http://reguligence.biz/tag/glyn-v-weston-film-feature/ (*last accessed* July 30, 2012).
[6] *Id*.

performance "would have an inhibiting effect upon the exercise of First Amendment rights." *Barrows v. Municipal Ct.*, 464 P.2d 483 (Cal. 1970). However, the California Supreme Court built upon theis and extended full legal protection to the creation of erotic films in *People v. Freeman.* In that case, the California Supreme Court held that the payment of acting fees to individuals appearing in pornographic works is not payment for "sexual arousal" or "gratification," and therefore was outside the purview of California's prostitution and pandering statutes. 758 P.2d 1128 (Cal. 1988). The *Freeman* court further held that significant First Amendment interests protected the creation of pornography, even if it happened to fall within the purview of California's prostitution and pandering laws. *Id.* at 1131. The California Supreme Court laid bare the impermissible burdens criminalization would place on free expression:

> To subject the producer and director of a nonobscene motion picture depicting sexual conduct to prosecution and punishment for pandering, including a special provision for ineligibility for probation attendant on such a conviction (see fn. 2, ante), would rather obviously place a substantial burden on the exercise of protected First Amendment rights. To include the hiring and paying of actors for acting in such a film within the definition of pandering would therefore unconstitutionally infringe on First Amendment liberties. *Id.* at 1132.

Though the United States Supreme Court denied California's petition for *certiorari* in *Freeman*, it did so with the uncommon step of issuing an opinion with its denial. *Cal. v. Freeman*, 488 U.S. 1311 (1989). Justice O'Connor found no reason to consider the decision, as the California Supreme Court's holding that the filming of pornography did not violate the state's pandering and prostitution laws was an independent state law basis for that court to reach its ruling. *Id.* For that reason, O'Connor did not "think it likely that four Justices would vote to grant the petition" because "this Court lacks jurisdiction to hear the petition." *Id.* at 1313.

California is not alone in recognizing this fundamental protection for erotic expression. In *New Hampshire v. Theriault*, the appellant was charged with prostitution for paying two

people to have sex for the purpose of filming pornography. The New Hampshire Supreme Court found this application of the state prostitution statute to be overbroad. 960 A.2d 687 (N.H. 2008).[7]

Even if this conduct were illegal, it would not deprive the pornographic work merely *depicting* unlawful conduct of its protections as copyrightable material. If it did, then news broadcast footage of a crime would be uncopyrightable. Further, even if the copyright owner engaged in unlawful activity in creating and distributing a copyrighted work, it would not vitiate the work's protection. *See Bd. of Trade v. Christie Grain & Stock Co.*, 198 U.S. 236, 251 (1905) ("If, then, the plaintiffs' collection of information is otherwise entitled to protection, it does not cease to be so, even if it is information concerning illegal acts. The statistics of crime are property to the same extent as any other statistics, even if collected by a criminal who furnishes some of the data."). The Ninth Circuit has held that a plaintiff's illegal operation of an interactive computer service did not "diminish copyright protections or undermine the punitive purposes of the statutory damages provision." *Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 993 (9th Cir. 2009). The Court of Appeals went so far as to dismiss the unlawful nature of a copyrighted work and its creator's actions as irrelevant to the question of its copyrightability, holding that the "illegal operation of a work does not provide information relevant to the nature of the copyright." *Id*.[8] The Ninth Circuit has even found fraudulent, plainly illegal material to be deserving of copyright protection under the *Bleistein* originality test. *Belcher v. Tarbox*, 486 F.2d 1087, 1088 (9th Cir. 1973).

---

[7] This finding of overbreadth was based on the free speech clause of New Hampshire's state constitution – unlike Freeman, which was based on the United States Constitution – and thus impervious to U.S. Supreme Court review. *Id*. at 692-93.

[8] The Seventh Circuit Court of Appeals adopted a similar position in *Leo Feist, Inc. v. Young*, 138 F.2d 972, 975-76 (7th Cir. 1943), finding that the Plaintiff's unlawful actions did not prohibit it from obtaining, registering, and enforcing a lawful copyright.

