FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

SEP 2 1 2012

JEFFREY P. COLWELL
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:12-cv-00886 MEH

Malibu Media, LLC,

     Plaintiff,

v.

Jeff Fantalis and Bruce Dunn

     Defendants.

### DEFENDANT/COUNTERCLAIMANT'S RESPONSE TO PLAINTIFF'S MOTION FOR RULE 11 SANCTIONS

     Defendant, Jeff Fantalis, by way of response to Plaintiff's motion for sanctions pursuant to Fed.R.Civ.P. 11, hereby says:

### FACTUAL AND PROCEDURAL BACKGROUND

     The current action is part of what one Court described as "a nationwide blizzard of civil actions brought by purveyors of pornographic films alleging copyright infringement by individuals utilizing a computer protocol known as BitTorrent." *In re BitTorrent Adult Film Copyright Infringement Cases*, 2012 U.S. Dist. LEXIS 61447 *1 (E.D.N.Y. 2012). That same judge noted that "more than 220,000[1] individuals have been sued since mid-2010 in mass BitTorrent lawsuits, many of them based upon alleged downloading of pornographic works." *Id.* Numerous other courts, when confronted by largely identical mass cases involving allegations of downloading of pornographic films through BitTorrent protocols, have similarly recognized such

---

[1] Upon information and belief, based upon current news reports and court docket information, Defendant estimates that this number is now likely well over 300,000.

litigation schemes for what they are: vehicles for leveraging settlements out of defendants, regardless of their guilt or innocence.  For example, Justice Beeler of the U.S. District Court for the Northern District of California pointedly stated that:

> "[c]opyright infringement cases such as this ordinarily maintain a common arc: (1) a plaintiff sues anywhere from a few to thousands of Doe defendants for copyright infringement in one action; (2) the plaintiff seeks leave to take early discovery; (3) once the plaintiff obtains the identities of the IP subscribers through early discovery, it serves the subscribers with a settlement demand; (4) the subscribers, often embarrassed about the prospect of being named in a suit involving pornographic movies, settle. *IO Group, Inc. v. Does 1-435*, No. C 10-04382 SI, 2011 WL 445043, at *6 (N.D. Cal. Feb. 3, 2011). **Thus, these mass copyright infringement cases have emerged as a strong tool for leveraging settlements – a tool whose efficiency is largely derived from the plaintiffs' success in avoiding the filing fees for multiple suits and gaining early access *en masse* to the identities of alleged infringers**...[Plaintiff] and its counsel appear content to force settlements without incurring any of the burdens involved in proving their cases. And, while the courts favor settlements, "filing one mass action in order to identify hundreds of doe defendants through pre-service discovery and facilitate mass settlement, is not what the joinder rules were established for." *IO Group, Inc.*, 2011 WL 445043 at *6."
>
> *MCGIP, LLC v DOES 1-149*, (N.D. Cal. Sept 21, 2011) Order Denying Plaintiff's Motion

for Leave to File an Amended Complaint. (Dkt. No.  14) page 5-6 n5 (emphasis added).

In the Central District of California, Judge Wright has stated, "The Court will not idly watch what is **essentially an extortion scheme**, for a case that plaintiff has no intention of bringing to trial." *Malibu Media LLC v. John Does 1-10*, 2:12-cv-03623, Order, June 27, 2012, at p. 6 (emphasis added).

This Court may take judicial notice of the fact that Plaintiff has filed approximately 335 essentially identical BitTorrent copyright infringement lawsuits in approximately a dozen separate Federal jurisdictions across the country against several thousand John Doe defendants. Plaintiff's strategy appears to be to ignore all of its Rule 11 obligations and forge ahead with evidence it knows to be flawed and file merely a token number of suits against named defendants so as to: 1) provide a patina of legitimacy over its questionable efforts and attempt to mitigate Defendant's claims of abuse of process; and 2) use a small handful of

named defendants to further leverage quick easy settlements from others. Indeed, Plaintiff's actions thus far clearly indicate it has a desire to name Defendant and show up to status conferences, but does not wish to move this case forward except to protect against liability that itself has created. Regardless, out of the thousands, only a scant handful of these John Does have been named and served; none have gone to trial or reached any meaningful discovery. This Defendant is the only one who has gone as far as attempting to even obtain discovery from Plaintiff, which attempts, as will be addressed in later filings, have been unnecessarily and frivolously obstructed by Plaintiff.

## LEGAL ARGUMENT

### I.     RULE 11 STANDARDS

Plaintiff moves for sanctions under Fed.R.Civ.P. 11(b).  Specifically, Plaintiff objects to Defendant's counterclaims, asserting under Rule 11(b)(2) that Defendant's "claims, defenses, and other legal contentions" are not "warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law" and also that, under Rule 11(b)(3), the factual claims in Defendant's First Amended Answer and Counterclaim lack "evidentiary support" or "will [not] likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed.R.Civ.P.11.

### A.  PLAINTIFF'S MOTION FAILS TO MEET THE PROPER STANDARD UNDER R. 11

Plaintiff's only factual and/or legal assertion in its moving papers consists of the naked claim that "Defendant has filed frivolous counterclaims." (Pl. Mot. For Sanctions, ¶4). Plaintiff makes no further argument. Instead, Plaintiff refers to its previously filed Motion to Dismiss and attaches a copy thereof to its moving papers. In doing so, Plaintiff completely disregards the fact that the standards for a motion to dismiss and those for a motion for sanctions under R. 11 are

entirely different and distinct.  Such an oversight is likely fatal to Plaintiff's attempt to impose sanctions on Defendant.

Specifically, with regard to those differing standards, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 U.S. 1937, 1949 (2009) (quoting *Bell Atl. Corp., v. Twombly*, 550 U.S. 544, 570). In addition, the Court must "assume the factual allegations are true and ask whether it is plausible that the plaintiff is entitled to relief." *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009).   In contrast, when considering a motion for sanctions under R. 11, the court employs a much higher, more stringent level of scrutiny. Specifically:

> An objective standard of reasonableness is applied to determinations of frivolousness as well as improper purpose. *Zaldivar*, 780 F.2d at 830-31. The key question in assessing frivolousness is **whether a complaint states an arguable claim** — not whether the pleader is correct in his perception of the law. *Id.* at 830, 832. Therefore, courts "do not examine the complaint in the same manner as a court considering a Rule 12(b)(6) motion," because **ultimate failure on the merits is irrelevant**. *Id.* at 832.

*Hudson v. Moore Business Forms*, 836 F. 2d 1156, 1159 (9th Cir. 1987) (emphasis added). In fact, under *Zaldivar v. City of Los Angeles*, even if the pleading fails to survive a motion to dismiss or for summary judgment, this is insufficient to result in automatic sanctions under Rule 11:

> It is obvious from the text of the Rule that the pleader need not be correct in his view of the law. Thus the granting of a motion to dismiss the complaint for failure to state a claim, or the granting of a summary judgment against the pleader is not dispositive of the issue of sanctions. The pleader, at a minimum, must have a 'good faith argument' for his or her view of what the law is, or should be. A good faith belief in the merit of a legal argument is an objective condition which a competent attorney attains only after 'reasonable inquiry.'

780 F.2d 823, 830-831 (9th Cir. 1986).

The Rules themselves anticipate that the Court will impose a standard of "reasonableness". In *Century Products, Inc. v. Sutter*, the court observed, "The Notes of Advisory Committee on Rules provide: 'The new language stresses the need for some pre-filing inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule. The standard is one of reasonableness under the circumstances....'" 837 F.2d 247, 250 (6th Cir. 1988). The court continued: "The Notes caution, however: "The rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories...." *Id.* See also *Motown Productions, Inc. v. Cacomm, Inc.,* 849 F.2d 781, 785 (2d Cir. 1988)("In sum, this court has sought to further a construction of Rule 11 that allows innovation and zealous representation while punishing 'only those who would manipulate the federal court system for ends inimicable to those for which it was created.'").

Thus, under Rule 11(b), the burden on a party is not to show it will ultimately prevail, but merely to show there is likely to be support for the pleading. Specifically, when implementing the sections to this rule, the 1993 Advisory Committee Notes explain: "The certification is that there is (or likely will be) 'evidentiary support' for the allegation, not that the party will prevail with respect to its contention regarding facts." Fed. R. Civ. P. 11(b) advisory committee's note. The rule requires counsel to "stop and think" before making its filing, which Defendant did to the best of his ability, given the existing facts: he is not an attorney, he works full-time, Plaintiff was under no obligation at that point to provide Defendant with any discovery, and there was a very short amount of time (21 days) provided by the Rules within which to Answer or otherwise respond to Plaintiff's Complaint in the first instance and Plaintiff's Motion to Dismiss in the second. Given those limitations, the Answers and Counterclaims filed by Defendant (all three) demonstrate a great deal of personal investigation, diligence and hard work, and a determination to get the facts as correct as possible and to tie those facts to proper legal theories. As detailed below, Defendant certainly concedes that several of his legal theories

might require a new interpretation or extension of the law into areas not previously explored as is warranted by the circumstances of this case; however, at all times, Defendant has acted reasonably and in good faith with the facts available to him in an effort to vindicate his rights as best he can.

### B. PLAINTIFF'S R.11 MOTION WAS FILED FOR AN IMPROPER PURPOSE

Rule 11 should not be used as a litigation tactic. "[Rule 11 motions] should not be employed as a discovery device or to test the legal sufficiency or efficacy of allegations in the pleadings.... Nor should Rule 11 motions be prepared... to exact an unjust settlement, **to intimidate an adversary into withdrawing contentions that are fairly debatable**, [or] to increase the costs of litigation...." Fed. R. Civ. P. 11(d) advisory committee's note (emphasis added); see also *United States ex rel. Maxwell v. Kerr McGee Oil & Gas Corp.,* 2010 U.S.Dist. LEXIS 21033 *20 (D.Colo. 2010)(recognizing that Rule 11 should not be used to raise issues of legal sufficiency that are more properly decided in a motion to dismiss or motion for summary judgment).

