## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:12-cv-00886-MSK-MEH

MALIBU MEDIA, LLC,

       Plaintiff,

v.

JEFF FANTALIS and BRUCE DUNN,

       Defendants

_____/

## REPLY IN FURTHER SUPPORT OF
## PLAINTIFF'S MOTION FOR RULE 11 SANCTIONS

## I.    INTRODUCTION

Defendant's Memorandum in Opposition to Plaintiffs' Motion for Rule 11 Sanctions is a long winded parade of tortured reasoning that at every juncture underscores the necessity of imposing sanctions.   As explained below, Defendant unreasonably fails to apply the law to facts – or to accept the clear results thereof.  Motivated by the knowledge that his claims are meritless, Defendant engaged in a pattern of bad faith gamesmanship and intentionally delayed this court's analysis of his claims.

    A.  Plaintiff Explains The Law To Defendant Through Its Motion to Dismiss The Original Counterclaim

On May 29, 2012, Defendant filed an Answer and Counterclaim, CM/ECF 18.   The counterclaim contains counts for: (a) Abuse of Process; (b) Invasion of Privacy; (c) Defamation; (d) Intentional Infliction of Emotional Distress; and (e) Fraud on the Copyright Office.[1]   On June 25, 2012, Plaintiff filed a Motion to Dismiss the Counterclaim, CM/ECF 30.   In that motion,

---

[1] Plaintiff did not include a fraud on the copyright office count in the Amended Counterclaim. Consequently, it will not be discussed.

[2] Plaintiff is only seeking sanctions for Counts I–IV.  Defendant's unreasonable refusal to accept

Plaintiff cited the elements for each of the causes of action and explained the outcome dispositive reasons why each count cannot possibly survive a motion to dismiss. On June 26, 2012, Plaintiff served Defendant with a Rule 11 motion.

### 1.  Plaintiff First Explains Why Defendant's Abuse of Process Claim Fails

Briefly, with regard to abuse of process, *inter alia*, Plaintiff explained that Defendant had not – and could not – cite to one instance where Plaintiff used the legal process in a way other than for its intended purpose. Plaintiff *cited James H. Moore & Assocs. Realty, Inc. v. Arrowhead at Vail*, 892 P.2d 367, 373 (Colo. App. 1994) (explaining the law.) Plaintiff also explained that Defendant could not identify a collateral result of the process. These incurable failures would dissuade a reasonable person from re-alleging this claim.

### 2.  Plaintiff First Explains Why Defendant's Invasion of Privacy Claim Fails

With regard to Invasion of Privacy, Defendant was spoon fed the law:

> [C]ourts analyzing the expectation of privacy possessed by internet users engaging in online file-sharing have concluded that such expectation is at most minimal because those individuals have already voluntarily given up certain information by engaging in that behavior. A Doe defendant who has allegedly used the internet to unlawfully download and disseminate copyrighted material does not have a significant expectation of privacy. *Accord In re Verizon Internet Servs., Inc.*, 257 F.Supp.2d 244, 267 (D.D.C. 2003) (engaging in peer-to-peer file-sharing is akin to "essentially opening up the computer to the world").

*Raw Films, Ltd. v. John Does 1-15*, 2012 WL 1019067, *8 (E.D. Pa. 2012). As Plaintiff further explained, Courts consistently hold that "Internet subscribers do not have a reasonable expectation of privacy in their subscriber information—including name, address, phone number, and email address—as they have already conveyed such information to their ISPs." *First Time Videos, LLC v. Does 1-500*, 276 F.R.D. 241, 247 (N.D. Ill. 2011), *citing Achte/Neunte Boll Kino Beteiligungs Gmbh & Co. v. Does 1–4,577*, 736 F.Supp.2d 212, 216 (D.D.C. 2010). Indeed, to the best of undersigned's knowledge, no court has ever – ever – held that an on-line infringer's

right to remain anonymous outweighs a copyright owner's right to sue the infringer. And, there are scores if not hundreds of cases holding that copyright owner's right to sue outweighs the subscriber's *de minimus* right to privacy. In the face of this case law, a reasonable person would not attempt to allege an invasion of piracy claim.

### 3.   Plaintiff First Explains Why the Defamation Claim Fails

Plaintiff cited *Walters v. Linhof*, 559 F.Supp. 1231, 1237 (D. Colo. 1983) to explain the absolute litigation privilege: "statements made during judicial proceedings are absolutely immune" from liability for defamation. Defendant's defamation claim is solely based on allegations made in court papers. Having been advised that there is absolute privilege barring such a claim, a reasonable person would not attempt to re-allege it.

### 4.   Plaintiff's First Motion to Dismiss Explains Why the Intentional Infliction of Emotional Distress Claim Fails

Defendant claims that the instant lawsuit causes him severe emotional distress. Plaintiff cited *Swanson v. Bixler*, 750 F.2d 810, 814-15 (10th Cir. 1984) which holds filing a lawsuit cannot be the predicate act upon which an intentional infliction of emotional distress claim can stand. Under *Swanson*, Defendant's claim fails as a matter of law. Having been advised of binding decisional authority directly on point, which bars his claim, a reasonable person would refrain from re-alleging it.

