**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

OCT 11 2012

JEFFREY P. COLWELL
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:12-cv-00886-MEH

---

Malibu Media, LLC,

     Plaintiff,

v.

Jeff Fantalis and Bruce Dunn

     Defendants.

---

DEFENDANT/COUNTERCLAIMANT'S MOTION PURSUANT TO FED.R.CIV.P. 37(a)
TO COMPEL PLAINTIFF TO PRODUCE ANSWERS TO DISCOVERY REQUESTS
AND REQUEST FOR SANCTIONS

     Defendant, Jeff Fantalis, pursuant to Fed.R.Civ.P. 37(a), hereby moves for entry of an order compelling Plaintiff to provide and produce full, truthful, accurate and appropriate answers to Defendant's discovery requests in compliance with the Federal Rules of Civil Procedure, and says:

     Pursant to the Federal Rules and the Scheduling Order entered by this Court on July 17, 2012, Defendant served upon Plaintiff his First Request for Production of Documents (RFP), First Interrogatories and First Request for Admissions (RFA) on August 2, 2012. Plaintiff's answers to these requests were due on September 4, 2012. Plaintiff sought no extensions of time from this Court and provided answers to Defendant's discovery requests on September 4, 2012, that were more objection than

information. See **Exhibit A**, Plaintiff's Response to First Request for Production; **Exhibit B**, Plaintiff's Response to Defendant Jeff Fantalis First Request for Admissions; and **Exhibit C**, Plaintiff's Responses to Defendant/Counterclaimant's First Set of Interrogatories Dated August 2, 2012. Consistent with the requirements of Rule 7.1(A), Defendant attempted to confer with Plaintiff's attorney by telephone on September 18, 2012, in an effort to come to an agreement with regard to disputed items, among other things. During that telephone call, the parties were unable to agree to any compromise position. Several times during the conversation, Plaintiff's attorney indicated that he or his client was not willing to supplement the answers that had been provided; that they wanted these issues to be determined by the Court; and that they were not going to provide anything further until the Court ruled on other motions currently pending before it (i.e., the Motion to Dismiss and/or the Motion for a Protective Order). Plaintiff's attorney told Defendant to seek a motion to compel if that was what he needed to do and stated: "This is how the game is played."[1]

Given the Plaintiff's attorney's responses during the telephone call, and his across-the-board refusal to even discuss any kind of compromise, as well as Plaintiff's repeated delays in complying with its Rule 26 obligations, Defendant has no choice but to bring this motion to seek the Court's assistance in obtaining discovery.

---

[1] In a lawsuit where Plaintiff is asserting that Defendant is personally liable for approximately 2 million dollars in damages, and where these allegations have caused potentially irreparable damage to Defendant's reputation and standing in his community and in business, Defendant has to disagree with Plaintiff's description of this as a "game."

"WILLINGNESS TO COOPERATE"

As noted by this Court, although attorneys are expected to be "zealous advocates for their clients, they bear a professional obligation to conduct discovery in a diligent and candid manner.... Cooperation does not conflict with the advancement of their clients' interests – it enhances them. Only when lawyers confuse advocacy with adversarial conduct are these twin duties in conflict." *Cartel Asset Mgmt. v Ocwen Fin. Corp.*, 2010 U.S. Dist. LEXIS 17857, 40-41 (Dist.Colo. Feb. 8, 2010)(citing *The Sedona Conference Cooperation Proclamation* (2008)). Consistent with this principle, on the first page of each of the discovery responses, Plaintiff states its "willingness to cooperate", stating:

> Counsel for Plaintiff is prepared to discuss with counsel for Defendant the objections set forth below for the purpose of resolving any disputes that may arise over the responses to the Requests without the need for intervention by the Court.

However, based on Plaintiff's conduct to date, such declarations are unpersuasive and frame many of the issues now before this Court. For example, the reference to "counsel for Defendant" is evidence that this is merely cut-and-paste boilerplate with no real meaning behind it, as Plaintiff is well aware that Defendant is representing himself. Moreover, Plaintiff's firm position was clearly conveyed to Defendant by Plaintiff's counsel when he stated: "Let the judge decide," and "This is how the game is played." Defendant will submit to the Court's judgment whether Plaintiff has met its own standards of cooperation.

Regardless, in light of such clear and unequivocal declarations from Plaintiff's attorney, Defendant believes that, consistent with this Court's rulings, he has "in good

faith conferred or made reasonable good-faith efforts to confer with opposing counsel…

to resolve the disputed matter." *Spent v. Geolfos*, 2011 U.S. Dist. LEXIS 141457, at 5

(D.Colo. Dec. 7, 2011)(citing Fed.R.Civ.P. 37(a)(1); D.C.Colo.L.Civ.R. 7.1(A).[2]

GENERAL OBJECTIONS AND RESERVATIONS

Each of the discovery responses begins with three pages of general, boilerplate

objections and reservations. (See, e.g., Exhibit A, pp. 1-4).  Plaintiff objects to all of

Defendant's requests:

> to the extent that they are vague, ambiguous, over broad,
> harassing and/or unduly burdensome… purport to require
> information in the possession, custody, or control of any
> person or entity other than Plaintiff… they seek information
> that is attorney-client privileged…they seek to impose
> requirements beyond those contained in the Federal Rules
> of Civil Procedure, or any applicable Local Rules and/or
> laws… they call for information that is neither relevant to the
> action nor reasonably calculated to lead to the discovery of
> admissible evidence… they call for (1) trade secrets, (2)
> confidential business research, and/or (3) commercial
> information…

All of these objections are raised to all of the requests, the only qualifier being the

words "to the extent…"  Such words will not save a fatally flawed general objection.

See *High Point SARL v. Sprint Nextel Corp.*, 2011 U.S.Dist. LEXIS 103118 (D.Kan.

Sept. 12, 2011)(criticizing party's use of the qualifier "to the extent" in its discovery

objections and imposing sanctions). Further, Plaintiff's generalized objections are

inappropriate and should be withdrawn by Plaintiff or overruled by this Court as it places

the burden on Defendant to discern exactly what Plaintiff thinks is wrong with which of

---

[2] Where Plaintiff's attorney was adamant that there was no room for discussion, much less negotiation and compromise, (see, *Spent, supra*, at 6 (the parties "must compare views and attempt to reach an agreement, including by compromise if appropriate"), multiple phone calls would only have been an exercise in futility.

4

the requests. See *Scotsman Indus. v. Broadbent*, 2012 U.S. Dist. LEXIS 126531, *6-7 (D.Colo. 2012)(citing *Klesch & Co. v. Liberty Media Corp.*, 217 F.R.D. 517, 524 (D.Colo. 2003)(the objecting party's burden cannot be sustained merely by asserting boilerplate objections)(internal quotations omitted).

Next, Plaintiff objected because the Requests for Admissions and the Interrogatories "exceed thirty requests as agreed to by the parties." Perhaps this is another instance of Plaintiff's use of boilerplate language without investigation, because Defendant has no knowledge of any such agreement. If Plaintiff is referring to preliminary discussions between the parties prior to the entry of the Scheduling Order, those discussions were obviously mooted by the Court's entry of the Scheduling Order after hearing from both parties in open court. The Scheduling Order provides:

> 8. Discovery Limitations
>
> a. The parties anticipate no more than 25 interrogatories...
>
> c. The parties anticipate no more than 25 requests for production and/or requests for admission per party, however, the Court will not at this time impose any limits.

Defendant would assert that it is unjustified and frivolous on its face to ignore and/or mischaracterize a direct Court Order to justify its failure to provide requested discovery or as a basis to object to a discovery request. Regardless, Defendant propounded only 10 Interrogatories (with no subparts) and 215 Requests for Admissions (with no subparts). Defendant's Requests for Admissions were particularly lengthy because: 1) it was the simplest and least burdensome way for Defendant to obtain and for Plaintiff to provide discovery; 2) it would significantly narrow the issues for trial with the least expense and effort for both parties; and 3) based upon Plaintiff's prior

evasive and dilatory tactics with regard to its Rule 26 obligations, Defendant anticipated that Plaintiff might be less than forthcoming in its answers and so he wanted to be very precise in the wording of his questions.  If Plaintiff believes the Scheduling Order ought to be amended, Plaintiff is free to seek such relief; however, until that time, it cannot unilaterally and without justification attempt to limit Defendant's discovery rights based on an "agreement" that does not exist, never did exist and contradicts a direct Court Order.

In its "Reservations", Plaintiff carefully noted that "[b]y undertaking to respond to these Requests... Plaintiff does not in any way waive or intend to waive but rather intends to preserve and is preserving" its rights under the Rules of Evidence and in fact "all rights to object on any ground at any time to use of these Requests for any purpose." Finally Plaintiff "reserves the right to supplement or amend its specific or general objections to any or all the requests..."  In light of the fact that Plaintiff provided not even a single document – confidential or otherwise – and only partial and evasive answers to the bulk of Defendant's RFAs and Interrogatories where they were answered at all, Plaintiff cannot show good cause for such a reservation.    See *Greystone Constr., Inc. v. Nat'l Fire & Marine Ins. Co.*, 2001 U.S.Dist. LEXIS 106695 (D.Colo. Mar. 21, 2008)(citing *Safeco Ins. Co. v. Rawstrom*, 183 F.R.D. 668 671-72 (C.D. Cal. 1998)(holding that objections not interposed in a timely initial response are waived even if the objections are contained in a later untimely response, absent a showing of good cause).

PLAINTIFF'S BROAD, BOILERPLATE OBJECTIONS ARE WITHOUT LEGAL FORCE

Plaintiff seeks to avoid its discovery obligations by asserting numerous rote and boilerplate objections. However, this is insufficient to carry its high burden. *MedCorp, Inc. v. Pinpoint Techs., Inc.*, 2009 U.S. Dist. LEXIS 38022 (D. Colo. Apr. 20, 2009)(citing *Klesch, supra*) (granting motion to compel finding that the objecting party failed to show why the discovery request is objectionable, and that burden cannot be sustained merely by asserting boilerplate claims).

Federal courts have routinely held that boilerplate objections do not constitute valid objections and in fact, they may even be considered as never having been made. See, *Starlight Int'l, Inc. v. Herlihy*, 181 F.R.D. 494 (D. Kan. 1998); *Ritacca v. Abbott Labs.*, 203 F.R.D. 332 (N.D. Ill. 2001). Courts have observed that such objections do nothing to inform the requesting parties or the court about why a request should not be honored, what part of it might be acceptable, or how it could be reformulated so as to pass muster. See generally, *Josephs v. Harris Corp.*, 677 F.2d 985 (3rd Cir. 1982); *Momath v. Albert Einstein Medical Center*, 164 F.R.D. 412 (E.D. Pa. 1996); *PLX, Inc. v. Prosystems, Inc.*, 220 F.RD. 291 (N.D.W.Va. 2004); *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482 (5th Cir. 1990); *Roseberg v. Johns-Manville Corp.*, 85 F.R.D. 292 (E.D. Pa. 1980); *In re Folding Carton Antitrust Litigation*, 83 F.R.D. 260 (N.D. Ill. 1979); *American Rock Salt Co., LLC v. Norfolk Southern Corp.*, 228 F.R.D. 426, 432 (W.D.N.Y. 2004). Cf. *Athridge v. Aetna Casualty and Surety Co.*, 184 F.R.D. 181, 190-91 (D.D.C. 1998) (holding that general boilerplate objections are ineffective).

Additionally, generalized objections that a discovery request is vague, overly broad or unduly burdensome, as Plaintiff repeatedly asserts, are not acceptable and should be overruled and even affirmatively sanctioned. *See Greystone, supra* (quoting *Grider v. Keystone Health Plan Central, Inc.*, 2007 U.S. Dist. LEXIS 73066, 2007 WL 2874423, *4-5 (E.D. Pa. 2007) (holding that [party] had violated Fed.R.Civ.P. 26(g) and 37 by interposing general boilerplate objections to discovery requests). *See also, e.g., Cotracom Commodity Trading Co.* v. *Seaboard Corp., 1998* U.S. Dist. LEXIS 6726 (D. Kan. 1998) (finding general objections "worthless"); *In re Shopping Carts Antitrust Litig., 95* F.R.D. 299 (S.D.N.Y. 1982) (same). Such objections are even treated as if they were never made in the first place. *See Starlight Int'l, supra; Ritacca, supra.*

Instructive for the Court is *EEOC v. Safeway Store, Inc.*, 2002 U.S. Dist. LEXIS 25200, *2-5 (N.D. Cal. 2002). Here, Safeway repeatedly objected on the following grounds:

> vague, ambiguous and overly broad as to time an (sic) subject matter, seeks documents that are not relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence, seeks documents protected from disclosure by the attorney-client privilege and/or work product doctrine, and seeks documents protected from disclosure by third party privacy rights.

*Id.* Plaintiff is using essentially the same tactic. The *Safeway* court stated that where the responding party provides a boilerplate or generalized objection, those objections are inadequate and tantamount to not making any objection at all. *Id.; Walker v. Lakewood Condominium Owners Association,* 186 F.R.D. 584, 587 (C.D. Cal. 1999); *Burroughs v. Denardi Corp.,* 167 F.R.D. 680 (S.D. Cal. *1996); Richmark Corp. v. Timber Falling Consultants,* 959 F.2d 1468, 1473 (9th Cir.); *China Everbright Trading Co. v. Timber*

*Falling Consultants, Inc., 506* U.S. 948 (1992). Similarly, Plaintiff's generalized, overbroad and boilerplate objections are unjustified and should be overruled by the Court.

"CLAIMS WILL BE DISMISSED" AND
"NOT RELEVANT OR NOT LIKELY TO LEAD TO THE
DISCOVERY OF ADMISSIBLE EVIDENCE"

Approximately sixty percent of all of Defendant's discovery requests were answered with one or both of the following responses[3]:

> "The only claim that will survive a motion to dismiss is Plaintiff's claim for direct infringement against Defendant" or substantially similar words:
>
> RFP (23/64): 1, 6, 8, 17, 18, 33-49, 64
>
> Interrogatories (3/10): 8-10
>
> "Neither relevant nor likely to lead to the discovery of relevant information" (or "admissible information" or substantially similar words)
>
> RFP (45/64): 3, 5-8, 17-22, 24-27, 31-51, 54-58, 60, 62-64
>
> RFA (105/215): 46-60, 67-118, 142-143, 171-192, 194-201, 203-204, 212-215

However, there is no legal substantiation for these objections and they should be overruled. *Klesch, supra,* at 524. To provide just a few examples for the Court:

Defendant's RFP #1 asks for documents concerning or pertaining to "file sharing downloading technology" which is the essence and foundation of Plaintiff's suit against Defendant. One of the five objections Plaintiff raised to this essential question was that

---

[3] Several examples out of this multitude will suffice to demonstrate the flaws in Plaintiff's reasoning.

"the only claim that will survive a motion to dismiss is Plaintiff's claim for direct infringement against Defendant. The issue in this case is whether Defendant used BitTorrent to illegally distribute Plaintiff's copyrighted works." In this way, Plaintiff seeks to hide from discovery the very methods it employed in obtaining evidence that it now asserts supports its claims.

In another example, Defendant's RFP #18 sought the employment/retainer agreement between Plaintiff and IPP, Ltd., the IP harvesting company which collected the IP address that led to Defendant's being sued by Plaintiff in this matter. Plaintiff's response to this request was:

> Plaintiff objects to this request on the basis that the requested information is not relevant to any claim or defense in this case that will remain after the pleadings are finalized. The only claim that will remain in this case after the pleadings are finalized is Plaintiff's count for direct infringement against Defendant. The business agreements that Plaintiff has with third parties are not likely to lead the (sic) discovery of any admissible information because these Agreements do not make the issue of whether Defendant committed the infringement more or less likely.

The response that the "only claim that will survive a motion to dismiss is Plaintiff's claim of direct infringement" was further used to rebuff questions regarding the employees, officers and board members of Plaintiff (RFP #33-35), as well as a request for corporate insurance that follows up on Plaintiff's R. 26(a) disclosure that admits Plaintiff has no insurance to cover any potential liability in this suit. Again, as will be discussed below, Defendant respectfully disagrees that there is only one issue, namely Defendant's alleged infringement, which must be determined by this Court.

Additionally, Defendant's RFA #46 and 47 asked about settlements with the other Does in the lawsuit through which Plaintiff obtained Defendant's identifying information (*Malibu Media v. John Does 1-30*, 1:12-cv-402-WYD-MEH) and about settlements with the other parties to the case at bar.   Plaintiff refused to answer either of these questions, saying in response to both:

> Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.

Plaintiff used this identical language to object to answering any questions about the amount of revenue it has received from settlements in similar copyright infringement litigations in calendar year 2011 (RFA #48 through 51) and calendar year 2012 (RFA #52 through 55).   Plaintiff also used this language to object to all questions regarding the status of any other "John Doe" copyright infringement litigation it has filed.   RFA #98 through 107.   As will be outlined below, Defendant is clearly entitled to this information as it directly relates to not only Defendant's existing counterclaims and/or potential counterclaims but also damages, damage off-sets, joint and several liability, contribution, double recovery defenses, and the like, among other issues.

This list is by no means exhaustive, but is offered as exemplary of Plaintiff's approach to answering Defendant's discovery requests. When Defendant brought these answers to Plaintiff's attorney's attention during the telephone call, Plaintiff's attorney indicated that Plaintiff was "not willing to supplement" its answers and told Defendant to seek a motion to compel.

These objections are invalid on their face and are based on legal reasoning that is flawed on several levels.   First, Plaintiff's objections run contrary to the entire

foundation for discovery, which is to evaluate and determine the issues for trial. Plaintiff, by unilaterally determining what the issues are, short-circuits this process and acts in direct contravention to this broad governing principle. Second, Plaintiff unilaterally presumes to know on what basis Defendant seeks to discover the requested information, disregarding the fact that the information sought may (and does) have several different grounds of relevancy and pertinence with regard to this case[4].

As defined by Fed.R.Civ.P. 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Discovery is not limited only to one of Plaintiff's claims[5], but any information "if it might reasonably assist a party in evaluating a case, preparing for trial, or facilitating settlement." See generally *Hickman v. Taylor*, 329 U.S. 495 (1947). Since as a matter of law, relevant information need not even be admissible, discovery cannot be avoided merely because the information or documents sought are likely to be inadmissible. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 29-30 (1984); 8 Wright's Federal Practice and Procedure §2008, at 111-113 & nn. 31-33 (2nd ed. 1994).

More specifically, "relevance" for discovery purposes is construed liberally and with common sense, and it has been defined to encompass any matter that bears on or

---

[4] This provides an interesting contrast to the objections based on vagueness and ambiguity, because there, Plaintiff claims not to know what Defendant intended. Here, in response to 60% of Defendant's requests, Plaintiff presumes to know exactly what Defendant intended. The paradox is striking.

[5] In its discovery documents, Plaintiff repeatedly stated that it would withdraw and not pursue its claim for contributory infringement and its claim for actual damages. However, it has not yet done so. Until it does so, Plaintiff's assertion that it does not have to provide discovery on these claims is disingenuous. Moreover, as argued herein, Plaintiff's decision with regard to those claims has no bearing on the relevance of certain discovery requests to Defendant's counterclaims, defenses, potential claims, issues of credibility, and the like.

reasonably could lead to other matters that could bear on, any issue that is or may be in the case. *Oppenheimer Fund, Inc. v. Sanders*, 437 US. 340 (1978); *Jackson v. Montgomery Ward & Co.*, 173 F.R.D. 524 (D. Nev. 1997); *Miller v. Pancucci*, 141 F.R.D. 292 (C.D.Cal. 1992). In point of fact, this Court construes what constitutes discoverable information very broadly. Specifically, "relevan[ce] is a broad determination, the goal of which is to allow the parties to discover whatever is necessary to prove or disprove their cases." *MedCorp, supra; Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995); *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 356 (D.Colo. 2004); *Herbold v. Access Distrib., Inc.*, 2011 U.S.Dist. LEXIS 122747, *3-4 (D.Colo. Oct. 24, 2011)

Thus, the scope of Defendant's discovery is not limited by the allegations in Plaintiff's Complaint. If the material sought is relevant to the case, it should be produced. *MedCorp, supra.* Plaintiff's insistence on a narrow scope of discovery that focuses only on one of its two theories of liability against Defendant, and only one of its two types of damage claims against Defendant, is clearly without foundation in law and should be overruled by this Court.

Moreover, Plaintiff has failed to carry its burden in sustaining its objections. Specifically, the party objecting to the discovery must establish that the requested discovery does not fall under the scope of relevance as defined in Rule 26(b)(1). *Simpson, supra.* See also, *Herbold, supra* (The party objecting to discovery must establish that the requested discovery does not fall under the scope of relevance as defined in Rule 26(b)(1)). It is well settled that it is *not* the role of the party from whom discovery is sought to unilaterally determine what the scope of discovery is. *Société Nationale Industrielle Aérospatiale v. U.S. District Court*, 482 U.S. 522 (1987); *Schindler*

Elevator Corp. v. Otis Elevator Co., 657 F. Supp. 2d 525, 528 (D.N.J. 2009); Trueposition, Inc. v. LM Ericsson Tel. Co. (Telefonaktiebolaget LM Ericsson), 2012 U.S. Dist. LEXIS 29294, *6-7 (E.D. Pa. 2012). By asserting these objections based on the assumption that Defendant's counterclaims will be dismissed "operates to render the producing party the final arbiter of whether it has complied with its discovery obligations under Rule 26 because the requesting party lacks sufficient information to understand either the scope of the objection, or to frame any argument as to why that objection is unfounded." United States CFTC v. Am. Derivatives Corp., 2007 U.S. Dist. LEXIS 23681, 8-9 (N.D. Ga. 2007). Such a position is unsupportable and if allowed would produce results – and precedent – that clearly runs counter to well establish principles of discovery.

