**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:12-cv-00886-MSK-MEH

MALIBU MEDIA, LLC,

      Plaintiff,

v.

JEFF FANTALIS and BRUCE DUNN,

      Defendants

_____/

**PLAINTIFF'S MOTION TO DISMISS DEFENDANT**
**JEFF FANTALIS'S SECOND AMENDED COUNTERCLAIM [DKT. 89]**

Plaintiff, Malibu Media, LLC, pursuant to Fed. R. Civ. P. 12(b)(6), moves for the entry of an Order dismissing Defendant's Second Amended Counterclaim and submits the following memorandum in support.

## I. INTRODUCTION

The parties were strangers prior to this case.  Defendant used the BitTorrent Protocol and the Internet to infringe Plaintiff's copyrights.  Plaintiff is suing Defendant for copyright infringement.  While Defendant is obviously upset, Defendant *cannot* sue Plaintiff merely because Plaintiff sued him.  With this in mind, it is no surprise that each count in Defendant's Second Amended Counterclaim: (1) Abuse of Process, (2) Invasion of Privacy, (3) Defamation, (4) Intentional Infliction of Emotional Distress, (5) a Declaration of Non-Infringement, and (6) a Declaration that Plaintiff's Works Are Not Subject to the Protections of the United States Copyright Law  – fails to state a claim upon which relief may be granted and should be

dismissed.[1]  As to the abuse of process count, Defendant failed to plead that Plaintiff performed any action in this suit or in the suit in which Plaintiff obtained his identifying information, which is improper.  To the contrary, the record demonstrates that this Court found that there was "good cause" for Plaintiff to obtain Defendant's identity and that joinder was proper.  Under the law of the case doctrine, these findings preclude a finding that Plaintiff's conduct was improper.  Further, Plaintiff is using the process of the underlying copyright infringement lawsuit against Defendant for its intended purpose; namely, to seek redress for the injury caused by Defendant's infringement of Plaintiff's copyright.  Under such circumstances, the law makes clear that there is no abuse of process.   Additionally, Defendant failed to plead that Plaintiff is using the copyright litigation against him to obtain a "collateral advantage" against *Defendant*, as is required to state a claim for abuse of process, and therefore the abuse of process count unsustainable.  Plaintiff's Declaration of Tobias Feiser, attesting to the infringement, creates factual support for its action, and was attested to under oath.  *See Malibu Media, LLC v. John Does 1-30*, 12-cv-402-WYD-MJW, at CM/ECF 6-1.   For all these reasons, the abuse of process count should be dismissed.

Defendant's counts for invasion of privacy, defamation and intentional infliction of emotional distress are barred – as a matter of well-known black letter law – by the <u>*absolute privilege*</u> afforded to litigants to speak during a civil proceeding without the possibility of incurring liability based upon that party's communications during the proceeding.  On that basis alone, those counts should be dismissed.   The intentional infliction of emotional distress claim also fails to plead conduct that is outrageous, meaning outside the bounds of all decency, and so should be dismissed on that basis as well.

---

[1] This motion may become moot because Plaintiff served a Rule 11 motion on Defendant for asserting claims that are not warranted by existing law or by a nonfrivolous argument for extending, modifying or reversing existing law or for establishing new law.  Consequently,

The invasion of privacy count attempts to plead intrusion.  In addition to it being barred by the litigation privilege, this claim should also be dismissed because: (1) Defendant consented to the intrusion via his contract with Qwest, (2) the intrusion, namely obtaining his identity, was not "unwarranted;" indeed, this Court held that "good cause" existed for Plaintiff to obtain Defendant's identity.  Under the law of the case doctrine, there is no basis upon which this finding may now be disturbed.

Finally, the two declaratory judgment counts should be dismissed.  The count seeking a declaration of non-infringement is merely a denial and under established law should not be permitted to continue as a standalone count.  The count seeking a declaration that Plaintiff's work is not copyrightable because the work is pornographic should be dismissed.  First, the work was registered by the United States Copyright Office and therefore is therefore presumptively copyrightable.  Second, the only two Circuit courts (the 5th and 9th), which have ever addressed the issue, held that pornography is copyrightable.  Significantly, Congress, well aware of these decisions for decades, has not passed legislation over turning them.  Third, as explained by the dean of copyright law, Professor Nimmer, there are numerous compelling reasons why courts should not endeavor to ascertain whether a work is copyrightable based upon its subject matter.  Fourth, even considering this count would render suspect the contractual rights of thousands of people working in adult entertainment industry and have severe adverse consequences on a multi-billion dollar U.S. industry.  In short, since there is *no reason to believe* that the 10th Circuit would erroneously disagree with the 5th and 9th Circuits by finding that pornographic films are not copyrightable, this count should be dismissed.

For these reasons, as more fully explained below, Plaintiff respectfully requests that the Court dismiss Defendant's Counterclaim in its entirety.

## II.  LEGAL STANDARD

When ruling on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the Court "should determine whether the allegations of the complaint are sufficient to state a claim within the meaning of Fed.R.Civ.P. 8(a) . . . ." *McDonald v. Kinder–Morgan, Inc.,* 287 F.3d 992, 997 (10th Cir.2002). "All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Ruiz v. McDonnell,* 299 F .3d 1173, 1181 (10th Cir.2002), *cert. denied,* 123 S.Ct. 1908 (2003). Further, the Court should review the complaint to determine whether it "contains enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider,* 493 F.3d 1174, 1177 (10th Cir.2007) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)). "Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Id.* (Emphasis in original).