**B.**  **Finding that Pornography Is Not a "Useful Art" Contravenes the *Bleistein* Test and More than a Century of Copyright Law.**

While the U.S. Constitution recognizes intellectual property rights to further science and the "useful arts," it does not define "useful." U.S. Const. Art. I § 8 cl. 8.  The *Bleistein* court recognized the broad sweep of what could constitute *useful* arts: "The Constitution does not limit the useful to that which satisfies immediate bodily needs." 188 U.S. at 249.  Under *Bleistein*'s own logic, something need only be sufficiently original to be copyrightable and therefore useful under the Constitution.

For the Copyright Office, the Courts, or any other branch of government to evaluate whether a film or other creation is a "useful" art and deserving of copyright protection based on its artistic merits would constitute a content-based restriction. U.S. Const. Art. I § 8 cl. 8.  When modern courts have been invited to impose these subjective (and inevitably moralistic) restrictions on the *Bleistein* test, they have refused to do so.

> There is nothing in the Copyright Act to suggest that the courts are to pass upon the truth or falsity, the soundness or unsoundness, of the views embodied in a copyrighted work. The gravity and immensity of the problems, theological, philosophical, economic and scientific, that would confront a court if this view were adopted are staggering to contemplate. It is surely not a task lightly to be assumed, and **we decline the invitation to assume it**.

*Belcher*, 486 F.2d at 1088 (affirming copyrightability of material containing fraudulent misrepresentations) (emphasis added).

Copyright is *sui generis* among bodies of intellectual property law because it has specifically and deliberately grown to be content-neutral.[9]   By the 1909 Copyright Act's enactment, Congress had exorcised any provision that could act as a content-based restriction to copyright registration. *Mitchell Brothers*, 604 F.2d at 854-55.   In versions of the Copyright Act predating the 1909 law, Congress removed the provisions enabling content-based restrictions on copyright protection after Courts found that they could be used to limit copyright protections. *Id*. at 855 n. 4.   After the Circuit Court of California held in *Marinetti*, 16 F. Cas. at 923, that the 1856 Copyright Act's language limiting protection to works "designed or suited for public representation," Congress deleted this language from the next revision of its copyright laws, enacted in 1870. *Mitchell Brothers*, 604 F.2d at 855 n. 4.   Similarly, the *Bleistein* court reduced the 1874 Copyright Act's restriction on copyright protection to works "connected with the fine arts" to the originality test that today governs copyrightability and is memorialized in 17 U.S.C. § 102. 188 U.S. at 250-51.   In the wake of *Bleistein*, the 1909 Copyright Act washed away content-based limitations on copyright protection, and they have never returned. *Mitchell Brothers*, 604 F.2d at 855 n. 4.   Nevertheless, Fantalis asks this court to legislate from the bench and to put them back in.[10]

---

[9] "In contrast Congress has placed explicit content-related restrictions in the current statutes governing the related areas of trademarks and patents. The Lanham Act prohibits registration of any trademark that 'consists of or comprises immoral, deceptive, or scandalous matter,' 15 U.S.C. § 1052(a), and inventions must be shown to be 'useful' before a patent is issued. See 35 U.S.C. § 101." *Mitchell Brothers*, 604 F.2d at 855.   Accordingly, Congress could seek to add an "immoral and scandalous" prohibition to Title 17, if it so desired.   This would be unconstitutional, as is Section 2(a) of the Trademark Act, but it would at least demonstrate some congressional intent.

[10] In fairness to Fantalis, he is not the first litigant to raise it in this context: The plaintiff in *Wong v. Hard Drive Productions, Incorporated* raised this exact argument earlier this year. Case No. 5:12-cv-469 (N.D. Cal. Jan 30, 2012).   That case settled on undisclosed terms.

Thus, for more than 100 years, the Copyright Act has been free from any condition that its protection is based on a value judgment or moral test for any original work. By all appearances, Congress has been "hostile" to content-based restrictions on copyrightability. *Id.* at 855. In enacting the 1976 Copyright Act that still applies today, the legislature expressed a specific intent to avoid inquiry into the contents of copyrightable works and their respective merits:

> The phrase "original works of authorship," (§ 102) which is purposely left undefined, is intended to incorporate without change the standard of originality established by the courts under the present copyright statute. This standard does not include requirements of novelty, ingenuity, or Esthetic merit, and there is no intention to enlarge the standard of copyright protection to require them.