Where, as here, Plaintiff has threatened Defendant repeatedly with sanctions, has already demonstrated extreme and unreasonable recalcitrance in discovery[2], has made not one single effort to move this case forward apart from trying to intimidate Defendant into withdrawing his counterclaims, has shown a pattern of intimidation tactics in Defendant's case and other cases in an effort to obtain financial settlements, and where the result sought by Plaintiff is Defendant's withdrawal of "contentions that are fairly debatable" which would benefit only Plaintiff, it is respectfully suggested that no other interpretation can be placed upon this motion

---

[2] It should be noted by the Court that Defendant has not yet received even a single document under either Rule 26 or Rule 34. Further, despite Defendant's good faith personal conferral, Plaintiff has refused to supply any of the requested discovery, nor answer numerous Requests for Admission and Interrogatories. It is anticipated that Defendant will file a motion to compel with the Court in due course. In short, it is perhaps disingenuous at best for Plaintiff to argue on the one hand that Defendant will not find evidentiary support for his claims after a "reasonable opportunity for further investigation or discovery" Fed.R.Civ.P.11, when Plaintiff has frustrated all attempts at legitimate discovery. Such facts alone warrant denial of this motion.

for sanctions. Indeed, based upon Plaintiff's currently pending motion to dismiss, the current request for sanctions could fairly be characterized as unwarranted and frivolous. 28 U.S.C. §1927; Fed.R.Civ.P. 11(d).

## C. THE CURRENT CASE RAISES NUMEROUS ISSUES OF FIRST IMPRESSION MAKING IMPOSITION OF SANCTIONS INAPPROPRIATE

It should be noted that mass BitTorrent lawsuits such as this one before the Court represent a new area of law presenting new facts and technologies never before evaluated by any Court. As such, this case raises numerous issues of first impression within this Circuit, making the imposition of sanctions inappropriate. See e.g., *Coghlan v. Starkey*, 852 F.2d 806, 811 n.8 (5th Cir.1988) (parties who argue points of first impression in a circuit are not ordinarily the recipients of a Rule 11 sanctions order.); *Brubaker v. Richmond*, 943 F.2d 1363, 1378 (4th Cir.1991) (same); *Securities Indus. Ass'n v. Clarke*, 898 F.2d 318, 321-22 (2nd Cir.1990) (same); *Marquardt v. N. Am. Car Corp.*, 652 F.2d 715 (7th Cir.1981) (declining to impose sanctions because appeal presented an issue of first impression). Further, Rule 11 is not intended to deter the exploration of novel arguments raised in the absence of binding precedent but rather to deter frivolous lawsuits. See, *Rueter v. Merrill Lynch, Pierce, Fenner & Smith*, 440 F. Supp. 2d 1256, 1266 (N.D. Ala. 2006); see also, *Greeley Publ'g Co. v. Hergert*, 233 F.R.D. 607, 612 (D. Colo. 2006). See also *Vanover v. Cook*, 77 F. Supp.2d 1176, 1177 (D. Kan. 1999) (noting that "where the law is arguably unclear, Rule 11 sanctions should not be imposed").

As pointed out in Defendant's First Amended Answer and Counterclaim, in the last two years, it is estimated that over 200,000 John Doe defendants have been sued for alleged copyright infringement via BitTorrents based upon nothing more than an IP address.[3] *In re BitTorrent Adult Film Copyright Infringement Cases, supra.* After considerable research, and owing to the reluctance of the various Plaintiff's involved in what has been termed "copyright-

---

[3] As noted above, at this time, that number is believed to be approximately 300,000 and rising.

trolling" to submit to any judicial review, Defendant has been unable to discover a single case that has reached summary adjudication on the merits, let alone trial to a verdict or appellate review. In fact, Defendant is not aware of even a single case that has reached a significant level of discovery.  As such, the case before this Court presents a variety of unique factual, legal, evidentiary and other concerns that are literally issues of first impression not only in this District but across the entire country.  Plaintiff's invocation of Rule 11 is clearly undercut by the novelty of this case and as such, at a minimum this request should be set aside until such time as a full record can be established for the Court to evaluate, if not dismissed outright.

### D.  DEFENDANT'S PLEADINGS ARE LEGALLY SUFFICIENT

In each of Defendant's counterclaims (and affirmative defenses), Defendant sets forth allegations sufficient to support a reasonable and cogent legal argument for a finding in his favor either under existing law or under a non-frivolous extension, modification or reversal of existing law.

Under the Federal Rules, a pleading is required only to be a "short and plain statement of the claim" (Fed. R. Civ. P. 8(a)) that is "simple, concise, and direct." (Fed. R. Civ. P. 8(e)). It is sufficient if the complaint concisely states facts upon which relief can be granted on *any* legally sustainable basis.  See *Evans v. McDonald's Corp.*, 936 F.2d 1087 (10th Cir. 1991) (emphasis added); *Newman v. Silver*, 713 F.2d 14 (2d Cir. 1983); *see also New Home Appliance Center, Inc. v. Thompson*, 250 F.2d 881 (10th Cir. 1957); *Zorn v. Helene Curtis, Inc.*, 903 F. Supp. 1226 (N.D. Ill. 1995) ("And it is settled law that a complaint need not point to the appropriate law in order to raise a claim for relief under Fed. R. Civ. Pro. 8; rather, a complaint sufficiently raises a claim so long as relief is possible under any set of facts that can be established consistent with the allegations."). By its very language, Rule 11 simply requires that there only be support for the papers filed. It does not address the legal adequacy of the

pleading.   Defendant's pleadings have adequately placed Plaintiff on notice of its cognizable claims supported by available factual assertions.   That Plaintiff finds Defendant's underlying legal theories objectionable is simply not relevant under a Rule 11 analysis.

### E.   DEFENDANT HAS PLED FACTS SUFFICIENT TO SUPPORT HIS CLAIMS

Defendant's "claims, defenses and other legal contentions" are clearly "warranted by existing law or by a non-frivolous argument for extending, modifying or reversing existing law or for establishing new law", and the factual claims in the First Amended Answer and Counterclaim are supported by facts already in the record. Fed.R.Civ.P. 11. Despite Plaintiff's refusal thus far to turn over one single document, and its refusal to fully and honestly answer most of Defendant's Requests for Admission or Interrogatories, Defendant's claims will only be further supported "after a reasonable opportunity for further investigation or discovery." *Id.* Defendant's Amended Answer and Counterclaims are incorporated in their entirety into this response and the allegations spelled out therein speak for themselves. However, in an effort to more fully explain for the Court Defendant's positions, a selected few allegations that support its claims will be explored in greater detail.

### 1.   DEFENDANT HAS PLED FACTS SUFFICIENT TO SUPPORT A CLAIM OF ABUSE OF PROCESS

First, upon information and belief, Plaintiff has entered into an illegal and barratrous and/or champertous financial arrangement with attorneys and with a significantly financially interested technology company whereby: 1) the technology company collects IP addresses off the internet; 2) the attorneys file lawsuits with that information, misrepresenting to the court that the owner of the IP address undoubtedly and without question IS the infringer; 3) the pornography company and/or the attorney employs third party "negotiators" to harass and pressure John Doe defendants into settling for thousands of dollars; and 4) the pornography

company and their attorneys remain willfully blind to significant exculpatory evidence as well as serious errors in their own IP collection methods.

A more detailed listing of factual allegations in support of Defendant's claim follows:

**Barratry, Champerty, Maintenance and Officious Intermeddling**: Defendant has alleged that Plaintiff has engaged in an illegal and fraudulent barratrous relationship as well as engaging in officious intermeddling. In addition, while the common law torts of maintenance and champerty no longer exist in Colorado, *Fastenau v. Engel*, 125 Colo. 119, 122 (Colo. 1952), such common law claims are still recognized in other jurisdictions and as such, Plaintiff seeks a good faith extension of the law in this area.  In particular, a "champertous agreement is one in which a person without interest in another's litigation undertakes to carry on the litigation at his own expense, in whole or in part, in consideration of receiving, in the event of success, a part of the proceeds of the litigation." *Schwartz v. Eliades*, 113 Nev. 586, 589-590 (Nev. 1997) citing *Martin v. Morgan Drive Away, Inc.,* 665 F.2d 598, 603 (5th Cir. 1982), cert. dismissed,  458 U.S. 1122, 73 L. Ed. 2d 1394, 103 S. Ct. 5 (1982). "To maintain the suit of another is now, and always has been, held to be unlawful, unless the person maintaining has some interest in the subject of the suit." *Lum v. Stinnett*, 87 Nev. 402, 408, 488 P.2d 347, 350 (1971) (citing *Gruber v. Baker*, 20 Nev. 453, 23 P. 858, 862 (1890)).  As stated by one California court, the purpose of champerty laws "is to prevent the officious fomenting of litigation. The outright purchasing by attorneys of claims which perhaps otherwise would never be sued upon obviously would tend to stir up a good deal of litigation if it were permitted…" *Martin v. Freemen*, 216 Cal.App.2d 639, 31 Cal.Rptr. 217 (1963).