### B. To Harass Plaintiff and Delay the Process, Defendant Files an Amended Counterclaim Re-alleging the Same Incurably Faulty Claims

On July 10, 2012, Defendant filed an Amended Answer and Counterclaim. [CM/ECF 37]. Defendant also filed a letter in response to Plaintiff's Motion to Dismiss stating the motion is now moot. *Id.* The Amended Counterclaim also mooted Plaintiff's Rule 11 Motion; Defendant withdrew the original counterclaim within Rule 11's twenty-one day safe harbor.

Significantly, Defendant's letter quotes Rule 15(a)(1) for the proposition that he can amend *once* as a matter of course. *Id*.

The Amended Counterclaim contains four of the same counts as the original counterclaim: (a) Abuse of Process (Count I), (b) Invasion of Privacy (Count II), (c) Defamation (Count III), (d) Intentional Infliction of Emotional Distress (Count IV).[2]  Defendant added counts for (1) Declaratory Judgment that Defendant is Not Liable to Plaintiff for Copyright Infringement (Count V), and (2) Declaratory Judgment that Plaintiff's Works are Not Entitled to the Protections of United States Copyright Law and (Count VI).[3]

On August 8, 2012, Plaintiff timely filed a Motion to Dismiss Defendant's Amended Counterclaim [CM/ECF 55].  And, on August 9, 2012, Plaintiff served Defendant with another Rule 11 Motion.  The Motion to Dismiss explains in detail – again – why Defendant's (a) Abuse of Process (Count I), (b) Invasion of Privacy (Count II), (c) Defamation (Count III), (d) Intentional Infliction of Emotional Distress (Count IV) are fatally flawed.

    1.  <u>Plaintiff Again Explains Why Defendant's Abuse of Process Claim Fails</u>

Plaintiff again explained that Defendant failed to plead an improper use of the process, and failed to allege that Plaintiff had used a process for a purpose, which said process was not intended.  Further, Plaintiff explained that Defendant failed to identify or plead the existence of a collateral advantage.  Additionally, Plaintiff cited authority holding that since the alleged abuse

---

[2] Plaintiff is only seeking sanctions for Counts I-IV.  Defendant's unreasonable refusal to accept and apply the law to the facts, after having the law cited to him, makes his conduct sanctionable.

[3] Defendant's two Declaratory Judgment counts have no basis in law and should fail for the reasons stated in Plaintiff's Motion to Dismiss.  However, since Defendant is *pro se*, at the time he filed the Amended Counterclaim, Plaintiff will concede that a reasonable non-lawyer *may* not have known the law.  This concession is made despite Mr. Fantalis' wife being an attorney and former judicial clerk.

was filing the act of filing a lawsuit, Defendant had to – but did not – plead that Plaintiff's complaint is devoid of factual support or that it has no cognizable basis in law.   Plaintiff also again cited cases holding that joinder is proper and it was the law of the case.   Finally, Plaintiff cited cases demonstrating that Defendant had to suffer a legally cognizable injury, and pointed out that he had failed to plead such an injury.   Despite all this law, Defendant unreasonably failed to withdraw his claim and has attempted to re-assert it in his stricken Second Amended Counterclaim.

2.  Plaintiff Again Explains Why Defendant's Invasion of Privacy Claim Fails

Defendant attempted to plead two separate privacy torts: (a) intrusion upon solitude and (b) false light.   Plaintiff again explained that the Court already found "good cause" for Plaintiff to identify him, and that court's universally do so.   Further, Plaintiff cited binding decisional authority holding that Colorado does not recognize the tort of false light publication.   Thumbing his nose at these the binding precedents, Defendant unreasonably failed to withdraw his claim and has attempted to re-assert it in his stricken Second Amended Counterclaim.

3.  Plaintiff Again Explains Why the Defamation Claim Fails

Plaintiff again cited binding precedent establishing that statements made during the course of litigation are absolutely privileged.   Despite this obvious outcome dispositive defense, Defendant unreasonably failed to withdraw his claim.

4.  Plaintiff Again Explains Why the Intentional Infliction of Emotional Distress Claim Fails

Plaintiff cited binding precedent establishing that statements made during the course of a litigation are absolutely privileged. Further, that filing a lawsuit is not outrageous within the meaning of the tort.   Despite this law, Defendant unreasonably failed to withdraw his claim and has attempted to re-assert it in his stricken Second Amended Counterclaim.

C. Instead of Withdrawing Defendant's Incurably Faulty Claims, Defendant Attempts to Moot The Motion to Dismiss – Again – by Filing a Second Amendment Complaint, Without Leave, In Violation of Rules 15(a) and 16(b).

On July 17, 2012, this Court entered a Scheduling Order setting August 17, 2012 as the deadline to amend the pleadings. [CM/ECF 45]. On August 31, 2012, fourteen (14) days after the deadline to amend pleadings, Defendant filed a motion for leave to file the 2nd Amended Answer, Affirmative Defenses and Counterclaim (the "2nd Amended Pleading"). [CM/ECF 69]. In that motion, Defendant disingenuously cites Rule 15(a) for the proposition that Defendant could amend twice without leave. Amazingly, Defendant actually quotes the language of Rule 15, which clearly states that a party may amend "once." Defendant also actually filed the Second Amended Pleading, without leave. In response to Plaintiff's motion to strike, the Second Amended Pleading was stricken. *See* CM/ECF 61-68.[4]

1. The Counts in the Stricken Second Amended Complaint Underscore that Defendant Was Merely Playing a Game of Delay and Avoid