Further, Plaintiff's objection with regard to the counterclaims disregard the plain language of Rule 26 allowing discovery into anything that is "relevant to **any party's claim or defense**." Fed.R.Civ.P. 26(b)(1)(emphasis added). Defendant's discovery requests are clearly relevant to Defendant's affirmative defenses against Plaintiff's case. The requests are also relevant to Plaintiff's credibility and/or the credibility of its witnesses as well as to other issues and facts that have not fully been explored yet. They may lead to information that support future counterclaims, or even support previously withdrawn claims. The fact that a discovery request also touches on a claim that Plaintiff does not believe is going to survive is meaningless when there are other claims and defenses to which the information is also relevant. Fed.R.Civ.P. 26(b)(1).

Simply put, it is not within Plaintiff's unilateral right to determine what legal theories Defendant is allowed to explore, or what the ultimate issues are to be tried for

which discovery will be provided. That is within the sole purview of this Court. Plaintiff's motion to dismiss has not been decided by the Court at this time, nor have any of the issues to be tried been defined in any manner. Using the assumption that the counterclaims will be dismissed as a basis to outright refuse to answer 60% of discovery requests while providing not one single document is inappropriate and usurps the court's role.

Regardless of the status of the motion to dismiss – and in fact, even if Defendant's counterclaims were to be dismissed in their entirety – Defendant, as a legal matter, is entitled to explore every aspect of Plaintiff's situation, motivations, and intentions, and more. This means that Defendant expressly has a right under the Rules to explore information that will support his affirmative defenses. Defendant has a right to discover Plaintiff's financial situation for several reasons, including the fee-shifting provisions of the Copyright Act under which Plaintiff has sued him and in the context of Plaintiff's good faith ability to sustain this lawsuit and the hundreds of others it has brought, given Plaintiff's assertion that it has no insurance to cover any potential liability in this action.

Because Plaintiff's lawsuit is based on technology, Defendant has a right to discover what Plaintiff knew, prior to bringing this lawsuit, about BitTorrent technology and websites, IP address collection technology, and wireless technology. Defendant has a right to discover what Plaintiff's contractual arrangements are with IPP Ltd., the company that provided the information regarding Defendant's IP address to Plaintiff, as IPP Ltd., appears to be a significantly financially interested party, and that interest should be fully explored on the record. Defendant has alleged that Plaintiff and its

various attorneys have entered into an illegal and unethical relationship, and as such, Defendant has a right to discover these contractual arrangements with such attorneys who appear to be as much business partners as counselors.

All of these topic areas are "relevant to any party's claim or defense" and are "reasonably calculated to lead to the discovery of admissible evidence." Plaintiff's naked assertions of irrelevance are legally and factually unsupportable, evasive and do not come close to bearing its burden of proving that Defendant's requests do not fall within the extremely broad standards of the Rule. Plaintiff is not allowed to refuse legitimate discovery requests because it decides they are irrelevant and Defendant's motion to compel should be granted.

## AMBIGUOUS, VAGUE, UNINTELLIGIBLE

Plaintiff responded to the following requests with the objection that the requests were either ambiguous, vague, unintelligible or some combination thereof:

> Ambiguous: RFP (4/64): 5, 8, 26, 64; RFA (1/215): 119
>
> Vague: RFP (4/64): 1,5,8,64
>
> Unintelligible: RFA (3/215): 3, 11, 14

By way of example, Defendant's RFP #5 requested all documents pertaining to "the File" and Plaintiff objected that this request was "vague [and] ambiguous" (in addition to several other objections). However, as the phrase "pertaining to" and the term "the File" were both defined in detail for Plaintiff in the Definitions section of the Requests, there was no cause for any ambiguity or confusion whatsoever. Nevertheless, if Plaintiff was in any doubt, it was Plaintiff's duty to respond to the best of

its ability or point out with specificity exactly what the cause of confusion was so that Defendant could know how to proceed.

Another example of the frivolousness of Plaintiff's use of these objections is its response to Defendant's RFP # 26, which asked for copies of "cease and desist" letters. Plaintiff objected on the ground that "'cease and desist' letters is an ambiguous term." Dictionary.com defines "cease and desist" as "stop, leave off doing something…" Plaintiff is also represented by several attorneys. Thus, even if there was any doubt in Plaintiff's mind, a very brief search of the internet (not to mention a simple question to one of their attorneys) would have yielded the simple, common sense answer. This is the bare minimum required by the letter and the spirit of the Rules.

In another example, Defendant's RFA #119 was the beginning of a section attempting to establish the authenticity and admissibility of documents for use at trial. This, Defendant believes, is standard procedure during preparation for a trial as it quickly establishes authenticity, relevancy, and admissibility of a document in advance, thus saving time during the trial. Yet Plaintiff's response to this request was that "the word 'authentic' as used in (sic) ambiguous." Plaintiff even refused to authenticate emails from its own attorney. (RFA # 133-138). Even if Plaintiff was in any doubt as to that word's meaning, Plaintiff's attorney surely had no doubt as to what was being attempted in this series of questions. Plaintiff had a duty to inquire and consult with its attorney with regard to this so-called "ambiguity."

Plaintiff also objected to the following three statements as "unintelligible" and denied them as phrased:

17

RFA # 3:  Any IP address assigned by Qwest/CenturyLink is assigned to the DSL modem and not to any computer within the Defendant's house.

RFA# 11: An IP address does not indicate a person, but rather, a device.

RFA# 14: The technology utilized by IPP Ltd., cannot differentiate between a person committing an act of volitional copyright infringement through a Bittorrent protocol utilizing his/her own network and a person committing an act of volitional copyright infringement through a Bittorrent protocol utilizing someone else's network.

These denials, and the claim that these ordinary sentences using ordinary words are "unintelligible" are disingenuous.   Moreover, any claim that Plaintiff does not understand the basics of IP addressing, BitTorrent protocols and volitional copyright infringement is likewise either disingenuous or dangerously ignorant, considering that Plaintiff has brought hundreds of substantially identical copyright infringement lawsuits based on these identical claims against thousands of individuals across the United States.  Defendant would respectfully submit that when a party, such as Plaintiff, brings a lawsuit[6] entirely grounded in questionable and unknown IP harvesting methods, and then resists legitimate discovery into those methods claiming ignorance of that very technology, this is disingenuous on its face and must be viewed with a highly critical eye by the Court.

For example, compare Defendant's RFA# 11 with Paragraph 12 of Plaintiff's Complaint in the case at bar.  In RFA #11, Defendant asked Plaintiff to admit to the

---

[6] This lawsuit, of course, is not the only one. Plaintiff has brought approximately 340 other lawsuits involving something on the order of 5000 other defendants based upon this same technology of which Plaintiff claims ignorance.

following statement:  "An IP address does not indicate a person, but rather, a device."
Plaintiff claimed that this statement was "unintelligible;" however, Paragraph 12 of the
Complaint alleges:  "An IP address is a number that is assigned by an Internet Service
Provider (an "ISP") to devices, such as computers, that are connected to the Internet."

In addition, Plaintiff is on notice of the fact that an IP address does not represent
an individual but in fact represents a device due to language in court decisions in other
copyright infringement cases it has brought.  The United States District Court for the
Eastern District of New York pointed out that:

> It is no more likely that the subscriber to an IP address
> carried out a particular computer function – here the
> purported illegal downloading of a single pornographic film –
> than to say an individual who pays the telephone bill made a
> specific telephone call.

*In re BitTorrent Adult Film Copyright Infringement Cases*, 2012 U.S. Dist. LEXIS 61447
at *9 (E.D.N.Y. 2012). Plaintiff's clearly evasive and misleading answers could fairly be
characterized as frivolous and may potentially be in violation of the Plaintiff's Rule 11
and 26(g)(2) obligations.

Plaintiff's broad, sweeping objections of vagueness and ambiguity are invalid and
unsupportable.  As other courts have explained,"[m]erely stating that a discovery
request is vague or ambiguous, without specifically stating how it is so, is not a
legitimate objection to discovery." *United States CFTC supra, at *3; Klesch*, supra, at
524.  Rather, objections to discovery requests must be sufficiently plain and specific to
allow the Court to understand precisely how the challenged discovery requests are
alleged to be objectionable. *MedCorp., supra.; see also, Panola Land Buyers Ass'n v.
Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985).

19

When a party objects that plain terms are "vague" and/or "ambiguous", as Plaintiff has done with simple terms such as "'cease and desist' letter" and "authentic", courts routinely consider only whether a reasonable person would know what documents or things are called for, the goal being that the designation need merely be sufficient to apprise a person of ordinary intelligence what documents are required and for the court to be able to ascertain whether the requested documents have been produced. *Moore's Federal Practice* 34.07. See also, *Safeway, supra,* (admonishing defendant Safeway for objecting that words like "investigator" and "statements" were vague).

Even if Defendant's requests contained some ambiguities, "it would not excuse Defendant's failure to provide any substantive response." *Greystone, supra,* citing *Stoldt v. Centurion Indus. Inc.*, 2005 U.S. Dist. LEXIS 2343, 2005 WL 375667, *2 (D.Kan. 2005)("[a] party responding to discovery requests should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in interrogatories"); see also, *King-Hardy v. Bloomfield Board of Education*, 2002 U.S. Dist. LEXIS 27384, 2002 WL 32506294, *5 (D. Conn. 2002) (holding that discovery requests must be given a reasonable construction, rather than straining to find ambiguity where there is none); *Adolph Coors Co. v. American Insurance Co.*, 164 F.R.D. 507, 518 (D. Colo. 1993) (expressing the view that in responding to discovery requests, a responding party is "obligated" "to put the collective heads of its lawyers and agents together, . . . to give those requests a reasonable construction").

The purpose of discovery is not to nit-pick over legal technicalities and word meanings so as to turn over as little as possible, and to turn documents over only when

the other party asks for precisely the exact right things. Nor is it merely "how the game is played" as Plaintiff has represented to Defendant and, in so doing, to this Court. Rather, the goal of discovery is open and honest sharing of information with the goal of "the just, speedy and inexpensive determination of every action." Fed.R.Civ.P. 1.

"OVER BROAD" OR "UNDULY BURDENSOME"

Plaintiff responded to the following requests with the objection that the requests were either overbroad or unduly burdensome or some combination thereof:

> Overbroad: RFP (3/64): 1, 5-6
>
> Unduly Burdensome: RFP (10/64): 5-7, 19-20, 51, 56-57, 62-63

All discovery requests are a burden on the party who receives them and must respond thereto. *Jackson Jordan, Inc. v. Kyle Rys.*, 1988 U.S. Dist. LEXIS 19437, 8-9 (D. Kan. 1988). However, the issue is whether Plaintiff has carried its burden and shown that Defendant's requests represent an *undue* burden. In this regard, Plaintiff has clearly failed to carry its burden.

For example, in response to Defendant's RFP #5 which requested "all documents, things and/or electronically stored information pertaining to the File" Plaintiff stated (among other objections, "Plaintiff objects to this request on the basis that it is… overly broad [and] unduly burdensome…" Plaintiff went on to opine, "Indeed, the File refers to the .torrent file which was illegally distributed by Defendant, and the movie contained within the File "pertains" to File. Accordingly, this request seeks all information pertaining to the movie, and therefore this request is overly broad and not likely to lead to the discovery of admissible information."

Here again, Plaintiff presumes to know what Defendant has in mind. Rather than referring to the simple definition that Defendant provided for Plaintiff's use – "The term "File" means the file that Plaintiff alleges that Defendant downloaded via the Bittorrent protocol as set forth in Plaintiff's Complaint, including its HASH value, size, name, and file type (e.g. .mov versus .mpeg etc.)"[7] – Plaintiff unilaterally decided to expand the definition to include not only the digital file but the movie contained within that file, and in doing so, Plaintiff by its own interpretation of the request, made it allegedly overly broad. Defendant concedes that discovery always requires some level of interpretation; however, Plaintiff may not simply "interpret" its way out of its discovery obligations. The simple words of the request are not nearly so broad when taken at their common meanings and by the definitions provided.

As another example, Defendant asked in RFP #19, 20, 51, 56 and 57 for documents regarding its settlement efforts with other litigants, including information regarding those individuals whom Plaintiff alleges have infringed its copyrights and relating to the tracking of the IP addresses of those individuals, Plaintiff objected that producing such information would be "unduly burdensome and avers that Plaintiffs (sic) has information concerning its communications with third party infringers. Further Plaintiff states that in order to produce this information it would have to redact the identities of the other infringers and that this process would take a Herculean effort." While it is certain that the information requested is going to be voluminous due to the

---

[7] Defendant is not aware of any such thing as a ".torrent file" as used by Plaintiff in its objection.

sheer numbers of individuals Plaintiff has sued, that does not impact the importance of the information or excuse Plaintiff from producing it.[8]

Indeed, Plaintiff's repeated assertions that certain discovery tasks would require "Herculean effort" ring hollow from a party that has initiated approximately 340 lawsuits involving nearly 5,000 defendants in the last six months. Plaintiff should have anticipated significant discovery obligations when taking on litigation on such a massive scale, and should have appropriately planned to implement and maintain significant capacity and resources to handle such discovery requests. This appears not to be the case.

Simply calling the effort involved in discovery "Herculean" does not put the matter to rest. Other parties in receipt of discovery requests have used that adjective in vain. In *In Re Sulfuric Acid Antitrust Litigation*, the court noted that a party "cannot absolve itself of [its discovery] responsibility by alleging the herculean effort which would be necessary to locate the documents." 231 F.R.D. 351, 360 (N.D.Ill. 2005)(citing *Kozlowski v. Sears Roebuck & Co.*, 73 F.R.D. 73, 76 (D.Mass. 1976). See also, *Waddell & Reed Fin., Inc. v. Torchmark Corp.*, 222 F.R.D. 450, 454-455 (D. Kan. 2004) (rejecting defendants assertions that because they employed multiple law firms on multiple overlapping cases that it would make the discovery a Herculean effort.); *Jackson Jordan, supra* (discussing the difference between discovery obligations that are "somewhat heavy, but far from Herculean"). A proper response to this request would

---

[8] Plaintiff's assertion that this information would need to be redacted and/or that it is protected by confidentiality concerns will be addressed below, in the section titled "Confidential Per Contract."

have been to work out a schedule with Defendant for additional time (more than the 30 days provided by the Rules) in which to provide the information.

Rather than taking such a reasonable approach, however, during the telephone conference between Defendant and Plaintiff's attorney, Plaintiff's attorney instead stated that "more than half" of the material requested was "outside the scope of the current case". Defendant pointed out, once again, that it is not within Plaintiff's purview to make that determination (i.e., what is or is not within the scope of the case), and Plaintiff's attorney's blunt response was, "Let the judge decide." No good faith was demonstrated in either Plaintiff's responses or in Plaintiff's attorney's reaction to Defendant's attempt to negotiate a middle ground.

Plaintiff's boilerplate objection, devoid of any support, fails as a matter of law. See *Greystone*, *supra*, at 14-15 (rejecting the resisting party's claims that the task of gathering all documents responsive to the request would be an enormous undertaking, and holding that this type of generalized statement is insufficient to sustain a claim of undue burden or to avoid the obligation to provide a response.) In addition, Plaintiff has failed to support its objection with competent and specific evidence, and its objection should thus be overruled. See, *MedCorp.*, *supra* at *6 (the objecting party's burden cannot be sustained merely by asserting "boilerplate claims that the requested discovery is oppressive [or] burdensome…").

Thus, the objecting party must show "not only undue burden or expense but that the burden or expense is unreasonable in light of the benefits to be secured from discovery." *Linnebur v. United Tel. Ass'n*, 2012 U.S. Dist. LEXIS 49125 (D.Kan. Apr. 9,

2012). This imposes an obligation "to provide sufficient detail in terms of time, money and procedure required to produce the requested documents." *Id.* Typically, this showing is made through an "affidavit or other evidentiary proof of the time or expense involved." *Id.* Plaintiff has failed to provide this evidence and thus its objection should be overruled.

Regardless of Plaintiff's decision to play the discovery "game" and "let the Judge decide," its objection must fail as a matter of law. The fact that a request is burdensome to some degree does not remove a party's obligation to answer.

## CONFIDENTIAL BUSINESS INFORMATION

Plaintiff responded to the following requests with the objection that the requests sought confidential business information:

RFP (11/64): 17-22, 24, 51, 56-57, 64

Rogs (1/10): 8

Interrogatory #8 requested information regarding contracts or agreements between Plaintiff and other significant individuals connected to this litigation, such as IPP Ltd., M. Keith Lipscomb, Esq., the individual owners of Plaintiff Brig Field and Coco Leah, and Jason Kotzker, Esq. RFP #17-22, 24, 51, 56, 57 and 64 all concerned Plaintiff's commencement of, conduct of and/or settlement of copyright infringement litigation.

Despite the fact that none of these Requests have anything to do with "a trade secret or other confidential research, development, or commercial information" as permitted by Fed.R.Civ.P. 26(c)(1)(G), Plaintiff objects that this information requested

by Defendant should not be disclosed because it is somehow "confidential business information."

During their telephone conversation, Defendant informed Plaintiff's attorney that he objected to most of the items identified by Plaintiff as "confidential business information" and further, that in the case of any such objections, he expected Plaintiff to explain why such an objection was made. Plaintiff's attorney responded that "we'll have to brief that issue with the judge."

There is now a protective order in place which requires Plaintiff to state specifically the grounds upon which Plaintiff seeks to maintain the confidentiality of a particular piece of information. As will be discussed below in connection with Plaintiff's recent document production, Plaintiff has already failed to comply with the terms of this Court's protective order.

Regardless, Defendant does not agree with the characterization of these items which Plaintiff claims as confidential business information. It seems self-evident that information regarding Plaintiff's relationship with IPP Ltd., the IP address harvesting company, cannot provide any possible competitive advantage to other pornography companies. Similarly, the details of Plaintiff's contractual arrangements with its attorneys cannot possibly impact Plaintiff's dealings with other pornography companies. Such information has nothing to do with the day-to-day running of Plaintiff's business nor does it have anything to do with Plaintiff's relationships with its creditors, suppliers, employees, or any other person or entity that could give its direct competitors a business advantage in dealing with Plaintiff or in the pornography marketplace in

general. Unless Plaintiff is willing to concede that its business is copyright infringement litigation, such an objection must fail.

CONFIDENTIAL PER CONTRACT

Plaintiff responded to the following requests with the objection that the requests sought information that was confidential because of contracts:

RFP (6/64): 19-20, 26, 51, 56-57

In these requests, Defendant sought information concerning Plaintiff's negotiations and settlements with other parties accused and/or sued by Plaintiff of copyright infringement. In response to these requests, Plaintiff stated: "Plaintiff additionally objects on the basis that the requested information is confidential and subject to contracts which prohibit the disclosure of the requested information."

During the telephone conference with Plaintiff's attorney, Defendant indicated that he acknowledged that such settlement agreements should be covered by a protective order, but that such agreements must be produced in discovery. Plaintiff's attorney stated that he "preferred to let Judge Hegarty give us a ruling on the protective order". However, Plaintiff's attorney did not indicate that, once a protective order was in place, he would produce such documents, only that he was awaiting such a ruling. Thus, Plaintiff's position on these requests is unclear, as the written responses appear to outright reject the possibility of producing these documents because they are "confidential per contract", suggesting some sort of absolute privilege, whereas Plaintiff's attorney's words seem to indicate that, were a protective order in place, production would take place.

Preventing a party from viewing discovery material is an extreme measure, for obvious reasons. *Kamakama v. Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006). While the terms of the settlement agreements may indicate that they are confidential, that does not mean that they are not discoverable. Indeed, the law is exactly the opposite. See *DIRECTV, Inc. v. Puccinelli*, 224 F.R.D. 677, 684-85 (D. Kan. 2004) ("a general concern for protecting confidentiality does not equate to privilege. Thus information and documents are not shielded from discovery merely because they are confidential."). Accordingly, Plaintiff should have – and must – produce such documents.

"DISCOVERY IN AID OF EXECUTION" OR "PREMATURE"

Plaintiff responded to the following requests with the objection that the requests were "premature" or were "in aid of execution":

RFP: Discovery in aid of execution: 42, 44-49, 51 premature: 3

Where Defendant asked for corporate financial documents such as tax returns, annual statements to shareholders, bank accounts, and corporate revenue and expenditures, as well as the financial records of settlements from other copyright infringement cases, Plaintiff objected to these because "this appears to be discovery in aid of execution prior to Defendant obtaining a judgment and it is improper on that basis as well [as several others]."

Further, Plaintiff objected to Defendant's RFP #3 which asked for "all documents... that Plaintiff used, is using, or may use to support any claims or defenses in this case and/or the Prior Lawsuit..." because "it is premature insofar as discovery is ongoing and Plaintiff has not ascertained the complete universe of documents, things

and electronically stored information that Plaintiff may use to support its claim of direct infringement against Defendant." The problem with this response is obvious: the fact that Plaintiff does not have a complete answer to this request is no excuse for not supplying any answer at all.[9]

During their telephone call, Defendant informed Plaintiff's attorney that inquiries into Plaintiff's financial condition were not, as Plaintiff characterized them, in aid of execution in advance of judgment, but instead were relevant to other issues such as the nationwide scope of the litigation instituted by Plaintiff. Plaintiff's attorney objected to this, stating that this was only about the one case against Defendant. When Defendant stated again that Plaintiff has no right to tell Defendant what the scope of discovery is, Plaintiff's attorney stated again that Plaintiff was not going to respond until the judge ruled.

The Rules do not allow Plaintiff to hold responsive documents until it deems their disclosure to be "timely." See e.g. *SCADIF, S.A.* v *First Union Nat'l Bank,* 208 F Supp 2d 1352, 1379 (S.D. Fla. 2002) *aff'd* 344 F.3d 1123 (11th Cir. 2003). Plaintiff's unilateral decision that because it does not yet know *all* of the documents it will rely upon to support its claims against Defendant, it does not have to supply *any* such documents, is not justified. Ignoring as it does the parties' affirmative and ongoing duty to supplement all discovery responses, this objection is simply unsupportable.