## III.  ARGUMENT

### A.  Defendant Failed to State a Claim for Abuse of Process

"A prima facie case for abuse of process includes proof of (1) an ulterior purpose in the use of judicial proceedings;[2] (2) willful actions by a defendant in the use of process that are not proper in the regular conduct of a proceeding; and (3) damages." *Sterenbuch v. Goss, III*, 266 P.3d 428, 439 (Colo. App. 2011) (dismissing abuse of process count). *Accord, Tara Woods Ltd. Partnership v. Fannie Mae*, 731 F.Supp.2d 1103, 1122 (D. Colo. 2010) (reciting elements and dismissing abuse of process count); *James H. Moore & Assoc. Realty v. Arrowhead at Vail,* 892

---

[2] Defendant's allegations of an ulterior purpose are based on Anti-Piracy Management Company, LLC's ("APMC") proposed agreement with an unidentified third party.  To wit: prior to this suit, Plaintiff had never heard of APMC and has had no business dealings with it.  Based upon that proposed agreement, Defendant falsely theorizes that Plaintiff's has an ulterior motive for suing him; namely, to encourage other infringers to settle.  *See* Amended Counterclaim at ¶ 15.

P.2d 367, 373 (Colo App. 1994) (same).  Further, "when the process alleged to have been abused entails, as here, the very filing of a lawsuit, an additional showing is required.  The party asserting the abuse of process claim also has to show that the other party's claims is 'devoid of factual support or if supportable in fact [has] no cognizable basis in law.'" *Sterenbuch* at 438-439, citing *Yadon v. Lowry*, 126 P.3d 332, 337 (Colo. App. 2005) (quoting *Ware v. McCutchen, 784 P.2d 846, 848* (Colo. App.  1989).  *See also, Protect Our Mountain Env't, Inc. v. Dist. Court*, 677 P.2d 1361, 1365 1368 (Colo 1984) (the additional showing is necessary to protect a person's First Amendment right to petition the government by filing a lawsuit.)  *Accord, James H. Moore & Assoc. Realty v. Arrowhead at Vail,* 892 P.2d 367, 373 (Colo App. 1994) (same).

Here, as explained below, Plaintiff has no ulterior purpose for suing Defendant.  Instead, the only purpose Plaintiff has for bringing the action against Defendant is to seek redress for Defendant's infringement of Plaintiff's copyright.  And, Defendant has pointed to no collateral advantage vis-a-vis him to support a claim for an abuse of process.  Additionally, Plaintiff has not abused any legal process.  To the contrary, each of the legal processes Plaintiff used in its dispute with Defendant has been used for the intended purpose for which said process exists. Under these facts, an abuse of process claim fails.

1.   Summary of Defendant's Abuse of Process Allegations

Defendant asserts Plaintiff abused the process by alleging: (1) Plaintiff sued Defendant "in order to encourage others to settle," *see* Second Amended Counterclaim at ¶¶ 15-16; (2) "Plaintiff's Complaint is devoid of factual support and without cognizable basis in law," *Id.* at ¶102 (3) Plaintiff did not know whether the infringers were the subscribers, *Id.* at ¶105 (4) Plaintiff used the joinder rule to avoid filing fees, *Id.* at ¶104; (5) Plaintiff attempted to settle the matter early in the litigation, *Id.* at ¶ 108; (6) Plaintiff served Defendant on a Saturday, *Id.* at ¶111.  Based thereon, Defendant pleads that "on information and belief" Plaintiff's suit is "based

on knowingly inaccurate and/or false data that Plaintiff knew does not and would not identify the alleged downloader," *Id.* at ¶ 84.   Defendant claims he was damaged because he was embarrassed by the law suit and it negatively impacted his ability to get a job and a loan.  *Id.* at ¶124.

### 2.   Defendant Failed to Plead an Improper Use of the Process

"If the action is confined to its regular and legitimate function in relation to the cause of action stated in the complaint there is no abuse, even if plaintiff had an ulterior motive in bringing the action or if he knowingly brought suit upon an unfounded claim.  Further, while the ulterior motive may be inferred from the wrongful use of the process, the wrongful use may not be inferred from the motive*."  James H. Moore & Assocs. Realty, Inc. v. Arrowhead at Vail*, 892 P.2d 367, 373 (Colo. App. 1994), citing *Institute for Professional Development v. Regis College*, 536 F.Supp. 632, 635 (D. Colo. 1982) (applying Colorado law) (emphasis in the original).   *See also Restatement 2d Torts § 682*, comment b (1977).   Here, all of Plaintiff's actions have been confined to their regular and legitimate functions in relation to the cause of action stated in the Complaint.   To explain, in *Malibu Media, LLC v. John Does 1-30*, 12-cv-402-WYD-MJW, Plaintiff obtained Defendant's identity, who was Doe 23, in response to a lawfully issued subpoena.  Plaintiff received leave to issue the subpoena because Plaintiff pled a prima facie case of copyright infringement supported by a declaration from its investigator demonstrating that the subscriber's IP address committed the infringement.   Thereafter, Plaintiff voluntarily dismissed Defendant without prejudice as is its right under Fed. R. Civ. P. 41(a)(1)(A)(i), *see* CM/ECF 16 in 12-cv-402-WYD-MJW.  Subsequently, Plaintiff filed the Complaint in this action and served Defendant.   None of these actions are irregular or illegitimate.   "There is no action for abuse of process when the process is used for the purpose for which it is intended, [although] there is an

incidental motive of spite or an ulterior purpose. . . ." *Institute for Professional Development v. Regis College*, 536 F.Supp. 632, 635 (D. Colo. 1982).