H.R.Rep.No. 1476, 94th Cong., 2d Sess. 51, Reprinted in (1976) U.S. Code Cong. & Admin. News pp. 5659, 5664. In addition to practical limitations of content review, both the Copyright Office and the Attorney General have recognized that "for policy reasons it may not be through appropriate for the Register [of Copyrights] to be a conservator of public morals." 41 Op. Att'y Gen. 395, 402 (1958). Accordingly, the *Mitchell Brothers* court concluded that there was no room for content-based analysis in determining what constituted a "useful art" under the Constitution:

> Congress has concluded that the constitutional purpose of its copyright power, "(t)o promote the Progress of Science and useful Arts," U.S. Const. art. 1, § 8, cl. 8, is best served by allowing all creative works (in a copyrightable format) to be accorded copyright protection regardless of subject matter or content, trusting to the public taste to reward creators of useful works and to deny creators of useless works any reward. It is not surprising that Congress would choose to rely on public acceptability as a measure of a work's worth rather than on the judgment of such public officials as the Register of Copyrights and federal and state judges. 604 F.2d at 855.

The *Mitchell Brothers* court's conclusion is as irresistible now as it was in 1979: Conditioning a work's copyright protections on its content is an impermissible content-based

restriction.  Moreover, it is contrary to the intent of the copyright laws and Copyright Act, which have been stripped of content-based restrictions at every opportunity.  By satisfying the tests of originality set by the Supreme Court and legislature, a copyrightable work is considered "useful" under the Constitution's copyright clause and, thus, entitled to all of the protections of Title 17.

Copyright law's unending goal has been to reward originality, rather than a creator's talent for creating works that are appealing to local judges, their communities, the Register of Copyrights, or Anthony Comstock. "It would be a dangerous undertaking for persons trained only to the law to constitute themselves final judges of the worth of pictorial illustrations," which is precisely why copyright law has turned a blind eye to the content of an original work and conferred it with rights and privileges solely based on its originality. *Bleistein*, 188 U.S. 251-52.

Copyright's reward for originality, rather than pandering to approved taste, is why this body of law incentivizes creators to contribute to the market for ideas, writings, drawings, and all other creative works.  Whether these works are created and desired is left to the public market for purchasing and licensing, where buyers and their demands determine what is made, and in what quantity. *Mitchell Brothers*, 604 F.2d at 855.  Protection under the Copyright Act ensures that original works, regardless of popularity and conventionality, are placed on the market with a safeguard of the creator's rights, so that he or she has security in the control and benefits of those creations, and so that the marketplace of ideas is as diverse as possible.

Any law that results in the blanket denial of copyright protection to adult entertainment would be a *de facto* content-based restriction of copyright registration.  This restriction on copyright protection is not supported by the law of the Supreme Court, this Circuit, or the Copyright Act and its prior incarnations.  Under the *Bleistein* test and the language of Title 17, government cannot look to the content of an author's creative work to assess whether it is

"useful" within the context of the times, or may be useful in the future and condition copyright protection on those grounds. There is no justification for new law, or a new test to usurp more than 100 years of content-neutral copyright legislation. Fantalis' request for this Court to perform an end-run around Congress and the Constitution itself must be rejected.

**C. The Negative Use of Copyright in Order to Suppress Certain Speech through Government Action is Inimical to Market Principles and Should be Denied.**

Both Congress and the courts have acted to ensure a broad sweep of copyright law, so that as many works as possible would benefit from its many protections. *Bleistein* intentionally set a low bar for copyrightability, so that any person demonstrating originality in their creation qualified for the Copyright Act's protections. The current version of 17 U.S.C. § 102 also reflects this desire to include as many people as those who have created an original work and seek to protect their intellectual labors in the marketplace. The purpose of the Copyright Clause and Copyright Act was to provide incentives for creation, particularly through establishing strong penalties to deter infringement (and compensate the author).

Fantalis seeks a Constitutionally repugnant outcome that is antithetical to the Copyright Act's purposes. A categorical rejection of copyright protection for pornography will serve no purpose but to cast a frigid chill over free expression and the protection of those original creations. Such a limitation would naturally progress beyond pornographic films, and would embrace literature and photographs as well, reaching its tendrils out to grasp erotica and then works that some may find objectionable for other reasons – swallowing ever more content in an expanding void of non-copyrightability. The restriction Fantalis seeks threatens to plunge protection for free speech back into a much darker era in American free expression.