Here, Plaintiff is not engaging in a simple contingent fee relationship with an attorney based upon a valid claim.  Rather, Plaintiff, its attorneys and the IP collection company are engaged in a multi-level economic transfer which hinges upon the generation of litigation that

would not otherwise occur and in which the financial benefit of each party is contingent upon their successful – not their truthful and ethical – performance. Based on information uncovered already through Defendant's own efforts, it will be shown that, in fact, it was the IP harvesting company and attorneys themselves that sought out Plaintiff to act as, what can best be described as merely a proxy Plaintiff, for the real financially interested parties.

Defendant has alleged in the First Amended Answer and Counterclaim that, upon information and belief, Plaintiff may not even have any other business than bringing and profiting from these lawsuits. Many of the plaintiffs who maintain these mass copyright infringement lawsuits are shell corporations set up solely for the purpose of purchasing minimal copyrights – the right to sue for infringement – and have no other business purpose. Unfortunately, without discovery from Plaintiff, Defendant has no evidence as of yet to determine the truth of this allegation. However, Defendant does have evidence, not yet in pleadings before the Court but available to the public, of statements against interest made by Brig Field, the owner and/or CEO of Plaintiff, that he was approached by counsel with the idea of suing thousands of individuals for copyright infringement, rather than vice versa, and that Plaintiff receives only 10% of the settlements received from the lawsuits, the remainder being split between the attorneys and the IP harvesting company.[4]   Defendant asserts that such a relationship, which is clearly designed to foment and generate litigation which otherwise would never have taken place, is evidence of an abuse of process; is barratrous; is champertous; is officious intermeddling; and is illegal; and that if the Court does not find it to be so under existing law, that the law should be extended to recognize such an illegal relationship as an abuse of process.

---

[4] Such statement will be further explored as discovery proceeds, however such statements against interest may be heard at: http://fightcopyrighttrolls.com/2012/05/27/no-agenda-show-about-copyright-trolling-its-a-complete-mafioso-operation/

**Bad Faith Pleading**: Although Plaintiff knew at the time of the filing of its Complaint – both in this matter and in all of its cases across the country – that the IP address it collected gives a code to a device, not the identity of a human being, it nevertheless falsely and knowingly represented to this Court and other courts that the IP address would definitively reveal the infringer. In Plaintiff's Motion For Leave to Serve Third Party Subpoenas Prior to a Rule 26(f) Conference, Plaintiff asserted: "Since Defendants used the Internet to commit their infringement, Plaintiff only knows Defendants by their Internet Protocol ("IP") addresses." (Malibu Media v. John Does 1-30, 12-cv-402-WYD, Motion at p. 1). At that point, the identities of those John Doe defendants was, by definition, unknown to Plaintiff, so Plaintiff could not in truthfulness represent to the Court anything regarding the volitional conduct of those individuals. All Plaintiff had at that point was a list of numbers.

The idea that an IP address reveals an infringer has been universally rejected by the courts. *In re BitTorrent Adult Film Copyright Infringement Cases*, 2012 U.S. Dist. LEXIS 61447 at *9 (E.D.N.Y. 2012); *Third Degree Films v. Doe*, 2011 U.S. Dist. LEXIS 128030, *9 (N.D. Cal. 2011); *See also, Pacific Century Intern. Ltd. v. Does 1-101*, 2011 U.S. Dist. LEXIS 124518, *2 (N.D. Cal. 2011); *AF Holdings LLC v. Does 1-96*, 2011 WL 5864174, at *4; *Digital Sin, Inc. v. Does 1-5698*, 2011 WL 5362068, at *4 (N.D. Cal. Nov. 4, 2011); *SBO Pictures, Inc. v. Does 1-3036*, 2011 WL 6002620, at *3(N.D. Cal. 2011); e.g. *In re: Ingenuity 13 LLC* , No. 2:11-mc-0084-JAM-DAD, Order [Doc. No. 24], at *10 (E.D. Cal. 2012) ("the identities of the subscribers associated with the identified IP addresses … would not reveal who actually downloaded petitioner's work, since the subscriber's internet connection could have been used by another person at the subscriber's location, or by an unknown party who obtained access to the subscriber's internet connection without authorization").

Plaintiff has been specifically warned by various Courts that "there is a reasonable likelihood that [the Does] may have had no involvement in the alleged illegal downloading that

has been linked to his or her IP address." *Malibu Media, LLC v. John Does 1-11*, 2012 U.S. Dist. LEXIS 94648 (D.D.C. July 10, 2012). Indeed, as one judge observed in another identical Bittorrent case, "**Plaintiff's counsel estimated that 30% of the names turned over to the ISP's are not those of the individuals who actually downloaded or shared copyrighted material**." Digital Sins, Inc. v. Does 1-176, 2012 WL 263491, at *3 (S.D.N.Y. Jan. 30,2012); see also *Hard Drive Productions, Inc. v. Does 1-130*, 2011 WL 553960, at *2 (N.D. Cal., 2011) ("Plaintiff concedes, in some cases the Subscriber and the Doe Defendant will not be the same individual"); *Pac. Century Int'l Ltd. v. Does 1-101*, 2011 WL 5117424, at *2 (N.D. Cal. 2011).

Under Rule 11, Plaintiff had a duty to engage in pre-filing inquiry, once it obtained the identifying information of the John Does, in order to determine whether they, as the subscribers who were associated with the IP address, were in fact the infringers and not merely victims of some other person's misconduct. Plaintiff's failure to do so violates Rule 11's requirement that "the factual contentions [of its Complaint] have evidentiary support..." Moreover, an attorney's signature on a pleading indicates that "to the best of his or her knowledge, information and belief there is good ground to support the contentions in the document, both in terms of what the law is or should be and in terms of the evidentiary support for the allegations..." *The Elements of the Standard of Certification*, 5A Fed. Prac. & Proc. Civ. § 1335 (3d ed.). Despite these clear directives, Plaintiff went ahead with filing its pleadings – and Plaintiff's attorney signed them – knowing that the IP address it had proved nothing as far as Defendant's liability, and that in fact, nearly, if not more than, one-third of the individuals Plaintiff was suing did not download the pornographic works in question. Despite this knowledge, Plaintiff alleges as fact that Defendant engaged in "willful" and "intentional" violation of Plaintiff's copyright. (Complaint, ¶¶1-4).

**Failure To Conduct Pre-Filing Inquiry**:  Plaintiff has already been warned by one court that it has engaged in a pattern of litigation behavior that was inappropriate, abusive and unfair. Judge Brown in *In Re BitTorrent Adult Film Copyright Infringement Cases*, *supra*, stated: "[P]laintiffs have employed abusive litigation tactics to extract settlements from John Doe

13

defendants." 2012 U.S. Dist. LEXIS 61447 at *19 (E.D.N.Y. 2012)[5].  The Court even identified instances where this Plaintiff was offered, and refused, the opportunity to conduct Rule 11 pre-filing investigation:  "In this case, John Doe #16 offered the plaintiff "unfettered access" to his computer and employment records demonstrating that he was not at home at the time of the downloading, yet still finds himself pressured to settle for thousands of dollars. It would be difficult to characterize such a resolution as "just" even if speedy and inexpensive for the plaintiff" *Id.* at 28 (internal quotations omitted). The I*n Re Bittorrent* court went so far as to describe Plaintiff's justifications for such tactics as "rambling" and "farcical." *Id*. at n7.

Plaintiff has been specifically warned by other Courts that proceeding against an incorrectly identified Defendant -- as is the case here -- would result in the imposition of sanctions. See *Malibu Media, LLC v. Doe*, 2012 U.S. Dist. LEXIS 110668, *6-7 (M.D. Fla. Aug. 7, 2012) (The plaintiff shall inform each John Doe defendant of the potential for sanctions under Rule 11, Fed.R.Civ.P., if the John Doe defendant is incorrectly identified.) See also *Hard Drive Productions v. Does 1-48*, No. 11-9062, 2012 U.S. Dist. LEXIS 82927, 2012 WL 2196038, *6 (N.D. Ill. June 14, 2012) (warning plaintiff to consider Rule 11 before naming defendant who disputed that he had illegally downloaded pornographic movie).

Based upon Plaintiff's verifiable pattern of such highly questionable litigation behavior as documented in such cases and set forth in the First Amended Answer and Counterclaim, it is not unreasonable or entirely implausible to suggest that Plaintiff seeks the imposition of sanctions merely as a litigation tactic meant not to "discourage frivolous litigation, [but] to punish litigants." *Greeley Publ'g Co, supra, at 612.* Further, as specifically pled, consistent with Plaintiff's business model, such intimidation tactics are meant to extend to the hundreds of potential named and unnamed litigants Plaintiff has already sued and will continue to sue, in order to encourage quick settlements. (Def. Counterclaim ¶15; Ex. B).  Such actions support a claim of abuse of process.

---

[5] Plaintiff Malibu Media LLC was one of the plaintiffs in that case.

**Abusive Litigation Tactics in Colorado:**  The same litigation tactics that the New York court condemned as "inappropriate, abusive and unfair," Plaintiff has engaged in here in Colorado.  See, Declarations of Christina Saunders, Esq., John Arsenault, Esq., and David S. Kerr, Esq., and Lindsey Maness all attached hereto as **Exhibit A**.  Such behavior by Plaintiff supports Defendant's allegation that it is Plaintiff's intention to refuse any offer of exculpatory evidence while threatening to expose defendants' identities in order to improperly leverage settlement negotiations. *Sunlust Pictures LLC v. Doe*, 2012 U.S.Dist. LEXIS 121368 (N.D.Ill. Aug. 27, 2012).  In addition, Defendant provided the Declaration of another John Doe as Exhibit E to the First Amended Answer and Counterclaim which indicated the level of harassment, verbal abuse and threats to which that John Doe was subjected to by agents acting on Plaintiff's behalf.  Thus, Defendant has not alleged some fanciful, theoretical model of abuse, but has offered facts in support of Plaintiff's pattern of abuse, not only across the nation but specifically here in Colorado. Clearly Plaintiff's goal is to remain willfully blind to all exculpatory evidence, which would have reasonably extended to Defendant, merely to leverage quick and profitable settlements.