Defendant's stricken Second Amended Pleading contains the exact same counts as the First Amended Counterclaim: (a) Abuse of Process (Count I), (b) Invasion of Privacy (Count II), (c) Defamation (Count III), (d) Intentional Infliction of Emotional Distress (Count IV), (e) Declaratory Judgment that Defendant is Not Liable to Plaintiff for Copyright Infringement (Count V), and (f) Declaratory Judgment that Plaintiff's Works are Not Entitled to the Protections of United States Copyright Law and (Count VI) [CM/ECF 39 & 66]. Significantly, Plaintiff agrees with Defendant that the new allegations "do[] not change the nature of the lawsuit," [CM/ECF ¶ 19]. Nor do the new allegations change the legal analysis in the motion to

---

[4] Defendant's motion for leave to file the Second Amended Pleadings, which is currently pending, should be denied because Defendant cannot satisfy either Rule 16(b) or 15(a)'s requirements.

dismiss.    Underscoring this point is that none of Defendants' new allegations assert *anything* new that Plaintiff purportedly did to Defendant.  Not one thing.

## II.    <u>LEGAL STANDARD</u>

"Rule 11 requires parties . . . to conduct a reasonable investigation into the facts . . .  and laws  . . . ."  *Sieverding v. Colorado Bar Association,* 2003 WL 22400218, *27 (D. Colo. 2003). The duty to research . . . includes ". . . any obvious affirmative defenses."  *White v. General Motors Corp., Inc.*, 908 F.2d 675, 682 (10th Cir. 1990).   "Rule 11 is violated where it is . . . clear . . . a claim has . . . no chance . . . under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law."  *Harrison v. Luse*, 760 F.Supp. 1394, 1400 (D. Colo. 1991).   "[P]*ro se* [parties] [] must comply with . . . Rule 11."   *Sieverding,* 2003 WL 22400218, *27.   "The standard is one of reasonableness . . . [and the] court must determine what a reasonable person in the *pro se* litigant's position [would do].   [S]ubjective good faith – that is, a pure heart but empty head – is no defense."  *Id. at* *28.

"[S]anctions are meant to. . . : (1) deter[] future litigation abuse, (2) punish[] present litigation abuse, (3) compensate[e] victims of litigation abuse, and (4) streamlin[e] court dockets. . . ."  *Harrison*, 760 F.Supp. 1394, 1400.   Adjudging a Rule 11 motion involves two steps.  The "first [step is to] find that a pleading violates [the rule].  . . .  The second step is . . .  to impose an appropriate sanction."  *Adamson v. Bowen*, 855 F.2d 668, 672 (10th Cir. 1988).

"The appropriate sanction should be the least severe sanction adequate to deter and punish."  *White*, 908 F.2d 675, 684.   Rule 11 "specifically allows the award of attorneys' fees." "When determining the [appropriate] monetary sanctions" courts must consider: (1) the "reasonableness (loadstar) calculation," [if the award is based upon attorneys' fees]; (2) whether the sanctions are the "minimum that serve to adequately deter the undesirable behavior;" (3) "the offenders ability to pay;" and (4) any other relevant factors."  *Id.* at 684-685.

### III.   <u>ARGUMENT</u>

Defendant cannot claim ignorance of the law at the time it filed the Amended Counterclaim; all the law that any reasonable person would need to review to conclude that Defendant's claims are frivolous was cited by Plaintiff in the original motion to dismiss. Defendant's three attempts to state the exact same causes of action make clear that Defendant has refused to accept the law. Under these circumstances, sanctions are warranted. *See Sieverding v. Colorado Bar Association,* 2003 WL 22400218 (D. Colo. 2003), holding that a *pro se* party's refusal to accept that it did not have claims, after having the law thrust upon the party by lawyers, merited sanctions:

> <u>Rule 11</u> requires that the Sieverdings, before filing their law suit, conduct a reasonable inquiry into the factual and legal bases for their proposed claims. A second requirement consists of the Sieverdings' duty to determine, before filing their claims, "whether any obvious affirmative defenses bar the case." *White v. General Motors Corp., Inc.,* 98 F.2d at 682. Here, although done post-filing, that inquiry was conducted *for* plaintiffs by the numerous judicial officers and lawyers who have informed them that they have no claims. Thus, plaintiffs have not merely failed to make a reasonable inquiry into the factual and legal bases for their claims, and the existence of any "obvious affirmative defenses," they have had that inquiry thrust upon them by others more educated and knowledgeable in the law than they, *and they have deliberately and continuously chosen to ignore what they have been told!* As the Tenth Circuit Court stated in the *White* case:

>> We agree that sanctions are appropriate in this case, not because plaintiffs failed to inquire into the facts of their claims, but because they failed to act reasonably given the results of their inquiries.

#### A.   <u>It Was Unreasonable To Allege Abuse of Process</u>

Apparently recognizing that his Abuse of Process claim is legally unfounded, Defendant's Memorandum *entirely* ignores the tort's elements. Indeed, Defendant neither cites the elements nor attempts to argue that he pled the facts necessary to satisfy them. Instead, Defendant chases a flock of red-herrings into a cave with no exit, and that cave with no exit is miles away from the tort of abuse of process.