As with several of Plaintiff's other objections, Plaintiff took it upon itself to presume it knows what is in the mind of Defendant, anticipating the reason for which

---

[9] Perhaps this objection would have been justified had Plaintiff already supplied documents; however, at that point, Plaintiff had supplied nothing.

Defendant sought the information. In this case, Plaintiff decided that Defendant was seeking this financial information because Defendant is anticipating a victory (on the Counterclaims that Plaintiff has already decided will be dismissed). Therefore, Plaintiff determined that Defendant is not entitled to an answer to these questions because it is too soon to know that Defendant will win a judgment against Plaintiff. This reasoning is patently flawed.

Moreover, the financial questions at this point of the litigation have little to do with any judgment Defendant may ultimately win against Plaintiff. First, they were prompted by Plaintiff's assertion in its Rule 26(a) disclosure that it has no insurance to cover any award that may result from this lawsuit. Thus, Defendant is attempting to explore the question of whether Plaintiff may be merely a shell corporation, and as such may be inherently undercapitalized and whether piercing the corporate veil and joining the owners of the corporation or other parties personally may not be prudent and necessary. Further, the financial status of Plaintiff as a corporate entity is highly relevant when Plaintiff is not only bringing lawsuits against Defendant but against thousands of other individuals; whether or not the Counterclaims are dismissed, this information is relevant to Defendant's defenses and to Plaintiff's credibility. This does not even take into account the fact that Defendant has made allegations that Plaintiff and its attorneys have engaged in an illegal and unethical fee arrangement which may be as lopsided as a 9 to 1 contingency split of settlement fees. Alternately, as discussed above, such inquiries are also relevant to issues of Defendant's counterclaims and potential counterclaims as well as damages, damage set-offs, double recovery issues, copyright fee-shifting provisions of the Copyright Act, liability for fees, sanctions and/or costs,

personal liability, piercing the corporate veil, potential third party claims, fraud, and the like.

Accordingly, Plaintiff's objection on this basis should be overruled.

### ATTORNEY-CLIENT PRIVILEGE OR WORK PRODUCT

Plaintiff responded to the following requests with the objection that the requests were covered by attorney-client privilege and/or the work product doctrine:

RFP (15/64): 1, 6-8, 17-22, 24, 51, 56-57, 64

Rogs (2/10): 8, 10

RFA (1/215): 45

Any of Defendant's requests that pertained in any way to either of Plaintiff's attorneys (M. Keith Lipscomb, Esq., or Jason A. Kotzker, Esq.,), or that referred to any aspect of Plaintiff's many copyright infringement litigations were met with a blanket attorney-client privilege objection: "the information is protected by the attorney-client and work product privileges." In fact, Plaintiff's protection of its attorney-client relationships was so aggressive that Plaintiff even denied the authenticity of the email written by its attorney M. Keith Lipscomb, Esq., to another attorney (not counsel to Malibu Media) which was attached as Exhibit F to the First Amended Answer and Counterclaim (RFA #135). This goes beyond the bounds of protecting the attorney-client relationship and into the realm of denying reality: it speaks of deliberate stonewalling, possibly even perjury, and calls into question the truthfulness of any other answers that have been or will be received in discovery.

31

Such boilerplate assertions of privilege or blanket refusals inserted into a response to a Rule 34 request for production of documents are insufficient to assert a privilege. See *Torres v. Kuzniasz*, 936 F. Supp. 1201 (D.N.J. 1996) (rejecting "broadside invocations of privilege which fail to designate with particularity the specific documents or file to which the claim of privilege applies."). Particularly, courts do not permit the attorney-client privilege to be used as a tactical manipulation of the rules and the discovery process. *Burlington Northern & Santa Fe Ry. v. United States Dist. Court*, 408 F.3d 1142 (9th Cir. 2005).

In this Court a party resisting discovery based on the attorney-client privilege or work product immunity has the burden of establishing that the privilege applies. *Sigler v. JPMorgan Chase Bank, NA*, 2012 U.S. Dist. LEXIS 47564 *5 (D. Colo. Apr. 4, 2012)(citing *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984)). To satisfy the burden established by Rule 26(b)(5), the party asserting the privilege must provide a privilege log that describes in detail the documents or information claimed to be privileged and the precise reasons the materials are subject to the privilege asserted. *Sigler, supra*; *McCoo v. Denny's, Inc.* 192 F.R.D. 675, 680 (D.Kan. 2000). The information provided in the privilege log must be sufficient to enable the court to determine whether each element of the asserted privilege is satisfied. *Id.*

Plaintiff failed to provide a list of documents or statements that it believes are privileged with specific information on the "precise and certain reasons" for invoking the privileges. *Int'l Paper Co. v. Fibreboard Corp.*, 63 F.R.D. 88, 93 (D. Del. 1974). Accordingly, this "improperly asserted claim of privilege is no claim at all." *Shanks v. Plumb-Town, Inc.*, 1996 U.S. Dist. LEXIS 3069 *5 (E.D. Pa, 1996).

For Plaintiff to assert a proper claim of privilege requires a specific designation and description of the documents within its scope as well as precise and certain reasons for preserving their confidentiality. *Brown v. Smythe*, 1991 U.S. Dist. LEXIS 18498 *3 (E.D. Pa. 1991). For each document asserted to be protected by these privileges, Plaintiff must provide Defendant and the Court at a minimum:

1) the date of the document;

2) the name of its author;

3) the name of its recipient(s);

4) the names of all people given copies of the document;

5) the subject of the document (including type); and

6) the privileges asserted.

*Id.* citing *Wie v. Bodner*, 1277 F.R.D. 91, 96 (D. N.J. 1989); Fed. R Civ. P. 26(b)(5). Without this specific information, "the Court has no basis on which to weigh the applicability of the claim of privilege." *Id.* quoting *Int'l Paper, supra,* at 93 (D. Del. 1974). Further, this information is necessary to enable Defendant to assess the applicability of the privilege and seek sanctions at a later date if such is proven not to be accurate. *Cable & Computer Technology, Inc.* v. *Lockheed Sanders, Inc.,* 175 F.R.D. 646 (C.D. Cal. 1997). Plaintiff must provide this information in order to make an assertion of privilege, so that Defendant and the court can evaluate the validity of such a claim on a document-by-document basis. Furthermore, as detailed above, Plaintiff's claims that such a task would be "Herculean" in nature is unavailing.

Finally, due to the nature of the relationship between Plaintiff, IPP Ltd., and Plaintiff's attorneys being potentially illegal and unethical, Defendant anticipates challenging the privilege designation of some, if not all, of Plaintiff's communications with counsel and those by and between counsel as well. As such, a log is independent of any protective order, and ought to have been produced irrespective of the Court's anticipated ruling. Plaintiff has no valid excuse for failure to comply with these requests and it should now be compelled by the Court.

## NONRESPONSIVE PRODUCTION

In the Court's order of September 6, 2012, the Court required Plaintiff to produce documents required under R.26(a) and in response to Defendant's discovery on or before September 30, 2012. This was necessary because Plaintiff had not produced a single document as of the date of that Order. Instead, where it did not object outright, Plaintiff merely said that it "will produce" documents with no indication of when that would happen. (Plaintiff's answers to RFP #11, 12, 13, 28, 29, 30, 50 and its subparts, 59, 61).

On October 2, 2012, Defendant received three emails from Plaintiff which provided some minimal documents, most of which were labeled "Confidential" but failed to comply with paragraph 3 of the Protective Order; Defendant is addressing that failure with Plaintiff's attorney pursuant to paragraph 11 of that Order. These documents were deemed by Plaintiff to be responsive to RFP #1, 11, 12, 13, 30, 50(a), 50(b), 50(c), 50(d), 50(e), 50(g), 50(h), 50(j), and 61. RFP #28 and 29 remain unanswered.

A few non-confidential examples from these documents will serve as further evidence of the inadequate material that Plaintiff considers to be adequate response to a clear and direct discovery request. In RFP #30, Defendant sought the "Articles of Incorporation or substantially similar documents filed with the Secretary of State of California for Malibu Media LLC." There can be no doubt as to what was being requested. In response, Plaintiff provided a screen shot of the California Department of State website which merely indicates that Malibu Media was in fact incorporated in California and gives the date and registration number for that incorporation. This is completely non-responsive to the clear request for Articles of Incorporation.

Additionally, in response to a request for "documents pertaining to sales for the Work" as to each of the films (RFP #50(j)), Plaintiff indicated that the Certificates of Copyright Registration were responsive to this request. The fact that a film may have been registered with the Copyright Office provides no information whatsoever about any revenue generated from the sale of that film.

Moreover, according to the non-confidential discovery provided, all of the films are apparently being offered for sale on the website of another company, X-Art.com. Yet, Plaintiff objected and refused to answer every discovery request Defendant made pertaining to X-Art.com, as well as objecting to any attempt Defendant made to ascertain the corporate structure of Plaintiff (RFP #17, 32, 33, 34, 36, 37, 38, 39, 47; Interrogatory #8). If X-Art.com is selling and profiting from the Works, but Malibu Media is suing for infringement, there is clearly some connection between these two entities,

and Defendant must be allowed to explore it. Plaintiff must be required to produce information so that Defendant can discover just what that relationship is.[10]

In addition, one of the items that was provided was in a format that was unreadable unless one is in possession of proprietary software (i.e., in order to open the file, Defendant would have to pay for and download a program to open it).

Finally, Plaintiff's emails stated that certain information would be provided in hard copy on a disk. As of this date, October 8, 2012 – more than one week after the Court required Plaintiff to produce ALL of the documents required under R.26 and the Request for Production – that disk has not been received. Again, Plaintiff continues to set its own timetable for producing documents.

Plaintiff's lack of responsiveness is not due to ignorance or a misunderstanding of the law; rather, it is a deliberate policy designed to delay the discovery process and create more work (such as this motion) for the Defendant.

## SANCTIONS

The Federal Rules of Civil Procedure give district courts ample tools to deal with a recalcitrant litigant. See *Jones v. Thompson*, 996 F.2d 261, 264 (10th Cir. 1993); *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1320-21 (10th Cir. 2011); Fed. R. Civ. P. 11; see also *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1161 (10th Cir. 2007). "A district court undoubtedly has discretion to sanction a party for failing…to comply with

---

[10] On the other hand, if "X-Art.com" is merely a domain name owned by Plaintiff, that should have been specified and documented in the materials provided so as to prevent misunderstandings and minimize the burden on Defendant and the Court.

local or federal procedural rules." *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002).

Plaintiff has failed to respond to Defendant's discovery requests in a timely fashion and in good faith, and therefore Defendant's motion should be granted. Pursuant to this Court's rules and practice, in the event a motion to compel responses to discovery is granted, Rule 37(a)(5) requires that, after an opportunity to be heard, "the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."[11] *Davis v. Delta Chamber of Commerce*, 2011 U.S. Dist. LEXIS 48776, *3-5 (D. Colo. 2011); Fed. R. Civ. P. 37(a)(5)(A).

Plaintiff has failed in its obligations to participate in good faith in the discovery process, which conduct warrants sanctions. See *Greystone, supra*, at *23-24 (citing *Asea, Inc. v. Southern Pacific Transportation Co.*, 669 F.2d 1242, 1246 (9th Cir. 1981) ("The discovery process is subject to the overriding limitation of good faith. Callous disregard of discovery responsibilities cannot be condoned.'); *Trading Technologies International, Inc. v. eSpeed, Inc.*, 2006 U.S. Dist. LEXIS 63554, 2006 WL 2506293, *1 (N.D. Ill. 2006) (noting that "the discovery process depends upon the good faith of the parties and their counsel"). See also Fed.R.Civ.P. 26(g)(2). Moreover, Plaintiff's willful designation of items as "confidential" which are clearly not confidential is also grounds for sanctions. See e.g. *Rainbow Pioneer # 44-18-04A v. Hawaii-Nevada Inv. Corp.*, 711

---

[11] As fees may not be available in this matter due to Defendant's *pro se* status, Defendant would respectfully request that any monetary sanctions be directed to a non-profit organization that helps defend against abusive copyright lawsuits such as this one; for example, the Electronic Frontiers Foundation (EFF.org).

F.2d 902 (9th Cir. 1983) (imposing sanctions for unreasonable assertions of confidentiality).

To reiterate, Defendant has shown that:

a.  Plaintiff did not provide any documents whatsoever, either in connection with its Rule 26(a) disclosure or in response to Defendant's First Request for Production of Documents, until compelled to by Court Order;

b.  Plaintiff made unreasonable assertions of confidentiality, beginning with the identity of the principals of its business, and to date, still has not provided the identity of a single witness to be called at trial;

c.  Plaintiff refused to answer nearly 60% of Defendant's discovery requests based on Plaintiff's assumption that all of Defendant's counterclaims will be dismissed – and in fact, that one of Plaintiff's own claims will not stand – and that there is only one issue to be explored at trial, despite the fact that this position is demonstrably unsupportable under the Federal Rules and supporting case law;

d.  Plaintiff denied basic factual assertions that are undeniable, including an assertion that Plaintiff made in its own Complaint (i.e., RFA #11; Complaint ¶ 12).

e.  Plaintiff refused to identify and authenticate emails that were sent by its own attorney.

f.  Plaintiff deliberately claimed to misunderstand the plain meaning of common words so as to evade and avoid answering simple questions.

g.  Plaintiff deliberately claimed to misunderstand or misinterpret what Defendant was seeking in certain questions so as to make those questions appear to be asking for information that was inappropriate in some way.

h. Where answers beyond an objection are provided, such as in response to a few Interrogatories, Plaintiff's answers simply restate information already contained in the Complaint in this matter or in the Doe Complaint, or refer to information concerning non-parties that have nothing to do with this case and can only be construed as a threat.

Such examples are illustrative of Plaintiff discovery responses – or non-responses – thus far. Such actions are unjustified and have resulted, and will continue to result, in prejudice to the Defendant. Plaintiff is well aware that it must provide responses to discovery and that its failure to respond is unjustified. The only thing that is unclear is whether this is merely a delaying tactic or whether this is an attempt to burden and intimidate a *pro se* defendant, or both. Other considerations are that Plaintiff does not want discovery to get out to the thousands of other defendants it has sued, and that true and honest discovery could potentially expose Plaintiff and its attorneys to criminal prosecution for extortion, fraud and perjury. Plaintiff's conduct in this matter should be sanctioned.

## CONCLUSION

The law governing Plaintiff's discovery obligations is simple and clear: Under Rule 26(b)(1), the scope of discovery is encompasses "any nonprivileged matter that is relevant to any party's claim or defense…" Further, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." See also, *Josephs* 677 F.2d at 991. Discovery is not limited only to Plaintiff's claims, but any information "if it might reasonably assist a

party in evaluating a case, preparing for trial, or facilitating settlement." *See generally Hickman v. Taylor*, 329 U.S. 495 (1947).

Despite this clear legal obligation, Plaintiff instead decided to, in the words of Plaintiff's attorney, "play the game" and deliberately misunderstand, obfuscate and withhold. The vast majority of the objections raised by Plaintiff, as detailed above, are evasive, unjustified, and without legal foundation and have delayed and frustrated Defendant's discovery efforts. In a recent court filing, Plaintiff reiterated its refusal to cooperate with discovery until it gets what it wants: a ruling on the motion to dismiss. (Plaintiff's Response to Defendant's Motion for Leave To Extend and for Leave to Amend, filed 9/22/12, Docket 79, at 6). Plaintiff continues to elevate itself above this Court, determining for itself not only the outcome of that motion but the entire scope of discovery. Defendant respectfully requests that Plaintiff's misconceptions on this score must be corrected.

Even where there may have been some validity to some of Plaintiff's objections, those objections were not properly and narrowly tailored, and Plaintiff did not provide any information that was required irrespective of its objections. Courts have routinely reminded litigants that "[f]ailure to timely produce known, requested and discoverable documents [is a] serious procedural and ethical violation, and one that could not be dismissed lightly..." *SCADIF, supra*.

Plaintiff needs to understand that this lawsuit is not a "game." Plaintiff must be made to provide full, complete and accurate answers to Defendant's questions and must not be permitted to continue evading the truth through deliberate

misunderstanding and sophistry. Specific time frames and instructions must be given to Plaintiff, or this process of straightforward question and evasive answer will continue for months.

WHEREFORE Defendant respectfully requests that this Court:

1) Requiring Plaintiff to provide answers to all of Defendant's discovery requests;

2) Sanction Plaintiff for its willful failure to fully, completely, accurately and in good faith answer Defendant's First Request for Production, First Request for Admissions and First Interrogatories in compliance with Fed.R.Civ.P. 26, 33, 34, and 36;

3) Imposing any other sanctions upon Plaintiff for these actions as the court deems appropriate;

4) If sanctioned, require Plaintiff to file notice with every other court in which it currently has pending copyright infringement lawsuits to advise those Courts of Plaintiff's actions herein with regard to discovery in an effort to save significant judicial resources by avoiding the relitigating of these same issues in courts across the country;

5) In the event that Plaintiff fails to amend its answers pursuant to this Court's Order in a timely manner and/or in a full, complete, honest and accurate manner that is

appropriate under the Rules, imposing further sanctions upon Plaintiff and its counsel pursuant to Fed.R.Civ.P. 37(b)(2)(A).


Respectfully submitted,


Jeff Fantalis
Defendant *pro se*
818 Trail Ridge Drive
Louisville CO 80027
(303) 482-1211

Dated:          October 8, 2012

## CERTIFICATION OF SERVICE

I, Jeff Fantalis, hereby certify that on October 8, 2012, I caused this Motion to Compel Discovery to be filed with the Clerk of the Court by U.S. Mail, with Delivery Confirmation, at the following address:

Clerk's Office
Alfred A. Arraj United States Courthouse
Room A-105
901 19th Street
Denver, Colorado 80294-3589

On the same date, I served a copy of this Motion to Compel Discovery upon Plaintiff by U.S. Mail with delivery confirmation and courtesy e-mail to Plaintiff's attorney of record, pursuant to agreement with counsel:

Jason A. Kotzker
Kotzker Law Group
9609 S. University Blvd. #632134
Highlands Ranch CO 80163
Email: jason@klgip.com

Jeff Fantalis
Defendant *pro se*

Dated:          October 8, 2012

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:12-cv-00886-MSK-MEH

MALIBU MEDIA, LLC,

     Plaintiff,

v.

JEFF FANTALIS and BRUCE DUNN,

     Defendants.

_____/

### PLAINTIFF'S RESPONSE TO FIRST REQUEST FOR PRODUCTION

Plaintiff, MALIBU MEDIA, LLC, pursuant to Fed. R. Civ. P. 34, by and through undersigned counsel, hereby serves its response to Defendant, JEFF FANTALIS' First Request for Production of Documents dated August 2, 2012.

### STATEMENT OF WILLINGNESS TO COOPERATE

1.     Counsel for Plaintiff, is prepared to discuss with Defendant the objections set forth below for the purpose of resolving any disputes that may arise over the production of documents without the need for intervention by the Court.

### GENERAL OBJECTIONS

2.     Plaintiff objects to the Requests to the extent that they are vague, ambiguous, over broad, harassing and/or unduly burdensome.

3.     Plaintiff objects to the Requests to the extent that they purport to require information in the possession, custody, or control of any person or entity other than Plaintiff.

4.     Plaintiff objects to the Requests to the extent that they seek the production of documents that contain attorney-client privileged material, that constitute attorney-work product,



EXHIBIT A

that were prepared in anticipation of litigation, that constitute or disclose the mental impressions, conclusions, opinions or legal theories of any attorney of Plaintiff concerning this or any other litigation, or that are otherwise protected from disclosure under any other applicable privilege.

5.    Plaintiff objects to the Requests to the extent they seek to impose requirements beyond those contained in the Federal Rules of Civil Procedure, the District of Colorado Local Rules and/or other applicable rules or laws.

6.    Plaintiff objects to the Requests to the extent that they call for the production of documents that are neither relevant to the action nor reasonably calculated to lead to the discovery of admissible evidence.

7.    Plaintiff objects to the relevant time period as defined in the Requests on the grounds that it renders the Requests over broad, unduly burdensome, harassing and/or neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, many of the requests do not contain an applicable time frame and are therefore ambiguous and over broad.

8.    Plaintiff objects to the requests to the extent they call for the disclosure of documents that are protected because the documents contain: (1) trade secrets, (2) confidential research, and/or (3) commercial information.

9.    Plaintiff objects to the requests to the extent they do not set forth, either by individual item or by category, the items to be inspected and further object to the extent that the requests do not describe the categories or items to be produced with the degree of reasonable particularity required by Fed. R. Civ. P. 34(b).

## Nonwaiver and Preservation of Privileges

10.    By undertaking to produce documents in response to the Requests, Plaintiff does not in any way waive or intend to waive but rather intends to preserve and is preserving:

(a)    all rights to object on any ground supported by the Federal Rules of Evidence or other applicable law to the use at trial or at any hearing of any of these responses and/or the information or documents provided in response to the Requests including, but not limited to, the following objections:

(i)    That the document(s) is/are protected by the:

(1) attorney-client privilege, (2) privilege against disclosing attorney work product, (3) applicable marital privileges, (4) accountant-client privilege, (5) clergy-parishioner privilege, (6) privilege against self-incrimination, and/or (7) doctor-patient privilege; and/or

(ii)    That the document(s) is/are inadmissible because they are:

(1) irrelevant, (2) constitute hearsay, (3) are related to only collateral matters, (4) violate the best evidence rule; (5) although relevant, are excludable because the probative value is substantially outweighed by the danger of unfair prejudice, (5) cumulative, (6) would cause undue delay, and/or (6) can be excluded by any other rule of evidence or law;

(iii)    That the document(s) is/are inadmissible because they constitute:

(1) a trade secret, (2) confidential research, (3) confidential development, and/or (4) commercial information; and

(b)    all rights to object on any ground at any time to a demand for any further response to this or any other request for the production of documents.