Finally, Defendant's assertion that Plaintiff's offer to settle constitutes an abuse of process fails for two reasons: (1) an out-of-court settlement offer is not a "process" within the meaning of the tort[3]; and (2) settlement offers are not only proper but encouraged. "As a matter of public policy the law favors and encourages settlements. . . .The settlement of actions should be fostered to avoid protracted, wasteful and expensive litigation." *Big O Tire v. Bigfoot 4X4, Inc.*, 167 F.Supp.2d 1216 (D. Colo. 2001)(internal citations omitted); *see also* the Supreme Court's statement that "Rule 68's policy of encouraging settlements is neutral, favoring neither plaintiffs nor defendants; it expresses a clear policy of favoring settlement of all lawsuits." *Marek v. Chesny*, 473 U.S. 1, 11 (1985). "Upon receipt of the identifying information sought in the subpoenas, the plaintiff is entitled to seek settlement with these individuals, or decide that pursuing a lawsuit against particular defendants is no longer feasible or cost-effective. Either course selected by the plaintiff would give the copyright owner the opportunity to effectuate its statutorily protected rights and thereby serves our system of justice. *AF Holdings LLC, v. Does 1-1,058*, 1:12-cv-00048-BAH at *32(D.D.C. August 6, 2012).

    a.   The Law of the Case Doctrine Precludes a Finding That Plaintiff's Use Joinder of Defendants In a Suit is Improper

Here, the only allegation about a legal "process" that Defendant alleges is improper is Plaintiff's use of Rule 20's permissive joinder rule to save filing fees. This allegation cannot support a claim for abuse of process when, as here, this Court *correctly* held that joinder was permitted and proper in the very suit wherein Defendant was identified. *See Malibu Media, LLC*

---

[3] A "process" is the filing of the Complaint, propounding discovery, or some action taken in the actual proceeding itself.

*v. John Does 1-30*, 12-cv-402-WYD-MJW, CM/ECF 10 (holding "Plaintiff has established that 'good cause' exists for it to serve third subpoenas on the Internet Service Providers listed on Exhibit A to the Motion," at ¶ 1; and, "[a]t this stage of the proceeding, the Court finds that joinder is proper. "

"Under the law of the case doctrine, when a court decides an issue of law, that decision should govern all subsequent stages of the litigation." *Padilla-Caldera v. Holder*, 637 F.3d 1140, 1145 (10th Cir. 2011).   "The Tenth Circuit recognizes three 'exceptionally narrow' circumstances in which the law of the case doctrine does not apply: (1) when the evidence in a subsequent trial is substantially different; (2) when controlling authority has subsequently made a contrary decision of the law applicable to such issues; or (3) when the decision was clearly erroneous and would work a manifest injustice." *Dobbs v. Anthem Blue Cross and Blue Shield*, 600 F.3d 1275, 1282 (10th Cir. 2010) (applying the law of the case and finding none of the narrow circumstances existed.)  Here, a trial has not yet occurred, no controlling authority has held that joinder is improper, and the decision that joinder was proper is not clearly erroneous as is evidenced by the majority of court opinions who so hold.  *See e.g.*, *Call of the Wild, LLC v. Does 1-1062*, 770 F.Supp.2d 332 (D.D.C. 2011), and the cases citing positively to it.   Further, there is nothing improper about relying on the joinder rule to avoid filing fees because "[t]he purpose of Rule 20(a) is to address the 'broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'" Brotzman v. Lippet, Inc., 2010 WL 2262543 (D. Colo. 2010) (citing United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966).   And, Fed. R. Civ. P. 1 states the rule "should be construed and administered to secure the just, speedy, and inexpensive determination of every action." Requiring a Plaintiff to file individual actions at the identification stage of a BitTorrent copyright infringement action does not promote the "inexpensive determination of every action."

3. Defendant Failed to Allege that Plaintiff Used a Process For A Purpose Which Said Process Was Not Intended

Defendant has not and cannot allege that Plaintiff has used any process "the purpose for which [said process was not] intended." *James H. Moore & Assocs. Realty, Inc. v. Arrowhead at Vail*, 892 P.2d 367, 373 (Colo. App. 1994). Therefore, Defendant has failed to state a cause of action for abuse of process. *See also, Restatement 2d Torts § 682*, comment b ("a party engages in abuse of process when he files liens against his adversary, not because the filer claims an interest in the property, but to compel the adversary to concede a child custody proceeding."

Indeed, this case is materially indistinguishable from the 10th Circuit's decision in *Hertz v. Luzenac*, 576 F.3d 1103 (10th Cir. 2009) wherein in response to a tortious interference claim by a former employee, the former employer counterclaimed for misappropriation of trade secrets. The 10th Cir. held "[a] litigant uses the legal proceedings in an improper manner when he seeks to use the process to accomplish a coercive goal. (Citations omitted) The improper purpose is ordinarily an attempt to secure from another some collateral advantage not properly includable in the process itself and is a form of extortion in which a lawfully used process is perverted to an unlawful use." *Id.* at 1117-1118. The 10th Circuit continued: "Mr. Hertz's claim of abuse stems from Luzenac filing counterclaims against him for misappropriation of trade secrets. Any ulterior motives Zluzenac might have had are insufficient to support an inference of improper use. Luznace is entitled to protect its trade secrets. Its counterclaims are an appropriate means of accomplishing that goal." *Id.* Here, Plaintiff is suing Defendant for copyright infringement because Plaintiff genuinely believes Defendant committed the infringement. Significantly, Plaintiff has not sought to obtain any other benefit (i.e., a "collateral advantage") vis-à-vis Defendant from this suit. Without the existence of such a collateral advantage vis-à-vis Defendant there is no abuse of process.