Fantalis' view would remove an important incentive for the adult entertainment industry to create and participate in the commercial marketplace, thus collaterally constricting the marketplace of ideas. If Fantalis prevails, the damage would not, and could not be, compartmentalized. The natural and immediate consequence of such an action will be less – not more – participation in a marketplace that would quickly erode into artwork created for individual consumption via commissioning, depicting only the desire of the patron – not the artist. In a market where both intellectual property protections and replication technologies exist, "copyright protection is a necessary precondition for profitable content creation."[11] Indeed, it is not mere infringement, but the lack of protection and avenue for redress that will force speakers into silence and cause the marketplace of ideas to contract:

> Once we concede that harm to market-based incentives to speak in the future is harm to First Amendment-protected interests, however, it makes little sense to limit the cognizable class of speech-suppressing private acts to that which merely copies and sucks off profits. It is not the profit-making or even the profit-stealing nature of the infringement that is constitutionally relevant. It is the decrease in the speaker's incentive to speak, which could also be caused by speech that derided her or by speech so pervasive that her message was lost, that triggers First Amendment interests on her side. Tushnet, 42 B.C. L. Rev at 45.

If the Court accepts Fantalis' arguments (Doc. # 39 at 50-51), the universe of available copyright protection will shrink, even as technology continues to grow at a seemingly boundless pace. This result will be contrary to the founders' intent in staking out intellectual property protections in the Constitution itself. When previously considering a similar dilemma, the Ninth Circuit opined that "[w]e fail to see what public policy would be served by eliminating this restriction." *Belcher*, 486 F.2d at 1088 n.3. By allowing authors to control their creations, a

---

[11] Chrisian Handke, *The Innovation Costs of Copyright* (2011), *available at* http://www.serci.org/2011/Handke.pdf (*last accessed* July 30, 2012).

market for their sale and copying will be sustained, and will continue to be the engine driving our diverse marketplace of ideas.

While the copyright limitations Fantalis seeks may start out aimed at the adult industry, and potentially even solely affecting it, it is certain that it would bleed into other creative sectors and discourage their production as well. The message sent by requiring a subjective analysis of utility as a prerequisite to copyright registration is clear: If someone disapproves enough about what you make to complain to a court about it, even when their position is unsupported by law, you will be denied your Constitutional ability to protect it. The casualties of such legal poison will be far-reaching and indiscriminate.

## IV.    Conclusion

There is no novel issue before the Court – a quest to strip an entire industry of its Constitutionally guaranteed protections for original works. There is no room in the Copyright Act or under the Constitution for the subjective preferences or moral compasses of the courts, legislature, or Copyright Office to determine which original works are accorded copyright protection.

Often, the adult industry stands at the wall, as a guardian of the First Amendment. The industry's very nature goes to the very heart of human emotion, drawing responses of both captivation and shock. Whatever one thinks of pornography, the Copyright Act, the Copyright Clause, and The First Amendment all return the favor and protect the adult entertainment industry. Fantalis' contentions that pornography is illegal, depicts unlawful conduct, is obscene, or is not a "useful" art, (even if accepted) do not change this entitlement to protection. To the contrary, the fact that sentiments such as these still exist demonstrate why continued protection

for adult entertainment is so vital.  If we allow the use of censorship as a tool to lash out against an industry that one litigant finds unsavory, the costs will be immeasurable.

There is no basis for denying pornography or any other original creation the fundamental and equal protection of these laws.  Entertaining this argument invites censorship in a realm where content has no bearing on legal protection.  That Fantalis' position has even been advanced, however, shows that it is of great importance that this Court render a strong opinion on the matter – an opinion that keeps us in modern times, and that affirms that pornography, like any other original work, is entitled to protection under the Copyright Act.

Dated this 13th day of August, 2012.

COUNSEL FOR AMICUS CURIAE

By:  ___/s/ Marc J. Randazza_____
Marc J. Randazza
National Secretary
First Amendment Lawyers Association
c/o Randazza Legal Group
6525 W. Warm Springs Road, Suite 100
Las Vegas, NV 89118
O:  (888) 667-1113
F:   (305) 437-7662