**Plaintiff And Its Attorneys Have Demonstrated Ulterior Motives Behind This Suit And Other Suits**:  Despite the fact that Plaintiff and its counsel knows that an IP address does not represent an individual and does not, in fact, lead inevitably to the infringer, Plaintiff acts as though that is the case without doing any independent investigation or discovery; and in fact, as noted above, affirmatively refuses to receive any exculpatory evidence from the individuals it has sued.  Plaintiff clearly is not attempting to collect information as it knows no information collected can indeed help its case; in fact, the more information comes out, the clearer it is that Plaintiff has no way to prove its allegations. This willful ignorance as to a defendant's guilt or innocence, where Plaintiff uses litigation as a weapon to intimidate innocent individuals into settling groundless claims, is an ulterior motive which is evidence of an abuse of process.

In addition, Defendant has pled that one ulterior motive behind this suit against him was part of Plaintiff's overall litigation business model: namely, that Defendant's case was one of a handful of token lawsuits brought against named individuals in order to provide a patina of legitimacy and to act as a threat to other Doe defendants who will not settle. (First Answer & Counterclaim ¶149).   Indeed, Plaintiff in this jurisdiction filed a mere handful of individual suits only after being issued an Order to Show Cause by the Court for failure to prosecute such cases. It filed a handful more only after it was sued for abuse of process. Bringing lawsuits based on false and misleading pleadings based on flawed evidence against likely innocent individuals and shirking all continuing Rule 11 obligations solely to insulate against the liabilities of Defendant's counterclaims is clearly an inappropriate ulterior motive.   Such actions support a claim of abuse of process.

**Joinder of Dozens of Does**:   Plaintiff sued dozens of Doe defendants at once in every case, despite the fact that it had no evidence to properly join these individuals.   As a result, Plaintiff has saved hundreds of thousands of dollars in filing fees in potential violation of federal law. 31 U.S.C. 3729; (First Amended Answer & Counterclaim ¶149).   As noted by Judge Martinez in an Order in *Malibu Media v. Felitti et al*, there is no "undue prejudice" in requiring Plaintiff to pay a separate filing fee for each defendant; rather, "payment of a separate filing fee for its claim against each Defendant properly balances the Plaintiff's right to protect its copyright with the Court's interest in cost-efficient adjudication of cases." Order Finding Joinder Improper, 1:12-cv-1522-WJM (Dist. Colo. July 25, 2012).   Moreover, at least one other court has expressed concerns about the manner in which Plaintiff and other pornography companies have lumped together multiple defendants into one lawsuit:   "This course of conduct indicates that the plaintiffs have used the offices of the Court as an inexpensive means to gain the Doe defendants' personal information and coerce payment from them." *K-Beech, Inc. v. John Does*

*1-85*, Memorandum Order, 3:11-cv-469-JAG (E.D.Va. Oct. 5, 2011). These actions support a claim for abuse of process.

**Financial Inability To Pursue Litigation In Good Faith**: Defendant has alleged that Plaintiff knew at the time of filing that it could not in good faith litigate even a fraction of the lawsuits it has commenced. This is due to several factors: for one thing, Plaintiff knew that it could not afford the potential financial exposure due to the fee-shifting provisions of the Copyright Act; for another, Plaintiff's counsel did not have the time or the resources to diligently litigate each and every claim. As such, at the time of filing each lawsuit against Doe defendants, Plaintiff knew that its goal was only to obtain identifying information, forward that information to a third party which provides these harassing "settlement negotiation" services, and to obtain money from the Doe defendants, regardless of whether they had infringed Plaintiff's copyrights or not. See *K-Beech, Inc. v. Does 1-85*, 2011 U.S. Dist. LEXIS 124581, at *6 (E.D.Va. Oct. 5, 2011) ("Some defendants have indicated that the plaintiff has contacted them directly with harassing telephone calls, demanding $2,900 in compensation to end the litigation") and *Patrick Collins, Inc. v. Does 1-58*, 2011 U.S. Dist. LEXIS 120235, at *6 (E.D.Va. Oct. 5, 2011) (same); cf. *Raw Films, Ltd. v. Does 1-32*, 2011 U.S. Dist. LEXIS 114996, 2011 WL 6182025, at *2 (E.D.Va. Oct. 5, 2011)(same).

**Summary**: Defendant makes a good faith argument, with a good faith belief, that once a trier of fact has reviewed all of Plaintiff's conduct in this case[6], it will find that Plaintiff has abused the privilege of litigating in the Federal court system. However, under *Zaldivar*, the question is not whether or not Defendant will prevail at trial on this claim, but whether the Counterclaim in good faith "states an arguable claim". Respectfully, on the face of the First Amended Answer and Counterclaim, it is clear that Defendant has done so.

---

[6] Much of the proof of Plaintiff's misconduct rests, naturally, in Plaintiff's own hands. Thus far, Plaintiff has proven unwilling to turn over anything – not a single document – to Defendant despite Defendant's discovery requests and the requirements of Rule 26.

## 2. DEFENDANT HAD PLED FACTS SUFFICIENT TO SUPPORT A CLAIM FOR INVASION OF PRIVACY

Defendant, who is not a lawyer, was unaware of the decision in *Denver Publ. Co. v. Bueno*, 53 P.3d 893 (Colo. 2002) regarding the tort of false light at the time of the filing of the First Amended Answer and Counterclaim. After becoming aware of it through Plaintiff's Motion to Dismiss, Defendant considered retaining the false light portion of his claim in requesting this Court to consider a good faith argument that the *Bueno* case was geared and directed entirely toward the press, not individuals. However, upon reflection, Defendant decided to eliminate the false light aspects of his claim in the Second Amended Answer and Counterclaim, a motion for the filing of which is pending before this court at this time. The court is aware of the reasons behind the motion for leave to amend. To grant sanctions based upon the false light aspect of the Counterclaim, which Defendant has attempted to cure but has not yet had the opportunity to cure, would be premature and unjust.

With regard to the rest of the invasion of privacy claim, Defendant has made sufficient legal and factual allegations to support its claim under existing law or a reasonable, non-frivolous extension thereof. Defendant renews and incorporates all of the factual and legal allegations directed to its claim for abuse of process above.

**Defendant Had An Expectation of Privacy In His Subscriber Information**: Under 47 U.S.C. §551, Defendant had a reasonable expectation of privacy in his subscriber information as received and maintained by Qwest/CenturyLink. Further, he had a reasonable expectation that this private information would only be disclosed pursuant to a valid Court order which was based upon truthful and supportable information provided to the Court in good faith for an appropriate purpose. He had a reasonable expectation that no Court order would be sought without proper and diligent Rule 11 inquiries having been conducted. However, in this case, the exact opposite occurred. As noted above and in the Counterclaim, Plaintiff collected

Defendant's IP address from the internet without his knowledge or consent utilizing flawed technology; knowingly misled the Court into granting an Order for pretrial discovery; and failed to conduct any inquiries as to whether Defendant had committed the alleged act of infringement. Thus, Plaintiff argues for recognition and/or a good faith extension of the law of invasion of privacy to encompass the situation where, as here, Plaintiff knowingly obtained personal information about Defendant by filing a lawsuit in Federal Court based on incorrect, incomplete and misleading information.

Specifically, in the Doe action filed by Plaintiff in order to obtain Defendant's information, Plaintiff presented the Court with an incomplete and misleading declaration in support of its request for *ex parte*, expedited discovery which would compel the ISP to provide Defendant's name, address, telephone number and email address.  The declaration was provided by an individual from the IP harvesting company; however, that declaration failed to disclose that (1) the IP harvesting company (and possibly the declarant[7]) has a significant financial interest in the successful outcome of the litigation (i.e., a barratrous relationship with Plaintiff and its counsel); (2) the IP address does not definitively correspond to the actual infringer and that there are many reasons why it might **not** reveal the infringer.  Further, neither Plaintiff nor its attorneys at that time disclosed to the Court that Plaintiff did not have the ability or the financial resources to litigate the vast number of lawsuits it had brought in Colorado, much less across the country, nor did Plaintiff or its attorneys inform the Court that in other such cases, when offered the opportunity to examine exculpatory evidence, Plaintiff and its attorneys had ignored such offers, despite knowing that many – perhaps 30% of those it sues, perhaps more – are wholly innocent of all charges.  Finally, neither Plaintiff nor its attorneys revealed to the Court that Plaintiff intended to turn over the information received from the subpoenas to a third party "settlement negotiator" outside the supervision of the Court who would harass and intimidate the putative

---

[7] Until discovery proceeds, Defendant cannot say with certainty how the financial relationships are connected.

defendants.  These allegations "state an arguable claim" such as satisfies the requirements of Rule 11 that Plaintiff abused the Court's subpoena power to wrongfully obtain Defendant's (and other's) private information which was then inappropriately disclosed to third parties and used in an improper fashion to the Defendant's detriment.   Plaintiff by filing the suit and naming the Defendant knew that would cause the Defendant's name to be exposed on the Internet forever tying his good name to pornography and the stealing of intellectual property.  In fact the Plaintiff is using said fact to scare others into settling before their name is besmirched in a similar fashion.