Since elements serve as the metes and bounds of a tort, the basic tenants of legal reasoning dictate that an analysis starts with them.  With that in mind, "[a] prima facie case for abuse of process includes proof of (1) an ulterior purpose in the use of judicial proceedings;[5] (2) willful actions by a defendant in the use of process that are not proper in the regular conduct of a proceeding; and (3) damages."   *Sterenbuch v. Goss, III*, 266 P.3d 428, 439 (Colo. App. 2011) (dismissing abuse of process count).   *Accord, Tara Woods Ltd. Partnership v. Fannie Mae*, 731 F.Supp.2d 1103, 1122 (D. Colo. 2010) (reciting elements and dismissing abuse of process count); *James H. Moore & Assoc. Realty v. Arrowhead at Vail,* 892 P.2d 367, 373 (Colo App. 1994) (same).  Further, "when the process alleged to have been abused entails, as here, the very filing of a lawsuit, an additional showing is required.  The party asserting the abuse of process claim also has to show that the other party's claims is 'devoid of factual support or if supportable in fact [has] no cognizable basis in law.'"   *Sterenbuch* at 438-439, citing *Yadon v. Lowry*, 126 P.3d 332, 337 (Colo. App. 2005) (quoting *Ware v. McCutchen, 784 P.2d 846, 848* (Colo. App. 1989).  *See also, Protect Our Mountain Env't, Inc. v. Dist. Court*, 677 P.2d 1361, 1365 1368 (Colo 1984) (the additional showing is necessary to protect a person's First Amendment right to petition the government by filing a lawsuit.)   *Accord, James H. Moore & Assoc. Realty v. Arrowhead at Vail,* 892 P.2d 367, 373 (Colo App. 1994) (same).

     1.  Summary of Counter-Plaintiff's Abuse of Process Allegations

Defendant asserts Plaintiff abused the process by alleging: (1) Plaintiff sued Defendant "in order to encourage others to settle," *see* Amended Counterclaim at ¶¶ 15-16; (2) Plaintiff

---

[5] Defendant's allegations of an ulterior purpose are based on Anti-Piracy Management Company, LLC's ("APMC") proposed agreement with an unidentified third party.  To wit: prior to this suit, Plaintiff had never heard of APMC and has had no business dealings with it.  Based upon that proposed agreement, Defendant falsely theorizes that Plaintiff's has an ulterior motive for suing him; namely, to encourage other infringers to settle.  *See* Amended Counterclaim at ¶ 15.

used the joinder rule to avoid filing fees, *Id.* at ¶¶ 72 & 75; (3) Plaintiff attempted to settle the matter early in the litigation, *Id.* at ¶ 74; (4) Plaintiff served Defendant on a Saturday, *Id.* at ¶¶ 76; and (5) Plaintiff alleged Defendant was the infringer despite knowing that the infringer could have been someone using his internet, *Id.* at ¶ 23.   Based thereon, Defendant pleads that "on information and belief" Plaintiff's suit is "based on knowingly inaccurate and/or false data that Plaintiff knew does not and would not identify the alleged downloader," *Id.* at ¶ 84.

### 2.   Counter-Plaintiff Has Failed to Plead an Improper Use of the Process

Defendant did not and cannot in good faith plead all of the elements.   For example, Defendant fails to plead that Plaintiff used process in an improper way.   "If the action is confined to its regular and legitimate function in relation to the cause of action stated in the complaint there is no abuse, even if plaintiff had an ulterior motive in bringing the action or if he knowingly brought suit upon an unfounded claim.*" James H. Moore & Assocs. Realty, Inc. v. Arrowhead at Vail*, 892 P.2d 367, 373 (Colo. App. 1994), citing *Institute for Professional Development v. Regis College*, 536 F.Supp. 632, 635 (D. Colo. 1982) (applying Colorado law) (emphasis in the original).   *See also Restatement 2d Torts § 682*, comment b (1977).

All of Plaintiff's actions have been confined to their regular and legitimate functions in relation to the cause of action stated in the Complaint.   To explain, in *Malibu Media, LLC v. John Does 1-30*, 12-cv-402-WYD-MJW, Plaintiff obtained Defendant's identity, which was Doe 23, in response to a lawfully issued subpoena.   Thereafter, Plaintiff voluntarily dismissed Defendant without prejudice as is its right under Fed. R. Civ. P. 41(a)(1)(A)(i), *see* CM/ECF 16 in 12-cv-402-WYD-MJW.   Subsequently, Plaintiff filed the Complaint in this action and served Defendant.   None of these actions are irregular or illegitimate.   Significantly, Defendant does not deny this.   Instead, Defendant unreasonably ignores the necessity of pleading this element.

3.   Offering to Settle is Not an Abuse of Process

Defendant's assertion that Plaintiff's offer to settle with him or someone else constitutes an abuse of process fails for three reasons: (1) an out-of-court settlement offer is not a "process" within the meaning of the tort[6]; (2) settlement offers are not only proper but encouraged;[7] and (3) Defendant has not been damaged by any such offer.

4.   The Law of the Case Doctrine Precludes Finding That Plaintiff's Use Joinder of Defendants In a Suit is Improper

Defendant's only allegation about a legal "process" that Defendant alleges is improper is Plaintiff's use of Rule 20's permissive joinder rule to save filing fees.   This allegation cannot support a claim for abuse of process when, as here, this Court *correctly* held that joinder was permitted and proper.   *See Malibu Media, LLC v. John Does 1-30*, 12-cv-402-WYD-MJW, CM/ECF 10 (holding "Plaintiff has established that 'good cause' exists for it to serve third subpoenas on the Internet Service Providers listed on Exhibit A to the Motion," at ¶ 1; and, "[a]t this stage of the proceeding, the Court finds that *joinder is proper.* "   "Under the law of the case doctrine, when a court decides an issue of law, that decision [] govern all subsequent stages of the litigation." *Padilla-Caldera v. Holder*, 637 F.3d 1140, 1145 (10th Cir. 2011).[8]   Faced with this law, it is unreasonable to assert that Plaintiff's use of joinder is an abuse of process.