11.    Inadvertent disclosure of any information or documents shall not constitute waiver of any claim of privilege, work-product protection or any other privilege that would have, if timely asserted, protected the document having to be disclosed.

### Inadvertent Non-Disclosure and General Applicability of Documents

12.    If there is a document(s) which Plaintiff indicates is being produced, and which for any reason, Defendant fails to receive, Defendant is requested to inform Plaintiff, in writing, of the absence of the document(s), and Plaintiff will act with all deliberate speed to get Defendant a copy of the missing document(s).  Defendant's failure to provide Plaintiff with notice of a missing document(s) will be deemed a waiver of its right to object at trial to the admissibility of any document(s) which Plaintiff has indicated has been produced in this response to this request.

13.    By identifying specific documents as responsive to particular requests to produce, Plaintiff does not intend to limit its right to use all documents being produced for any purpose at trial.

### Reservation of Right to Supplement Responses, and Incorporation of General Objections into Specific Responses

14.    Plaintiff reserves the right to supplement or amend in any way its specific or general objections or responses to any or all of the demands contained in the Requests.

15.    The following specific objections and responses are subject to the foregoing general objections and responses (the "General Objections"), and the General Objections are incorporated into each specific response set forth below.

## DOCUMENTS REQUESTED

**REQUEST FOR PRODUCTION NO. 1:** All documents, things, and/or electronically stored information, including emails, phone records, recordings, text messages, correspondence or other communications between or among you and any person pertaining to any file sharing downloading technology.

**RESPONSE NO. 1:** Plaintiff objects to the request on the basis that it is vague and ambiguous, overly broad, unduly burdensome, and calls for a set of documents that contain confidential and attorney client information. As for it for being overly broad, the only claim that will survive a motion to dismiss is Plaintiff's claim for direct infringement against Defendant. The issue in this case is whether Defendant used BitTorrent to illegally distribute Plaintiff's copyrighted works. Other than receiving the evidence from IPP, Ltd. and Peer Media Technology Plaintiff has not had any communication with any third party, except its attorney, that refers or relates to the Plaintiff's claim of direct infringement against Defendant. Notwithstanding the foregoing objections, and without waiving them, Plaintiff will produce all documents in its possession, custody or control that it received from IPP, Ltd. and Peer Media Technology that refer or relate to the claim against Defendant for direct infringement.

**REQUEST FOR PRODUCTION NO. 2:** All documents, things, and/or electronically stored information, including emails, phone records, recordings, text messages, correspondence or other communications between or among you and any person pertaining to the method of detecting Defendant's alleged IP address involved in this lawsuit or the Prior Lawsuit.

**RESPONSE NO. 2:**

Plaintiff has already provided all documents in its possession, custody or control "pertaining to the method of detecting Defendant's alleged IP address." Specifically, Plaintiff cites Defendant to Tobias Feiser's declaration filed in the Prior Case and the exhibit attached thereto.

**REQUEST FOR PRODUCTION NO. 3:** All documents, things, and/or electronically stored information that Plaintiff used, is using, or may use to support any claims or defenses in this case and/or the Prior Lawsuit, regardless of whether they were actually used or relied upon or will be used or relied upon.

**RESPONSE NO. 3:**

Plaintiff objects to this request on the basis that it is premature insofar as discovery is on-going and Plaintiff has not ascertained the complete universe of documents, things, and electronically stored information that Plaintiff may use to support its claim of direct infringement against Defendant. To the extent, that this requests seeks information related to Plaintiff's claims against former Doe Defendants that Plaintiff dismissed from the Prior Suit then Plaintiff objects on the basis that the requested information is not relevant nor likely to lead to the discovery admissible evidence. Plaintiff hereby elects to recover statutory damages and waives its right to recover actual damages. Notwithstanding the foregoing objections, and without waiving them, Plaintiff states that the Defendant already has all of the documents in Plaintiff's possession, custody or control that relate Plaintiff's claims against Defendant. To wit: IPP, Ltd. possesses the data which correlates to the information set forth on the Exhibit As to the Prior Case and this case.

**REQUEST FOR PRODUCTION NO. 4:** All documents, things, and/or electronically stored information, studies, reports, instruction manuals, including reports or studies that reflect

in any way upon the error rate or reliability of or any other information pertaining to the technology, process or procedure used by Plaintiff, IPP Ltd., Tobias Fieser, or any third party pertaining to the detection of file-sharing over the Internet via the Bittorrent Protocol.

**RESPONSE NO. 4:**

Plaintiff does not have any information in its possession, custody or control deemed responsive to this request.

**REQUEST FOR PRODUCTION NO. 5:** All documents, things, and/or electronically stored information pertaining to the File.

**RESPONSE NO. 5:**

Plaintiff objects to this request on the basis that it is vague, ambiguous, overly broad unduly burdensome and because irrelevant and not likely to lead to the discovery of admissible evidence. Indeed, the File refers to the .torrent file which was illegallydistributed by Defendant, and the movie contained within the File "pertains" to File. Accordingly, this request seeks all information pertaining to the movie, and therefore this request is overly broad and not likely to lead to the discovery of admissible information. To wit: Plaintiff is merely seeking statutory damages. Notwithstanding the foregoing objections, and without waiving them, Plaintiff states that the unique cryptographic hash value used on the File was identified and this the File contained all of the works alleged in the Complaint.

**REQUEST FOR PRODUCTION NO. 6:** All communications of any kind between you and anyone concerning enforcement of Plaintiff's copyrights against internet infringement, including all email communications of all present and past board members and present and past employees.

**RESPONSE NO. 6:** Plaintiff objects to this request on the basis that it is overly broad, unduly burdensome, not likely to lead to the discovery of admissible evidence, and because it seeks documents covered by the attorney-client work privilege. To wit: the only claim in this suit that will survive a motion to dismiss is Plaintiff's claim for direct infringement against Defendant. The only communications that Plaintiff has had with anyone about this matter is with Plaintiff's attorneys.

**REQUEST FOR PRODUCTION NO. 7:** All communications between you and M. Keith Lipscomb, Esq.

**RESPONSE NO. 7:**

Plaintiff objects to this request on the basis that it seeks attorney-client privileged information. M. Keith Lipscomb represents Plaintiff as its attorney and all of the communications between Plaintiff and M. Keith Lipscomb are protected by the attorney-client privilege and attorney-work product privileges. Additionally, Plaintiff objects to this request on the basis that it seeks documents that neither relevant nor likely to lead to the discovery of admissible information insofar as the great bulk of communications between Plaintiff and M. Keith Lipscomb do not relate to Plaintiff's claim against Defendant. Finally, Plaintiff objects on the basis that this request is unduly burdensome because M. Keith Lipscomb and Plaintiff regularly email and communicate with each other and providing all of these documents would be a Herculean task.

**REQUEST FOR PRODUCTION NO. 8:** All communications between you and anyone concerning the method of bringing legal proceedings to enforce Plaintiff's copyrights against internet infringement.

**RESPONSE NO. 8:**

Plaintiff objects to this request on the basis that it seeks documents and things covered by the attorney-client privilege and the privilege against disclosing attorney work product. The request is also ambiguous insofar as the word "method of bringing claims" can either be construed as seeking documents and things related to the legal process used or the process of identification. To the extent that the request merely seeks documents and things related to the legal process, to wit: Plaintiff does not have any documents or things outside the context of what it has been provided by its counsel concerning the method of bringing legal proceedings to enforce Plaintiff's copyrights against internet infringement. Plaintiff additionally objects to this request on the basis that it seeks documents that are neither relevant nor likely to lead to the discovery of admissible evidence. Following the motion to dismiss stage of this litigation, this suit will involve one claim for direct infringement against Defendant. Accordingly, to the extent that Defendant believes this information is relevant to one of the counterclaims that Defendant attempts allege, any such counterclaim should and will likely be dismissed as a matter of law. As for it being vague, it is unclear as to what Defendant means by "method of bringing legal proceedings." Legal proceedings are brought by the filing of a complaint and that is the only method that Plaintiff has ever used.

**REQUEST FOR PRODUCTION NO. 9:** All documents, things, and/or electronically stored information pertaining to communications, efforts or opportunities (or your knowledge thereof) that Plaintiff made or had before this case or the Prior Lawsuit was filed in order to determine whether Defendant's Internet account could be accessed wirelessly at any time, whether it was password protected and/or encrypted at any time, and whether a person other than

Defendant may have used Defendant's Internet account to download Work(s) without Defendant's knowledge and/or permission.

**RESPONSE NO. 9:**

Plaintiff does not have any documents in its possession, custody or control deemed responsive to this request.

**REQUEST FOR PRODUCTION NO. 10:** All documents, things, and/or electronically stored information pertaining to the length of time that Defendant's alleged IP address was monitored or otherwise detected as allegedly being associated with the downloading of Work(s) via the Bittorrent protocol.

**RESPONSE NO. 10:**

IPP, Ltd. may possess additional data pertaining to the length of time that Defendant's alleged IP address was monitored or otherwise detected as allegedly being associated with the downloading of Work(s) via the Bittorrent protocol; however, at this time, Plaintiff does not have any documents or things in its possession, custody or control beyond what has already been provided in the Exhibit As to the complaints, and that which was provided by in response to Interrogatory number 1, that it deems responsive to this request.

**REQUEST FOR PRODUCTION NO. 11:** All documents, things, and/or electronically stored information pertaining to the allegation that Defendant downloaded Work(s), specifically including any facts pertaining to why it was Defendant who downloaded Work(s) rather than another person; for example, including but not limited to a person using Defendant's Internet connection with or without Defendant's knowledge and/or permission or a person "spoofing" Defendant's alleged IP address.

**RESPONSE NO. 11:**

Plaintiff will produce all documents in its possession, custody or control deemed responsive to this request.

**REQUEST FOR PRODUCTION NO. 12:** All documents, things, and/or electronically stored information that support your claim that Defendant infringed directly on Plaintiff's copyrighted Works.

**RESPONSE NO. 12:**

Plaintiff will produce all documents in its possession, custody or control deemed responsive to this request.

**REQUEST FOR PRODUCTION NO. 13:** All documents, things, and/or electronically stored information that support your claim that Defendant infringed in a contributory manner on Plaintiff's copyrighted Works.

**RESPONSE NO. 13:**

Plaintiff will produce all documents in its possession, custody or control deemed responsive to this request because this evidence is the same as Plaintiff's evidence for direct infringement, namely that Defendant illegally distributed Plaintiff's copyrighted works by using the BitTorrent protocol; however, Plaintiff hereby withdraws its claim for contributory infringement and states its intention to instead proceed solely on its claim for direct infringement.

**REQUEST FOR PRODUCTION NO. 14:** All documents, things, and/or electronically stored information pertaining to "spoofing," stealing or "faking" an IP address and any

information pertaining to whether the IP address specified in Plaintiff's complaint was spoofed, stolen or faked.

**RESPONSE NO. 14:**

Plaintiff does not have any documents or things in its possession, custody or control deemed responsive to this request.

**REQUEST FOR PRODUCTION NO. 15:** All documents, things, and/or electronically stored information pertaining to Wireless Security in general, and specifically any facts pertaining to Wireless Security as pertaining to this case or the Prior Lawsuit.

**RESPONSE NO. 15:**

Except for the terms and use agreement that Defendant entered into with Qwest, which is already in the record, Plaintiff does not have any documents or things in its possession, custody or control deemed responsive to this request.

**REQUEST FOR PRODUCTION NO. 16:** All documents, things, and/or electronically stored information pertaining to the Bittorrent Protocol pertaining to this lawsuit or the Prior Lawsuit.

**RESPONSE NO. 16:**

Plaintiff has already produced all documents in its possession, custody or control pertaining to the BitTorrent Protocol pertaining to this lawsuit or the Prior Lawsuit.

**REQUEST FOR PRODUCTION NO. 17:** All documents, things, and/or electronically stored information pertaining to any contracts or agreements (or your knowledge thereof) pertaining to this lawsuit or the Prior Lawsuit, copyright infringement, civil litigation, retainers or payments, peer-to-peer file sharing, the Bittorrent Protocol or any technological services by or between any of the following persons: Plaintiff, IPP Ltd., Tobias Fieser, Patrick Collins, Inc., M.

Keith Lipscomb, Kotzker, X-Art.com, Click Here LLC, Brigham Field a/k/a Brig Field, Colette

Leah a/k/a Coco Leah, and any internet service provider pertaining to this lawsuit or the Prior

Lawsuit.

**RESPONSE NO. 17:**

Plaintiff objects to this request on the basis that the requested information is not relevant

to any claim or defense in this case that will remain after the pleadings are finalized. The only

claim that will remain in this case after the pleadings are finalized is Plaintiff's count for direct

infringement against Defendant. The business agreements that Plaintiff has with third parties

are not likely to lead the discovery of any admissible information because these Agreements do

not make the issue of whether Defendant committed the infringement more or less likely. This is

fact is underscored by the reality that the technology used by IPP, Ltd. is automated and not

capable of subjectivity or interpretation. Plaintiff additionally objects on the basis that the

information requested contains confidential business information the terms of which if disclosed

would damage Plaintiff's competitive disadvantage vis-à-vis its competitors. Plaintiff

additionally objects on the basis that the information is protected by the attorney-client and work

product privileges.

**REQUEST FOR PRODUCTION NO. 18:** Employment/retainer agreement(s) or other

contract(s) by and between IPP Ltd., and Plaintiff.

**RESPONSE NO. 18:**

Plaintiff objects to this request on the basis that the requested information is not relevant

to any claim or defense in this case that will remain after the pleadings are finalized. The only

claim that will remain in this case after the pleadings are finalized is Plaintiff's count for direct

infringement against Defendant. The business agreements that Plaintiff has with third parties

are not likely to lead the discovery of any admissible information because these Agreement do not make the issue of whether Defendant committed the infringement more or less likely. This is fact is underscored by the reality that the technology used by IPP, Ltd. is automated and not capable of subjectivity or interpretation. Plaintiff additionally objects on the basis that the information requested contains confidential business information the terms of which if disclosed would damage Plaintiff's competitive disadvantage vis-à-vis its competitors. Plaintiff additionally objects on the basis that the information is protected by the attorney-client and work product privileges.

**REQUEST FOR PRODUCTION NO. 19:** All documents, things, and/or electronically stored information constituting records of any telephone calls made by Plaintiff and/or its employees and/or its agents and/or anyone acting on Plaintiff's behalf in connection with copyright infringement matters, including any efforts to enforce Plaintiff's copyrights or attempts to settle copyright infringement litigation whether or not prior to the filing of a lawsuit.

**RESPONSE NO. 19:**

Plaintiff objects to this request on the basis that the documents that Defendant seeks are neither relevant nor likely to lead to the discovery of admissible evidence. To wit: Plaintiff's disputes with third parties are not likely to make it more or less likely that Defendant committed the infringement as alleged by Plaintiff. Plaintiff additionally objects on the basis that the requested information is confidential and subject to contracts which prohibit the disclosure of the requested information. Plaintiff additionally objects on the basis that the requested information contains confidential business information and trade secrets the disclosure of which would put Plaintiff in a competitive disadvantage vis-à-vis its competitors. Plaintiff additionally objects on the basis that the requested information is protected from disclosure by the attorney-client

privilege and attorney-work product doctrines. Plaintiff additionally objects on the basis that the producing the requested would be unduly burdensome and avers that Plaintiffs have reams of notes of information concerning its communications with third party infringers. Further, Plaintiff states that in order to produce this information it would have to redact the identities of the other infringers and that this process would take a Herculean effort.

**REQUEST FOR PRODUCTION NO. 20:** All documents, things, and/or electronically stored information constituting records of any correspondence sent by Plaintiff and/or its employees and/or its agents and/or anyone acting on Plaintiff's behalf in connection with copyright infringement matters, including any efforts to enforce Plaintiff's copyrights, attempts to settle copyright infringement litigation whether or not prior to the filing of a lawsuit.

**RESPONSE NO. 20:**

Plaintiff objects to this request on the basis that the documents that Defendant seeks are neither relevant nor likely to lead to the discovery of admissible evidence. To wit: Plaintiff's disputes with third parties are not likely to make it more or less likely that Defendant committed the infringement as alleged by Plaintiff. Plaintiff additionally objects on the basis that the requested information is confidential and subject to contracts which prohibit the disclosure of the requested information. Plaintiff additionally objects on the basis that the requested information contains confidential business information and trade secrets the disclosure of which would put Plaintiff in a competitive disadvantage vis-à-vis its competitors. Plaintiff additionally objects on the basis that the requested information is protected from disclosure by the attorney-client privilege and attorney-work product doctrines. Plaintiff additionally objects on the basis that the producing the requested would be unduly burdensome and avers that Plaintiffs have reams of notes of information concerning its communications with third party infringers. Further, Plaintiff

states that in order to produce this information it would have to redact the identities of the other

infringers and that this process would take a Herculean effort.

**REQUEST FOR PRODUCTION NO. 21**: Retainer agreement(s) by and between Jason

Kotzker, Esq., and Plaintiff.

**RESPONSE NO. 21:**

Plaintiff objects to this request on the basis that it is neither relevant nor likely to lead to

the discovery of admissible evidence and because the agreement contains confidential business

information which if disclosed would put Plaintiff at a competitive disadvantage vis-à-vis its

competitors. Specifically, the terms of counsel's agreement with Plaintiff for the provision of

services in exchange for fees will not shed any light on the issue of whether Defendant

committed the infringement as alleged in the complaint. Additionally, the agreement contains

attorney-client information and advice and so Plaintiff object on the basis that it is protected by

the privilege against disclosing attorney client information.

**REQUEST FOR PRODUCTION NO. 22**: Retainer agreement(s) or other business

agreement(s), contract(s) or information arrangement(s) of any kind between Plaintiff and M.

Keith Lipscomb, Esq.

**RESPONSE NO. 22:**

Plaintiff objects to this request on the basis that it is neither relevant nor likely to lead to

the discovery of admissible evidence and because the agreement contains confidential business

information which if disclosed would put Plaintiff at a competitive disadvantage vis-à-vis its

competitors. Specifically, the terms of counsel's agreement with Plaintiff for the provision of

services in exchange for fees will not shed any light on the issue of whether Defendant

committed the infringement as alleged in the complaint. Additionally, the agreement contains

attorney-client information and advice and so Plaintiff object on the basis that it is protected by the privilege against disclosing attorney client information.

**REQUEST FOR PRODUCTION NO. 24:** Retainer agreement(s) or other business agreement(s), contract(s) or information arrangement(s) of any kind between Kotzker and M. Keith Lipscomb, Esq.

**RESPONSE NO. 24:**

Plaintiff objects to this request on the basis that it is neither relevant nor likely to lead to the discovery of admissible evidence and because the agreement contains confidential business information which if disclosed would put Plaintiff at a competitive disadvantage vis-à-vis its competitors. Specifically, the terms of Plaintiff's counsels' agreement with each other will not shed any light on the issue of whether Defendant committed the infringement as alleged in the complaint. Additionally, any information exchanged between Plaintiff's counsel while acting in their capacity as counsel for Plaintiff is protected by the attorney client privilege and constitutes attorney client work product.

**REQUEST FOR PRODUCTION NO. 25:** Produce and identify any and all Digital Millennium Copyright Act (DMCA) takedown notices issued by Plaintiff to any ISP for any and all alleged infringement of the Work(s) upon which Plaintiff has commenced legal action in any jurisdiction.

**RESPONSE NO. 25:**

Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence. The DMCA notices that Plaintiff sends to third parties will not shed any light on the issue of whether Defendant committed the subject infringement is more or less likely. Indeed, Plaintiff did not start sending DMCA notices until after the subject infringement was detected by IPP, Ltd. and uses and third party provider for this service because IPP, Ltd. does not offer it.

**REQUEST FOR PRODUCTION NO. 26**: Produce and identify any and all "cease and desist" letters sent by Plaintiff to anyone with regard to any alleged infringement of the Work(s), whether or not Plaintiff has commenced legal action upon any alleged infringement.

**RESPONSE NO. 26:**

Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence. Any letters sent to third parties will not shed any light on the issue of whether Defendant committed the subject infringement is more or less likely. Plaintiff further objects on the basis that "cease and desist" letters is an ambiguous term. Plaintiff further objects to this request on the basis that any such letters, should they exist, would contain confidential information and could only be disclosed on the after being redacted without violating Plaintiff's settlement agreements with third parties.

**REQUEST FOR PRODUCTION NO. 27**: All documents, things, and/or electronically stored information pertaining to and demonstrating Plaintiff's alleged loss of income on each of the Works due to internet copyright infringement and indicate the portion of such losses which Plaintiff alleges is due to any alleged actions of Defendant.

**RESPONSE NO. 27:**

Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence. Plaintiff has elected herein to only seek statutory damages. Therefore, Plaintiff's actual damages are not relevant.

**REQUEST FOR PRODUCTION NO. 28:** All documents, things, and/or electronically stored information including digital files which comprise true and entire copies of the "siterip" referred to in ¶2 of the Complaint filed in this matter.

**RESPONSE NO. 28:**

Plaintiff will produce all documents in its possession, custody or control deemed responsive to this request.

**REQUEST FOR PRODUCTION NO. 29:** All documents, things, and/or electronically stored information including digital files which comprise true and entire copies of the "siterip" referred to in ¶2 of the Complaint filed in the Previous Lawsuit.

**RESPONSE NO. 29:**

Plaintiff will produce all documents in its possession, custody or control deemed responsive to this request.

**REQUEST FOR PRODUCTION NO. 30:** Articles of Incorporation or substantially similar documents filed with the Secretary of State of California for Malibu Media, LLC.

**RESPONSE NO. 30:**

Plaintiff will produce all documents in its possession, custody or control deemed responsive to this request.