4.   Defendant Failed to Allege that Plaintiff's Complaint's is Devoid of Factual Support or That It has No Cognizable Basis in Law

Defendant failed to allege that Plaintiff's Complaint is devoid of factual support.  Nor could Defendant make such an allegation because Plaintiff provided sworn testimony that Defendant's internet was used to commit the subject infringement.  *See Malibu Media, LLC v. John Does 1-30*, 12-cv-402-WYD-MJW, Declaration of Tobias Feiser , at CM/ECF 6-1.  Instead, Defendant alleges that counsel for unrelated third parties have said that up to 30% of the Doe defendants in other BitTorrent copyright infringement cases may not be the real infringers.  And, Defendant attacks the credibility of Plaintiff's evidence by asserting IPP Limited's declaration  is biased.  But, via this attack, Defendant admits that the declaration exists and sets forth a factual basis for Plaintiff's claim.  Defendants' allegations fall woefully short of asserting that Plaintiff's complaint is *devoid* of factual support.

5.   Champerty, Barratry, Maintenance and Intermeddling Do Not Support An Abuse of Process Claim

Champerty, barratry, maintenance and intermeddling are distinct claims and defenses which are separate and apart from the tort of abuse of process.[4]   Notably, Defendant only attempts to plead abuse of process.  Nevertheless, Defendant previously argued in opposition to Plaintiff's Motion for Rule 11 Sanctions that these claims and defenses could support his claim for abuse of process.   "Common law claims [for champerty, etc.] are still recognized in other jurisdictions, [so] Plaintiff seeks a good faith extension of the [abuse of process] law" to incorporate these separate and distinct claims and defenses into the abuse of process tort.

---

[4] Defendant's factual allegations regarding champerty, etc. are both a work of great fiction and totally irrelevant.  Worse, Defendant irrationally pursues this red-herring down a black-hole to nowhere, even after Defendant figures out the defenses do not exist – and, even if after Defendant should have figured out that even if the defenses did exist, he could not use them.

Defendant's Memorandum in Opposition to Plaintiff's Motion for Rule 11 Sanctions ("Defendant's Memorandum") at p. 10.

While ostensibly couched in the language of Rule 11, Defendant is not seeking to *extend* the abuse of process law.  Instead, Defendant seeks to overturn one hundred and twelve (112) years of binding precedent, and, thereafter, to insert that rejected law into the tort of abuse of process.  Indeed, Defendant admits "the common law torts of maintenance and champerty no longer exist in Colorado."  Defendant's Memorandum at p. 10, *citing Fastenau v. Engel*, 125 Colo. 119, 122 (Colo. 1952);  *accord, Casserleigh v. Wood,* 14 Colo. App. 265, 267 (Colo. 1900) (same).  Defendant's case, *Fastenau,* further illuminates the frivolousness of his argument.   In *Fastenau* at p. 122, the Court answered *no* in response to its question whether "a [champertous] contract can . . . bar . . . recovery on the [plaintiff's claim]."   To explain, champerty is an affirmative defense to a champertous contract.  It can only be raised by the champertee against the champertor.   It is *not* a defense that can be raised by a third party to the allegedly champertous agreement.   *See, Seaton Mountain Elec. Light, Heat & Power v. Idaho Springs Inv. Co.*, 49 Colo. 112 (1910) "the prosecution of a cause of action cannot be interposed as a defense, but can only be set up between the parties when the champertous agreement itself is sought to be enforced."[5]

Defendant's long winded attempt to plead champerty is prohibited by 112 years of Colorado precedent.  In light of the law, his pursuit of this defense is not reasonable.  Nor is it reasonable for Defendant to argue that he should be allowed to insert champerty into an abuse of

---

[5] In other words, *Fastenau* and *Seaton* both hold that champerty and maintenance are affirmative defenses to a breach of contract claim.  And, that parties who are not in privity with champerator cannot raise the defense.

process claim. They are separate and distinct claims and defenses and the failure to appreciate that is unreasonable.

For all the foregoing reasons, Defendant's count for abuse of process should be dismissed.

### B. Defendant's Counts for Invasion of Privacy, Defamation and Intentional Infliction of Emotional Damage Are All Barred by the Litigation Privilege

Defendant's Invasion of Privacy count, Defamation count, and Intentional Infliction of Emotional Distress count are all barred by the litigation privilege. "Communications made in the course of judicial proceedings, even though they are made maliciously and with knowledge of their falsity, are absolutely privileged if they bear a reasonable relationship to the subject of inquiry." *Swanson v. Bixler,* 750 F.2d 810, 814 (10th Cir. 1984). *Accord Department of Administration v. State Personnel Board of State*, 703 P.2d 595, 596-98 (Colo. App. 1985) (same). "The reason underlying this doctrine is that public interest in the freedom of expression by participants in judicial proceedings, uninhibited by risk from resultant suits for defamation, is so vital and necessary to the integrity of judicial system that it must be made paramount to the right of the individual to a legal remedy where he has been wronged thereby." *MacLarty v. Whiteford,* 496 P.2d 1071, 1072 (Colo. App. 1972), *rev. denied.* (using the language quoted in *Swanson* to define the rule). "A party to a civil litigation . . . is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding." *Restatement 2d of Torts § 587.*