**Plaintiff's Improper Use of Defendant's Personal Information Constitutes An Invasion of Privacy**: On numerous occasions and in numerous cases, Plaintiff and its counsel have been warned that improper use of the personal information it obtains through early *ex parte* discovery would result in sanctions.  In the case Plaintiff brought to obtain Defendant's personal information, the Court provided, "Plaintiff may only use the information disclosed in response to a Rule 45 subpoena... for the purpose of protecting and enforcing Plaintiff's rights as set forth in its Complaint." Order Granting Motion For Leave To Serve Third Party Subpoenas Prior To A Rule 26(f) Conference, 1:12-cv-402-WYD-MEH (Dist. Colo. Feb. 21, 2012). Other judges have gone further:  "The Court emphasizes that Plaintiff may only use the information disclosed in response to the subpoenas for the purpose of protecting and enforcing its rights as set forth in its Complaint. The Court cautions Plaintiff that improper use of this information may result in sanctions." *Patrick Collins, Inc. v. Doe*, 2012 U.S. Dist. LEXIS 91249, *2-3 (Dist.Colo. June 29, 2012)[8].

Thus, Plaintiff and its attorneys were on notice that the information they received from the ISPs was not only private under Federal law, but that it was intended to be treated carefully, with respect, and maintained private and used solely for the purpose of "protecting and

---

[8] Patrick Collins, Inc., is also represented by Plaintiff's attorney of record, Jason A. Kotzker, Esq.

enforcing its rights". The subsequent actions of Plaintiff and its attorneys demonstrate anything but that kind of respect and careful use for that sole purpose. Plaintiff handed Defendant's private information off to a non-attorney third party "settlement negotiator" who called him repeatedly to pressure him into settling, just as has happened to hundreds of other defendants. Plaintiff shows no regard for the privacy or rights of the individuals it sues, but rather views them as a sort of ATM machine, to be cashed at will. Defendant argues, therefore, that not only does Plaintiff's conduct demonstrate abuse of process, it also demonstrates an invasion of privacy and potentially a direct violation of an valid Order from this Court.

**Plaintiff Had No Good Faith Basis To Seek A Subpoena**: Plaintiff knew, before it brought the Doe complaint against Defendant, that it was likely that Defendant was not the infringer or at the very least that it could not prove so. Plaintiff knew that the IP collection technology used by IPP Ltd. was flawed.[9] Plaintiff knew that, when a wireless network is involved, an unauthorized individual can access that wireless network without the subscriber's knowledge or consent. Plaintiff knew that the infringer could have been a "hacker" or "spoofer" who falsely presented Defendant's IP address instead of the hacker's. See declaration of

---

[9] As Plaintiff has plead and will show in its Second Amended Answer and Counterclaim that based on information and belief that Plaintiff knew or should have known that the methods used by the IP tracking firm IPP, Ltd., are fatally flawed supporting a legitimate claim for abuse of process. Plaintiff has pled that IPP, Ltd., is merely an alias for the German firm Guardaley. (Other aliases are believed to include BP Equity, IP Equity, Baseprotect, IntersDA.). Defendant will present evidence that early as November of 2009, there were serious questions as to the reliability of Guardaley's methods in identifying infringers. The evidence shows that Baumgarten Brandt, a German law firm who had entered into a relationship with Guardaley, filed suit after it discovered that Guardaley was aware of serious flaws in their collection systems but chose not to disclose them.  In its appeal to an injunction brought by Guardaley, Baumgarten asserted that when identifying alleged infringers, Guardaley:

    1. includes mere inquiries, regardless as to whether any file was actually shared;
    2. identifies people who neither upload or download;
    3. operates a 'honeypot'—that is they represent "by means of a falsified bit field, that it was always in possession of 50% of the file being sought." and
    4. it does not indicate how it identifies each IP address, so there is no way to discern actual infringers from the innocent.

The evidence will also show that on May 3, 2011, the State Court of Berlin found the allegations above to be truthful, and ruled against Guardaley. Such facts support Defendant's claims.

Lindsey Maness. Plaintiff knew that there was a reasonable error rate of approximately 30%, as acknowledged by the Court in *In Re BitTorrent Adult Film*, *supra*:

> ...Plaintiff's counsel estimated that 30% of the names turned over by ISPs are not those of individuals who actually downloaded or shared copyrighted material. Counsel stated that the true offender is often the "teenaged son ... or the boyfriend if it's a lady." Alternatively, the perpetrator might turn out to be a neighbor in an apartment building that uses shared IP addresses or a dormitory that uses shared wireless networks.

*In Re BitTorrent Adult Film Copyright Infringement Cases*, 2012 U.S. Dist. LEXIS 61447 at *3 (citing *Digital Sin, Inc. v. Does* 1-176, 2012 U.S. Dist. LEXIS 10803, at *3 (S.D.N.Y. 2012)) (citations omitted).

Thus, Plaintiff knew that it could not show, based on the information it had to present to the Court, that Defendant (or the other Doe defendants) had committed a volitional act of copyright infringement. See e.g., *Religious Tech. Ctr v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1369-70 (N.D. Cal. 1995) (the plaintiff must show ownership of the copyright and a volitional act of copying by the defendant.). Therefore, Plaintiff cannot now claim that it had any good faith belief upon which to seek the issuance of subpoenas seeking private information. Fed.R.Civ.P. 11; see also, *Malibu Media, LLC v. John Does 1-11*, 2012 U.S. Dist. LEXIS 94648 (D.D.C. July 10, 2012)(there is a reasonable likelihood that [the Does] may have had no involvement in the alleged illegal downloading that has been linked to his or her IP address.") As such, the subpoena issued to compel production of Defendant's private, personal information was in violation of Rule 11, and Plaintiff's continued refusal to accept exculpatory evidence confirms that it too is aware that it has ensnared potentially thousands of innocent victims in its widely cast net. These allegations support "an arguable claim" of invasion of privacy sufficient to withstand Plaintiff's motion for sanctions (and motion to dismiss).

3. **DEFENDANT HAS PLED FACTS SUFFICIENT TO SUPPORT A CLAIM OF DEFAMATION**

Defendant renews and incorporates all of the factual and legal allegations directed to its claims for abuse of process and invasion of privacy.

Defendant is aware that there is a privilege defense for allegations made during litigation. Defendant further acknowledges that this defense is nearly absolute although not without some exceptions. However, Defendant is arguing for a non-frivolous extension of existing law in bringing a defamation claim in response to Plaintiff's complaint despite the privilege, because in the context of this lawsuit, Defendant has suffered harm that falls within the purview of the tort of defamation and should be allowed to seek appropriate redress. Further, damages for Plaintiff's defamation of Defendant's character is an appropriate, just and fair remedy for the harm done. Finally, Plaintiff should not be permitted to invoke the privileges of this Court when Plaintiff has so egregiously abused this Court and the entire Federal Court system in pursuit of a financial benefit at the expense of thousands of American citizens, many of whom, like Defendant, are entirely innocent of any wrong-doing.

For example, in *Mantia v. Hanson*, the court grappled with this very question. In discussing prior precedent involving the role of "privilege" with respect to tortious interference claims, the court observed that:

> "No question of privilege arises unless the interference would be wrongful but for the privilege; it becomes an issue only if the acts charged would be tortious on the part of an unprivileged defendant. *Even a recognized privilege may be overcome when the means used by defendant are not justified by the reason for recognizing the privilege.*"

190 Ore. App. 412, 429 (Or. Ct. App. 2003)(quoting *Top Serv. Body Shop Inc. v. Allstate Ins. Co.*, 582 P.2d 1365, 283 Or. 201, 210 (1978)(emphasis in original). Acknowledging this contradiction, the Court wondered aloud:

> When is an absolute privilege not absolute? But at least with respect to the absolute privilege pertaining to participation in judicial and quasi-judicial proceedings, there is a ready answer: **An actor's conduct is so egregious as to be deprived of the protections of the absolute privilege when that conduct satisfies the elements of wrongful initiation. See Restatement at § 587, comment a (absolute privilege does not apply to claim for wrongful initiation of civil proceedings/malicious prosecution).** See also *Alvarez v. Retail Credit Assn*, 234 Ore. 255, 259-60 (1963); Restatement at §§ 653, 674.

*Id.* (emphasis added).

Following this general legal reasoning, Defendant argues it is proper to extend this exception here in Colorado to include instances, where, as here, the facts to show that Plaintiff has engaged in conduct is so "egregious as to be deprived of the protections of the absolute privilege." Specifically, as noted above, Plaintiff initiated this lawsuit solely on the evidence of an IP address which was wrongfully obtained through misleading the Court and which it was well aware was insufficient to identify let alone name an infringer. Furthermore, Plaintiff's behavior is even more egregious where it has actively endeavored to remain willfully blind to any and all exculpatory evidence. (See, Declarations of Christina Saunders, John Arsenault and David S. Kerr and Lindsey Maness).

Defendant further argues for the extension of this law to account for the especially sensitive and damaging nature of the allegations against the Defendant, namely that they involve false accusations of illegal downloading of hard-core pornography, making this an exceptional case. Finally, Defendant would argue that he has demonstrated real and specific harm as a result of Plaintiff's egregious actions, further supporting such a good faith extension. (Def. First Amended Answer and Counterclaim ¶¶132-135).

Finally, what the Court has before it at this time is a motion for sanctions, not a motion to dismiss.  As argued above, even if the Court determines on the Plaintiff's Motion to Dismiss (which is currently being held in abeyance) that Defendant's defamation claim should be dismissed, that fact alone does not and should not trigger sanctions.  The standards for the two motions are different, a fact which Plaintiff has neglected in its motion.  Defendant makes this

24

argument in good faith for a non-frivolous extension of existing law and this argument is based on both law and fact.