5.   Defendant Failed to Allege that Plaintiff Used a Process To Obtain A Collateral Advantage

Plaintiff has not sought to obtain any other benefit (i.e., a "collateral advantage") vis-à-vis Defendant from this suit.   Under these circumstances, an abuse of process claim cannot

---

[6] A "process" is the filing of the Complaint, propounding discovery, or some action taken in the actual proceeding itself.

[7] "As a matter of public policy the law favors and encourages settlements. . . .The settlement of actions should be fostered to avoid protracted, wasteful and expensive litigation." *Big O Tire v. Bigfoot 4X4, Inc.*, 167 F.Supp.2d 1216 (D. Colo. 2001)(internal citations omitted).

[8] *See* Plaintiff's Motion to Dismiss explaining why none of the exceptions can apply.

stand. *See Hertz v. Luzenac*, 576 F.3d 1103 (10th Cir. 2009); *James H. Moore & Assocs. Realty, Inc. v. Arrowhead at Vail*, 892 P.2d 367, 373 (Colo. App. 1994); *Restatement 2d Torts § 682*, comment b. Defendant consciously ignored this pleading requirement, despite his knowledge of it. And, his bringing this claim knowing he cannot make such an allegation is patently unreasonable.

### 6. Defendant Failed to Allege that Plaintiff's Complaint's is Devoid of Factual Support or That It has No Cognizable Basis in Law

Defendant also failed to allege, as he needed to, that Plaintiff's Complaint is devoid of factual support. Nor could Defendant make such an allegation because Plaintiff provided sworn testimony that Defendant's Internet was used to commit the subject infringement. *See Malibu Media, LLC v. John Does 1-30*, 12-cv-402-WYD-MJW, Declaration of Tobias Feiser, at CM/ECF 6-1.

### 7. Defendant Has Not Pled Any Legally Cognizable Damages

Defendant also failed to plead legally cognizable damages. "A defendant is only liable for abuse of process if his or her abuse caused damages to the Plaintiff." *J. Mintz v. Accident and Injury Medical Specialists, PC,* 2010 WL 4492222, *4 (Colo. App. 2010), citing *1 Am.Jur.2d Abuse of Process § 7*, and *Ion Equipement Copr. v. Nelson,* 110 Ca.App.3d 868, 876 (1980). "Mere vexation or frustration without demonstrable damage is insufficient to sustain liability." *Id.* The *Ion Equipment* court at p. 876, upon which the *J. Mintz* court relied, quoted *3 Restatement Torts § 682* as follows "one who uses legal process against another to accomplish a purpose for which it is not designed is liable to the other for the *pecuniary* loss caused thereby." (Emphasis added.) Here, Defendant has not pled any pecuniary damages.

8.   Champerty, Barratry, Maintenance and Intermeddling Do Not Support An Abuse of
Process Claim

Champerty, barratry, maintenance and intermeddling are distinct claims and defenses, which are separate and apart from the tort of abuse of process.[9]   Notably, Defendant only attempts to plead abuse of process.   Nevertheless, Defendant's memorandum disingenuously argues "common law claims [for champerty, etc.] are still recognized in other jurisdictions, [so] Plaintiff seeks a good faith extension of the [abuse of process] law" to incorporate these separate and distinct claims and defenses into the abuse of process tort.   Defendant's Memorandum at p. 10.

While ostensibly couched in the language of Rule 11, Defendant is not seeking to *extend* the abuse of process law.   Instead, Defendant seeks to overturn one hundred and twelve (112) years of binding precedent, and, thereafter, to that rejected law into the tort of abuse of process. Indeed, Defendant admits "the common law torts of maintenance and champerty no longer exist in Colorado."   Defendant's Memorandum at p. 10, *citing Fastenau v. Engel*, 125 Colo. 119, 122 (Colo. 1952);   *Accord, Casserleigh v. Wood,* 14 Colo. App. 265, 267 (Colo. 1900) (same). Defendant's case, *Fastenau,* further illuminates the frivolousness of his argument.   In *Fastenau* at p. 122, the Court answered *no* in response to its question whether "a [champertous] contract can . . . bar . . . recovery on the [plaintiff's claim]."   To explain, champerty is an affirmative defense to a champertous contract.   It can only be raised by the champertee against the champertor.   It is *not* a defense that can be raised by a third party to the allegedly champertous agreement.   *See, Seaton Mountain Elec. Light, Heat & Power v. Idaho Springs Inv. Co.*, 49

---

[9] Defendant's factual allegations regarding champerty, etc. are both a work of great fiction and totally irrelevant.   Worse, Defendant irrationally pursues this red-herring down a black-hole to nowhere, even after Defendant figures out the defenses do not exist – and, even if after Defendant should have figured out that even if the defenses did exist, he could use them.