**REQUEST FOR PRODUCTION NO. 31:** Plaintiff's business license or substantially similar document.

**RESPONSE NO. 31:**

Plaintiff objects to this request on the basis that it is neither relevant nor likely to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 32:** All documents, things, and/or electronically stored information pertaining to all "C-level" executives of Plaintiff from date of incorporation to present, including but not limited to Chief Executive Officer, Chief Operating Officer, Chief Technology Officer, Chief Information Officer, and/or Chief Financial Officer, and providing as to each individual:

    a.    His or her last known address and telephone number;

    b.    His or her dates of service in that position;

    c.    The position, if any, he or she took in Plaintiff company after leaving that position and dates of that service.

**RESPONSE NO. 32:**

Plaintiff objects to this request on the basis that it seeks documents that neither relevant nor likely to lead to the discovery of admissible evidence.  The infringement was detected by IPP, Ltd.  Notwithstanding the foregoing, Plaintiff directs Defendant to Plaintiff's Rule 26(a) disclosures which identifies the two co-owners of Malibu Media.

**REQUEST FOR PRODUCTION NO. 33:** All documents, things, and/or electronically stored information pertaining to all employees of Plaintiff from date of incorporation to present, and providing as to each individual:

    d.    His or her last known address and telephone number;

e.    His or her dates of service in that position;

f.    The position, if any, he or she took in Plaintiff Company after leaving that position and dates of that service.

## RESPONSE NO. 33:

Plaintiff objects to this request on the basis that it seeks documents that are neither relevant nor likely to lead to the discovery of relevant information.  The only claim which will survive a motion to dismiss is Plaintiff's claim of direct infringement against Defendant.  The identity of Defendants' employees will not shed any light on that issue.

**REQUEST FOR PRODUCTION NO. 34:** All documents, things, and/or electronically stored information pertaining to the responsibilities and obligations of Plaintiff's President, Officers, Board members and each employee for each year of Plaintiff's operation.

## RESPONSE NO. 34:

Plaintiff objects to this request on the basis that it seeks documents that are neither relevant nor likely to lead to the discovery of relevant information.  The only claim which will survive a motion to dismiss is Plaintiff's claim of direct infringement against Defendant.  The identity of Defendants' employees will not shed any light on that issue.

**REQUEST FOR PRODUCTION NO. 35:** All documents, things, and/or electronically stored information pertaining to any and all amendments to the responsibilities and obligations of Plaintiff's President, Officers, Board members and each employee for each year of Plaintiff's operation.

## RESPONSE NO. 35:

Plaintiff objects to this request on the basis that it seeks documents that are neither relevant nor likely to lead to the discovery of relevant information.  The only claim which will

survive a motion to dismiss is Plaintiff's claim of direct infringement against Defendant.  The identity of Defendants' employees will not shed any light on that issue.

**REQUEST FOR PRODUCTION NO. 36:** All documents, things, and/or electronically stored information constituting records and minutes of corporate meetings, including meetings of Board of Directors and meetings of shareholders from date of incorporation to present.

**RESPONSE NO. 36:**

Plaintiff objects to this request on the basis that it seeks documents that are neither relevant nor likely to lead to the discovery of relevant information.  The only claim which will survive a motion to dismiss is Plaintiff's claim of direct infringement against Defendant. Plaintiff's Corporate Governance documents will not shed any light on that issue.

**REQUEST FOR PRODUCTION NO. 37:** All documents, things, and/or electronically stored information constituting records of all shareholders and/or participants in profit-sharing including names, addresses and telephone numbers of said individuals, inclusive dates of stock ownership, class of stock, number of shares, money or other consideration given for said shares of stock, and voting rights from date of incorporation through present.

**RESPONSE NO. 37:**

Plaintiff objects to this request on the basis that it seeks documents that are neither relevant nor likely to lead to the discovery of relevant information.  The only claim which will survive a motion to dismiss is Plaintiff's claim of direct infringement against Defendant.  The identity of Plaintiff's shareholders and agreements concerning Plaintiff's distribution of profits are not likely to shed any light on the issue of whether Defendant committed the subject infringement.

**REQUEST FOR PRODUCTION NO. 38:** All documents, things, and/or electronically stored information constituting records of all shareholder votes from date of incorporation through present.

**RESPONSE NO. 38:**

Plaintiff objects to this request on the basis that it seeks documents that are neither relevant nor likely to lead to the discovery of relevant information. The only claim which will survive a motion to dismiss is Plaintiff's claim of direct infringement against Defendant. Records comprising Plaintiff's shareholders votes are not likely to shed any light on the issue of whether Defendant committed the subject infringement.

**REQUEST FOR PRODUCTION NO. 39:** All documents, things, and/or electronically stored information that identifies any predecessor in interest.

**RESPONSE NO. 39:**

Plaintiff objects to this request on the basis that it seeks documents that are neither relevant nor likely to lead to the discovery of relevant information. The only claim which will survive a motion to dismiss is Plaintiff's claim of direct infringement against Defendant. Notwithstanding the foregoing objection, Plaintiff states that unincorporated partnership preceded Malibu Media, LLC but that the owners were identical.

**REQUEST FOR PRODUCTION NO. 40:** All documents, things, and/or electronically stored information constituting records of all dividends paid to shareholders from date of incorporation through present.

**RESPONSE NO. 40:**

Plaintiff objects to this request on the basis that it seeks documents that are neither relevant nor likely to lead to the discovery of relevant information. The only claim which will survive a motion to dismiss is Plaintiff's claim of direct infringement against Defendant. Records comprising Plaintiff's dividends are not likely to shed any light on the issue of whether Defendant committed the subject infringement.

**REQUEST FOR PRODUCTION NO. 41:** All documents, things, and/or electronically stored information constituting records of all insurance policies held by you.

**RESPONSE NO. 41:**

Plaintiff objects to this request on the basis that it seeks documents that are neither relevant nor likely to lead to the discovery of relevant information. The only claim which will survive a motion to dismiss is Plaintiff's claim of direct infringement against Defendant. Records comprising Plaintiff's insurance policies are not likely to shed any light on the issue of whether Defendant committed the subject infringement.

**REQUEST FOR PRODUCTION NO. 42:** All documents, things, and/or electronically stored information constituting Plaintiff's Federal and State income tax returns for every year since incorporation to present.

**RESPONSE NO. 42:**

Plaintiff objects to this request on the basis that it seeks documents that are neither relevant nor likely to lead to the discovery of relevant information. The only claim which will survive a motion to dismiss is Plaintiff's claim of direct infringement against Defendant. Plaintiff's income tax returns are not likely to shed any evidence on the issue of who committed

the subject infringement. Additionally, this appears to be discovery in aid of execution prior to Defendant obtaining a judgment and it is improper on that basis as well.

**REQUEST FOR PRODUCTION NO. 43:** All documents, things, and/or electronically stored information constituting Plaintiff's annual filings submitted to California Secretary of State.

**RESPONSE NO. 43:**

Plaintiff objects to this request on the basis that it seeks documents that are neither relevant nor likely to lead to the discovery of relevant information. The only claim which will survive a motion to dismiss is Plaintiff's claim of direct infringement against Defendant. Records comprising Plaintiff's annual filings are not likely to shed any light on the issue of whether Defendant committed the subject infringement.

**REQUEST FOR PRODUCTION NO. 44:** All documents, things, and/or electronically stored information constituting annual statements to shareholders, if any.

**RESPONSE NO. 44:**

Plaintiff objects to this request on the basis that it seeks documents that are neither relevant nor likely to lead to the discovery of relevant information. The only claim which will survive a motion to dismiss is Plaintiff's claim of direct infringement against Defendant. Plaintiff's annual are not likely to shed any evidence on the issue of who committed the subject infringement. Additionally, this appears to be discovery in aid of execution prior to Defendant obtaining a judgment and it is improper on that basis as well.

**REQUEST FOR PRODUCTION NO. 45:** All documents, things, and/or electronically stored information constituting records of profit-sharing for every year from incorporation through present including names of individuals to whom the profit-shares are distributed and what portion of profits those individuals received.

**RESPONSE NO. 45:**

Plaintiff objects to this request on the basis that it seeks documents that are neither relevant nor likely to lead to the discovery of relevant information. The only claim which will survive a motion to dismiss is Plaintiff's claim of direct infringement against Defendant. Plaintiff's profit shares are not likely to shed any evidence on the issue of who committed the subject infringement. Additionally, this appears to be discovery in aid of execution prior to Defendant obtaining a judgment and it is improper on that basis as well.

**REQUEST FOR PRODUCTION NO. 46:** All documents, things, and/or electronically stored information pertaining to Plaintiff's bank accounts for every year from incorporation through present.

**RESPONSE NO. 46:**

Plaintiff objects to this request on the basis that it seeks documents that are neither relevant nor likely to lead to the discovery of relevant information. The only claim which will survive a motion to dismiss is Plaintiff's claim of direct infringement against Defendant. Plaintiff's bank accounts are not likely to shed any evidence on the issue of who committed the subject infringement. Additionally, this appears to be discovery in aid of execution prior to Defendant obtaining a judgment and it is improper on that basis as well.

**REQUEST FOR PRODUCTION NO. 47:** All documents, things, and/or electronically stored information pertaining to Plaintiff's start-up funding, including the names, addresses and telephone numbers of each individual and/or entity who contributed cash or furnished loans; the disposition of said funds; what said funds were utilized for; etc.

**RESPONSE NO. 47:**

Plaintiff objects to this request on the basis that it seeks documents that are neither relevant nor likely to lead to the discovery of relevant information. The only claim which will survive a motion to dismiss is Plaintiff's claim of direct infringement against Defendant. Plaintiff's financial situation is not likely to shed any evidence on the issue of who committed the subject infringement. Additionally, this appears to be discovery in aid of execution prior to Defendant obtaining a judgment and it is improper on that basis as well.

**REQUEST FOR PRODUCTION NO. 48:** All documents, things, and/or electronically stored information pertaining to all corporate revenue (including specific breakdown of source, such as sales, settlement of lawsuit, etc.) for each year from incorporation to the present.

**RESPONSE NO. 48:**

Plaintiff objects to this request on the basis that it seeks documents that are neither relevant nor likely to lead to the discovery of relevant information. The only claim which will survive a motion to dismiss is Plaintiff's claim of direct infringement against Defendant. Plaintiff's financial situation is not likely to shed any evidence on the issue of who committed the subject infringement. Additionally, this appears to be discovery in aid of execution prior to Defendant obtaining a judgment and it is improper on that basis as well.

**REQUEST FOR PRODUCTION NO. 49:** All documents, things, and/or electronically stored information pertaining to all corporate expenditures (including purpose) for each year from incorporation to the present.

**RESPONSE NO. 49:**

Plaintiff objects to this request on the basis that it seeks documents that are neither relevant nor likely to lead to the discovery of relevant information. The only claim which will survive a motion to dismiss is Plaintiff's claim of direct infringement against Defendant. Plaintiff's financial situation is not likely to shed any evidence on the issue of who committed the subject infringement. Additionally, this appears to be discovery in aid of execution prior to Defendant obtaining a judgment and it is improper on that basis as well.

**REQUEST FOR PRODUCTION NO. 50:** As to each of the Works:

a.   Produce and identify documents which pertain to the identity of the director, all producers, and all sources of funding for the creation of the Work;

**Response:** Plaintiff will produce all documents in its possession, custody or control deemed response to the request insofar as it relates to the identity of the director. Plaintiff objects to this request insofar as it seeks the identity of the sources of funding for the creation of the Work on the basis that this information is neither relevant nor likely to lead to the discovery of admissible evidence.

b.   Produce and identify documents which pertain to the identity of the author of the Work for purposes of copyright registration;

**Response:** Plaintiff will produce all documents in its possession, custody or control deemed responsive to this request.

c.     Produce and identify documents which pertain to the date of acquisition of the Work by you;

**Response:**  Plaintiff will produce all documents in its possession, custody or control deemed responsive to this request.

d.     Produce and identify documents pertaining to Plaintiff's acquisition of any and all rights in the Work;

**Response:**  Plaintiff will produce all documents in its possession, custody or control deemed responsive to this request.

e.     Produce and identify the original applications for copyright registration filed by Plaintiff for the Work;

**Response:** Plaintiff objects on the basis that this request seeks original documents. Plaintiff will however produce true and accurate copies of all documents in its possession, custody or control deemed responsive to this request.

f.     Produce and identify all documents related to the copyright registration of the Work;

**Response**:  Plaintiff will produce all documents in its possession, custody or control deemed responsive to this request.

g.     Produce and identify all documents evidencing marking of the Work as copyrighted;

**Response:**  Plaintiff will produce all documents in its possession, custody or control deemed responsive to this request.

h.     Produce and identify all documents relating to federal record keeping relating to the age and consent of the actors in the Work;

**Response:** Plaintiff objects to this request on the basis that it seeks documents that are neither relevant nor likely to lead to the discovery of admissible evidence. Plaintiff's works are copyrightable as a matter of law and there are no records which need be kept about the age of the actors in Plaintiff's movies that undermine the copyrightablility of the works. Notwithstanding the foregoing, Plaintiff avers that these records do exist and that all of the actors were over the age of majority at the times that the movies were created.

i.     Produce and identify the original copyright registration certificates for the Work;

**Response**: Plaintiff objects to this request on the basis that it seeks and original document. Plaintiff will produce a true and correct copy of all documents in possession, custody or control deemed responsive to this request.

j.     Produce and identify documents pertaining to sales for the Work from date of creation, production or acquisition to present;

**Response:** Plaintiff objects to this request on the basis that it seeks documents that are neither relevant nor likely to lead to the discovery of admissible evidence. Plaintiff has elected to seek statutory damages only and therefore discovery aimed at its actual damages is not relevant.

k.     Produce and identify all advertising and marketing materials and proposals, whether actually used or not, for the Work, and specify which advertising and marketing materials have in fact been used;

**Response:** Plaintiff objects to this request on the basis that it seeks documents that are neither relevant nor likely to lead to the discovery of admissible evidence. Plaintiff has elected to seek statutory damages only and therefore discovery aimed at its actual

damages is not relevant.

l.   Produce and identify documents pertaining to funds spent for advertising and marketing for each of the Works.

**Response:**  Plaintiff objects to this request on the basis that it seeks documents that are neither relevant nor likely to lead to the discovery of admissible evidence.  Plaintiff has elected to seek statutory damages only and therefore discovery aimed at its actual damages is not relevant.

**REQUEST FOR PRODUCTION NO. 51:** As to all funds received from settlements of other internet infringement cases, provide all documents and electronically stored information pertaining to:

a.   Case number and jurisdiction;

b.   Name or "John Doe" designation of the settling party;

c.   Name of attorney who filed the case;

d.   Name of individuals who handled settlement negotiations;

e.   Produce and identify original(s) of any and all communications between that defendant and the negotiator, including voice recordings of any telephone conversations;

f.   Provide documentation (at a minimum, copies of the deposited check or proof of wire transfer) of the existence and amount of the settlement;

g.   Provide documentation of the account number and name of the bank into which that settlement amount was placed;

h.   Provide a list and produce documentation of any disbursements that were made out of that settlement amount, including but not limited to payments to attorneys,

payments to negotiators, payments to researchers, payments to investigators, whether these payments were made to companies or to individuals;

i.      Indicate the current location of those funds, *i.e.*, whether they are still in that account, or whether they have been transferred out of that account, and if the latter, provide documentation of all subsequent transfers of those funds.

**RESPONSE NO. 51:**

Plaintiff objects to this request on the basis that the documents that Defendant seeks are neither relevant nor likely to lead to the discovery of admissible evidence.  To wit: Plaintiff's disputes with third parties are not likely to make it more or less likely that Defendant committed the infringement as alleged by Plaintiff.  Plaintiff additionally objects on the basis that this request is intended to harass Plaintiff.  Plaintiff additionally objects on the basis that the requested information is confidential and subject to contracts which prohibit the disclosure of the requested information.  Plaintiff additionally objects on the basis that the requested information contains confidential business information and trade secrets the disclosure of which would put Plaintiff in a competitive disadvantage vis-à-vis its competitors.  Plaintiff additionally objects on the basis that the requested information is protected from disclosure by the attorney-client privilege and attorney-work product doctrines.  Plaintiff additionally objects on the basis that the producing the requested would be unduly burdensome and avers that Plaintiffs have reams of notes of information concerning its communications with third party infringers.  Further, Plaintiff states that in order to produce this information it would have to redact the identities of the other infringers and that this process would take a Herculean effort.  Additionally, this appears to be discovery in aid of execution prior to Defendant obtaining a judgment and it is improper on that basis as well.

**REQUEST FOR PRODUCTION NO. 52:** All documents, things, and/or electronically stored information or information deleted, thrown away, destroyed or no longer available that pertains or is relevant to this lawsuit or the Prior Lawsuit.

**RESPONSE NO. 52:**

Plaintiff does not have documents in its possession, custody or control deemed responsive to this request.

**REQUEST FOR PRODUCTION NO. 53:** All documents, things, and/or electronically stored information identifying or pertaining to each person from whom you have obtained information to respond to these requests.

**RESPONSE NO. 53:**

Plaintiff directs Defendant to its responses to its Rule 26(a) disclosures and avers that the only people whom Plaintiff obtained information from in order to respond to these requests are set forth in that disclosure.

**REQUEST FOR PRODUCTION NO. 54:** All documents, things, and/or electronically stored information supporting Plaintiff's contention that persons who use Bittorrent software to download the Work(s) are jointly and severally liable for copyright infringement, including but not limited to settlement information.

**RESPONSE NO. 54:**

Plaintiff objects to this request on the basis that the information it seeks is neither relevant nor likely to lead to the discovery of admissible evidence. Plaintiff additionally objects on the basis that this request calls for Plaintiff's counsel to cull documents that relate to a legal theory and by necessity would require Plaintiff's counsel to disclose its mental impressions.

**REQUEST FOR PRODUCTION NO. 55:** All documents, things, and/or electronically stored information supporting or refuting that Plaintiff has already been compensated for any alleged infringement related to Defendant's alleged "swarm" and that any judgment against Defendant would be a double recovery.

**RESPONSE NO. 55:**

Plaintiff objects to this request on the basis that it seeks documents that are neither relevant nor likely to lead to the discovery of admissible evidence. Plaintiff is seeking statutory damages, only.

**REQUEST FOR PRODUCTION NO. 56:** All documents, things, and/or electronically stored information arising from and/or relating to persons other than Defendant that Plaintiff has alleged and/or claimed, whether in a "John Doe" lawsuit, in a personal lawsuit, in pretrial settlement negotiations, or in any other context, is liable for copyright infringement of the Work(s).

**RESPONSE NO. 56:**

Plaintiff objects to this request on the basis that the documents that Defendant seeks are neither relevant nor likely to lead to the discovery of admissible evidence. To wit: Plaintiff's disputes with third parties are not likely to make it more or less likely that Defendant committed the infringement as alleged by Plaintiff. Plaintiff additionally objects on the basis that this request is intended to harass Plaintiff. Plaintiff additionally objects on the basis that the requested information is confidential and subject to contracts which prohibit the disclosure of the requested information. Plaintiff additionally objects on the basis that the requested information contains confidential business information and trade secrets the disclosure of which would put Plaintiff in a competitive disadvantage vis-à-vis its competitors. Plaintiff additionally objects on

the basis that the requested information is protected from disclosure by the attorney-client privilege and attorney-work product doctrines. Plaintiff additionally objects on the basis that the producing the requested documents would be unduly burdensome and avers that Plaintiffs has information concerning its communications with third party infringers. Further, Plaintiff states that in order to produce this information it would have to redact the identities of the other infringers and that this process would take a Herculean effort.

**REQUEST FOR PRODUCTION NO. 57:** All documents, things, and/or electronically stored information arising from and/or relating to the tracking and/or determination of the IP addresses of any purported infringer of the Work(s), including but not limited to a copy, including source code, of the software used to identify and/or track the IP addresses.

**RESPONSE NO. 57:**

Plaintiff objects to this request on the basis that the documents that Defendant seeks are neither relevant nor likely to lead to the discovery of admissible evidence. To wit: Plaintiff's disputes with third parties are not likely to make it more or less likely that Defendant committed the infringement as alleged by Plaintiff. Plaintiff additionally objects on the basis that this request is intended to harass Plaintiff. Plaintiff additionally objects on the basis that the requested information is confidential and subject to contracts which prohibit the disclosure of the requested information. Plaintiff additionally objects on the basis that the requested information contains confidential business information and trade secrets the disclosure of which would put Plaintiff in a competitive disadvantage vis-à-vis its competitors. Plaintiff additionally objects on the basis that the requested information is protected from disclosure by the attorney-client privilege and attorney-work product doctrines. Plaintiff additionally objects on the basis that the producing the requested documents would be unduly burdensome and avers that Plaintiffs has information

concerning its communications with third party infringers.  Further, Plaintiff states that in order to produce this information it would have to redact the identities of the other infringers and that this process would take a Herculean effort.

**REQUEST FOR PRODUCTION NO. 58:** All documents, things, and/or electronically stored information arising from and/or relating to the hiring of all persons depicted in the Work(s), including but not limited to drafts payable to all persons depicted in the Work(s), payroll information, contact information (street address, telephone number, and email address) of all persons depicted in the Work(s), all identifiable records (as defined in 18 U.S.C. §2257(a)) of all persons depicted in the Work(s), and Internal Revenue Service Forms 1099 and W-2 for all persons depicted in the Work(s).

**RESPONSE NO. 58:**

Plaintiff objects to this request on the basis that it seeks documents that are neither relevant nor likely to lead to the discovery of admissible evidence.  Plaintiff's works are copyrightable as a matter of law and there are no records which need be kept about the age of the actors in Plaintiff's movies that undermine the copyrightablility of the works.  Notwithstanding the foregoing, Plaintiff avers that these records do exist and that all of the actors were over the age of majority at the times that the movies were created.

**REQUEST FOR PRODUCTION NO. 59:**  A complete and accurate electronic copy of each of the Works, including but not limited to all unedited portions.