Here, the Defamation count is entirely and expressly founded upon communications to the Court in the Complaint. To quote . . . "[b]y filing the complaint," *see Id*. at ¶ 137, "the

allegations made by the Plaintiff in the Complaint" *Id.* at ¶ 137, ¶141 and ¶142, all, Defendant alleges, harmed him.  Finally, the Intentional Infliction of Emotion Distress count is also based entirely on Plaintiff's having brought the instant lawsuit.  *See* Id. at ¶ 152 "by publishing these accusations through this lawsuit, Plaintiff has, in fact, caused Defendant extreme emotional distress."  Here, Defendant simply cannot assert that Plaintiff has done anything other than sue him for copyright infringement because Plaintiff has not done anything else.  And, under well-established law, Plaintiff is absolutely privileged to sue Defendant without the possibility of being countersued based upon what Plaintiff communicates to the Court in the suit.  This is an outcome dispositive affirmative defense.  *See Rohner v. Union Pac. R. Co.*, 225 F.2d 272 (10th Cir. 1955) (dismissing claim where, as here, an outcome dispositive affirmative defense was apparent on face of the pleading).

C.  Defendant Fails to State a Claim for Invasion of Privacy

Count II of Defendant's Counterclaim attempts to assert a cause of action for the invasion of privacy tort intrusion.  This claim fails as a matter of law.

1.  Defendant Does Not Have a Legally Cognizable Claim for Intrusion Upon Solitude

"The tort of invasion of privacy by intrusion requires an unreasonable manner of intrusion or an intrusion for an unwarranted purpose."  *Slaughter v. John Elway Dodge Southwest/AutoNation*, 107 P.3d 1165, 1070 (Colo. App. 2005), citing *Denver Publ'g Co. v. Bueno,* 54 P.3d 893 (Colo. 2002); *Doe v. High-Tech inst., Inc.*, 972 P.2d 1060 (Colo. App. 1998). Here, Defendant alleges that: (a) Plaintiff intentionally intruded upon Defendant's solitude by collecting data about the IP Address used by his internet service without his knowledge, *see* Second Amended Counterclaim at ¶ 127, and by "forcing Qwest/Century Link to disclose his identifying information," *Id.* at ¶ 128.

Defendant's claim for intrusion due to Plaintiff's investigation fails because: (1) investigating the infringement of one's copyrighted works is warranted and necessary so that one may enforce one's copyrights, and (2) Plaintiff's investigation was done in a reasonable manner. Indeed, as alleged by Plaintiff, Defendant used his computer to reach out to Plaintiff's investigator, IPP Limited, perform a digital hand shake with IPP Limited's computer, and then Defendant transmitted a piece of Plaintiff's copyrighted work to IPP Limited. There is nothing unreasonable in this process. To the contrary, it is the best and only way to establish that Defendant was distributing Plaintiff's works via his Internet. And, Plaintiff has a right under the First Amendment's Petition Clause to sue for infringement committed via the Internet.

Defendant's claim for intrusion due to Plaintiff's subpoenaing his identity from Qwest also fails because: (1) this court found that Plaintiff had "good cause to do so (i.e., "warranted"), and under the law of the case doctrine, discussed above, there is no reason to disturb this finding, (2) Defendant did not have a reasonable expectation of privacy, and (3) Defendant consented to the disclosure of his information via his contract with Qwest.

Regarding Defendant's expectation of privacy, "[i]nternet subscribers do not have a reasonable expectation of privacy in their subscriber information—including name, address, phone number, and email address—as they have already conveyed such information to their ISPs." *First Time Videos, LLC v. Does 1-500*, 276 F.R.D. 241, 247 (N.D. Ill. 2011), *citing Achte/Neunte Boll Kino Beteiligungs Gmbh & Co. v. Does 1–4,577*, 736 F.Supp.2d 212, 216 (D.D.C. 2010). Defendant acknowledged this fact by accepting Qwest's contract, Section 10 of which provides that: "Qwest may provide customer information to third parties or governmental entities when required or permitted by law. . . ." *See* Exhibit A. Qwest has an additional Privacy Policy, attached as Exhibit B, which states "we may share customer information: (1) to comply with laws or to respond to lawful demands such as subpoenas or court orders . . . [and,] [a]mong

14

the information we might be asked to provide are a customer's name, address, telephone number, account number, any Internet Protocol or network address that we assigned to the customer. . . ."[6]   Defendant consented to Qwest's Agreement when he obtained his internet service from it. By so agreeing, he consented to Qwest delivering his identifying information to a third party, like Plaintiff here, in response to a subpoena.   "Consent alone is fatal to Plaintiff's claim" for abuse of process.  *L. Kozak v. Catholic Health Initiatives of Color-ADO,* 2009 WL 3497782 (D. Colo. 2009) (dismissing the abuse of process count based on this affirmative defense.)