In summary, Defendant asserts in good faith that the litigation privilege should not apply where, as here:  (1) the lawsuit was wrongfully initiated; (2) the lawsuit was based on known false information provided by a significantly financially interested person/entity that the party knew was likely to result in the initiation of a suit against an innocent person; (3) the party initiating the suit nevertheless did not undertake any appropriate Rule 11 inquiry prior to or after initiating the suit; (4) the suit involves claims that are especially damaging because they speak to a person's character or moral fitness; and (5) there is a showing of real damages as a result of the defaming party's actions.  Defendant believes that such a narrowly tailored and rigorous exception to the litigation privilege preserves and protects the legitimate purpose of the privilege while allowing for appropriate relief in egregious circumstances.

As an alternative ground, Defendant argues that, much like the attorney-client privilege, the litigation privilege should not be extended where the party asserting the privilege is engaging in a fraudulent or illegal enterprise.  As discussed above, Plaintiff has entered into an illegal barratrous relationship with its attorneys and with IPP Ltd., for the purposes of fomenting litigation, and this illegal relationship should not be allowed to shelter beneath the litigation privilege, using the privilege as a judicially imposed shield in furtherance of their illegal activity.

It is Defendant's position that one, like Plaintiff, who has come before this Court with such unclean hands, with such contempt for the rights of others and for the proper procedures of this Court, should not be permitted to invoke the privilege at all. Defendant, as pleader, has carried his burden of providing a "good faith argument" for his view of the law or what it should be.  *Zaldivar*, 780 F.2d at 830-831.   Regardless of whether this view will prevail at trial, Defendant has stated an "arguable claim."

4. DEFENDANT HAS PLED FACTS SUFFICIENT TO SUPPORT A CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Defendant renews and incorporates all of the factual and legal allegations directed to its claims for abuse of process, invasion of privacy, and defamation.

For the same reasons outlined above, Plaintiff should not enjoy a litigation privilege over this tortious conduct as well. As described in Defendant's counterclaim, inflicting emotional distress on every John Doe defendant is part and parcel of Plaintiff's litigation business model. Further, as described in Defendant's counterclaim, every action Plaintiff has taken in connection with this particular case has been calculated to cause Defendant the maximum of emotional distress. Embarrassment and humiliation are key elements of Plaintiff's plan. Plaintiff relies on the fact that most defendants would prefer to settle than suffer the humiliation and embarrassment of being named as a defendant in a federal law suit based on illegal downloading of pornographic films with disgusting names. Plaintiff has already been advised of these facts by the court. Indeed, a court has admonished Plaintiff that: "[Its litigation method] gives rise to the potential for coercing unjust settlements from innocent defendants such as **individuals who want to avoid the embarrassment of having their names publicly associated with allegations of illegally downloading "My Little Panties # 2."** *In Re BitTorrent Adult Film Copyright Infringement Cases*, 2012 U.S. Dist. LEXIS 61447 at *3 (citing *Digital Sin, Inc. v. Does* 1-176, 2012 U.S. Dist. LEXIS 10803, at *3 (S.D.N.Y. 2012))(emphasis added). These Courts have also expressed their concerns that these cases appear to be undertaken for the sole purpose of extracting quick settlements without any intention of taking the case to trial: "Courts across the country have observed that Plaintiff (and other companies involved in this type of litigation) do not seem interested in actually litigating their copyright claims. Rather, they appear to be using the federal courts only to obtain identifying information for the ISP owners and then attempting to negotiate a quick settlement." *Malibu Media v. Felitti et al*, Order Finding Joinder Improper, 1:12-cv-1522-WJM (Dist. Colo. July 25, 2012). For many

of the same reasons detailed above, Defendant's counterclaim makes a reasonable and good faith argument for this claim and as such, sanctions should be denied.

### 5. DEFENDANT HAS PLED FACTS SUFFICIENT TO SUPPORT A CLAIM FOR A DECLARATORY JUDGMENT THAT DEFENDANT HAS NOT INFRINGED

This claim seeks relief above and beyond anything sought in the affirmative defenses and/or any of the other counts of the Counterclaim. Specifically, it seeks a finding that Defendant did not infringe – that is, that Defendant did not engage in a volitional act of infringement – and that Defendant is not liable – jointly or severally – to Plaintiff or any other party for copyright infringement.  It also seeks an affirmative finding from the Court that Plaintiff has acted improperly (unclean hands, failure to mitigate damages, improperly seeking multiple recoveries, etc.) which affirmative findings would not necessarily be made in the event that Defendant were to be successful in simply defending this suit against Plaintiff (not guilty is not the same as innocent).

The declaratory judgment claim is necessary here because it raises issues different from, and that may not necessarily be resolved by, a decision on the Complaint.  The Court may properly reject the Complaint based on failure of proof on any single element in Plaintiff's claim, or based on any one of the affirmative defenses, leaving unresolved the other issues on which Defendant has requested a declaration. This includes issues such as lack of a volitional act, Rule 11 obligations of the parties, support for other counterclaims, determination of Plaintiff's suit as a sham litigation, potential assertions of negligence liability, determinations of joint and several liability, and copyrightability.   As the Supreme Court has recognized in similar circumstances, a declaratory judgment claim must survive, even if an affirmative defense raises the same issues, since "[a]n unnecessary ruling on an affirmative defense is not the same as the necessary resolution of a counterclaim for declaratory judgment." *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83 (1993).

To maintain his Declaratory Judgment counterclaim, Defendant need only file an "appropriate pleading" that establishes (1) jurisdiction and (2) the existence of an actual case or controversy between parties having adverse legal interests. *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 359 (1961).   Defendant has done this in the counterclaim.   Plaintiff cannot credibly claim that jurisdiction does not rest in Colorado, so in its motion to dismiss it has concocted a theory where the "actual case or controversy" requirement is only a one way street.   This is clearly not supportable in a Rule 12(b)(6) context, and it is even less so in a motion for Rule 11 sanctions.

There is no universal rule for compliance with the case or controversy requirement; rather, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941); quoted and reaffirmed in *MedImmune, Inc. v. Genentech, Inc.* 549 U.S. 118, 127 S. Ct. 764, 771-72 (2007). As the Supreme Court explained in *Bell v. Hood,* 327 U.S. 678, 682 (1946), subject matter "[j]urisdiction ... is not defeated ... by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover."   Defendant need only show that the facts alleged, if proved, would confer standing – which it has. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998). "At the pleading stage... we 'presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.* (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990) (reversing decision denying summary judgment for lack of standing and subject matter jurisdiction)). The well-pleaded allegations in the Counterclaim are more than sufficient to show subject matter jurisdiction. Indeed, those allegations would easily meet the standards articulated for Rule 12(b)(6) motions—and not previously applied to motions under Rule 12(b)(1)—that require only factual allegations establishing a plausible basis for the claim. *See generally Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009); *Bell Atl. Corp. v.*

28

*Twombly*, 550 U.S. 544 (2007). The facts alleged go much farther than mere plausibility or the standards under Rule 11.

In fact, the Counterclaim goes far beyond the Complaint both in the issues that it raises and the relief that it seeks. In an effort to obtain a definitive ruling on the legality of Plaintiff's conduct going forward, Defendant specifically seeks a declaration that there was no volitional act of copying; that an IP address is insufficient under Rule 11 to support a claim of infringement; that an IP address is insufficient to identify an infringer; that Plaintiff has failed to mitigate; that Plaintiff is attempting to receive double recovery; the invalidity of Plaintiff's copyrights; that Defendant is not jointly and severally liable and finally, that no infringement has occurred "based on the circumstances described above."[10] These are all issues distinct from the subject of the Complaint, and only by such a declaration can all claims and controversies between the parties be extinguished. *Broadview Chem. Corp. v. Loctite Corp.*, 474 F.2d 1391, 1393 (2d Cir. 1973) ("It is undisputed that the principal purpose of a declaratory judgment is to clarify and settle disputed legal relationships and to relieve uncertainty, insecurity and controversy.").

Plaintiff incorrectly argues that, regardless of the serious new challenges the Counterclaim makes to its for-profit business model, at the end of the day a judgment in this action will result in either a finding of infringement or no infringement and so no Counterclaim is necessary.  This argument is demonstrably incorrect, because it ignores the Counterclaim's assertions that the rights sued upon are invalid, in addition to not being infringed. Defendant further seeks a declaration from the Court that Plaintiff has no valid right to sue due to its pattern and practice of failure to give notice before bringing suit, its deliberate failure to mitigate damages, and perhaps participating in the infringement, as well as a determination that Plaintiff has already recovered its maximum damages, raising issues of double recovery and

---

[10] This list is not exhaustive but merely exemplary.

appropriate set-offs for what it claims is a single continuous infringement for the purpose of joinder.

All these claims to invalidity of the rights claimed by Plaintiff will not be resolved if the Court merely determines that no infringement occurred. It is well settled in this context that where a counterclaim seeks a declaration of invalidity of intellectual property interests, it stands independent of, and survives resolution of, infringement claims. *See Cardinal*, *supra*, 508 U.S. at 83 (holding that "case or controversy" in patent suit survives the resolution of the infringement claim when a counterclaim for declaration of invalidity remains unresolved, as a "declaratory judgment of invalidity presents a claim independent of the patentee's charge of infringement."); *see also Diamonds.net LLC v. Idex Online, Ltd.*, 590 F. Supp.2d 593, 603 (S.D.N.Y. 2008)(noting "importance to the public at large of resolving questions of … validity"); *AIR-vend, Inc. v. Thorne Indus. Inc.*, 625 F.Supp. 1123, 1126-1127 (D.Minn. 1985).

The Supreme Court's reasoning in *Cardinal* applies equally in the copyright context. Defendant's Counterclaim presents "a claim independent of [Malibu Media's] charge of infringement" in that it seeks declaration of the underlying validity of the rights asserted now – and that may be asserted in the future. See also *Faulkner Press LLC v. Class Notes*, LLC, 94 U.S.P.Q. 2d (BNA) 1318 (N.D. Fla. Mar. 17, 2010) (refusing to dismiss counterclaim where it raised the possibility of the copyright's invalidity).