Colo. 112 (1910) "the prosecution of a cause of action cannot be interposed as a defense, but can only be set up between the parties when the champertous agreement itself is sought to be enforced."[10]

Defendant's long winded attempt to plead champerty is prohibited by 112 years of Colorado precedent.  In light of the law, his pursuit of this defense is not reasonable.  Nor is it reasonable for Defendant to argue that he should be allowed to insert champerty into an abuse of process claim.  They are separate and distinct claims and defenses and the failure to appreciate that is unreasonable.

B. It was Unreasonable for Defendant To Allege Invasion of Privacy, Defamation and Intentional Infliction of Emotional Damage Because They Are All Barred by the Litigation Privilege

It was unreasonable for Defendant to allege Invasion of Privacy, Defamation, and Intentional Infliction of Emotional Distress because these torts are all barred by the litigation privilege.  "Communications made in the course of judicial proceedings, even though they are made maliciously and with knowledge of their falsity, are absolutely privileged if they bear a reasonable relationship to the subject of inquiry." *Swanson v. Bixler,* 750 F.2d 810, 814 (!0th Cir. 1984).  *Accord Department of Administration v. State Personnel Board of State*, 703 P.2d 595, 596-98 (Colo. App. 1985) (same).  "The reason underlying this doctrine is that public interest in the freedom of expression by participants in judicial proceedings, uninhibited by risk from resultant suits for defamation, is so vital and necessary to the integrity of judicial system that it must be made paramount to the right of the individual to a legal remedy where he has been wronged thereby." *MacLarty v. Whiteford,* 496 P.2d 1071, 1072 (Colo. App. 1972), *rev. denied.*

---

[10] In other words, *Fastenau* and *Seaton* both hold that champerty and maintenance are affirmative defenses to a breach of contract claim.  And, that parties who are not in privity with champerator cannot raise the defense.

(using the language quoted in *Swanson* to define the rule).   "A party to a civil litigation . . . is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding." *Restatement 2d of Torts § 587.*

Here, the false light prong of Defendant's Invasion of Privacy tort is predicated upon the allegation that "Plaintiff publicized false allegations – namely, the accusation that Defendant illegally downloaded pornographic films – by placing them into a public document – namely, the Complaint against Defendant."   *See* Amended Complaint at ¶ 88.   Similarly, the defamation count is entirely and expressly founded upon communications to the Court in the Complaint.   To quote . . . "[b]y filing the complaint," see Id. at ¶ 97, "the allegations made by the Plaintiff in the Complaint" Id. at ¶ 97 and 98, all, Defendant alleges, harmed him.   Finally, the Intentional Infliction of Emotion Distress count is also based entirely on Plaintiff's having brought the instant lawsuit.   *See* Id. at ¶ 112 "by publishing these accusations through this lawsuit, Plaintiff has, in fact, caused Defendant extreme emotional distress."   Here, Defendant simply cannot assert that Plaintiff has done anything other than sue him for copyright infringement because Plaintiff has not done anything else.   And, under well-established law, Plaintiff is absolutely privileged to sue Defendant without the possibility of being countersued based upon what Plaintiff communicates to the Court in the suit.   This is an outcome dispositive affirmative defense.   *See Rohner v. Union Pac. R. Co.*, 225 F.2d 272 (10th Cir. 1955) (dismissing claim where, as here, an outcome dispositive affirmative defense was apparent on face of the pleading).

1. Defendant's Reliance on Malicious Prosecution Law to Argue that the Absolute Privilege Does Not Bar His Claims for Invasion of Privacy, Defamation and Intentional Infliction of Emotional Damage Is Unreasonable

Since the litigation privilege is an obvious outcome dispositive affirmative defense, it is unreasonable for Defendant to press on with these claims.  Nevertheless, Defendant irrationally continues to assert these claims in his Amended Counterclaim, his attempted Second Amended Counterclaim and in his Memorandum.  According to "Defendant, [he] is arguing for a non-frivolous extension of existing law in bringing a defamation claim . . . despite the privilege . . . because Defendant was harmed."  This tautological argument is irrational because the privilege recognizes that there may be harm, and nevertheless bars claims based upon any such harm.

Defendant cites *Mantia v. Hanson*, 190 Ore. App. 412, (Or. Ct. App. 2003) for the proposition that the absolute privilege is not a bar to a suit for malicious prosecution.  *See* Defendant's Memorandum at p. 23-24.  Defendant then argues that since the privilege doesn't bar a malicious prosecution claim, it is reasonable to extend the exception to claims based on defamation, invasion of privacy, intentional infliction of emotional distress.  This argument fails because malicious prosecution is a separate and distinct tort from those torts.

Moreover, "to prevail on a claim for malicious prosecution, the following elements must be satisfied: (1) the defendant contributed to bringing a prior action against the plaintiff; (2) the prior action ended in favor of the plaintiff; (3) no probable cause; (4) malice; and (5) damages." *Hewitt v. Rice,* 154 P.3d 408, 412 (Colo. 2007).  Thus, the litigation privilege only gives way if the action ended favorably for the victim of malicious prosecution, and if there was no probable cause to bring the suit in the first instance.  Defendant cannot plead either of these elements.  Consequently, his attempt to incorporate the law of malicious prosecution into other torts

covered by the litigation privilege is unreasonable, unsupportable, disingenuous and would fail even if possible.