**RESPONSE NO. 59:**

Plaintiff will produce a complete and accurate electronic copy of each of the Works.

**REQUEST FOR PRODUCTION NO. 60:** All documents, things, and/or electronically stored information arising from and/or relating to 18 U.S.C. §2257 statements by Plaintiff regarding where and/or how the Work(s) can be accessed, copied, and/or downloaded.

**RESPONSE NO. 60:**

Plaintiff objects to this request on the basis that it seeks documents that are neither relevant nor likely to lead to the discovery of admissible evidence. Plaintiff's works are copyrightable as a matter of law and there are no records which need be kept about the age of the actors in Plaintiff's movies that undermine the copyrightablility of the works. Notwithstanding the foregoing, Plaintiff avers that these records do exist and that all of the actors were over the age of majority at the times that the movies were created.

**REQUEST FOR PRODUCTION NO. 61:** All documents, things, and/or electronically stored information evidencing whether and when the Work(s) is/are/was/were available on any website.

**RESPONSE NO. 61:**

Plaintiff will produce all documents in its possession, custody or control deemed responsive to this request.

**REQUEST FOR PRODUCTION NO. 62:** All documents, things, and/or electronically stored information relating to any formal or informal ethics complaint(s) filed or proceedings instituted against you, your attorneys, and/or agents, whether instituted by an individual or a Court.

**RESPONSE NO. 62:**

Plaintiff objects to this request on the basis that it seeks documents that are neither relevant nor likely to lead to the discovery of admissible evidence. Plaintiff further objects to this request on the basis that it is intended to harass Plaintiff and its counsel.

**REQUEST FOR PRODUCTION NO. 63:** All documents, things, and/or electronically stored information relating to any communications relating to any formal or informal ethics complaint, admonishment by any Court, sanctions or threatened sanction by any Court against you, your attorneys and/or agents.

**RESPONSE NO. 63:**

Plaintiff objects to this request on the basis that it seeks documents that are neither relevant nor likely to lead to the discovery of admissible evidence. Plaintiff further objects to this request on the basis that it is intended to harass Plaintiff and its counsel.

**REQUEST FOR PRODUCTION NO. 64:** All documents, things, and/or electronically stored information relating to all joint defense agreements.

**RESPONSE NO. 64:**

Plaintiff objects to this request on the basis that it seeks documents that are neither relevant nor likely to lead to the discovery of admissible evidence. The only claim in this litigation that will survive a motion to dismiss is Plaintiff's claim that Defendant committed a direct infringement of Plaintiff's copyrights. Plaintiff also objects to this request on the basis that it contains confidential attorney-client privileged information and information that is protected by the attorney-client work product doctrine. Plaintiff additionally objects to this request on the basis that the information that sought contains confidential proprietary business information and trade secrets the disclosure of which would harm Plaintiff's competitive position

vis-à-vis its competitors.  Plaintiff also objects to this request  on the basis that it is vague and ambiguous insofar as it does not state which joint defense agreements Defendants refer.

Dated: September 4, 2012

Respectfully submitted,

By: /s/Jason Kotzker
Jason Kotzker
jason@klgip.com
KOTZKER LAW GROUP
9609 S. University Blvd. #632134
Highlands Ranch, CO 80163
Phone: 303-875-5386
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2012, a copy of the foregoing document has been served upon Mr. Fantalis via U.S. Mail and E-Mail.

By: /s/ Jason Kotzker

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:12-cv-00886-MSK-MEH

MALIBU MEDIA, LLC,

      Plaintiff,

v.

JEFF FANTALIS and BRUCE DUNN,

      Defendants

_____/

## PLAINTIFF'S RESPONSE TO DEFENDANT
## JEFF FANTALIS FIRST REQUEST FOR ADMISSIONS

Plaintiff, MALIBU MEDIAL, LLC, replies to Defendant, JEFF FANTALIS, First

Request for Admissions, as follows:

## STATEMENT OF WILLINGNESS TO COOPERATE

1.     Counsel for Plaintiff is prepared to discuss with counsel for Defendant the

objections set forth below for the purpose of resolving any disputes that may arise over the

responses to the Requests without the need for intervention by the Court.

## GENERAL OBJECTIONS

2.     Plaintiff objects to the Requests for Admissions to the extent that they are vague,

ambiguous, over broad, harassing and/or unduly burdensome.

3.     Plaintiff objects to the Requests for Admissions to the extent that they purport to

require information in the possession, custody, or control of any person or entity other than

Plaintiff.

4.     Plaintiff objects to the Requests for Admissions to the extent that they seek

information that is attorney-client privileged, that constitutes attorney-work product, that



was prepared in anticipation of litigation, that constitutes or discloses the mental impressions, conclusions, opinions or legal theories of any attorney of Plaintiff concerning this or any other litigation, or that are otherwise protected from disclosure under any other applicable privilege.

5.    Plaintiff objects to the Requests for Admissions to the extent they seek to impose requirements beyond those contained in the Federal Rules of Civil Procedure, or any applicable Local Rules and/or laws.

6.    Plaintiff objects to the Requests for Admissions to the extent that they call for information that is neither relevant to the action nor reasonably calculated to lead to the discovery of admissible evidence.

7.    Plaintiff objects to the relevant time period as defined in the Requests for Admissions on the grounds that it renders the Requests over broad, unduly burdensome, harassing and/or neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, many of the Requests do not contain an applicable time frame and are therefore ambiguous and over broad.

8.    Plaintiff objects to the Requests for Admissions to the extent they call for information that is protected because it contains: (1) trade secrets, (2) confidential research, and/or (3) commercial information.

9.    Plaintiff objects to the Requests for Admissions on the grounds that Defendant has propounded Requests for Admissions, including subparts, which exceed thirty requests as agreed to by the parties.

2

Civil Action No. 1:12-cv-00886-MSK-MEH

Nonwaiver and Preservation of Privileges

10.     By undertaking to respond to these Requests for Admissions, Plaintiff does not in any way waive or intend to waive but rather intends to preserve and is preserving:

(a) all rights to object on any ground supported by the Federal Rules of Evidence or other applicable law to the use at trial or at any hearing of any of these responses and/or the information provided in response to the Requests including, but not limited to, the following objections:

(i) That the information is protected by the:

(1) attorney-client privilege, (2) privilege against disclosing attorney work product, (3) applicable marital privileges, (4) accountant-client privilege, (5) clergy-parishioner privilege, (6) privilege against self-incrimination, and/or (7) doctor-patient privilege; and/or

(ii) That the information is inadmissible because it is:

(1) irrelevant, (2) constitutes hearsay, (3) is related to only collateral matters, (4) violates the best evidence rule; (5) although relevant, is excludable because the probative value is substantially outweighed by the danger of unfair prejudice, (5) is cumulative, (6) would cause an undue delay, and/or (6) can be excluded by any other rule of evidence or law;

(iii) That the information is inadmissible because it constitutes:

(1) a trade secret, (2) confidential research, (3) confidential development, and/or (4) commercial information; and

(b) all rights to object on any ground at any time to use of these Requests for any purpose.

3

Civil Action No. 1:12-cv-00886-MSK-MEH

Reservation of Right to Supplement Responses,
Incorporation of General Objections into Specific Responses

11.     Plaintiff reserves the right to supplement or amend its specific or general objections or responses to any or all the Requests for Admissions.

12.     The following specific objections and responses are subject to the foregoing general objections and responses (the "General Objections"), and the General Objections are incorporated into each specific response set forth below.

4

Civil Action No. 1:12-cv-00886-MSK-MEH

## RESPONSES TO REQUESTS FOR ADMISSIONS

1.      The IP address, if in fact assigned to Defendant's account by Qwest/CenturyLink at the time of the alleged infringement stated in the Complaint, was a "dynamic" IP address as that term is generally understood in the computer science field.

**Response to Request No. 1:** Plaintiff does not have information in its possession, custody or control which would enable Plaintiff to respond to this request by admitting or denying it.

2.      The IP address, if in fact assigned to Defendant's account by Qwest/CenturyLink at the time of the alleged infringement stated in the Complaint, was assigned to the DSL modem provided to Defendant by Qwest/CenturyLink and does not indicate any computer within the Defendant's house.

**Response to Request No. 1:  Denied as phrased.**

3.      Any IP address assigned by Qwest/CenturyLink is assigned to the DSL modem and not to any computer within the Defendant's house.

**Response to Request No. 3:  Denied as phrased.  Plaintiff also objects on the basis that this request for admission is unintelligible.**

4.      It is possible for someone to "spoof" an IP address as that term is used in the computer science field.

**Response to Request No. 4: Denied as it relates to the method of collection used by IPP, Ltd. to detect the subject infringement.**

5

5.   If an individual had "spoofed" Defendant's IP address, it would appear to the technology used by IPP Ltd., as if that individual was accessing the internet through Defendant's DSL modem.

**Response to Request No. 5: Denied.**

6.   Because the Defendant's IP address may have been "spoofed," there is no way for Plaintiff to prove that the Work(s) actually were downloaded through Defendant's DSL modem.

**Response to Request No. 6: Denied.**

7.   It is possible that the IP address was incorrectly identified by the technology used by IPP Ltd.

**Response to Request No. 7: Denied.**

8.   It is possible that the IP address was incorrectly recorded by the technology used by IPP Ltd.

**Response to Request No. 8: Denied.**

9.   It is possible that the IP address was incorrectly transferred to Plaintiff by IPP Ltd.

**Response to Request No. 9: Denied.**

10.   It is possible that the IP address was incorrectly listed by Plaintiff in its Complaint.

**Response to Request No. 10: Denied.**

Civil Action No. 1:12-cv-00886-MSK-MEH

11.    An IP address does not indicate a person, but rather, a device.

**Response to Request No. 11: Denied as phrased.  Plaintiff objects to this request on the basis that it is unintelligible.**

12.    An IP address cannot identify a person who committed a volitional act of copying through a Bittorrent protocol.

**Response to Request No. 12: Denied.**

13.    It was known by Plaintiff prior to filing the Complaint in the Prior Lawsuit that an IP address cannot identify a person who committed a volitional act of copying through a Bittorrent protocol.

**Response to Request No. 13: Denied.**

14.    The technology utilized by IPP Ltd., cannot differentiate between a person committing an act of volitional copyright infringement through a Bittorrent protocol utilizing his/her own network and a person committing an act of volitional copyright infringement through a Bittorrent protocol utilizing someone else's network.

**Response to Request No. 14: Denied as phrased.  Plaintiff objects to this request on the basis that it is unintelligible.**

15.    An unsecured wireless internet network can be accessed by any device capable of wireless internet access which is within its range.

7

Civil Action No. 1:12-cv-00886-MSK-MEH

**Response to Request No. 15: Admitted.**

16      It is unlawful in Colorado to access someone's wireless network without their permission.

**Response to Request No. 16: Plaintiff does not have any information in its possession, custody or control that would enable it admit or deny this request.**

17.      Plaintiff knew, before you filed your Complaint in either the Prior Lawsuit or the instant case, that it is unlawful in Colorado to access someone's wireless network without their permission.

**Response to Request No. 17: Plaintiff does not have any information in its possession, custody or control that would enable it admit or deny this request. Plaintiff further avers that it did not access Defendant's wireless network. Instead, Defendant established a direct TCP/IP connection with IPP, Ltd. and then sent IPP, Ltd. a piece of Plaintiff's copyrighted work.**

18.      It is possible to access an unsecured wireless internet network without the knowledge of the individual who has set up the network and paid for internet service.

**Response to Request No. 18: Admitted.**

19.      Thousands of companies across the United States, such as Starbucks and McDonalds, provide free internet access to their customers through unsecured wireless networks.

**Response to Request No. 19: Admitted.**

8

Civil Action No. 1:12-cv-00886-MSK-MEH

20.     When a computer connects to the Internet using a modem and/or a router serving as a network translation device (NAT), a computer's internal IP address is not visible once information passes through the NAT.

**Response to Request No. 20: Plaintiff does not have any information in its possession, custody or control which would enable Plaintiff to either admit or deny this request.**

21.     When a person connects to the Internet using a modem or router that acts as a network translation device (NAT), any information transmitted or received by the NAT to the Internet would appear to be from the IP address assigned to the NAT by the ISP.

**Response to Request No. 21:  Plaintiff does not have any information in its possession, custody or control which would enable Plaintiff to either admit or deny this request.**

22.     There are individuals who engage in a process called "wardriving" which entails driving around neighborhoods and mapping areas where unsecured wireless networks can be accessed.

**Response to Request No. 22:  Plaintiff does not have any information in its possession, custody or control which would enable Plaintiff to either admit or deny this request.**

23.     There is no federal law or Colorado state law that requires an individual to maintain a secure wireless network.

Civil Action No. 1:12-cv-00886-MSK-MEH

**Response to Request No. 23:   Plaintiff does not have any information in its possession, custody or control which would enable Plaintiff to either admit or deny this request.**

24.   There is no legal duty that requires an individual to maintain a secure wireless network.

**Response to Request No. 24: Denied.**

**25.**   It is possible that someone other than Defendant downloaded the Work(s) by accessing Defendant's wireless network without his knowledge, authorization or consent.

**Response to Request No. 25:   Denied insofar as the preponderance of the evidence strongly suggests that Defendant was the infringer in this case.**

**26.**   There is no way for Plaintiff to prove that Defendant was the individual who downloaded the Work(s) because some other individual besides the Defendant may have accessed his unsecured wireless network.

**Response to Request No. 26: Denied.**

27.   There is no way for Plaintiff to assert with 100% certainty based on an IP address alone that Defendant was the individual who downloaded the Work(s) because some other individual besides the Defendant may have accessed his unsecured wireless network.

**Response to Request No. 27:   Denied.**

28.   There is no way for Plaintiff to prove that someone other than Defendant did not access Defendant's unsecured wireless network.

**Response to Request No. 28:   Denied.**

10

29.    There is no way for Plaintiff to prove that the Work(s) were downloaded through the IP address allegedly collected by IPP Ltd.

**Response to Request No. 29: Denied.**

30.    There is no way for Plaintiff to prove anything more than that some portion or all of the Work(s) travelled through a Bittorrent accessed by the IP address allegedly collected by IPP Ltd.

**Response to Request No. 30: Denied.**

31.    Plaintiff and/or its employees and/or its agents created or authorized the creation of the "siterip" referred to in paragraph 2 of the Complaint.

**Response to Request No. 31: Denied.**

32.    IPP Ltd., is owned, in whole or in part, and/or controlled by Guardaley Ltd. (a/k/a GuardaLey Ltd.).

**Response to Request No. 32: Plaintiff does not have any information in its possession, custody or control which would enable Plaintiff to either admit or deny this request.**

33.    All or some of the owners and/or board members and/or executives of IPP Ltd. are also the owners and/or board members and/or executives of Guardaley Ltd. (a/k/a GuardaLey Ltd.).

**Response to Request No. 33: Plaintiff does not have any information in its possession, custody or control which would enable Plaintiff to either admit or deny this**

11

request.

34. IPP Ltd., uses the same technology to detect IP addresses in Bittorrent "swarms" as Guardaley Ltd. (a/k/a GuardaLey Ltd.).

**Response to Request No. 34:** **Plaintiff does not have any information in its possession, custody or control which would enable Plaintiff to either admit or deny this request.**

35. There is no possible method for searching a Bittorrent "swarm" for peers who are offering a particular data file.

**Response to Request No. 35:** **Plaintiff does not have any information in its possession, custody or control which would enable Plaintiff to either admit or deny this request.**

36. When the Bittorrent protocol utilizes a "tracker," it randomly connects a peer connected to the tracker to one or more other peers, and a particular peer cannot choose to connect to any particular peer.

**Response to Request No. 36:** **Plaintiff does not have any information in its possession, custody or control which would enable Plaintiff to either admit or deny this request.**

37. The technology referred to in the declaration of Tobias Fieser in the Prior Lawsuit, used to supposedly detect the downloaders of the Work(s), involves the uploading of

pieces of data to those "peers" (as identified by an IP address) in the Bittorrent "swarm" as those terms are defined in the Bittorrent vernacular.

**Response to Request No. 37:  Denied.**

38.     The technology referred to in the declaration of Tobias Fieser in the Prior Lawsuit, used to supposedly detect the downloaders of the Work(s), involves the downloading of pieces of data from those "peers" (as identified by an IP address) in the Bittorrent "swarm" as those terms are defined in the Bittorrent vernacular.

**Response to Request No. 38:  Admitted.**

39.     The uploading and downloading of data as described in #27 and #28 above was done with the permission and authorization of Plaintiff.

**Response to Request No. 39:  Denied insofar as it relates to the upload from the Defendant and admitted as it relates to IPP, Ltd.**

40.     By authorizing IPP Ltd., and/or its agents and/or employees to upload Plaintiff's Work(s) to the Bittorrent swarm, Plaintiff knowingly, intentionally, and willingly placed the Work(s) into the Bittorrent swarm.

**Response to Request No. 40:  Denied.**

41.     By placing the Work(s) into the Bittorrent swarm, Plaintiff created a "honeypot" meaning a digital file that is intended to lure or entice individuals to download one's copyrighted material.

Civil Action No. 1:12-cv-00886-MSK-MEH

**Response to Request No. 41: Denied.**

42. All or some of the owners and/or board members and/or executives of Plaintiff are also the owners and/or board members and/or executives of Patrick Collins, Inc.

**Response to Request No. 42: Denied.**

43. All or some of the owners and/or board members and/or executives of Plaintiff are also the owners and/or board members and/or executives of Raw Films, Inc.

**Response to Request No. 43: Denied.**

44. Plaintiff has a business relationship with M. Keith Lipscomb, Esq.

**Response to Request No. 44: Admitted insofar as M. Keith Lipscomb is an attorney that Plaintiff has retained.**

45. M. Keith Lipscomb, Esq., has provided Plaintiff with advice and information regarding copyright infringement litigation.

**Response to Request No. 45: Admitted only to the extent that the advice and information has been communicated to Plaintiff by M. Keith Lipscomb. Plaintiff objects to the request to the extent that it solicits any particular information on that basis that all such information is attorney-client privileged.**

46. Out of the 30 "John Does" who were defendants in the Prior Lawsuit, Plaintiff has reached settlements with eight of these Doe defendants.

Civil Action No. 1:12-cv-00886-MSK-MEH

**Response to Request No. 46:  Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

47.    Out of the 3 defendants in this case, Plaintiff has reached a settlement with Stephen Deus.

**Response to Request No. 47:  Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

48.    For the calendar year 2011, more than 25% of Plaintiff's revenue was derived from settlements from copyright infringement litigation.

**Response to Request No. 48:  Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

49.    For the calendar year 2011, more than 50% of Plaintiff's revenue was derived from settlements from copyright infringement litigation.

**Response to Request No. 49:  Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

50.    For the calendar year 2011, more than 75% of Plaintiff's revenue was derived

from settlements from copyright infringement litigation.

**Response to Request No. 50:  Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

51.     For the calendar year 2011, more than 90% of Plaintiff's revenue was derived from settlements from copyright infringement litigation.

**Response to Request No. 51:  Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

52.     For the calendar year 2012 to date, more than 25% of Plaintiff's revenue was derived from settlements from copyright infringement litigation.

**Response to Request No. 52:  Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

53.     For the calendar year 2012 to date, more than 50% of Plaintiff's revenue was derived from settlements from copyright infringement litigation.

**Response to Request No. 53:  Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

54.    For the calendar year 2012 to date, more than 75% of Plaintiff's revenue was derived from settlements from copyright infringement litigation.

**Response to Request No. 54:  Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

55.    For the calendar year 2012 to date, more than 90% of Plaintiff's revenue was derived from settlements from copyright infringement litigation.

**Response to Request No. 55:  Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

56.    For the calendar year 2011 and for the calendar year 2012 to date, Plaintiff's revenue derived from settlements of copyright infringement litigation is more than $10,000.

**Response to Request No. 56:  Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

57.    For the calendar year 2011 and for the calendar year 2012 to date, Plaintiff's revenue derived from settlements of copyright infringement litigation is more than $100,000.

**Response to Request No. 57: Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

Civil Action No. 1:12-cv-00886-MSK-MEH

58.  For the calendar year 2011 and for the calendar year 2012 to date, Plaintiff's revenue derived from settlements of copyright infringement litigation is more than $1,000,000.

**Response to Request No. 58**:  **Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

59.  For the calendar year 2011 and for the calendar year 2012 to date, Plaintiff's revenue derived from settlements of copyright infringement litigation is more than $5,000,000.

**Response to Request No. 59**:  **Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

60.  For the calendar year 2011 and for the calendar year 2012 to date, Plaintiff's revenue derived from settlements of copyright infringement litigation is more than $10,000,000.

**Response to Request No. 60**:  **Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

61.  Plaintiff does not own the complete copyright to the Work(s).

**Response to Request No. 61**:  **Denied.**

62.  The previous copyright owner(s) of the Work(s) assigned the copyrights to you for litigation purposes only.

**Response to Request No. 62**: **Denied.**

63.    Plaintiff was formed, created and/or incorporated for the purposes of pursuing alleged infringement of copyrights to the Work(s).

**Response to Request No. 63**: **Denied.**

64.    Plaintiff has no other operations apart from litigation-related activities.

**Response to Request No. 64**: **Denied.**

65.    Plaintiff does not own the right to distribute and sell the Work(s).

**Response to Request No. 65**: **Denied.**

66.    Plaintiff only owns the right to sue for infringement of copyright of the Work(s).

**Response to Request No. 66**: **Denied.**

67.    The Work(s) or any individual Work has not/have not generated any revenues that were not related to litigation since its/their creation.

**Response to Request No. 67**: **Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

68.    The Work(s) or any individual Work has not/have not generated any revenues that were not related to litigation since Plaintiff acquired the rights to Work(s).