      D.  Defendant Fails to State a Claim for Defamation

Plaintiff's allegations that Defendant infringed its copyright do not give rise to liability for defamation because these allegations are privileged as a matter of law.  *See, e.g., Swanson v. Bixler,* 750 F.2d 810, 814 (!0th Cir. 1984); *accord Walters v. Linhof,* 559 F.Supp. 1231, 1237 (D. Colo. 1983) (holding that "statements made during judicial proceedings are absolutely immune" from liability for defamation).   "Even if false, statements that stepson was going to abscond with stepfather's assets were absolutely privileged where made during course of proceedings seeking conservatorship for stepfather and temporary restraining order…[.]"); *accord Cardtoons, L.C. v.*

---

[6] Defendant also agreed to secure his IP Address, take responsibility for his use and not to violate laws.   See Section 2(b)(i) of Qwest's High-Speed Internet® Subscriber Agreement (the "Agreement"), attached as Exhibit A, stating that Qwest's subscribers will "receive a user name and password upon completing the registration process."  Further, that Qwest's subscribers have "responsibility for maintaining the confidentiality of the user name and password, and are fully responsible for all activities that occur under your [ the subscriber's] user name and password." Also, that "only you [the subscriber] and your authorized designees will use your user name and password and that you will not transfer or disclose either your user name or password to any other person."   Finally, in capitalized letters "QWEST RECOMMENDS USE OF COMMERCIALLY AVAILABLE CONTENT FILTERING SOFTWARE" which would block peer to peer file sharing.[6] Section 7(d) states "[t]he Service cannot be used for any . . . purpose . . . [that] violates any law, order ordinance, governmental requirement or regulation or this Agreement."

*Major League Baseball Players Ass'n*, 335 F.3d 1161, 1166 (10th Cir. 2003) ("recognize[ing] the litigation privilege under which attorneys, parties, jurors, and witnesses are immune from defamation liability for statements made in the course of judicial or quasi-judicial proceedings, so long as the statements are relevant to the proceeding.").

Defendant argues that Plaintiff should not be entitled to the absolute litigation privilege because Plaintiff has unclean hands, but that is irrelevant to the litigation privilege. "[T]he litigation privilege is absolute and 'provides a complete defense even if the offensive statements are uttered maliciously or in bad faith.'" *Taylor v. Swartwout*, 445 F. Supp. 2d 98, 103 (D. Mass. 2006). That being said, Plaintiff has not engaged in any improper or bad faith conduct in this case. Indeed, this Court has expressly found Plaintiff's conduct to be proper. *See e.g. Malibu Media v. John Does 1-6*, 1:12-cv-00849 (D. Colo. Oct. 25, 2012) ("whether it is one defendant or one hundred defendants named in a lawsuit, due simply to the suggestive content of the alleged infringed material, the copyright holder still has the ability to attempt to convince a defendant to settle or to be identified in a public lawsuit").

### E.  Defendant Fails to State a Claim for Intentional Infliction of Emotional Distress

To establish a claim of extreme and outrageous conduct, or intentional infliction of emotional distress, Defendant must allege that: "(1) the defendant engaged in extreme and outrageous conduct; (2) recklessly or with the intent of causing the plaintiff severe emotional distress; and (3) which caused the plaintiff to suffer severe emotional distress." *LaBrecque v. L3 Communication Titan Corp.*, 2007 WL 1455850, at *4 (D. Colo. 2007). The level of outrageousness necessary to meet the first element is "extremely high." *Id.*, at *4-5, *citing Archer v. Farmer Bros. Co.*, 70 P.3d 495, 499 (Colo. App. 2002). "Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities are insufficient; only conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

16

decency and be regarded as atrocious and utterly intolerable in a civilized community, will suffice." *Id.*

Here, Defendant alleges that Plaintiff's allegations as set forth in the Complaint that Defendant illegally downloaded Plaintiff's pornographic work have caused him severe emotional distress. *See* Second Amended Complaint at ¶¶ 152-154. First, since the claim is based on communications to the Court, the absolute litigation privilege acts as a complete bar. *See Swanson v. Bixler,* 750 F.2d 810, 814 (10th Cir. 1984). Second, Plaintiff's filing of legitimate claims to remedy copyright infringement does not constitute "extreme and outrageous conduct." *See Swanson v. Bixler*, 750 F.2d 810, 814-15 (10th Cir. 1984) (upholding dismissal of claim for intentional infliction of emotional distress where plaintiff complained that judicial proceedings for a conservatorship and injunction against him to prevent him from removing step-father's assets constituted "outrageous conduct"). Underscoring that Plaintiff's suit is not outrageous are the opinions from similar cases involving Doe defendants who have attempted to proceed anonymously, and in which courts have held that "[t]he potential embarrassment…of being associated with allegations of infringing hardcore pornography does not constitute an exceptional circumstance that would warrant allowing the defendants to proceed anonymously." *Liberty Media Holdings, LLC v. Swarm Sharing Hash File*, 2011 WL 5161453, at *7 (D. Mass. 2011); *accord Boy Racer, Inc. v. John Does 1-34*, 2012 WL 1535703, at *4 (S.D. Fla. 2012), *citing AF Holdings, LLC v. Does 1-162*, 2012 WL 488217, at *4 (S.D. Fla. 2012).

Lacking any merit on its face, Defendant claim for intentional infliction of emotional distress should be dismissed.

F.  Defendant Fails to State a Claim for Declaratory Judgment that Defendant is Not Liable to Plaintiff for Copyright Infringement

Defendant's claims for declaratory judgment concerning liability for copyright infringement should be dismissed as an inappropriate "repackaging" of his affirmative defenses. The Declaratory Judgment Act gives the Court "the *authority* to declare the rights and legal relations of interested parties, but not a *duty* to do so." *Stickrath v. Globalstar, Inc.*, 2008 WL 2050990, at *3 (N.D. Cal. 2008), *citing Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 533 (9th Cir. 2008), *which in turn cites Wilton v. Seven Falls Co.*, 515 U.S. 277, 288, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995) (within a district court's sound discretion to dismiss an action for declaratory judgment), *and* 28 U.S.C. § 2201(a) (emphasis in original).