Moreover, Plaintiff is simply mistaken in asserting that every legal and factual issue raised in the Counterclaim will be fully resolved by the adjudication of its original Complaint. A finding of non-infringement will not necessarily adjudicate the issues presented in the Counterclaim, any one of which may be dispositive of the Complaint, leaving the other issues unresolved absent this declaratory judgment count. Failure to resolve these issues, even after a finding of non-infringement, leaves Defendant exposed. For example, Plaintiff has asserted Defendant is jointly and severally liability with tens, hundreds or potentially even thousands of other parties who could seek contribution at some unknown point in the future. Even a covenant

not to sue unilaterally executed by Plaintiff would not alleviate this potential, significant exposure among others.

Moreover, a declaratory judgment is the appropriate relief in just this context, where a party needs determination of particular rights that might otherwise go unresolved. Defendant is innocent – not merely "not guilty" – of all the charges brought against him by Plaintiff, and he seeks a declaration from this Court confirming as much. While "[o]ne defendant exonerated from infringement may be content with such adjudication -- another may not... [since the] mere exoneration from infringement does not always meet the necessities of a wrongfully accused defendant." *Dominion Elec. Mfg. Co v. Edwin L. Wiegand Co.,* 126 F.2d 172, 174 (6th Cir. 1942) ("mere dismissal of a plaintiff's bill does not always adjudicate every aspect of the controversy or give the defendant all the relief to which he may be entitled"); *see also MRSI Int'l, Inc. v. Bluespan, Inc.,* 2006 U.S. Dist. LEXIS 68891, at **3-7 (D. Utah Sep. 21, 2006) (refusing to dismiss counterclaims as duplicative of underlying claims or affirmative defenses because the court could potentially adjudicate the underlying claims without reaching issues in declaratory relief claim); *United Wats, Inc. v. Cincinnati Ins. Co.,* 971 F. Supp. 1375, 1381 (D. Kan. 1997) (rejecting as "without merit" motion to dismiss counterclaims as redundant to underlying claim). As the Court noted in *Blackmer v. Shadow Creek Ranch Dev. Co.,* 2007 U.S. Dist. Lexis 99224, at **4-5 (S.D. Tex. June 26, 2007), even where there was substantial overlap between claims and defenses, there is a "qualitative difference between merely prevailing in Plaintiff's lawsuit, and receiving an affirmative declaration of rights."

Assuming *arguendo* that Defendant had not counterclaimed and only raised his affirmative defenses, and assuming further that Defendant prevailed at trial, a judgment in his favor would most likely only dismiss Plaintiff's causes of action against him. Such a judgment would do nothing to assist in repairing Defendant's damaged reputation and rebuild his standing in the community and the business world. It would make no findings of fact regarding Plaintiff's conduct or Defendant's innocence. Even if supported by a lengthy, detailed opinion that

exonerated Defendant, few in the community and few potential employers would take the time to read that opinion. "Google" and "Bing" references would not summarize the opinion; they would merely point to the Court's Order which would show only that the case was over. In responding to Plaintiff's Complaint, Defendant realized that he needed a statement that he could present to the public that would state, once and for all, that he was innocent. He needed something that would definitively appear in opposition to all of the web search results that now show him to be a defendant accused of illegally downloading pornography. A declaratory judgment that states that Defendant has not infringed Plaintiff's copyrights and that Plaintiff never had any case against him would settle the legal issues between the parties definitively, would assist other similarly situated plaintiffs and defendants with a precedential legal ruling, and would provide a powerful tool for Defendant to begin to recover his reputation. Admittedly, it would not repair the damage caused by the Plaintiff but it is the only substantive, restorative action available to Defendant.

6. DEFENDANT HAS PLED FACTS SUFFICIENT TO SUPPORT A CLAIM FOR A DECLARATORY JUDGMENT THAT PLAINTIFF'S PORNOGRAPHIC WORKS ARE NOT COPYRIGHTABLE

Defendant renews and incorporates all of the factual and legal allegations directed to its claims for a declaratory judgment that Defendant has not infringed, etc., as argued above.

Defendant has further presented an "appropriate pleading" that establishes jurisdiction and the existence of an actual case or controversy between the parties concerning the issue of the copyrightability of Plaintiff's works, which Defendant asserts are obscene and are therefore not subject to the protection of the Copyright Act. Defendant did not invent or originate this legal concept. Three different district court judges in three separate cases virtually identical to this one have all raised the question. In New York, Judge Gary R. Brown observed in a footnote that while he was assuming for the purpose of the motion that the works in question were copyrightable, "that may be an open question." *In Re BitTorrent Adult Film Copyright*

*Infringement Cases*, 2012 WL 1570765 (E.D.N.Y. May 1, 2012) at p. 12, fn. 8. More recently, Judge Victor Marrero stated, "the Court recognizes that, if the Motion Picture is considered obscene, it may not be eligible for copyright protection." *Next Phase Distribution v. John Does 1-27*, 1:12-cv-3755-VM, Decision and Order, (S.D.N.Y. July 31, 2012), p. 15. Both of these judges cited *Liberty Media Holdings, LLC v. Swarm Sharing Hash File and Does 1-38*, 821 F.Supp.2d 444, 447 n. 2 (D.Mass 2011), which noted that it is "unsettled in many circuits, whether pornography is in fact entitled to protection against copyright infringement".

Colorado, in the 10th District, is one of those places wherein the issue is "unsettled" as observed by those distinguished judges. The question of whether pornographic films can be protected by copyright has never been tested in Colorado's District Courts or in the 10th Circuit. Thus, Defendant is raising in good faith a legal question of first impression. This is not frivolous but an important issue that should be addressed, in light of the fact that Plaintiff is relying upon the Copyright Laws in bringing hundreds of lawsuits against thousands of individuals across the nation.   As Judge Marrero observed, to proceed further without considering the validity of Plaintiff's copyrights "could prove to be a costly and futile exercise for Next Phase and the Court, and a damaging an (sic) unnecessary ordeal for the John Does." *Next Phase* at 16.

Finally, this matter is just in the pleading stage. The existence of the Counterclaim will not add to the burden of discovery, as every legal and factual issue raised in the Counterclaim would already be subject to discovery by virtue of being raised in the Complaint and Answer with its Affirmative Defenses.[11] Thus, if the Court were ever to exercise its discretion to truncate all or some of the request for declaratory relief, this stage of the proceedings is not the appropriate time.  Rather, "the safer course for the court to follow is to deny a request to dismiss a counterclaim for declaratory relief [in this case under a Rule 11 challenge] unless there is no

---

[11] This is so, despite Plaintiff's assertion in response to 60% of Defendant's discovery requests that anything not pertaining to the issues raised in the Complaint was "not relevant."

doubt that it will be rendered moot by the adjudication of the main action." Wright & Miller, 6 Fed. Prac. & Proc. Civ.2d §1406.  As there is no certainty at this point that the important issues raised by this Counterclaim will be resolved by rejecting Plaintiff's claims, the Counterclaim is not superfluous or duplicative, and should not be dismissed or sanctioned.

## CONCLUSION

In his Counterclaim, Defendant has stated a claim upon which relief may be granted sufficient to survive a motion to dismiss; but more than this, he has made reasonable inquiry into the facts and law as required by Rule 11. Plaintiff's reference to and reliance upon its Motion to Dismiss under R. 12(b)(6) as a substitute for any proper Rule 11 analysis is equal parts confusing and inappropriate.  Nevertheless, it fails as a matter of law and of facts. Defendant has stated counterclaims against Plaintiff which are all either warranted by existing law or supported by a reasonable, non-frivolous argument for extending, modifying, or reversing existing law, or for establishing new law.  The facts upon which Defendant relies are all in the public domain now for anyone to find with a quick internet search, or easily supportable by common sense, or have been supported by documents attached to the First Amended Answer and Counterclaim, or will be further borne out by discovery from Plaintiff.  Clearly, Plaintiff has failed to carry its extremely high burden and the imposition of sanctions is unwarranted.

**WHEREFORE,** Defendant respectfully requests that this Court dismiss Plaintiff's motion for Rule 11 sanctions; in addition, Defendant requests that Plaintiff's 12(b)(6) Motion to Dismiss, currently being held in abeyance by this Court, which Plaintiff implicitly incorporated within this motion for Rule 11 sanctions, also be denied in its totality as having been fully addressed by the parties in these motion papers. Such a dismissal would allow the parties to focus their efforts on preparing their respective cases for trial.

Respectfully submitted,

Jeff Fantalis
Defendant *pro se*
818 Trail Ridge Drive
Louisville CO 80027
(303) 482-1211

Dated:        September 20, 2012

## CERTIFICATION OF SERVICE

I, Jeff Fantalis, hereby certify that on September 20, 2012, I caused this Response to Plaintiff's Motion for Rule 11 Sanctions to be filed with the Clerk of the Court by U.S. Mail, with Delivery Confirmation, at the following address:

Clerk's Office
Alfred A. Arraj United States Courthouse
Room A-105
901 19th Street
Denver, Colorado 80294-3589

On the same date, I served a copy of this Response to Plaintiff's Motion for Rule 11 Sanctions upon Plaintiff by U.S. Mail with delivery confirmation and courtesy e-mail to Plaintiff's attorney of record, pursuant to agreement with counsel:

Jason A. Kotzker
Kotzker Law Group
9609 S. University Blvd. #632134
Highlands Ranch CO 80163
Email: jason@klgip.com

Jeff Fantalis
Defendant *pro se*

Dated:          September 20, 2012

## DECLARATION OF CHRISTINA E. SAUNDERS

I, Christina E. Saunders, hereby declare under penalty of perjury, pursuant to 28 U.S.C. § 1746(2) that the following statements are true and correct:

1. I am an attorney in good standing in the State of Colorado. I have been duly admitted to the practice of law in the state and federal courts of State of Colorado and am competent to testify as to all the matters declared herein.