C.  It Was Unreasonable for Defendant to Plead Intrusion Upon Solitude

Count II of claim attempts to assert a cause of action for two different invasion of privacy torts: (1) intrusion and (2) false light.  Both claims fail as a matter of law.  "The tort of invasion of privacy by intrusion requires an unreasonable manner of intrusion or an intrusion for an unwarranted purpose."  *Slaughter v. John Elway Dodge Southwest/AutoNation*, 107 P.3d 1165, 1070 (Colo. App. 2005), citing *Denver Publ'g Co. v. Bueno,* 54 P.3d 893 (Colo. 2002); *Doe v. High-Tech inst., Inc.*, 972 P.2d 1060 (Colo. App. 1998). Here, Defendant alleges that: (a) Plaintiff intentionally intruded upon Defendant's solitude by collecting data about the IP Address used by his internet service without his knowledge, *see* Amended Counterclaim at ¶ 86, and by "forcing Qwest/Century Link to disclose his identifying information," *Id.* at ¶ 87.

Defendant's claim for intrusion due to Plaintiff's investigation fails because: (1) investigating the infringement of one's copyrighted works is warranted and necessary so that one may enforce one's copyrights, and (2) Plaintiff's investigation was not done in an unreasonable manner.  Indeed, as alleged by Plaintiff, Defendant used his computer to reach out to Plaintiff's investigator, IPP Limited, perform a digital hand shake with IPP Limited's computer, and then Defendant transmitted a piece of Plaintiff's copyrighted work to IPP Limited.  There is nothing unreasonable in this process.  To the contrary, it is the best and only way to establish that Defendant was distributing Plaintiff's works via his internet.  And, Plaintiff has a right under the First Amendment's Petition Clause to sue for infringement committed via the internet.

Defendant's claim for intrusion due to Plaintiff's subpoenaing his identity from Qwest fails because: (1) this court found that Plaintiff had "good cause to do so (i.e., "warranted"), and

under the law of the case doctrine, discussed above, there is no reason to disturb this finding, (2)

Defendant did not have a reasonable expectation of privacy, and (3) Defendant consented to the

disclosure of his information via his contract with Qwest.

Regarding Defendant's expectation of privacy, "[i]nternet subscribers do not have a

reasonable expectation of privacy in their subscriber information—including name, address,

phone number, and email address—as they have already conveyed such information to their

ISPs." *First Time Videos, LLC v. Does 1-500*, 276 F.R.D. 241, 247 (N.D. Ill. 2011), *citing*

*Achte/Neunte Boll Kino Beteiligungs Gmbh & Co. v. Does 1–4,577*, 736 F.Supp.2d 212, 216

(D.D.C. 2010).   Defendant acknowledged this by accepting Qwest's contract, Section 10 of

which provides that: "Qwest may provide customer information to third parties or governmental

entities when required or permitted by law. . . ."   Qwest has an additional Privacy Policy which

states "we may share customer information: (1) to comply with laws or to respond to lawful

demands such as subpoenas or court orders . . . [and,]  [a]mong the information we might be

asked to provide are a customer's name, address, telephone number, account number, any

Internet Protocol or network address that we assigned to the customer. . . ."[11]   Defendant

consented to Qwest's Agreement when he obtained his internet service from it.  By so agreeing,

---

[11] Defendant also agreed to secure his IP Address, take responsibility for his use and not to
violate laws.  <u>See</u> Section 2(b)(i) of Qwest's High-Speed Internet® Subscriber Agreement (the
"Agreement stating that Qwest's subscribers will "receive a user name and password upon
completing the registration process."  Further, that Qwest's subscribers have "responsibility for
maintaining the confidentiality of the user name and password, and are fully responsible for all
activities that occur under your [ the subscriber's] user name and password."  Also, that "only
you [the subscriber] and your authorized designees will use your user name and password and
that you will not transfer or disclose either your user name or password to any other person."
Finally, in capitalized letters "QWEST RECOMMENDS USE OF COMMERCIALLY
AVAILABLE CONTENT FILTERING SOFTWARE" which would block peer to peer file
sharing.  Section 7(d) states "[t]he Service cannot be used for any . . . purpose . . . [that] violates
any law, order ordinance, governmental requirement or regulation or this Agreement."

he consented to Qwest delivering his identifying information to a third party, like Plaintiff here, in response to a subpoena.

### D.   It Was Unreasonable to Plead the Tort of False Light Invasion of Privacy

As for false light invasion of privacy, paraphrasing Defendant, he alleges: (1) Plaintiff published false statements about him by including them in the Complaint, *see* Amended Counterclaim at ¶ 88; and (3) "by making these allegations public, Plaintiff has portrayed the Defendant in a false light," *Id.* at ¶ 89.   This count fails because the Supreme Court of Colorado expressly held that Colorado does not recognize the tort of false light invasion of privacy.   *See Denver Publishing Co. v. Bueno*, 54 P.3d 893, 894 (Colo. 2002) (in a long opinion on this one issue, the Court held "[w]ith this case we address whether Colorado permits a plaintiff to sue for the tort of false light invasion of privacy . . . . we now decline to recognize the tort . . . .") Even if Colorado had recognized the tort, the false light claim would be barred by the absolute litigation privilege since it is based entirely on allegations made in the Complaint.   *See Swanson v. Bixler,* 750 F.2d 810, 814 (10th Cir. 1984).   Here, Defendant claims that Plaintiff's Motion to Dismiss taught him this claim was unsustainable.   However, failing to do the basic research necessary to confirm that a cause action exists – in and of itself – is a breach of the duty that Rule 11 imposes.