**Response to Request No. 68:** **Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

69.   The Work(s) have generated non-litigation related revenues since their creation of less than $1,000.

**Response to Request No. 69:** **Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

70.   The Work(s) have generated non-litigation related revenues since their creation of less than $10,000.

**Response to Request No. 70:** **Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

71.   The Work(s) have generated non-litigation related revenues since their creation of less than $100,000.

**Response to Request No. 71:** **Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

72.   The Work(s) have generated non-litigation related revenues since their creation of less than $1,000,000.

**Response to Request No. 72:** **Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

73.    The Work(s) have generated non-litigation related revenues since their creation of less than $5,000,000.

**Response to Request No. 73:** **Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

74.    The Work(s) have generated non-litigation related revenues since their transfer to Plaintiff of less than $1,000.

**Response to Request No. 74:** **Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

75.    The Work(s) have generated non-litigation related revenues since their transfer to Plaintiff of less than $10,000.

**Response to Request No. 75:** **Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

76.    The Work(s) have generated non-litigation related revenues since their transfer to Plaintiff of less than $100,000.

**Response to Request No. 76:** **Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

77.    The Work(s) have generated non-litigation related revenues since their transfer to Plaintiff of less than $1,000,000.

**Response to Request No. 77:** **Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

78.    The Work(s) have generated non-litigation related revenues since their transfer to Plaintiff of less than $5,000,000.

**Response to Request No. 78:** **Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

79.    Because the dates of alleged infringement listed in the Complaint in this action and the Prior Lawsuit are all different, there is no possible way for any of the defendants to have worked together in a Bittorrent swarm.

**Response to Request No. 79:** **Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

80.    Plaintiff has filed hundreds of lawsuits in jurisdictions across the United States for

copyright infringement which are identical to the Prior Lawsuit.

**Response to Request No. 80:  Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

81.    Plaintiff (either directly or by and through its attorneys or agents) utilizes a "call center" which employs individuals who are not lawyers to make phone calls to alleged copyright infringers prior to filing lawsuits against them.

**Response to Request No. 81:  Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

82.    Employees of this "call center" are independent contractors and not employees of Plaintiff.

**Response to Request No. 82:  Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

83.    Employees of this "call center" do not have business email addresses.

**Response to Request No. 83:  Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

84.    Employees of this "call center" are instructed by Plaintiff (either directly or by and through its attorneys, employees and/or agents) not to provide an email address to opposing attorneys, defense counsel or alleged infringers whom they contact or who contact them (whether or not those alleged infringers have actually been sued).

**Response to Request No. 84: Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

85.    Employees of this "call center" only communicate by telephone.

**Response to Request No. 85: Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

86.    Employees of this "call center" are instructed by Plaintiff (either directly or by and through its attorneys, employees and/or agents) only to communicate by telephone.

**Response to Request No. 86: Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

87.    Employees of this "call center" do not provide a physical address of their location.

**Response to Request No. 87: Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

88.    Employees of this "call center" are instructed by Plaintiff (either directly or by and through its attorneys, employees and/or agents) not to provide a physical address of their location to opposing attorneys, defense counsel or alleged infringers whom they contact or who contact them (whether or not those alleged infringers have actually been sued).

**Response to Request No. 88:  Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

89.    Employees of this "call center" contact potential defendants at their place of employment.

**Response to Request No. 89:  Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

90.    Employees of this "call center" are instructed by Plaintiff (either directly or by and through its attorneys, employees and/or agents) to contact potential defendants at their place of employment.

**Response to Request No. 90:  Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

91.   Employees of this "call center" contact potential defendants at their home.

**Response to Request No. 91:  Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

92.   Employees of this "call center" are instructed by Plaintiff (either directly or by and through its attorneys, employees and/or agents) to contact potential defendants at their home.

**Response to Request No. 92:  Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

93.   Plaintiff (either directly or by and through its attorneys or agents) authorizes its "call center" employees to make threatening, harassing, and abusive statements to the alleged copyright infringers they call.

**Response to Request No. 93:  Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

94.   Plaintiff (either directly or by and through its attorneys or agents) has, through its "call center," knowingly contacted potential defendants and defendants who were represented by counsel.

**Response to Request No. 94: Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

95.   Plaintiff (either directly or by and through its attorneys or agents) has, through its

"call center," knowingly contacted defendants who were represented by counsel in this or the Prior Lawsuit.

**Response to Request No. 95:** **Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

96.     Plaintiff (either directly or by and through its attorneys or agents) has, through its "call center," threatened defendants and potential defendants with criminal sanctions.

**Response to Request No. 96: Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

97.     Plaintiff (either directly or by and through its attorneys or agents) has, through its "call center," threatened defendants and potential defendants with criminal sanctions in the Prior Lawsuit.

**Response to Request No. 97:** **Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

98.     As of the date of the filing of the First Amended Answer and Counterclaim, of the hundreds of "John Doe" lawsuits Plaintiff filed, Plaintiff had filed only two cases against named defendants: this case and one other in Colorado.

**Response to Request No. 98: Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

Civil Action No. 1:12-cv-00886-MSK-MEH

99.   Of the hundreds of "John Doe" lawsuits Plaintiff has filed across the country, Plaintiff has never litigated a case all the way to a judgment in court.

**Response to Request No. 99: Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

100.   Of the hundreds of "John Doe" lawsuits Plaintiff has filed across the country, Plaintiff has never taken discovery nor been the subject of discovery.

**Response to Request No. 100: Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

101.   Of the hundreds of "John Doe" lawsuits Plaintiff has filed across the country, Plaintiff has never taken a deposition nor been subject to a deposition.

**Response to Request No. 101: Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

102.   In at least some of the hundreds of "John Doe" lawsuits Plaintiff has filed across the country, Plaintiff has been offered the opportunity to inspect an individual's computer.

**Response to Request No. 102: Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible**

28

Civil Action No. 1:12-cv-00886-MSK-MEH

information.

103.   In at least some of the hundreds of "John Doe" lawsuits Plaintiff has filed across the country, Plaintiff has been offered evidence of an individual's innocence.

**Response to Request No. 103:  Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

104.   In at least some of the hundreds of "John Doe" lawsuits Plaintiff has filed across the country, Plaintiff has been offered affidavit evidence of an individual's innocence.

**Response to Request No. 104:  Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

105.   Of the hundreds of "John Doe" lawsuits Plaintiff has filed across the country, Plaintiff has never inspected (either directly or by and through its attorneys or agents) an individual's computer.

**Response to Request No. 105:  Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

106.   In any of the hundreds of "John Doe" lawsuits Plaintiff has filed across the country, Plaintiff has inspected (either directly or by and through its attorneys or agents) an individual's computer and found no evidence of infringement of any of Plaintiff's copyrighted

29

works.

**Response to Request No. 106:** Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.

107.   Of the hundreds of "John Doe" lawsuits Plaintiff has filed across the country, Plaintiff has never accepted an individual's proffer of evidence of innocence.

**Response to Request No. 107:** Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.

108.   Prior to filing the Prior Lawsuit, Plaintiff did not issue any DMCA takedown notices pertaining to those 30 alleged incidents of infringement.

**Response to Request No. 108:** Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.

109.   Prior to filing the complaint in this action, Plaintiff did not issue any DMCA takedown notices pertaining to those 3 alleged incidents of infringement.

**Response to Request No. 109:** Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.

110.   Prior to filing any "John Doe" lawsuits nationwide, Plaintiff has not issued any

Civil Action No. 1:12-cv-00886-MSK-MEH

DMCA takedown notices.

**Response to Request No. 110:  Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

111.    Prior to filing the Prior Lawsuit, Plaintiff did not issue any "cease and desist" letters pertaining to those 30 alleged incidents of infringement.

**Response to Request No. 111:  Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

112.    Prior to filing the complaint in this action, Plaintiff did not issue any "cease and desist" letters pertaining to those 3 alleged incidents of infringement.

**Response to Request No. 112:  Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

113.    Prior to filing any "John Doe" lawsuits nationwide, Plaintiff has not issued any "cease and desist" letters.

**Response to Request No. 113:  Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

114.    Prior to filing the Prior Lawsuit, Plaintiff did not contact any Bittorrent websites

such as TorrentZap.com, Btscene.com, ExtraTorrent.com or piratebay.org (as listed in the complaint in the Prior Lawsuit) and demand that Plaintiff's Work(s) be removed from the site.

**Response to Request No. 114:** **Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

115.   Prior to filing the complaint in this action, Plaintiff did not contact any Bittorrent websites such as TorrentZap.com, Btscene.com, ExtraTorrent.com or piratebay.org (as listed in the complaint in this action) and demand that Plaintiff's Work(s) be removed from the site.

**Response to Request No. 115:** **Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

116.   Prior to filing any "John Doe" lawsuits nationwide, Plaintiff did not contact any Bittorrent websites such as TorrentZap.com, Btscene.com, ExtraTorrent.com or piratebay.org (as listed in both complaints) and demand that Plaintiff's Work(s) be removed from the site.

**Response to Request No. 116:** **Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

117.   At no time has Plaintiff contacted any Bittorrent websites such as TorrentZap.com, Btscene.com, ExtraTorrent.com or piratebay.org (as listed in both complaints) and demanded that Plaintiff's Work(s) be removed from the site.

**Response to Request No. 117:** **Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible**

Civil Action No. 1:12-cv-00886-MSK-MEH

information.

118.   At no time has Plaintiff attempted to lobby Congress to bring about a change in federal laws that would shut down Bittorrent websites such as TorrentZap.com, Btscene.com, ExtraTorrent.com or piratebay.org (as listed in both complaints).

**Response to Request No. 118**: **Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible information.**

119.   The document attached to Defendant's First Amended Answer and Counterclaim as Exhibit A entitled "Porn Companies File Mass Piracy Lawsuits: Are You At Risk?" by Jason Koebler,   http://www.usnews.com/news/articles/2012/02/02/porn-companies-file-mass-piracy-lawsuits-are-you-at-risk, is authentic.

**Response to Request No. 119**:   **Plaintiff objects on the basis that the word "authentic" as used in ambiguous.  To the extent Defendant seeks for Plaintiff to admit to the purported author wrote the article, Plaintiff does not have any information in possession, custody or control which would enable Plaintiff to respond to this request. Notwithstanding the foregoing, Plaintiff hereby objects to the introduction of the article on the basis that it contains hearsay.**

120.   The document attached to Defendant's First Amended Answer and Counterclaim as Exhibit A entitled "Porn Companies File Mass Piracy Lawsuits: Are You At Risk?" by Jason Koebler,   http://www.usnews.com/news/articles/2012/02/02/porn-companies-file-mass-piracy-lawsuits-are-you-at-risk, is relevant to this case.

33

Civil Action No. 1:12-cv-00886-MSK-MEH

**Response to Request No. 120**: **Denied.**

121.    The document attached to Defendant's First Amended Answer and Counterclaim as Exhibit A entitled "Porn Companies File Mass Piracy Lawsuits: Are You At Risk?" by Jason Koebler,   http://www.usnews.com/news/articles/2012/02/02/porn-companies-file-mass-piracy-lawsuits-are-you-at-risk, is admissible as evidence.

**Response to Request No. 121**: **Denied.**

122.    The document attached to Defendant's First Amended Answer and Counterclaim as Exhibit B, a letter from Anti-Piracy Management Company with the "Re:" line "Business proposal – Combating piracy on peer to peer networks" and signed by the firm (APMC LLC), is authentic.

**Response to Request No. 122**: **Denied.**

123.    The document attached to Defendant's First Amended Answer and Counterclaim as Exhibit B, a letter from Anti-Piracy Management Company with the "Re:" line "Business proposal – Combating piracy on peer to peer networks" and signed by the firm (APMC LLC), is relevant to this case.

**Response to Request No. 123**: **Denied.**

124.    The document attached to Defendant's First Amended Answer and Counterclaim as Exhibit B, a letter from Anti-Piracy Management Company with the "Re:" line "Business proposal – Combating piracy on peer to peer networks" and signed by the firm (APMC LLC), is admissible as evidence regarding the litigation business model for copyright infringement.

Civil Action No. 1:12-cv-00886-MSK-MEH

**Response to Request No. 124: Denied.**

125.  The document attached to Defendant's First Amended Answer and Counterclaim as Exhibit C entitled "Challenges and Directions for Monitoring P2P File Sharing Networks – or – Why My Printer Received a DMCA Takedown Notice" by Piatek, Kohno, and Krishnamurthy, http://dmca.cs.washington.edu/, is authentic.

**Response to Request No. 125: Denied.**

126.  The document attached to Defendant's First Amended Answer and Counterclaim as Exhibit C entitled "Challenges and Directions for Monitoring P2P File Sharing Networks – or – Why My Printer Received a DMCA Takedown Notice" by Piatek, Kohno, and Krishnamurthy, http://dmca.cs.washington.edu/, is relevant to this case.

**Response to Request No. 126: Denied.**

127.  The document attached to Defendant's First Amended Answer and Counterclaim as Exhibit C entitled "Challenges and Directions for Monitoring P2P File Sharing Networks – or – Why My Printer Received a DMCA Takedown Notice" by Piatek, Kohno, and Krishnamurthy, http://dmca.cs.washington.edu/, is admissible as evidence regarding the fallibility of existing technology for collecting IP addresses over P2P networks.

**Response to Request No. 127: Denied.**

128.  The document attached to Defendant's First Amended Answer and Counterclaim as Exhibit D, a letter from law firm Steele Hansmeier PLLC to Liuxia Wong dated July 13, 2011,

35

is authentic.

**Response to Request No. 128: Denied.**

129.   The document attached to Defendant's First Amended Answer and Counterclaim as Exhibit D, a letter from law firm Steele Hansmeier PLLC to Liuxia Wong dated July 13, 2011, is relevant to this case.

**Response to Request No. 129: Denied.**

130.   The document attached to Defendant's First Amended Answer and Counterclaim as Exhibit D, a letter from law firm Steele Hansmeier PLLC to Liuxia Wong dated July 13, 2011, is admissible as evidence regarding the nationwide practices of similarly situated plaintiffs.

**Response to Request No. 130: Denied.**

131.   The document attached to Defendant's First Amended Answer and Counterclaim as Exhibit E entitled "Declaration of John Doe" dated July 12, 2012, is authentic.

**Response to Request No. 131: Denied.**

132.   The document attached to Defendant's First Amended Answer and Counterclaim as Exhibit E entitled "Declaration of John Doe" dated July 12, 2012, is relevant to this case.

**Response to Request No. 132: Denied.**

133.   The document attached to Defendant's First Amended Answer and Counterclaim as Exhibit E entitled "Declaration of John Doe" dated July 12, 2012, is admissible as evidence regarding the tactics of a "call center" in a similar Bittorrent litigation case under the supervision of M. Keith Lipscomb and/or Jason A. Kotzker.

**Response to Request No. 133:** **Denied.**

134.    The document attached to Defendant's First Amended Answer and Counterclaim as Exhibit F, an email dated July 1, 2011, from M. Keith Lipscomb to Brad Patrick, is authentic.

**Response to Request No. 134:** **Denied.**

135.    The document attached to Defendant's First Amended Answer and Counterclaim as Exhibit F, an email dated July 1, 2011, from M. Keith Lipscomb to Brad Patrick, is relevant to this case.

**Response to Request No. 135:** **Denied.**

136.    The document attached to Defendant's First Amended Answer and Counterclaim as Exhibit F, an email dated July 1, 2011, from M. Keith Lipscomb to Brad Patrick, is admissible as evidence regarding the nationwide scope of Plaintiff's litigation and other similarly situated plaintiffs, the litigation strategy of Plaintiff and other similarly situated plaintiffs, and of threats made to defendants (through counsel) similarly situated to Defendant.

**Response to Request No. 136:** **Denied.**

137.    The document attached to Defendant's First Amended Answer and Counterclaim as Exhibit G, an email dated August 25, 2011, from M. Keith Lipscomb to Brad Patrick, is authentic.

**Response to Request No. 137:** **Denied.**

138.    The document attached to Defendant's First Amended Answer and Counterclaim as Exhibit G, an email dated August 25, 2011, from M. Keith Lipscomb to Brad Patrick, is

Civil Action No. 1:12-cv-00886-MSK-MEH

relevant to this case.

**Response to Request No. 138: Denied.**

139.    The document attached to Defendant's First Amended Answer and Counterclaim as Exhibit H, a letter from Qwest/CenturyLink to Defendant dated February 27, 2012, is authentic.

**Response to Request No. 139: Denied.**

140.    The document attached to Defendant's First Amended Answer and Counterclaim as Exhibit H, a letter from Qwest/CenturyLink to Defendant dated February 27, 2012, is relevant to this case.

**Response to Request No. 140: Denied.**

141.    The document attached to Defendant's First Amended Answer and Counterclaim as Exhibit H, a letter from Qwest/CenturyLink to Defendant dated February 27, 2012, is admissible as evidence regarding Defendant's first awareness of the Prior Lawsuit and Qwest/CenturyLink's first contact with Defendant regarding the Prior Lawsuit.

**Response to Request No. 141: Denied.**

142.    Tobias Fieser has, or is employed by a firm that has a financial interest in any settlement in this case.

**Response to Request No. 142: Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible**

38

evidence. IPP, Ltd.'s process is not susceptible to subjective interference.

143.   Tobias Fieser has, or is employed by a firm that has a financial interest in any judgment in this case.

**Response to Request No. 143:** **Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence. IPP, Ltd.'s process is not susceptible to subjective interference.**

144.   IPP Ltd., is a successor in interest to by Guardaley Ltd.

**Response to Request No. 144:** **Plaintiff does not have any information in its possession, custody or control that would enable Plaintiff to admit or deny this request.**

145.   IPP Ltd., is an alias for by Guardaley Ltd.

**Response to Request No. 145:** **Plaintiff does not have any information in its possession, custody or control that would enable Plaintiff to admit or deny this request.**

146.   IPP Ltd., operates under the name of, or is an alias for, BP Equity.

**Response to Request No. 146:** **Plaintiff does not have any information in its possession, custody or control that would enable Plaintiff to admit or deny this request.**

147.   IPP Ltd., operates under the name of, or is an alias for, IP Equity.

**Response to Request No. 147:** **Plaintiff does not have any information in its possession, custody or control that would enable Plaintiff to admit or deny this request.**

148.    IPP Ltd., operates under the name of, or is an alias for, Baseprotect.

**Response to Request No. 148:    Plaintiff does not have any information in its possession, custody or control that would enable Plaintiff to admit or deny this request.**

149.    IPP Ltd., operates under the name of, or is an alias for, IntersDA.

**Response to Request No. 149:    Plaintiff does not have any information in its possession, custody or control that would enable Plaintiff to admit or deny this request.**

150.    IPP Ltd., is owned, operated and/or managed by the same or substantially the same persons that previously or currently manage Guardaley Ltd.

**Response to Request No. 150:    Plaintiff does not have any information in its possession, custody or control that would enable Plaintiff to admit or deny this request.**

151.    Baumgarten Brandt, a German law firm who had entered into a relationship with Guardaley Ltd., to collect IP addresses, filed suit against Guardaley after it discovered that Guardaley was aware of flaws in its collection technology but chose not to disclose those flaws.

**Response to Request No. 151:    Plaintiff does not have any information in its possession, custody or control that would enable Plaintiff to admit or deny this request.**

152.    Guardaley's owner, Patrick Achache, now resides in Santa Monica, CA.

**Response to Request No. 152:    Plaintiff does not have any information in its possession, custody or control that would enable Plaintiff to admit or deny this request.**

153.   Guardaley's owner, Patrick Achache, has been accused in Germany of stealing IP address collecting/identifying technology.

**Response to Request No. 153:   Plaintiff does not have any information in its possession, custody or control that would enable Plaintiff to admit or deny this request.**

154.   Guardaley's owner, Patrick Achache, has been sued in Germany of stealing IP address collecting/identifying technology.

**Response to Request No. 154:   Plaintiff does not have any information in its possession, custody or control that would enable Plaintiff to admit or deny this request.**

155.   On May 3, 2011, the State Court of Berlin found that when identifying alleged copyright infringers with its IP address collecting software, Guardaley includes mere inquiries, regardless of whether any file was actually shared.

**Response to Request No. 155:   Plaintiff does not have any information in its possession, custody or control that would enable Plaintiff to admit or deny this request.**

156.   On May 3, 2011, the State Court of Berlin found that when identifying alleged copyright infringers with its IP address collecting software, Guardaley identifies IP addresses that neither upload nor download files.

**Response to Request No. 156:   Plaintiff does not have any information in its possession, custody or control that would enable Plaintiff to admit or deny this request.**

157.  On May 3, 2011, the State Court of Berlin found that when identifying alleged copyright infringers with its IP address collecting software, Guardaley operates a "honeypot": that is, it represents "by means of a falsified bit field that it was always in possession of 50% of the file being sought."

**Response to Request No. 157:  Plaintiff does not have any information in its possession, custody or control that would enable Plaintiff to admit or deny this request.**

158.  On May 3, 2011, the State Court of Berlin found that when identifying alleged copyright infringers with its IP address collecting software, Guardaley does not indicate how it identifies each IP address, so there is no way to discern actual infringers from the innocent.

**Response to Request No. 158:  Plaintiff does not have any information in its possession, custody or control that would enable Plaintiff to admit or deny this request.**

159.  The technology used by IPP Ltd., has a false positive rate of greater than 50%.
**Response to Request No. 159:  Denied.**

160.  The technology used by IPP Ltd., has a false positive rate of greater than 40%.
**Response to Request No. 160:  Denied.**

161.  The technology used by IPP Ltd., has a false positive rate of greater than 30%.
**Response to Request No. 161:  Denied.**

162.  The technology used by IPP Ltd., has a false positive rate of greater than 20%.

**Response to Request No. 162:** **Denied.**

163.   The technology used by IPP Ltd., has a false positive rate of greater than 10%.

**Response to Request No. 163:** **Denied.**

164.   The technology used by IPP Ltd., has a false positive rate of greater than 5%.

**Response to Request No. 164:** **Denied.**

165.   The technology used by IPP Ltd., has a false positive rate of greater than 1%.

**Response to Request No. 165:** **Denied.**

166.   The technology used by IPP Ltd., has a false positive rate of less than 1%.

**Response to Request No. 166:** **Denied.**

167.   The technology used by IPP Ltd., has a false positive rate of 0%.

**Response to Request No. 167:** **Admitted.**

168.   The technology used by IPP Ltd., has generated at least one false positive.

**Response to Request No. 168:** **Denied.**

169.   The technology used by IPP Ltd., has generated more than one false positive.

**Response to Request No. 169:** **Denied.**

170.   It is unknown how many false positives the technology used by IPP Ltd., generates.

**Response to Request No. 170:** **Denied.**

171.   False accusation of illegally downloading copyrighted material could damage one's professional standing and reputation.