Accordingly, numerous courts have used that discretion to dismiss counterclaims "where they are either the 'mirror image' of claims in the complaint or redundant of affirmative defenses." *Id.*  *See also Rayman v. Peoples Sav. Corp.*, 735 F.Supp. 841, 852-53 (N.D. Ill. 1990) (court dismisses counterclaim that "simply duplicates arguments made by way of affirmative defense"); *Tenneco Inc. v. Saxony Bar & Tube, Inc.*, 776 F.2d 1375, 1379 (7th Cir. 1985) ("The label 'counterclaim' has no magic.  What is really an answer or defense to a suit does not become an independent piece of litigation because of its label."); Fed. R. Civ. P. 8(c)(2) ("If a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated…[.]"). "Ordinarily the court will refuse a declaration which can be made only after a judicial investigation of disputed facts, especially where the disputed questions of fact will be the subject of judicial investigation in a regular action." *Washington-Detroit Theater Co. v. Moore*, 249 Mich. 673 (MI 1930);  *See also*, *Product Engineering and Mfg, Inc. v. F. Barnes*, 424 F.2d 42 (10th Cir. 1970) ("Dismissal of federal court action seeking declaratory judgment that patent was

invalid and that licensee's machine did not infringe patent, wherein licensee asserted no more than what would be defense to Colorado court contract action brought by patentee on license agreement, was not an abuse of discretion.") This rule is founded on sound policy because otherwise Plaintiff would have to answer a declaratory action denying everything and saying see Complaint. Also, it would confuse a jury if the matter proceeds to that stage. Moreover, the declaration is simply unnecessary. If Defendant wins at trial, the jury's verdict will find him not liable which is tantamount to a declaration of non-infringement.

Defendant claims Plaintiff has not provided ownership of the copyrights because Plaintiff has not produced certificates of the copyright ownership, only screen shots from the Copyright Office website. *See Second Amended Counterclaim*, ¶167. Plaintiff's copyright registrations are public record. It is not necessary for Plaintiff to produce the certificates of copyright ownership. Further, the United States Copyright Office registered Plaintiff's copyrights, and as a service to the public, provides information on these registrations on their website through a public catalog. Any individual can search for them. The Copyright Office's website, images of which can be found in Plaintiff's screen shots, clearly identifies Plaintiff, Malibu Media, as the copyright claimant. To suggest that the registrations would state otherwise is absurd and not supported by any factual evidence.

### G. Defendant Fails to State a Claim for Declaratory Judgment that Plaintiff's Works are Not Entitled to Protections of United States Copyright Law

Defendant's claim for a declaration that the works sued upon in Plaintiff's Complaint are not entitled to protection fails as matter of basic copyright law. "[T]he currently prevailing view" is that "no works are excluded from copyright by reason of their content." 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright*, § 2.17 (2008), *citing Mitchell Bros. Film Group v. Cinema Adult Theater*, 604 F.2d 852, 863 (5th Cir. 1979) ("*Mitchell Brothers*"). Sound

policy reasons support the "Congressional intent to avoid content restrictions on copyrightability." *Id.*, at § 2.17. *See also Belcher v. Tarbox*, 486 F.2d 1087, 1088 (9th Cir. 1973) ("There is nothing in the Copyright Act to suggest that the courts are to pass upon the truth or falsity, the soundness or unsoundness, of the views embodied in a copyrighted work. The gravity and immensity of the problems, theological, philosophical, economic and scientific that would confront a court if this view were adopted are staggering to contemplate.")

The *Mitchell Brothers* is the seminal decision on the issue of avoiding content-based exclusions in copyright law.  In *Mitchell Brothers*, accused infringers of a pornographic film asserted as an affirmative defense in the trial court—in the same manner that Defendant does here—that the copyrighted material was obscene, and that the plaintiffs were barred from relief under the doctrine of "unclean hands."  *Mitchell Brothers*, 604 F.2d at 854.  Following the acceptance of the affirmative defense by the trial court, the Fifth Circuit reversed, holding there is not even a hint in the Copyright Act that the obscene nature of a work makes it less copyrightable:

> [The Copyright Act's]… statutory language "all the writings of an author" is facially all-inclusive, within itself admitting of no exceptions. There is not even a hint in the language of s 4 that the obscene nature of a work renders it any less a copyrightable "writing."  There is no other statutory language from which it can be inferred that Congress intended that obscene materials could not be copyrighted.

*Id.* (footnote omitted).

The *Mitchell Brothers* court then noted that the historical absence of any content-based restrictions in copyright law demonstrated that "Congress has seldom added restrictions on copyright based on the subject matter of the work, and in each instance has later removed the content restriction."  *Id.*, at 855.  Such congressional "additions and subsequent deletions," the

*Mitchell Brothers* court noted, "suggest that Congress has been hostile to content-based restrictions on copyrightability." *Id.*

The court also articulated its position that obscenity concerns were inconsistent with the goal of furthering creativity:

> Obscenity law is a concept not adapted for use as a means for ascertaining whether creative works may be copyrighted. Obscenity as a constitutional doctrine has developed as an effort to create a tolerable compromise between First Amendment considerations and police power. It is an awkward, barely acceptable concept that continues to dog our judicial system and society at large. The purpose underlying the constitutional grant of power to Congress to protect writings is the promotion of original writings, an invitation to creativity. This is an expansive purpose with no stated limitations of taste or governmental acceptability. Such restraints, if imposed, would be antithetical to promotion of creativity. The pursuit of creativity requires freedom to explore into the gray areas, to the cutting edge, and even beyond. Obscenity, on the other hand, is a limiting doctrine constricting the scope of accepting of the written word.