2. I represent multiple different individuals who all separately received letters from their Internet Service Providers regarding a subpoena issued by Malibu Media, LLC in connection with a lawsuit pending in the United States District Court for the District of Colorado.

3. It appears that in Colorado, Malibu Media is represented by the same attorney in all of its pending cases, namely Jason Kotzker of the Kotzker Law Group.

4. I have personal knowledge that Plaintiff Malibu Media uses third party professional settlement negotiators. These settlement negotiators will only communicate verbally over the phone.

5. In the course of representing at least ten Defendants against Malibu Media LLC, I have communicated exclusively with a settlement negotiator/appointed agent of Malibu Media LLC named Elizabeth Jones, who denotes upon inquiry that she is "The Client," on behalf of Malibu Media LLC.

6. During the course of my representation of at least one individual client, I have explicitly offered, in writing, to Malibu Media's attorney, Mr. Kotzker, near total and unfettered access to my client's home networks and associated computers as an offer of proof as to their innocence.

7. During the course of my representation of other individual clients, I have explicitly offered, verbally, to appointed agent of Malibu Media, Elizabeth Jones, near total and unfettered access to my client's home networks and associated computers as an offer of proof as to their innocence.

8. Either Mr. Kotzker or the appointed representative/agent of Malibu Media LLC either ignored or refused these offers.

9. I am aware that Malibu Media, and in particular its counsel Mr. Kotzker, have been admonished by other courts for similar litigation actions. See *In re BitTorrent Adult Film Copyright Infringement Cases*, 2012 U.S. Dist. LEXIS 61447 at *28 (E.D.N.Y. 2012) ("In this case, John Doe #16 offered the plaintiff "unfettered access" to his computer and employment records demonstrating that he was not at home at the time of the downloading, yet still finds himself pressured to settle for thousands of dollars. It would be difficult to characterize such a resolution as "just" even if speedy and inexpensive for the plaintiff.") The court further noted that it appeared that "plaintiffs ha[d] employed abusive litigations tactics to extract settlements from John Doe defendants"). *Id.* at 19.

1



10. Should this, or any Court wish for me to provide additional information I will do so under seal. In addition, should this, or any Court wish for me to provide live testimony I will do so at the Court's request.


Dated this 19th Day of September, 2012


Christina E. Saunders
Colorado Bar #42723
Nouveau Law LLC
216 16th Street, Denver, CO 80202
Tel/Fax: 720-204-5671
E-mail: Christina@nouveaulaw.com

## DECLARATION OF JOHN A. ARSENAULT

I, JOHN A. ARSENAULT, hereby declare under penalty of perjury, pursuant to 28 U.S.C. § 1746(2) that the following statements are true and correct:

1. I am an attorney in good standing in the State of Colorado. I have been duly admitted to the practice of law in the state and federal courts of State of Colorado and am competent to testify as to all the matters declared herein.

2. I represent multiple different individuals who all separately received letters from their Internet Service Providers regarding a subpoena issued by Malibu Media, LLC in connection with a lawsuit pending in the United States District Court for the District of Colorado.

3. It appears that in Colorado, Malibu Media is represented by the same attorney in all of its pending cases, namely Jason Kotzker of the Kotzker Law Group.

4. I have personal knowledge that Plaintiff Malibu Media uses third party professional settlement negotiators. These settlement negotiators will only communicate verbally over the phone.

5. During the course of my representation of at least ten individual clients, I have explicitly offered to Malibu Media's attorney, Mr. Kotzker -- or any appointed agent -- near total and unfettered access to my client's home networks and associated computers as an offer of proof as to their innocence.

6. These offers were refused by Mr. Kotzker.

7. I am aware that Malibu Media, and in particular its counsel Mr. Kotzker, have been admonished by other courts for similar litigation actions. See *In re BitTorrent Adult Film Copyright Infringement Cases*, 2012 U.S. Dist. LEXIS 61447 at *28 (E.D.N.Y. 2012) ("In this case, John Doe #16 offered the plaintiff "unfettered access" to his computer and employment records demonstrating that he was not at home at the time of the downloading, yet still finds himself pressured to settle for thousands of dollars. It would be difficult to characterize such a resolution as "just" even if speedy and inexpensive for the plaintiff.") The court further noted that it appeared that "plaintiffs ha[d] employed abusive litigations tactics to extract settlements from John Doe defendants"). *Id.* at 19.

8. Should this, or any Court wish for me to provide additional information I will do so under seal. In addition, should this, or any Court wish for me to provide live testimony I will do so at the Court's request.

9/19/2012

JOHN A. ARSENAULT

1

## DECLARATION OF DAVID S. KERR

I, David S. Kerr, hereby declare under penalty of perjury, pursuant to 28 U.S.C. § 1746(2) that the following statements are true and correct:

1. I am an attorney in good standing in the State of Colorado. I have been duly admitted to the practice of law in the state and federal courts of State of Colorado and am competent to testify as to all the matters declared herein.

2. I represent multiple different individuals who all separately received letters from their Internet Service Providers regarding a subpoena issued by Malibu Media, LLC in connection with a lawsuit pending in the United States District Court for the District of Colorado.

3. It appears that in Colorado, Malibu Media is represented by the same attorney in all of its pending cases, namely Jason Kotzker of the Kotzker Law Group.

4. I have personal knowledge that Plaintiff Malibu Media uses third party professional settlement negotiators. These settlement negotiators will only communicate verbally over the phone.

5. During the course of my representation of at least three individual clients, I have explicitly offered to Malibu Media's attorney, Mr. Kotzker -- or any appointed agent -- near total and unfettered access to my client's home networks and associated computers as an offer of proof as to their innocence.

6. These offers were refused by Mr. Kotzker.

7. I am aware that Malibu Media, and in particular its counsel Mr. Kotzker, have been admonished by other courts for similar litigation actions. See *In re BitTorrent Adult Film Copyright Infringement Cases*, 2012 U.S. Dist. LEXIS 61447 at *28 (E.D.N.Y. 2012) ("In this case, John Doe #16 offered the plaintiff "unfettered access" to his computer and employment records demonstrating that he was not at home at the time of the downloading, yet still finds himself pressured to settle for thousands of dollars. It would be difficult to characterize such a resolution as "just" even if speedy and inexpensive for the plaintiff.") The court further noted that it appeared that "plaintiffs ha[d] employed abusive litigations tactics to extract settlements from John Doe defendants"). *Id.* at 19.

8. Should this, or any Court wish for me to provide additional information I will do so under seal. In addition, should this, or any Court wish for me to provide live testimony I will do so at the Court's request.


/s/ David S. Kerr                                    9/19/2012
David S. Kerr
Santangelo Law Offices, P.C.

## DECLARATION OF LINDSEY V. MANESS, JR.

     I, Lindsey V. Maness, Jr., declare that I am a named Defendant in *Malibu Media v. Lindsey Maness, Jr.*, Case No. #1:12-cv-01873-RBJ-MEH pending in the U.S. District Court of Colorado.

     I am 66 years old and I have never downloaded any movie through a Bit Torrent or any other program in my life, let alone Malibu Media's pornographic movies. I am also not aware of anyone who may have downloaded such movies, if in fact the alleged act ever even occurred. Regardless, in response to the lawsuit against me I have repeatedly attempted to contact Malibu Media's attorney Jason Kotzker to offer proof that I am innocent of the charges leveled against me. Specifically, on at least three separate occasions I have made verbal/written offers to Mr. Kotzker to allow him to inspect all internet capable devices that were in my possession during the time of the alleged infringement so that he could verify that none of Plaintiff's copyrighted materials nor any Bit Torrent software are/were on any of these computers. Mr. Kotzker has not responded to these offers.

     I was dismayed that Plaintiff failed to take this opportunity to investigate the matter prior to filing the lawsuit against me. I have also offered to sign an affidavit confirming that I have not destroyed or altered any evidence in any way, nor am I aware of anyone who downloaded the works in question, if in fact such an event even occurred. Again, Mr. Kotzker did not respond to this offer.

     Furthermore, I have already provided Plaintiff evidence of my innocence which was apparently ignored. In particular, in a letter dated 2012-06-28 (Attn: Ms. Lauren Michaels for Colorado Attorney Jason Kotzker, with certain documentation attached), I indicated that during at least some of the time which Plaintiff alleges that the copyrighted material was being copied, I did not even have access to my computer or E-Mail, due to a verifiable hacking incident. As I stated in that letter, this incident can be verified by communications from Comcast and "Geek Squad" representatives who helped me resolve the matter. Indeed, as I stated in that same letter that I had tried to discover the identity of the hacker and traced it back to an account in the name of "Mahouene@Hotmail.com." I do not know who this person is. I further stated that the above-mentioned hacking incident forced me to install a new Operating System (OS) on my computer to enable me to even use the computer which can be verified with records of purchase of the new OS and the copying of all my previous files which were transferred onto an external hard drive by Geek Squad, which I have also offered to Plaintiff for forensics analyses to verify the truth of this assertion. Again, Mr. Kotzker did not respond to this offer of proof.

     I believe that Plaintiff wishes to remain blind to any evidence of my innocence to use the cost and potential embarrassment of a lawsuit to quickly leverage a profitable settlement.

Lindsey V. Maness, Jr.,             2012-09-19
                                        Date

1