### E.   It Was Unreasonable for Defendant to Plead Defamation

Plaintiff's allegations that Defendant infringed its copyright do not give rise to liability for defamation because these allegations are privileged as a matter of law.   *See, e.g., Swanson v. Bixler,* 750 F.2d 810, 814 (10th Cir. 1984); *accord Walters v. Linhof*, 559 F.Supp. 1231, 1237 (D. Colo. 1983) (holding that "statements made during judicial proceedings are absolutely immune" from liability for defamation).   "Even if false, statements that stepson was going to abscond with stepfather's assets were absolutely privileged where made during course of proceedings seeking

conservatorship for stepfather and temporary restraining order…[.]"); *accord Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 335 F.3d 1161, 1166 (10th Cir. 2003) ("recognize[ing] the litigation privilege under which attorneys, parties, jurors, and witnesses are immune from defamation liability for statements made in the course of judicial or quasi-judicial proceedings, so long as the statements are relevant to the proceeding.") Here, Defendants repeated assertion of a defamation claim, despite the privilege, is unreasonable and sanctionable.

F. It Was Unreasonable for Defendant To Plead Intentional Infliction of Emotional Distress

To establish a claim of extreme and outrageous conduct, or intentional infliction of emotional distress, Defendant must allege that: "1) the [Plaintiff] engaged in extreme and outrageous conduct; 2) recklessly or with the intent of causing [Defendant] severe emotional distress; and 3) which caused the [Defendant] to suffer severe emotional distress." *LaBrecque v. L3 Communication Titan Corp.*, 2007 WL 1455850, at *4 (D. Colo. 2007). The level of outrageousness necessary to meet the first element is "extremely high." *Id.*, at *4-5, *citing Archer v. Farmer Bros. Co.*, 70 P.3d 495, 499 (Colo. App. 2002). "Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities are insufficient; only conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community, will suffice." *Id.*

Here, Defendant alleges that Plaintiff's allegation that Defendant illegally downloaded Plaintiff's pornographic work have caused him severe emotional distress. *See* Amended Complaint at ¶¶ 112-114. First, since the claim is based on communications to the Court, the absolute litigation privilege acts as a complete bar. *See Swanson v. Bixler*, 750 F.2d 810, 814 (10th Cir. 1984). Second, Plaintiff's filing of a complaint for copyright infringement, does not

constitute "extreme and outrageous conduct." *See Swanson v. Bixler*, 750 F.2d 810, 814-15 (10th Cir. 1984) (upholding dismissal of claim for intentional infliction of emotional distress where plaintiff complained that judicial proceedings for a conservatorship and injunction against him to prevent him from removing step-father's assets constituted "outrageous conduct").

Defendant's assertion to the contrary is unsupported by law and otherwise unreasonable.

### G. A $10,000 SANCTION IS APPROPRIATE

Based upon the foregoing, the Court should find that Defendant violated Rule 11 by pleading: (a) Abuse of Process, (b) Defamation, (c) Intentional Infliction of Emotional Distress and (d) Privacy Torts. As explained above, the Court in *White v. General Motors Corp., Inc.*, 908 F.2d 675, 682 (10th Cir. 1990) set forth the factors that a district court must consider when ascertaining the quantum of an "appropriate" sanction. Here, the motion to dismiss the Amended Counterclaim is a 23 page memorandum, and it is supported by substantial decisional authority. The instant paper also required substantial work. The reasonable attorneys' fees for doing this work exceed $10,000. Nevertheless, "[t]he appropriate sanction should be the least severe sanction adequate to deter and punish." *White*, 908 F.2d 675, 684.

With that in mind, Plaintiff concedes that a $10,000 sanction is likely sufficient to adequately deter similar frivolous counterclaims. Make no mistake, deterrence is necessary. Defendant's counterclaim has been put on anti-copyright blogs.[12] Several people have already whole-sale copied all or portions of it.[13] Unless Defendant is sanctioned – Plaintiff, other defendants and this Court will needlessly endure more pointless work. And, without a sanction, many straight forward copyright infringement claims will be needlessly complicated.

---

[12] See http://fightcopyrighttrolls.com/2012/07/20/in-a-well-prepared-and-mighty-counter-attack-malibu-media-v-fantalis-case-turns-into-fantalis-v-malibu-media/

[13] See <u>Malibu Media, LLC v. John Doe 1</u>, 8:12-cv-01195-PJM (D. Md. September 19, 2012); <u>Malibu Media v. Gan Southgate</u>, 3:12-cv-00369-LAB-DHB, (S.D. Cal. Aug. 22, 2012).

Defendant's ability to pay "should be treated as . . . an affirmative defense, with the burden upon the parties being sanctioned to come forward with evidence of their financial status." *Id.*   Here, Defendant has not come forward with any evidence indicating he is unable to pay.   The only other relevant factor regarding the quantum of sanction, which should be considered is that Defendant played a disingenuous game of whack-a-mole by filing a series of amendments.  This demonstrates bad faith and warrants sanctions.

## IV.   CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court find Defendant has violated Rule 11 and impose a $10,000 sanction on Defendant.

Respectfully submitted,

By: */s/Jason Kotzker*
Jason Kotzker
jason@klgip.com
KOTZKER LAW GROUP
9609 S. University Blvd. #632134
Highlands Ranch, CO 80163
Phone: 303-875-5386
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system. In addition, a courtesy copy of the foregoing document was emailed to Defendant and a hard copy was mailed using U.S. Mail.

By: */s/Jason Kotzker*