**Response to Request No. 171:** Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence. Notwithstanding the foregoing objection, and without waiving it, Plaintiff does not have any information in its possession, custody or control that would enable Plaintiff to admit or deny this request.

172.   False accusation of illegally downloading pornography could damage one's professional standing and reputation.

**Response to Request No. 172:** Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence. Notwithstanding the foregoing objection, and without waiving it, Plaintiff does not have any information in its possession, custody or control that would enable Plaintiff to admit or deny this request.

173.   False accusation of illegally downloading copyrighted material could damage one's reputation in one's community.

**Response to Request No. 173:** Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence. Notwithstanding the foregoing objection, and without waiving it, Plaintiff does not have any information in its possession, custody or control that would enable Plaintiff to admit or deny this request.

174.   False accusation of illegally downloading pornography could damage one's reputation in one's community.

**Response to Request No. 174:** Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence. Notwithstanding the foregoing objection, and without waiving it, Plaintiff does not have any information in its possession, custody or control that would enable Plaintiff to admit or deny this request.

175.   False accusation of illegally downloading copyrighted material can easily be searchable on standard search engines.

**Response to Request No. 175:** Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence. Notwithstanding the foregoing objection, and without waiving it, Plaintiff does not have any information in its possession, custody or control that would enable Plaintiff to admit or deny this request.

176.   False accusation of illegally downloading pornography can easily be searchable on standard search engines.

**Response to Request No. 176:** Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence. Notwithstanding the foregoing objection, and without waiving it, Plaintiff does not have any information in its possession, custody or control that would enable Plaintiff to admit or deny this request.

177.   Plaintiff has been threatened with, admonished, or subjected to sanctions by a Court in connection with any similar Bittorrent copyright infringement lawsuit.

**Response to Request No. 177:  Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence.**

178.   Plaintiff's attorney(s) has/have been threatened with, admonished, or subjected to sanctions by a Court in connection with any similar Bittorrent copyright infringement lawsuit.

**Response to Request No. 178:  Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence.**

179.   Even if Plaintiff obtained identifying information for every IP address for which such information is sought through "John Doe" litigation, Plaintiff does not have the capability (human resources, finances, etc.) to litigate against every subscriber attached to every IP address.

**Response to Request No. 179:  Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence.**

180.   Even if Plaintiff obtained identifying information for every IP address for which such information is sought through "John Doe" litigation, Plaintiff's attorneys do not have capability (human resources, facilities, etc.) necessary to litigate against every subscriber attached to every IP address.

**Response to Request No. 180:** Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence.

181.    Plaintiff's business plan is to pursue copyright infringement cases to settlement, not to litigation.

**Response to Request No. 181:** Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence.

182.    Plaintiff's business plan is to maximize the out-of-court settlement for copyright infringement cases.

**Response to Request No. 182:** Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence.

183.    Plaintiff's goal in this case is to maximize its out-of-court settlement.

**Response to Request No. 183:** Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence.

184.    Plaintiff's business plan is not to sell, distribute or otherwise profit from retail commerce in the Work(s).

**Response to Request No. 184:** Plaintiff objects to this request on the basis that it

seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence. Notwithstanding the foregoing objection, and without waiving it, the request is denied. Plaintiff operates the website x-art.com which has a huge subscription base that drives it primary business which is the creation and distribution of artistic pornography. Plaintiff is the victim of a massive amount of infringement and its enforcement campaign was a reaction to the infringement not the impetus for its existence.

185.   It is possible that individuals who were not infringers have settled claims with Plaintiff out of fear and/or embarrassment.

**Response to Request No. 185:**  Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence.

186.   Individuals who were not infringers have in fact settled claims with Plaintiff out of fear and/or embarrassment.

**Response to Request No. 186:**  Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence.

187.   Plaintiff does not have the human resources and/or financial means necessary to litigate every "John Doe" case filed across the United States.

**Response to Request No. 187:**  Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence.

Civil Action No. 1:12-cv-00886-MSK-MEH

188.   Plaintiff does not have any corporate insurance policies.

**Response to Request No. 188: Plaintiff objects to this request on the basis that it** seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence.

189.   Plaintiff has total corporate assets of less than $10,000.

**Response to Request No. 189: Plaintiff objects to this request on the basis that it** seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence.

190.   Plaintiff has total corporate assets of less than $100,000.

**Response to Request No. 190: Plaintiff objects to this request on the basis that it** seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence.

191.   Plaintiff has total corporate assets of less than $1,000,000.

**Response to Request No. 191: Plaintiff objects to this request on the basis that it** seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence.

192.   Plaintiff has total corporate assets of more than $1,000,000.

**Response to Request No. 192: Plaintiff objects to this request on the basis that it**

seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence.

193.    Plaintiff is represented by M. Keith Lipscomb.

**Response to Request No. 193**:   **Admitted.**

194.    The claim made by Lipscomb to Brad Patrick that the average cost of litigating a copyright infringement claim is $600,000 is accurate.

**Response to Request No. 194**:   **Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence.**

195.    Counsel for Plaintiff receives a portion of any settlement or judgment in any copyright infringement matter pursued by Plaintiff.

**Response to Request No. 195**:   **Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence.**

196.    The portion of the settlement or judgment received by counsel increases as additional litigation steps are taken.

**Response to Request No. 196**:   **Plaintiff objects to this request on the basis that it**

Civil Action No. 1:12-cv-00886-MSK-MEH

seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence.

197.   IPP Ltd., receives a portion of any settlement or judgment in any copyright infringement matter pursued by Plaintiff.

**Response to Request No. 197:  Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence.**

198.   The type of copyright infringement litigation pursued by Plaintiff has been described by more than one judge, including Judge Martinez in Colorado, as "extortion."

**Response to Request No. 198:  Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence.**

199.   Plaintiff did not offer Defendant any opportunity to prove his innocence prior to filing this case.

**Response to Request No. 199:  Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence.**

200.   Plaintiff or its representative told Defendant that his name would be searchable on Google as associated with this lawsuit.

**Response to Request No. 200:  Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible**

evidence.

201.   The allegations against Defendant are searchable by anyone on Google.

**Response to Request No. 201:  Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence.**

202.   Plaintiff has claimed that others have infringed the same Work(s).

**Response to Request No. 202:  Admitted.**

203.   Plaintiff has already been compensated multiple times for infringement of the same Work(s).

**Response to Request No. 203:  Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence.**

204.   Plaintiff has already been compensated for infringement related to the "swarm" alleged in this case through other settlements.

**Response to Request No. 204:  Plaintiff objects to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence.**

205.   Any settlement or judgment received by Plaintiff from Defendant would constitute a double recovery.

**Response to Request No. 205:  Denied.**

206.   Plaintiff, either directly or by and through its agents and/or attorneys, authorized IPP Ltd., to place some or all of the Work(s) in a single digital file on the internet in the form of a website, referred to in the Complaint as the "siterip."

**Response to Request No. 206: Denied.**

207.   The placing of the Work(s) in this single digital file expressly to be placed on the internet constitutes a "honeypot."

**Response to Request No. 207: Denied.**

208.   The use of a "honeypot" constitutes an implied license which negates any claim of copyright infringement.

**Response to Request No. 208: Denied.**

209.   The use of a "honeypot" constitutes unclean hands which negates any claim of copyright infringement.

**Response to Request No. 209: Denied.**

210.   The use of a "honeypot" constitutes a waiver which negates any claim of copyright infringement.

**Response to Request No. 210: Denied.**

211.   Plaintiff's failure to act swiftly to protect its copyrights constitutes laches.

**Response to Request No. 211:  Denied.**

212.   The Work(s) depict sexual activity.

**Response to Request No. 212:  Plaintiff object to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discoverable information.**

213.   The Work(s) solely depict sexual activity.

**Response to Request No. 213:  Plaintiff object to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discoverable information.**

214.   The Work(s) are meant to generate sexual arousal.

**Response to Request No. 214:  Plaintiff object to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discoverable information.**

215.   The Work(s) are obscene.

**Response to Request No. 215:  Plaintiff object to this request on the basis that it seeks information that is neither relevant nor likely to lead to the discoverable information.**

Dated: September 4, 2012

Respectfully submitted,

By: /s/ *Jason Kotzker*
Jason Kotzker
jason@klgip.com
KOTZKER LAW GROUP

Civil Action No. 1:12-cv-00886-MSK-MEH

9609 S. University Blvd. #632134
Highlands Ranch, CO 80163
Phone: 303-875-5386
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

    I hereby certify that on September 4, 2012, a copy of the foregoing document has been served upon Mr. Fantalis via U.S. Mail and E-Mail.

By:  */s/ Jason Kotzker*

55

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:12-cv-00886-MSK-MEH

MALIBU MEDIA, LLC,

      Plaintiff,

v.

JEFF FANTALIS and BRUCE DUNN,

      Defendants

_____/

### PLAINTIFF'S RESPONSES TO DEFENDANT/COUNTER
### CLAIMANT'S FIRST SET OF INTERROGATORIES DATED AUGUST 2, 2012

Plaintiff, MALIBU MEDIA, LLC, responds to Defendant/Counter-Plaintiff's First Set of Interrogatories, as follows:

### STATEMENT OF WILLINGNESS TO COOPERATE

1.      Counsel for Plaintiff is prepared to discuss with counsel for Defendant/Counter-Plaintiff the objections set forth below for the purpose of resolving any disputes that may arise over the responses to the interrogatories without the need for intervention by the Court.

### GENERAL OBJECTIONS

2.      Plaintiff objects to the Interrogatories to the extent that they are vague, ambiguous, over broad, harassing and/or unduly burdensome.

3.      Plaintiff objects to the Interrogatories to the extent that they purport to require information in the possession, custody, or control of any person or entity other than Plaintiff/Counter-Defendant.

4.      Plaintiff objects to the Interrogatories to the extent that they seek information that is attorney-client privileged, that constitutes attorney-work product, that was prepared in

1



EXHIBIT C

anticipation of litigation, that constitutes or discloses the mental impressions, conclusions, opinions or legal theories of any attorney of Plaintiff concerning this or any other litigation, or that are otherwise protected from disclosure under any other applicable privilege.

5.     Plaintiff objects to the Interrogatories to the extent they seek to impose requirements beyond those contained in the Federal Rules of Civil Procedure, or any applicable Local Rules and/or laws.

6.     Plaintiff objects to the Interrogatories to the extent that they call for information that is neither relevant to the action nor reasonably calculated to lead to the discovery of admissible evidence.

7.     Plaintiff objects to the relevant time period as defined in the Interrogatories on the grounds that it renders the Interrogatories over broad, unduly burdensome, harassing and/or neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, many of the Interrogatories do not contain an applicable time frame and are therefore ambiguous and over broad.

8.     Plaintiff objects to the Interrogatories to the extent they call for information that is protected because it contains: (1) trade secrets, (2) confidential research, and/or (3) commercial information.

9.     Plaintiff objects to the Interrogatories on the grounds that Defendant/Counter-Plaintiff has propounded interrogatories, including subparts, which exceed thirty interrogatories as agreed to by the parties.

2

## Nonwaiver and Preservation of Privileges

10.     By undertaking to respond to these Interrogatories, Plaintiff does not in any way waive or intend to waive but rather intends to preserve and is preserving:

(a) all rights to object on any ground supported by the Federal Rules of Evidence or other applicable law to the use at trial or at any hearing of any of these responses and/or the information provided in response to the Interrogatories including, but not limited to, the following objections:

(i) That the information is protected by the:

(1) attorney-client privilege, (2) privilege against disclosing attorney work product, (3) applicable marital privileges, (4) accountant-client privilege, (5) clergy-parishioner privilege, (6) privilege against self-incrimination, and/or (7) doctor-patient privilege; and/or

(ii) That the information is inadmissible because it is:

(1) irrelevant, (2) constitutes hearsay, (3) is related to only collateral matters, (4) violates the best evidence rule; (5) although relevant, is excludable because the probative value is substantially outweighed by the danger of unfair prejudice, (5) is cumulative, (6) would cause an undue delay, and/or (6) can be excluded by any other rule of evidence or law;

(iii) That the information is inadmissible because it constitutes:

(1) a trade secret, (2) confidential research, (3) confidential development, and/or (4) commercial information; and

(b) all rights to object on any ground at any time to use of these interrogatories for any purpose.

3

## Reservation of Right to Supplement Responses,
## Incorporation of General Objections into Specific Responses

11.     Plaintiff reserves the right to supplement or amend its specific or general objections or responses to any or all the Interrogatories.

12.     The following specific objections and responses are subject to the foregoing general objections and responses (the "General Objections"), and the General Objections are incorporated into each specific response set forth below.

4

## RESPONSES TO INTERROGATORIES DATED AUGUST 2, 2012

1.     Identify each person who has (or may have) discoverable information pertaining to the claims and defenses asserted in this action, regardless of whether that information would support and/or refute your position, and describe the subjects about which each such person has knowledge.

### Response to Interrogatory No. 1:

This interrogatory duplicates, nearly verbatim, Fed.R.Civ.P. 26(A)(i).   Accordingly, Plaintiff incorporates by reference Plaintiff's response in its amended Fed.R.Civ.P. 26(A)(i) disclosure.   Additionally, Plaintiff states that Peer Media Technologies, whose address is:

9046 Lindblade Street
Culver City, CA 90232

has information relevant to the issue of whether Defendant used BitTorrent and therefore was likely to have committed the subject infringement.   Specifically, Peer Media Technologies detected that Defendant's internet service was used to distribute the following copyrighted works:

| IP | Title | Hash | ObservationDate |
|---|---|---|---|
| 184.96.0.193 | Avatar | 36684b463ca2aa2f9347b18e9f6b1a9090bdb073 | 20100710 |
| 184.99.247.212 | Sherlock Holmes | c0a5d1fd2a2d76d5b268f5151da3e727a4b0d767 | 20120117 |
| 184.99.247.212 | Modern Family S03 | 62e77b6caca6f1dfb72ece8740b100161376880a | 20120117 |
| 184.99.247.212 | Big Bang Theory, The S05 | e3ea15884a6d6f3656f06518ca738971d1b54701 | 20120117 |
| 184.99.247.212 | Boardwalk Empire S02 | bc5b276594f20aa632eaf2b8b9a130a31a087d4c | 20120117 |
| 184.99.247.212 | Misfits S03 | 289deffa0d69e78f690c529dd506d5a87204171d | 20120117 |

Additionally, Peer Media Technology informed Plaintiff that it sent Defendant at least one DMCA notice.

2.     Identify and describe the method of detecting Defendant's alleged IP address involved in this lawsuit, including but not limited to accuracy testing protocols, ability to determine which IP addresses are participating with other IP addresses, and rate or incidents of

false positives and whether the method of detecting involves the detecting party participating in a Bittorrent "swarm" or merely as a non-participating third party.

### Response to Interrogatory No. 2:

Plaintiff retained IPP, Ltd. to detect the infringement in this matter. The method used by IPP, Ltd. was attested in the Prior Case via the Declaration of Tobias filed in support of Plaintiff's Motion for Leave to Serve a Subpoena in advance of a 26(f) Conference, and the exhibit attached thereto explaining in detail how the technology works. That declaration and the exhibit attached thereto are hereby incorporated by reference herein. To summarize, and to the extent what follows is consistent with what is set forth in Tobias Feiser's declaration and the attached exhibit, Plaintiff avers that it understands the process works as follows: IPP, Ltd. establishes a direct TCP/IP connection with infringers, like Defendant here. Thereafter, the infringers, like Defendant here, send IPP, Ltd. a piece of Plaintiff's copyrighted movie. This piece contains a unique cryptographic hash value which correlates to the copy of Plaintiff's copyrighted movie that is being illegally distributed by the infringers, like the Defendant here. The exact date and time of that the piece was sent to IPP, Ltd. is recorded by IPP, Ltd., as well as the IP address being used by the infringer, here the Defendant. Finally, the piece of infringing data sent by the infringers is saved by IPP, Ltd. Since a direct TCP/IP connection is established, and data is exchanged between IPP, Ltd. and the infringer, the process is not susceptible to creating "false positives." Instead, the process is forensically sound and demonstrates with complete certainty in this case that the Defendant's internet service was used to illegally distribute Plaintiff's copyrighted work.

3.    Explain and describe and identify your knowledge of whether data on a computer's hard drive can be overwritten, deleted or destroyed as time passes and/or as the

computer is used, as well as any opportunities and/or efforts to examine or inspect one or more Defendant's computer(s) up to and including April 4, 2012.

**Response to Interrogatory No. 3:**

Defendant may well have deleted or destroyed the evidence in this case. Discovery is on-going and Plaintiff intends to examine Defendant's computers.

4.      Describe and identify your knowledge of whether data on a computer's hard drive can be overwritten, deleted or destroyed as time passes and/or as the computer is used, as well as any opportunities and/or efforts to examine or inspect on or more Defendant's computer(s) up to and including April 4, 2012.

**Response to Interrogatory No. 4:**

See response to Interrogatory No. 3.

5.      Describe and identify your knowledge pertaining to the "spoofing", stealing or "faking" an IP address and any information pertaining to whether the IP address specified in Plaintiff's complaint was spoofed, stolen or faked, and identify and describe any documents related thereto.

**Response to Interrogatory No. 5:**

Plaintiff does not have any knowledge in its possession, custody or control that refers or relates to any known technique(s) for spoofing or faking an IP Address of an internet user that is connected via TCP/IP connection to another computer.

6.      Describe and identify your knowledge pertaining Wireless Security in general, and specifically any facts pertaining to Wireless Security as pertaining to this case or the Prior Lawsuit, and identify and describe any documents related thereto.

**Response to Interrogatory No. 6:**

Wireless routers typically have a range of 100-150 feet. Qwest and Defendant entered into an agreement which required Defendant to secure Defendant's wireless router with a password.

7.    Describe and identify your knowledge pertaining to the Bittorrent Protocol, and describe and identify any facts or documents pertaining to the Bittorrent Protocol pertaining to this case or the Prior Lawsuit.

**Response to Interrogatory No. 7:**

Plaintiff explained the BitTorrent Protocol in its pleadings and memoranda filed in the Prior Case and this case, and hereby incorporates those pleadings and memoranda into this response.

8.    Describe and identify any contacts or agreements (or your knowledge thereof) by and/or between the following persons that are pertaining to this lawsuit or the Prior Lawsuit, copyright infringement, civil litigation, retainers or payments, joint defense agreements, confidentiality agreements, peer to peer file sharing, the Bittorrent Protocol or any technological services by or between the following persons: Plaintiff, IPP Ltd., Tobias Fieser, Patrick Collins, Inc., M. Keith Lipscomb, Kotzker, X-Art.com, Click Here, LLC, Brigham Field a/k/a Brig Field, Colette Leah a/k/a Coco Leah, Guardaley Ltd. a/k/a Guardaley Ltd., BP Equity, IP Equity, Baseprotect, InterDA, and any internet service provider pertaining to this lawsuit or the Prior Lawsuit.

**Response to Interrogatory No. 8:**

Plaintiff objects to this request on the basis that the requested information is not relevant to any claim or defense in this case that will remain after the pleadings are finalized. The only claim that will remain in this case after the pleadings are finalized is Plaintiff's count for direct

infringement against Defendant.   The business agreements that Plaintiff has with third parties are not likely to lead the discovery of any admissible information because these Agreement do not make the issue of whether Defendant committed the infringement more or less likely.  This is fact is underscored by the reality that the technology used by IPP, Ltd. is automated and not capable of subjectivity or interpretation.   Plaintiff additionally objects on the basis that the information requested contains confidential business information the terms of which if disclosed would damage Plaintiff's competitive disadvantage vis-à-vis its competitors.    Plaintiff additionally objects on the basis that the information is protected by the attorney-client and work product privileges.

9.     Provide all information regarding your knowledge of the relationship between the German law firm Baumgarten, Brandt and Guardaley Ltd. a/k/a BP Equity, BP Equity, IP Equity, Baseprotect, InterDA, and/or IPP Ltd., including but not limited to any litigation regarding allegations or Court decisions that Gaurdaley was aware of the flaws in its IP collection software but chose not to disclose them.

**Response to Interrogatory No. 9:**

Plaintiff objects to this request on the basis that the requested information is not relevant to any claim or defense in this case that will remain after the pleadings are finalized.  The only claim that will remain in this case after the pleadings are finalized is Plaintiff's count for direct infringement against Defendant.   The activities of third parties are not likely to make it more or less likely that Defendant committed the infringement.

10.     Describe your settlement process from the moment an ISP provides you with the personal identifying information required by a subpoena including all steps, individuals, and

organizations involved, including how much money each person or entity receives from any settlement.

**Response to Interrogatory No. 10:**

Plaintiff objects to this request on the basis that the requested information is not relevant to any claim or defense in this case that will remain after the pleadings are finalized. The only claim that will remain in this case after the pleadings are finalized is Plaintiff's count for direct infringement against Defendant. Plaintiff's actions with respect to third parties are not likely to make it more or less likely that Defendant committed the infringement. Additionally, Plaintiff objects on the basis that this interrogatory would require Plaintiff to disclose work product and attorney-client privileged information, including Plaintiff's strategy with respect to handling of its claims against third parties.

## DECLARATION

**PURSUANT TO 28 U.S.C. § 1746**, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**MALIBU MEDIA, LLC.**

By: _Colette Pelissier_

Name: Colette Pelissier
Title: Owner

11