*Id.*, at 856 (footnote omitted) [Emphasis added].

The Ninth Circuit followed *Mitchell Brothers* three years later in *Jartech, Inc. v. Clancy*, 666 F.2d 403 (9th Cir. 1982) ("*Jartech*"), which similarly reversed a trial court that had invalidated a copyright on obscenity grounds. The *Jartech* decision elucidated an additional, pragmatic reason to avoid an obscenity defense to copyright infringement:

> Pragmatism further compels a rejection of an obscenity defense. Under the dictates of *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), obscenity is a community standard which may vary to the extent that controls thereof may be dropped by a state altogether. *Paris Adult Theatres I v. Slaton*, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973); *United States v. 2,200 Paper Back Books*, 565 F.2d 566, 569-70 (9th Cir. 1977). Acceptance of an obscenity defense would fragment copyright enforcement, protecting registered materials in a certain community, while, in effect, authorizing pirating in another locale.

*Jartech*, 666 F.2d at 406.

Although the Fifth and the Ninth Circuit Courts are the only Circuit Courts to have addressed the issue that pornography is not copyrightable on obscenity grounds, the weight of their decisions is clear.  As noted in *Mitchell Brothers*, Congress historically has not enacted content-based restrictions on copyrightability, and has chosen not to do so even after these decisions.  As explained above, numerous reasons—from the legal to the creative to the pragmatic—militate against enacting such content-based restrictions.

Accordingly, the current Copyright Office position on the issue, as expressed in Compendium II of Copyright Office Practices, § 108.10, states: "Obscene or Pornographic Works. The Copyright Office will not ordinarily[7] attempt to examine a work to determine whether it contains material that might be considered obscene or pornographic."

In this regard, and during her tenure as Register of Copyright, Mary Beth Peters explained the rights of copyright holders in peer-to-peer infringement actions in the context of pornographic works to the Senate Judiciary Committee as follows:  "The law is unambiguous. Using peer-to-peer networks to copy or distribute copyrighted works without permission is infringement and copyright owners have every right to invoke the power of the courts to combat such activity.  Every court that has addressed the issue has agreed that this activity is infringement."[8]  Ms. Peters explained that these types of suits are necessary to deter infringement:

> [F]or some users of peer-to-peer technology, even knowledge that
> what they are doing is illegal will not be a sufficient disincentive to
> engage in such conduct.  But whether or not these infringers know
> or care that it is against the law, the knowledge that such conduct

---

[7] The qualifier "ordinarily" was only made a consideration in 1991 as a policy decision regarding child pornography.

[8] *Pornography, Technology, and Process: Problems and Solutions on Peer-to-Peer Networks Statement of Marybeth Peters The Register of Copyrights before the Committee on the Judiciary*, 108th Cong. (2003), *available at* http://www.copyright.gov/docs/regstat090903.html.

may lead to expensive and burdensome litigation and a potentially large judgment should have a healthy deterrent effect.  While we would like to think that everyone obeys the law simply because it is the law and out of a sense of obligation, we also know that laws without penalties may be widely ignored.  For many people, the best form of education about copyright in the internet world is the threat of litigation.  In short, if you break the law, you should be prepared to accept the consequences.  <u>Copyright owners have every right to enforce their rights in court, whether they are taking action against providers of peer-to-peer services designed to profit from copyright infringement or against the persons engaging in individual acts of infringement using such services.</u>

*Id*.  (emphasis added).

In this case, Defendant fails to cite any authority supporting his claim that Plaintiff's works are not entitled to copyright protection.  Instead, and as with the rest of his pleading, Defendant reverts once more to irrelevant and scandalous allegations and *ad hominem* attacks, this time accusing Plaintiff of violating laws prohibiting "pimping, pandering, solicitation and prostitution." Counterclaim, p. 51, at ¶ 13.  In brief, there is no reason to believe that the courts of the 10th Circuit would disagree with established judicial precedent and public policy on the copyrightability of the works at issue.  Thus, Defendant's claim should be dismissed out of hand by this Court.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully moves for the entry of an order dismissing Defendant's Second Amended Counterclaim in its entirety.

Respectfully submitted,

By: /s/ *Jason Kotzker*
Jason Kotzker
jason@klgip.com
KOTZKER LAW GROUP
9609 S. University Blvd. #632134
Highlands Ranch, CO 80163
Phone: 303-875-5386
*Attorney for Plaintiff*

## CERTIFICATE OF COMPLIANCE WITH D.C. Colo. L. Civ. R. 7.1

Pursuant to D.C. Colo. L. Civ. R. 7.1(A), Plaintiff has conferred with Defendant, Mr. Fantalis, concerning the relief Plaintiff seeks herein. Mr. Fantalis opposes all relief sought hereunder.

By: /s/*Jason Kotzker*
Jason Kotzker

## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.  In addition, a copy of the foregoing document was served on Defendant via electronic mail and U.S. Mail.

By: /s/*Jason Kotzker*